Mark L. Smith (NV Bar #14762)
 msmith@sffirm.com
Jacob L. Fonnesbeck (NV Bar #11961)
 jfonnesbeck@sffirm.com
**SF FIRM, LLP**
6345 South Pecos Road, Suite 202
Las Vegas, NV 89120
Telephone:  (725) 666-8701
Facsimile:   (725) 666-8710

Thomas A. Brady (*pro hac vice pending*)
tab@clydesnow.com
Timothy R. Pack (*pro hac vice pending*)
trp@clydesnow.com
Keith M. Woodwell (*pro hac vice pending*)
kmw@clydesnow.com
**CLYDE SNOW & SESSIONS PC**
201 South Main Street
Salt Lake City, UT 84111
Telephone: (801) 322-2516
Facsimile: (801) 322-2516

*Attorneys for Defendants*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| TETSUYA NAKAMURA, an individual,<br><br>Plaintiff,<br><br>v.<br><br>SUNDAY GROUP INCORPORATED, a Delaware corporation, *et al.*,<br><br>Defendants. | Case No.: 2:22-cv-01324-MMD-EJY<br><br><br>**DEFENDANTS' MOTION TO DISMISS**<br><br>(ORAL ARGUMENT REQUESTED) |

Pursuant to Rule 19(a) and 12(b)(7) of the Federal Rules of Civil Procedure, Defendants

Sunday Group Incorporated, SGI Trust, Toshiki (Todd) Mitsuishi, and James Pack (collectively,

"Defendants") hereby submit this Motion to Dismiss the Complaint filed by Plaintiff Tetsuya Nakamura ("Nakamura").

## INTRODUCTION

This case arises from three separate written agreements between the parties regarding three separate and distinct transactions. One of those agreements contains an unambiguous choice of forum clause that requires that any action to enforce the agreement be brought in a Japanese court, where Nakamura resides. That agreement also includes a choice of law provision that requires that it be interpreted in accordance with the laws of Japan. Nakamura simply ignored this provision and elected to file his claims in U.S. District Court in Nevada. Those claims should be dismissed by this Court so that they can be properly filed in a Japanese court.

Another of those agreements was signed by the parties in 2015. All the claims that Nakamura has filed related to that agreement are time-barred and should be dismissed with prejudice.

Finally, Nakamura has improperly asserted tort claims related to the written agreements between the parties. These tort claims are barred by the economic loss doctrine, which provides that purely economic losses are governed by contract principles rather than common law tort principles. The tort claims arising from the alleged breach of the contracts between the parties must be dismissed with prejudice.

## ARGUMENT

### I.   NAKAMURA'S CLAIMS RELATED TO THE MOBBY MOU MUST BE DISMISSED FOR IMPROPER VENUE BASED ON THE PARTIES' FORUM SELECTION CLAUSE

Nakamura's Complaint alleges that in 2017 Defendant Sunday Group and its representative, namely, Mr. Mitsuishi successfully solicited further capital investment from Dr. Nakamura and others. This occurred through the private sale of cryptocurrency tokens associated

with a so-called "Mobby Project" that Sunday Group claimed to be developing." [Complaint, Dkt.1 (hereinafter, "Compl.") ¶ 25.] The Complaint further alleges that "[r]elying on Sunday Group's misrepresentations, Dr. Nakamura entered into a Memorandum of Understanding to Participate in Private Sale dated November 28, 2017 (the "Mobby MOU"). Article 5 of the Mobby MOU states that it shall be governed by the laws of Japan. [*Id*. at ¶ 27.]  The Mobby MOU contains the following mandatory forum selection clause:

> Article 5 (Governing Law and Jurisdiction)
>
> This Memorandum is governed by, and shall be construed solely in accordance with, the internal laws of Japan. Any matter, in any way arising out of, related to, or connected with this Memorandum shall be brought only in a local court in the city in which the address of [Nakamura] is registered.

