UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| TETSUYA NAKAMURA,<br><br>                      Plaintiff,<br>    v.<br><br>SUNDAY GROUP, INC., *et al.*,<br><br>                     Defendants. | Case No. 2:22-cv-01324-MMD-EJY<br><br>ORDER |

**I.  SUMMARY**

Plaintiff Tetsuya Nakamura sued Defendants Sunday Group, Inc., SGI Trust, Toshiki Mitsuishi, and James Pack (collectively, "Defendants") after Plaintiff invested in Defendants' blockchain-industry startup and digital currency "mining" operations, but Defendants repeatedly failed to do what they had promised. (ECF No. 1 ("Complaint").) Before the Court is Defendants' motion to dismiss all of Plaintiff's claims against them. (ECF No. 27 ("Motion").[1]) For the reasons discussed below, the Court denies the Motion.

**II.  BACKGROUND**

The following allegations are adapted from the Complaint.

This action arises from a series of three transactions—in 2015, 2017, and 2018—in which Plaintiff, a Japanese citizen and prominent medical industry executive, invested millions of dollars in Defendants' blockchain-industry startup and cryptocurrency "mining" operations. In April 2015, the parties entered into a Series AA Preferred Stock Subscription Agreement ("Subscription Agreement"), in which Plaintiff invested $350,000 in exchange for preemption and anti-dilution rights, annual access to Defendants' financial statements, and Defendants' delivery of share certificates after share issuance.

---

[1] Plaintiff filed a response (ECF No. 36), and Defendants replied (ECF No. 43.)

(ECF No. 1 at 5-6.) Despite Defendants' promises and representations before executing the Subscription Agreement, Defendants still have neither delivered Plaintiffs' share certificates nor provided him access to financial statements and updates, and they "ha[ve] yet to produce a single viable product" after more than five years (*Id.* at 6, 9-12.)

Then, in late 2017, the parties formed a second contract by executing a memorandum of understanding ("Mobby MOU") for the "Mobby Project," which provided for the creation and sale of Defendants' purported "M-Token" cryptocurrency. (*Id.* at 6.) Relying on Defendants' statements that his investments would soon increase tenfold in value, Plaintiff invested a second time in Defendants' startup efforts—this time tendering over 4,200 ether, which is worth millions of U.S. dollars today. (*Id.* at 7.) Despite various statements suggesting that all was well with the Mobby Project, among other things, "Sunday Group has since failed to transmit any M-Tokens to [Plaintiff] as promised." (*Id.*)

Soon thereafter, in March 2018, the parties entered into a third agreement, whereby Plaintiff invested several hundred bitcoin—now valued at over $10 million USD—in Defendants' purported cryptocurrency "mining" center. (*Id.*) Defendants would use Plaintiff's investment to acquire computers for the mining center, "which would validate cryptocurrency transactions and receive cryptocurrency in return, from which [Plaintiff] would be paid his pro rata share." (*Id.*) Defendant Mitsuishi promised, among other things, that Plaintiff would receive high returns for this third capital investment. (*Id.* at 8.) To date, Plaintiff has only received two distributions from this investment, which "were less than a tenth of the value of his initial investment." (*Id.*)

The Complaint asserts 14 claims, including three Japanese-law claims. (ECF No. 1). Plaintiff first asserts tort, contract, and unjust enrichment claims in connection with the 2015 Subscription Agreement. Plaintiff raises three additional claims under Japanese civil law, all concerning the 2017 Mobby MOU. Lastly, Plaintiff brings contract, tort, and unjust enrichment claims stemming from the 2018 Mining Agreement.

### III. DISCUSSION

Defendants raise three separate arguments that, taken together, request dismissal of all 14 of Plaintiff's claims.[2] Defendants first argue that Plaintiff's Japanese-law claims should be dismissed for improper venue because the Mobby MOU (written in Japanese) contains a forum-selection clause requiring adjudication in Japan, not Nevada.[3] (ECF No. 27 at 2-4.) Second, Defendants contend that Nevada's statutes of limitations bar Plaintiff's tort, contract, and unjust enrichment claims in connection with the 2015 Subscription Agreement. (*Id.* at 4-6.) Third, Defendants alternatively argue that Plaintiff's tort claims are barred by the economic loss doctrine. (*Id.* at 6-8.) The Court addresses each argument in turn.