[Mobby MOU, attached as Exhibit 1.[1]]

"[A] forum-selection clause 'should control except in unusual cases" because "a forum-selection clause 'represents the parties' agreement as to the most proper forum.'" *Yei A. Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1088 (9th Cir. 2018) (quoting *Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for Western Dist. of Texas*, 571 U.S. 49, 63–64 (2013)). Based on this, "the 'enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system.'" *Id.* Thus, "only under extraordinary circumstances unrelated to the convenience of the parties should a motion to enforce a forum-selection clause be denied." *Id.*

In the Complaint, Nakamura alleges that he "is a Japanese citizen domiciled and residing in Japan." [*See* Compl. at ¶ 8]. Therefore, based on the forum selection clause contained in

---

[1] Exhibit 1 contains the Mobby Mou signed by Nakamura, which is written in Japanese. Also attached in Exhibit 1 is an English translation of the form Mobby Mou. Defendants do not admit the validity or enforceability of the Mobby Mou through this motion.

Article 5 of the Mobby MOU, the Parties stipulated to venue in Japan—not Nevada. This makes sense in light of the choice of law provision in the Mobby MOU, which would require the court to use and apply Japanese law to the Parties' dispute. Therefore, Plaintiffs' Seventh, Eighth, and Ninth Causes of Action should be dismissed because they arise out of or relate to the Mobby MOU, which contains a mandatory forum selection clause and requires the dispute to be litigated in Nakamura's home city in Japan.

## II.   NAKAMURA'S CLAIMS SHOULD BE DISMISSED BASED ON THE APPLICABLE STATUTE OF LIMITATIONS

Nakamura's First, Second, Third, Fourth, Fifth, and Sixth Causes of Action relate to his purchase of Sunday Group, Inc., stock through that certain "Series AA Preferred Stock Subscription Agreement (the "Subscription Agreement")." [Compl. at ¶ 21.]  Each of these claims should be dismissed based on the applicable statute of limitations. "In determining whether a statute of limitations has run against an action, the time must be computed from the day the cause of action accrued." *Job's Peak Ranch Cmty. Ass'n, Inc. v. Douglas Cnty.*, 131 Nev. 1304 (2015). "A cause of action 'accrues when a suit may be maintained thereon." *Clark v. Robison*, 113 Nev. 949, 944 P.2d 788, 789 (1997) (internal citation omitted).

### A.   First Cause of Action – Breach of Contract

The First Cause of Action for Breach of Contract should be dismissed because the statute of limitations has expired. Under Nevada law, the statute of limitations for a breach of contract claim based upon a written contract is six (6) years. *See* Nev. Rev. Stat. § 11.190. The Subscription Agreement is dated April 19, 2015. [Compl. at ¶ 21.] Nakamura alleges that, pursuant to the Subscription Agreement, Sunday Group was required to deliver one or more

share certificates to Nakamura, which it failed to do.[2] The agreement does not specify a time frame for delivery of the share certificates. Thus, the cause of action began to accrue on April 19, 2015, and the statute of limitations for this breach expired on April 19, 2021. Nakamura did not initiate this claim until August 16, 2022, six years and four months after the alleged breach. Therefore, Nakamura's First Cause of Action for Breach of Contract should be dismissed.

B.  Second Cause of Action – Fraud/Intentional Misrepresentation, Third Cause of Action – Fraudulent Inducement, and Fourth Cause of Action – Negligent Misrepresentation

The Second Cause of Action for Fraud/Intentional Misrepresentation, Third Cause of Action for Fraudulent Inducement, and Fourth Cause of Action for Negligent Misrepresentation related to the Subscription Agreement should be dismissed because the statute of limitations has expired. The statute of limitations for fraudulent misrepresentation, fraudulent inducement, and negligent misrepresentation is three (3) years. *See* Nev. Rev. Stat. § 11.190(3)(d)*; see also Job's Peak Ranch Community Ass'n, Inc.*, 131 Nev. 1304. In the Complaint, Nakamura alleges that Defendant Todd Mitsuishi ("Mitsuishi") made the representations and omissions at issue to Nakamura sometime in April 2015. [*See* Compl. at ¶¶ 40–42, 44–47, 48–52.] Therefore, the cause of action began to accrue in April 2015 and the statute of limitations expired in April 2018; Nakamura did not file the Complaint until August 16, 2022. As such, Nakamura's Second, Third, and Fourth Causes of Action should be dismissed.