#### A. The Mobby MOU Forum-Selection Clause & *Forum Non Conveniens*

Defendants contend that the forum-selection clause in the Mobby MOU points to Japanese courts as the proper venue for Plaintiff's three Japanese-law claims, thus warranting dismissal. (ECF No. 27 at 2-4.)

To start, the Court will examine Defendants' forum-selection clause argument under the *forum non conveniens* doctrine. *See Atl. Marine Constr. Co., Inc. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 60 (2013) (noting in dicta that "the appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*," and that the doctrine applies in federal courts in "cases calling for a nonfederal forum," including courts abroad) (citing *Sinochem Int'l Co. Ltd. v. Malay. Int'l Shipping Co.*, 549 U.S. 422, 430 (2007)). After determining whether Plaintiff's claims fall within the scope of the forum-selection clause at issue, the Court normally

---

[2]Unlike in the parties' briefs, the Court will analyze Defendants' arguments in a way that does not track specific claim numbers.

[3]Defendants erroneously invoke Federal Rules of Civil Procedure 19(a) and 12(b)(7) to support their Motion. (ECF Nos. 27 at 1, 43 at 1.) Moreover, it is unclear whether Defendants seek to enforce the forum-selection clause through a Rule 12(b)(3) motion to dismiss or dismissal under the common-law *forum non conveniens* doctrine. As the Court further explains below, "the appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*," *Atl. Marine Constr. Co., Inc. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 60 (2013).

begins the *forum non conveniens* analysis by deciding whether the clause is valid. *See Color Switch LLC v. Fortafy Games DMCC*, 377 F. Supp. 3d 1075, 1082 (E.D. Cal. 2019); *Graham Tech. Sols., Inc. v. Thinking Pictures, Inc.*, 949 F. Supp. 1427, 1431-32 (N.D. Cal. 1997). Federal courts presume that forum-selection clauses are valid and should be honored "absent some compelling and countervailing reason." *Id.* (quoting *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1140 (9th Cir. 2004), and citing *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 12 (1972)); *see also Atl. Marine*, 571 U.S. at 66. Due to this presumption of validity, "[t]he party challenging the clause bears a 'heavy burden of proof' and must 'clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or over-reaching.'" *Murphy*, 362 F.3d at 1140 (quoting *Bremen*, 407 U.S. at 15).

In both the Motion and their reply, Defendants make no argument invoking the *forum non conveniens* doctrine. (*See generally* ECF Nos. 27, 43.) The Mobby MOU forum-selection clause would likely apply to Plaintiff's Japanese-law claims if it were valid. (ECF No. 37-1 at 3.) However, questions exist as to whether Defendants dispute the clause's validity; they simultaneously seek to enforce the clause yet "do not admit [its] validity." (ECF No. 27 at 3 n.1 ("Defendants do not admit the validity or enforceability of the Mobby M[OU] through this motion.").) Plaintiff does not dispute the validity or authenticity of the forum-selection clause; instead, he argues that Defendants "apparently dispute" the validity of the clause, thus placing the "heavy burden of proof" on Defendants to establish the clause's invalidity. (ECF No. 36 at 10.) *See also Murphy*, 362 F.3d at 1140. Because it is unclear whether Defendants dispute the clause's validity, and because Defendants fail to raise any *forum non conveniens* argument in their briefs, the Court denies the Motion as to Plaintiff's Japanese-law claims.

Even if the parties do not dispute the clause's validity, they nevertheless dispute the proper translation of the clause, which determines the proper venue for Plaintiff's Japanese-law claims. (ECF Nos. 27 at 3-4, 36 at 9-10.) Plaintiff argues that Defendants' Japanese-to-English translation of the forum-selection clause should be disregarded

because it is not only uncertified, but also inaccurate. (ECF No. 36 at 9-10.) Specifically, Plaintiff argues, Defendants mistranslate the clause to assert that "the [p]arties stipulated to venue in Japan—not Nevada"—for any claims concerning the Mobby MOU. (ECF Nos. 27 at 4, 27-1 at 4, 36 at 9.) Under Plaintiff's certified translation, the clause states that "the address of *Defendant* shall be the exclusive court of jurisdiction for first instance, depending on the lawsuit amount, for all disputes arising from or related to the [MOU]." (ECF No. 37-1 at 3 (emphasis added).) Plaintiff further requests that the Court disregard Defendants' uncertified translation or, in the alternative, deny the Motion because "the parties' two competing translations do nothing more than create a factual dispute," which "cannot be resolved as a matter of law at the pleading stage." (ECF No. 36 at 9-10.) Defendants do not contest that their translation is uncertified or inaccurate; instead, they concede that a factual dispute exists as to the proper translation of the forum-selection clause, and that such a factual dispute "is not appropriate" at this procedural stage. (ECF No. 43 at 8.)