C.  Fifth Cause of Action – Breach of Fiduciary Duty (Subscription Agreement)

The statute of limitations for breach of fiduciary duty is three (3) years. *See* Nev. Rev. Stat. § 11.190(3)(d); *see also Job's Peak Ranch Community Ass'n, Inc.*, 131 Nev. 1304. In the

---

[2] Defendants do not, through this motion, make any admission regarding the delivery of the share certificate to Nakamura. Rather, under Fed. R. Civ. P. 12(b)(6), Defendants are treating the allegations are true for the purposes of this motion only.

**DEFENDANTS' MOTION TO DISMISS**

Complaint, Plaintiff alleges that Defendants breached the fiduciary duties owed to Nakamura by failing to issue one or more share certificates to which Nakamura was entitled under the Subscription Agreement, and by failing to provide Nakamura with access to financial statements. The Subscription Agreement was dated April 19, 2015. [Compl. at ¶ 21.] Therefore, this cause of action began to accrue on April 19, 2015, and the statute of limitations expired on April 19, 2018. Nakamura did not initiate this claim until August 16, 2022. As such, the Fifth Cause of Action should be dismissed.

D.      Sixth Cause of Action – Unjust Enrichment (Subscription Agreement)

The statute of limitations for an unjust enrichment claim is four (4) years. *See* Nev. Rev. Stat. § 11.190(2); *see also In re Amerco Derivative Litig.*, 127 Nev. 196, 252 P.3d 681, 703 (2011) ("The statute of limitations for an unjust enrichment claim is four years."). In the Complaint, Nakamura  alleges that Defendants unjustly received a benefit on or around April 19, 2015, when Nakamura purchased shares of stock of Sunday Group. Therefore, Nakamura's cause of action for unjust enrichment began to accrue on April 19, 2015, and the statute of limitations expired on April 19, 2019. Nakamura did not initiate this claim until August 16, 2022. As such, the Sixth Cause of Action for Unjust Enrichment should be dismissed.

**III.    NAKAMURA'S TORT CLAIMS ARE BARRED BY THE ECONOMIC LOSS DOCTRINE**

Nakamura's Second, Third, Fourth, Fifth, Sixth, Eleventh, Twelfth, Thirteenth, and Fourteenth Causes of Action are barred by the economic loss doctrine. Under Nevada law, "the economic loss doctrine bars unintentional tort claims when a plaintiff seeks to recover 'purely economic losses[,]'" and "provides that certain economic losses are properly remediable only in contract." *Peri & Sons Farms, Inc. v. Jain Irr., Inc.*, 933 F. Supp. 2d 1279, 1283 (D. Nev. 2013). "[T]he crux of the doctrine is . . . the premise that economic interests are protected, if at all, by

contract principles, rather than tort principles." *Id.* at 1284. Additionally, "Nevada law may also bar recovery for other tort claims where the plaintiff's only complaint is that the defendant failed to perform what was promised in the contract." *Giles v. Gen. Motors Acceptance Corp.*, 494 F.3d 865, 879 (9th Cir. 2007).

Here, Nakamura's Second, Third, Fourth, Fifth, and Sixth Causes of Action are tort claims arising out of or related to the Subscription Agreement. Similarly, Plaintiff's Eleventh, Twelfth, Thirteenth, and Fourteenth Causes of Action are tort claims arising out of or related to a contract Nakamura identifies as the "Cloud Mining Agreement with SGI Trust" (the "Mining Agreement"). [Compl. at ¶ 30.] As explained in further detail below, these claims are contract claims disguised as a tort, and are based upon an alleged breach of an obligation arising from their respective agreements that are not distinct from the contract themselves. Moreover, the Complaint seeks recovery of purely economic loss and is devoid of any claim that the alleged conduct caused harm to Nakamura's property. As such, these tort claims are barred by the economic loss doctrine.