The Court agrees with the parties that resolving this material factual dispute about the proper translation of the forum-selection clause is inappropriate at this early pleading stage. This factual dispute, alone, is another basis justifying denial of Defendants' Motion as to Plaintiff's Japanese-law claims concerning the Mobby MOU.

**B.     Defendants' Statute of Limitations Arguments**

Defendants next argue that Nevada's statutes of limitations bar Plaintiff's contract, tort, and unjust enrichment claims in connection with the parties' 2015 Subscription Agreement. (*Id.* at 4-6.) Although each type of claim is subject to a distinct statute of limitations, all three types are nevertheless subject to the discovery rule under Nevada law. *See* NRS §§ 11.190(1)(b) (six-year limitations period for contract actions), 11.190(3)(d) (three-year limitations period for various tort actions), 11.190(2)(c) (four-year limitations period for unjust enrichment claims and other actions "upon a contract, obligation or liability not founded upon an instrument in writing"); *see also Albano v. Shea Homes Ltd. P'ship*, 634 F.3d 524, 530 (9th Cir. 2011) ("A federal court sitting in diversity

applies the substantive law of the state, including the state's statute of limitations.") (citation omitted). Under the discovery rule, and for the reasons below, the Court finds that all these claims are timely and thus denies the Motion.

### 1. Legal Framework

In Nevada, limitations periods are "computed from the day the cause of action accrued." *Clark v. Robison*, 944 P.2d 788, 789 (Nev. 1997) (citation omitted). "A cause of action 'accrues' when a suit may be maintained thereon." *Id.* (citation omitted). Under Nevada law, the "discovery rule" applies to many types of actions, including those in tort and contract. "Under the discovery rule, the statutory period of limitations is tolled until the injured party discovers or reasonably should have discovered facts supporting a cause of action." *Siragusa v. Brown*, 971 P.2d 801, 806 (Nev. 1998) (citation omitted). In turn, "[d]ismissal on statute of limitations grounds is only appropriate 'when uncontroverted evidence irrefutably demonstrates plaintiff discovered or should have discovered' the facts giving rise to the cause of action." *Bemis v. Est. of Bemis*, 967 P.2d 437, 440 (Nev. 1998) (quoting *Nev. Power Co. v. Monsanto Co.*, 955 F.2d 1304, 1307 (9th Cir. 1992)).

Contract actions, subject to NRS § 11.190(1)(b), "accrue[ ] as soon as the plaintiff *knows or should know* of facts constituting a breach." *Id.* (citation omitted) (emphasis in original). NRS § 11.190(3)(d) provides that tort actions also accrue "upon the discovery by the aggrieved party of the facts constituting the fraud or mistake." NRS § 11.190(3)(d); *see also Siragusa v. Brown*, 971 P.2d at 806; *Metro. Water Dist. of S. Cal. v. State*, 665 P.2d 262, 265 (Nev. 1983) (noting in dicta that NRS § 11.190(3)(d)'s limitations period "would be tolled until the [plaintiff] knew, or had reason to know, that its rights had been violated") (citation omitted). As for unjust enrichment claims, subject to NRS § 11.190(2)(c), the Court predicts that the Nevada Supreme Court would decide the discovery rule also applies. The Nevada Supreme Court has applied the discovery rule to statutes of limitations that, like NRS § 11.190(2)(c), are silent as to when a plaintiff's claim accrues. *See Oak Grove Invs. v. Bell & Gossett Co.*, 668 P.2d 1075, 1079 (Nev.

1983), *abrogated on other grounds by Calloway v. City of Reno*, 993 P.2d 1259 (Nev. 2000) (holding that where the catch-all statute of limitations (NRS § 11.220) was silent as to the time of accrual, the discovery rule would apply just as it would in NRS § 11.190(3); noting that "to hold otherwise would transmute the statute from one of limitation into one of abolition," and that "[s]uch a result is not consonant with the legislative purpose of the statute") (quotations and citation omitted); *see also Bemis*, 967 P.2d at 440 n.1 (noting the same). For these reasons, the Court will apply the discovery rule to Plaintiff's contract, tort, and unjust enrichment claims in connection with the 2015 Subscription Agreement.