A.     Tort Claims Related to Subscription Agreement

The Complaint asserts five tort claims that arise out of or are otherwise related to the Subscription Agreement: (1) fraud/intentional misrepresentation; (2) fraudulent misrepresentation; (3) negligent misrepresentation; (4) breach of fiduciary duty; and (5) unjust enrichment. Each of these tort claims are based upon an alleged breach of the Subscription Agreement. For example, in support of his claim for fraud/intentional misrepresentation, Nakamura identifies the following alleged misrepresentations: "[T]hat Dr. Nakamura would receive stock certificates reflecting his share ownership, that he would receive contractually obligated financial updates and information upon request, and that the invested capital would be

used to develop various cryptocurrency projects." [Compl. at ¶ 41]. Each of these alleged misrepresentations, if true, would also constitute a claim for breach of the Subscription Agreement.  Similarly, Nakamura alleges that Defendants were unjustly enriched when they received payment from Nakamura in exchange for his purchase of Sunday Group's stock pursuant to the Subscription Agreement. [Compl. at ¶ 62.] Thus, these claims are contract claims disguised as torts,  which are prohibited under the economic loss doctrine. Thus, they too should be dismissed.

B.     Tort Claims Related to Mining Agreement

Nakamura has asserted four tort claims that arise out of or are otherwise related to the Mining Agreement: (1) fraud/intentional misrepresentation; (2) fraudulent inducement; (3) negligent misrepresentation; and (4) unjust enrichment. Each of these tort claims are based upon an alleged breach of the Mining Agreement and seek to recover purely economic losses. For example, in support of his claim for fraud/intentional misrepresentation, Nakamura alleges that Mitsuishi "made representations and omissions to Dr. Nakamura regarding a purported opportunity to invest in a cryptocurrency mining center which culminated in the formation of a valid contract with Dr. Nakamura, the Mining Agreement." [Compl. at ¶ 84.] In addition, Nakamura alleges that "[a]s a direct consequence of the representations and omissions, [he] has suffered economic and other harm, including but not limited to the loss of the 545.455 bitcoin he invested pursuant to the Mining Agreement." (*Id*. at ¶ 87). Nakamura's purely economic interest related to this claim is sufficiently covered and protected by the Mining Agreement, and clearly arises out of the Mining Agreement. As such, these claims should be dismissed pursuant to the economic loss doctrine.

## <u>CONCLUSION</u>

Based on the foregoing, Defendants respectfully request that Nakamura's first, second, third, fourth, fifth, sixth, seventh, eighth, ninth, eleventh, twelve, thirteenth, and fourteenth causes of action be dismissed.

DATED: November 1, 2022                     **SF FIRM, LLP**

By: */s/ Jacob L. Fonnesbeck*
        Mark L. Smith (Nevada Bar. #14762)
        Jacob L. Fonnesbeck (Nevada Bar #11961)

        Attorneys for Defendants
        SUNDAY GROUP INCORPORATED,
        SGI TRUST, TOSHIKI (TODD) MITSUISHI
        AND JAMES PACK

1

## **CERTIFICATE OF SERVICE**

2

3         I hereby certify that a copy of the forgoing **DEFENDANTS' MOTION TO DISMISS**

4    was served on the person(s) named below via the court's CM/ECF system:

5         Clair Mena
          Casey O'Neill
6         Christopher J. Steskal
          FENWICK & WEST LLP
7         555 California Street
          San Francisco, CA 94104
8         cmena@fenwick.com
          coneill@fenwick.com
9         csteskal@fenwick.com

10
          Felix S. Lee
11        FENWICK & WEST LLP
          81 California Street
12        Mountain View, CA 94041
          flee@fenwick.com
13

14        John D. Tennert
          Wade Ellis Beavers
15        FENNEMORE CRAIG, P.C.
          7800 Rancharrah Parkway
16        Reno, NV 89511
          jtennert@fclaw.com
17        wbeavers@fennemorelaw.com

18
          *Attorneys for Plaintiff*
19

20

21

22

23

24

25

26

27

28

## EXHIBIT INDEX

| EXHIBIT NO. | TITLE / DESCRIPTION | PAGE NOS. |
|---|---|---|
| 1 | Mobby MOU | 12–16 |

**DEFENDANTS' MOTION TO DISMISS**