### 2. Analysis

As for Plaintiff's contract claim, Defendants have not provided "uncontroverted evidence" that Plaintiff knew or should have known of a breach of the Subscription Agreement in or around April 2015, when the parties entered the contract. *See id.* at 440. As for Defendants' alleged failure to deliver share certificates, Plaintiff asserts that the earliest possible date his contract claim would have accrued was the "Closing Date." (ECF No. 36 at 11.) Taking his allegations as true, the Subscription Agreement states that Defendants were required to deliver the share certificates to Plaintiffs "[p]romptly following the Closing Date," *i.e.*, "[t]he date on which the [s]hares are issued." (ECF No. 37-2 at 3.) The parties acknowledge that it is unclear when the "Closing Date"—the accrual date— occurred or was supposed to occur. (ECF Nos. 27 at 5, 36 at 11, 43 at 3.) But drawing all reasonable inferences in Plaintiff's favor, the Court infers at this time that the "Closing Date" (and Defendants' subsequent breach) occurred within the limitations period, *i.e.*, after August 16, 2016.[4] Because Defendants have failed to irrefutably show that Plaintiff was on notice that Defendants may have breached the Subscription Agreement, the Court will deny the Motion as to their statute of limitations defense on this claim.

Plaintiff's tort (fraud, negligent misrepresentation, breach of fiduciary duty) claims are all subject to NRS § 11.190(3)(d), to which the discovery rule applies. *See In re Amerco Derivative Litig.*, 252 P.3d 681, 703 (Nev. 2011) ("A breach of fiduciary duty is

---

[4]Plaintiff filed his Complaint on August 16, 2022. (*See* ECF No. 1)

analogous to fraud and thus, Nevada applies the three-year statute of limitation[s] set forth in NRS 11.190(3)(d).") (citation omitted); *Job's Peak Ranch Cmty. Ass'n, Inc. v. Douglas Cnty.*, 131 Nev. 1304 (2015) (applying a three-year limitations period for breach of fiduciary duty and "misrepresentation[ ]or fraud" claims) (unpublished decision); *Golden Nugget, Inc. v. Ham*, 589 P.2d 173, 175 (Nev. 1979) (recognizing the discovery rule's application to breach of fiduciary duty claims, akin to "constructive fraud," under NRS § 11.190(3)(d)) (citation omitted). As such, Defendants again do not offer "uncontroverted evidence" that Plaintiff knew or should have known around April 2015 that Defendants' actions constituted misrepresentations (intentional or negligent) and breaches of their fiduciary duties. *See Bemis*, 967 P.2d at 440. Contrary to Defendants' assertion, Plaintiff's tort claims did not accrue in or around April 2015, *i.e.*, when Defendants made the alleged misrepresentations to induce Plaintiff to enter the Subscription Agreement. Instead, these claims accrued when Plaintiff "discover[ed] or reasonably should have discovered facts supporting a cause of action." *Siragusa*, 971 P.2d at 806. Taking Plaintiff's allegations as true and drawing reasonable inferences in his favor, Plaintiff's tort claims accrued in "late 2019" or later, when it became "apparent" to Plaintiff that Defendants "ha[d] yet to produce a single viable product" "after more than five years of Sunday Group's existence." (ECF Nos. 1 at 6-7, 36 at 13.) Assuming Plaintiff knew or should have known about the facts supporting his tort claims after August 16, 2019, the Court finds that the claims are timely.

And as for Plaintiff's unjust enrichment claim, Defendants fail to provide "uncontroverted evidence" that Plaintiff knew or should have known in April 2015 that Defendants had unfairly retained the benefit of Plaintiff's $350,000 investment. *See Bemis*, 967 P.2d at 440; *see also Nev. Indus. Dev., Inc. v. Benedetti*, 741 P.2d 802, 804 n.2 (Nev. 1987) ("Unjust enrichment occurs whenever a person has and retains a benefit which in equity and good conscience belongs to another.") (citation omitted). Plaintiff's unjust enrichment claim accrued "more than five years" after Defendant Sunday Group's creation—which the Court infers occurred after August 16, 2018—when it became "entirely unclear how [Defendant] Sunday Group ha[d] utilized the Series AA capital it

raised from [Plaintiff] and others." (ECF No. 1 at 6.) Taking Plaintiff's allegations as true and drawing reasonable inferences in his favor, the Court finds that Plaintiff's unjust enrichment claim is timely and Court thus denies the Motion as to this claim.

In sum, the Court denies Defendants' Motion as to Plaintiff's tort, contract, and unjust enrichment claims stemming from the 2015 Subscription Agreement.

### C. Economic Loss Doctrine

Defendants alternatively argue that the economic loss doctrine bars all of Plaintiff's tort claims. (ECF No. 27 at 6-8.) Under this defense, Defendants seek dismissal of Plaintiff's fraud, negligent misrepresentation, and breach of fiduciary duty claims regarding both the 2015 Subscription Agreement and the 2018 Mining Agreement. (*Id.*) Defendants specifically argue that Plaintiff "seeks recovery of purely economic loss" through these claims, which "are contract claims disguised as a tort, and are based upon an alleged breach of an obligation arising from their respective arguments that are not distinct from the contracts themselves." (*Id.* at 7.) Plaintiff counters that none of his tort claims are barred under the doctrine because they stem from actions and duties distinct from contractual breaches. (ECF No. 36 at 14-16.) For the reasons discussed below, the Court rejects Defendants' argument.

"Under the economic loss doctrine, there can be no recovery in tort for 'purely economic losses.'" *Calloway v. City of Reno*, 993 P.2d 1259, 1263 (Nev. 2000), *overruled on other grounds by Olson v. Richard*, 89 P.3d 31 (Nev. 2004) (citation and quotation omitted). In Nevada, the economic loss doctrine does not bar intentional torts, but "bars unintentional tort actions when the plaintiff seeks to recover 'purely economic losses.'" *Terracon Consultants W., Inc. v. Mandalay Resort Grp.*, 206 P.3d 81, 86 (Nev. 2009); *Halcrow, Inc. v. Eighth Jud. Dist. Ct.*, 302 P.3d 1148, 1154 n.2 (Nev. 2013) ("Intentional torts are not barred by the economic loss doctrine . . . [Thus, the doctrine] does not preclude litigants from asserting claims of intentional misrepresentation.") (citing *Terracon*, 206 P.3d at 85-86); *Calloway*, 993 P.2d at 1270 ("[A] cause of action for an intentional tort is not precluded under the economic loss doctrine.") (citations omitted).

### 1. Fraud-Based Claims

The Court first finds that the economic loss doctrine does not apply to, and therefore does not bar, Plaintiff's fraud claims. Plaintiff alleges fraud in the inducement rather than fraud in the execution or promissory fraud due to Defendants' "intentionally misleading statements and omissions distinct from contractual breaches"—an intentional tort not subject to the economic loss doctrine. (ECF Nos. 1 at 10-11, 17-18, 36 at 15.) *See also Halcrow*, 302 P.3d at 1154 n.2; *Giles v. Gen. Motors Acceptance Corp.*, 494 F.3d 865, 880 (9th Cir. 2007) (finding that plaintiff's fraud-in-the-inducement claim was "not a mere contract claim cloaked in the language of tort" and thus not barred under the economic loss doctrine because the defendant "had an independent duty imposed by law not to commit fraud") (citation and quotations omitted). Indeed, even Defendants' own cited authorities support this principle. (ECF No. 27 at 6-7.) *See also Peri & Sons Farms, Inc. v. Jain Irrig., Inc.*, 933 F. Supp. 2d 1279, 1291 (D. Nev. 2013) ("As for plaintiff's fraudulent concealment claim, the court cannot conclude that the economic loss doctrine would bar this claim under Nevada law.") (citing *Calloway*, 993 P.2d at 1270); *Giles*, 494 F.3d at 879 ("But [the economic loss doctrine] does not bar recovery in tort where the defendant had a duty imposed by law rather than by contract and where the defendant's intentional breach of that duty caused purely monetary harm to the plaintiff."). Because Defendants allegedly "breached a duty imposed by law, not by contract," *Giles*, 494 F.3d at 880, Plaintiff's fraud claims are not barred to the extent they allege fraud in the inducement. Accordingly, the Court denies Defendants' Motion as to the fraud claims.

### 1. Breach of Fiduciary Duty Claim

As with Plaintiff's fraud claims, the economic loss doctrine also does not apply to Plaintiff's breach of fiduciary duty claim. Defendants' argument that Plaintiff's breach of fiduciary duty claim is merely "a contract claim cloaked as a breach of fiduciary duty" is unpersuasive. (ECF No. 43 at 7.) In his Complaint, Plaintiff alleges that Defendants Mitsuishi and Pack, as directors and officers and majority shareholders of Sunday Group, breached their fiduciary duties to Plaintiff, a minority shareholder, by failing to (1) issue

Plaintiff his share certificates, (2) give Plaintiff access to Defendants' financial statements, (3) "produce a single viable product" despite multiple capital investments, and (4) "account for the Series AA capital raised from [Plaintiff]." (ECF No. 1 at 12.) Taking Plaintiff's allegations as true, the Court also infers at this stage that Defendants intentionally breached their fiduciary duties to Plaintiff—duties that "exist irrespective of any contract." (ECF Nos. 1 at 12, 36 at 16.) *See also* NRS § 78.138(1) ("The fiduciary duties of directors and officers are to exercise their respective powers in good faith and with a view to the interests of the corporation."); *Cohen v. Mirage Resorts, Inc.*, 62 P.3d 720, 727-28 (Nev. 2003) (recognizing in dicta the fiduciary duties owed by majority shareholders to minority shareholders in the corporate merger process); *Davis v. Beling*, 278 P.3d 501, 514 (Nev. 2012) ("The economic loss doctrine does not, however, bar the recovery of purely economic losses when the defendant intentionally breaches a duty that is imposed independently of the obligations arising from contract.") (citations omitted). As such, the Court concludes that the economic loss doctrine does not apply to Plaintiff's breach of fiduciary duty claim and thus denies Defendants' Motion as to this claim.

### 2.  Negligent Misrepresentation Claims

Plaintiff's negligent misrepresentation claims are also not barred by the economic loss doctrine. While the doctrine normally "bars unintentional torts when the plaintiff seeks to recover 'purely economic losses,'" *Terracon*, 206 P.3d at 86, the Nevada Supreme Court "left open the door" for limited exceptions allowing liability for negligent misrepresentation, *Halcrow*, 302 P.3d at 1153. Specifically, liability for negligent misrepresentation may be proper "in certain categories of cases when strong countervailing considerations weigh in favor of imposing liability." *Terracon*, 206 P.3d at 86. "[N]egligent misrepresentation is a special financial harm claim for which tort recovery is permitted because without such liability the law would not exert significant financial pressures to avoid such negligence." *Id.* at 88. Such exceptions allowing recovery include cases where a plaintiff sustains economic losses resulting from "negligent misstatements about financial matters." *Halcrow*, 302 P.3d at 1153 (citation omitted).

Contrary to Defendants' assertion, Plaintiff's negligent misrepresentation claims are not merely contract claims "cloaked" as torts; instead, they stem from Defendants' alleged statements and omissions before the parties entered the 2015 and 2018 agreements, which allegedly induced Plaintiff to enter both contracts and invest in Defendants' startup efforts. (ECF No. 1 at 11, 18.) Taking Plaintiff's allegations as true and drawing all reasonable inferences in his favor, the Court infers that these claims allege that Plaintiff sustained economic losses as a result of Defendants' "negligent misstatements about financial matters." *Id.* In absence of persuasive reasoning and legal support, the Court therefore finds that the economic loss doctrine does not bar Plaintiff's negligent misrepresentation claims to the extent they involve Defendants' negligent statements about financial matters. *See, e.g.*, *Phillips v. Dignified Transition Sols.*, Case No. 2:13-cv-02237-GMN-VCF, 2014 WL 4294972, at *7 (D. Nev. Aug. 28, 2014) (declining to dismiss negligent misrepresentation claims after finding the economic loss doctrine "inapplicable" because, in pertinent part, "Defendants do not provide any legal support or persuasive reasoning as to why the negligent misrepresentation exception to the economic loss doctrine should not apply here"). Accordingly, the Court denies the Motion as to the negligent misrepresentation claims.

## IV. CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the motion before the Court.

It is therefore ordered that Defendants' motion to dismiss (ECF No. 27) is denied.

DATED THIS 10th Day of April 2023.

_____
MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE