Mark L. Smith (NV Bar #14762)
 msmith@sffirm.com
Jacob L. Fonnesbeck (NV Bar #11961)
 jfonnesbeck@sffirm.com
**SF FIRM, LLP**
6345 South Pecos Road, Suite 202
Las Vegas, NV 89120
Telephone:  (725) 666-8701
Facsimile:  (725) 666-8710

*Attorneys for Defendants*

Thomas A. Brady (UT Bar # 12454)
tab@clydesnow.com
Timothy R. Pack (UT Bar # 12193)
trp@clydesnow.com
Keith M. Woodwell (UT Bar # 7253)
kmw@clydesnow.com
**CLYDE SNOW & SESSIONS PC**
201 South Main Street, Suite 2200
Salt Lake City, UT 84111
Telephone: (801) 322-2516

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| TETSUYA NAKAMURA, an individual,<br><br>Plaintiff,<br><br>v.<br><br>SUNDAY GROUP INCORPORATED, a Delaware corporation, *et al.*,<br><br>Defendants. | Case No.: 2:22-cv-01324-MMD-EJY<br><br><br>**ANSWER AND COUNTERCLAIM** |

## ANSWER

Defendants Sunday Group Incorporated ("Sunday Group"), James Pack, Toshiki (Todd) Mitsuishi, and SGI Trust (collectively, "Defendants"), answer the Complaint as follows:

1.      Defendants deny the allegations stated in paragraph 1 of the Complaint.

2.      Regarding paragraph 2 of the Complaint, Defendants admit that Sunday Group is a legitimate and promising venture. Defendants admit that Mr. Mitsuishi and Mr. Pack are managers of Sunday Group. Defendants admit that Plaintiff invested Sunday Group. All remaining allegations are denied.

3.    Regarding paragraph 3, Defendants admit that Plaintiff purchased a certain amount of equity in Sunday Group, but deny that any untrue statements were made to Plaintiff or any other investors and deny all remaining allegations.

4.    Defendants deny the allegations stated in paragraph 4 of the Complaint.

5.    Regarding paragraph 5, Defendants deny they made any false or misleading statements to Plaintiff. Defendants did not make any material statements to Plaintiff and so are without information or knowledge as to the reasons for Plaintiff's investments. Defendants admit that Sunday Group offered an opportunity to individuals in Japan (the "Investors"), which includes Plaintiff, to invest money in exchange for a future interest in the future token Sunday Group was developing named Mobby. Defendants admit the Investors, which includes Plaintiff, paid $10,000 USD per Unit of M-Token (defined below). All other allegations are denied.

6.    Regarding paragraph 6, Defendants deny that they solicited Plaintiff regarding a mining opportunity with third-party BitClub Network ("BitClub"). Defendant SGI Trust is not affiliated with Sunday Group, the Mobby Project, or James Pack. Defendants admit that Plaintiff desired to make an investment with BitClub, that SGI Trust assisted Plaintiff in making that investment, and that no Defendant received any compensation. Defendants admit that they are now aware that BitClub may be a Ponzi scheme. All other allegations are denied.

7.    Defendants have insufficient information and knowledge to admit or deny the allegations in paragraph 7 and therefore deny.

8.    Defendants have insufficient information and knowledge to admit or deny the allegations in paragraph 8 and therefore deny.

9.    Defendants admit the allegations stated in paragraph 9 of the Complaint.

10.    Defendants admit the allegations stated in paragraph 10 of the Complaint.

11.    Regarding paragraph 11, Defendants admit that Mr. Mitsuishi is a U.S. citizen, that he is a resident of Nevada, that he is a director of Sunday Group, and that he has served as the CEO of Sunday Group. All other allegations are denied.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

12.     Regarding paragraph 12, Defendants admit that Mr. Pack is U.S. citizen, that he is a resident of Nevada, that he is a director of Sunday Group, and that he has served as the CEO of Sunday Group. All other allegations are denied.

13.     The allegations in paragraph 13 as to whether this Court has subject matter jurisdiction is a legal conclusion to which no response is required. To the extent there are any factual allegations in paragraph 13 to which a response is required, Defendants admit they are residents of Nevada, but deny the remaining allegations for lack of sufficient knowledge or information.

14.     The allegations in paragraph 14 as to whether this Court has personal jurisdiction over Defendants is a legal conclusion to which no response is required.  To the extent there are any factual allegations in paragraph 14 to which a response is required, Defendants admit that Sunday Group and SGI Trust are domiciled in Nevada and deny the remaining allegations for lack of sufficient knowledge or information.

15.     The allegations in paragraph 15 as to whether this Court has personal jurisdiction over Defendants is a legal conclusion to which no response is required.  To the extent there are any factual allegations in paragraph 15 to which a response is required, Defendants admit that Defendants Mitsuishi and Pack are residents of Nevada, but deny all remaining allegations in paragraph 15.

16.     Defendants deny the allegations stated in paragraph 16 of the Complaint.

17.     Defendants admit the allegations stated in paragraph 17 of the Complaint, but deny that the allegation is a complete description of a digital currency.

18.     Defendants admit the allegations stated in paragraph 18 of the Complaint generally describe the aspects and functions of digital currency ownership, transactions and blockchains.

19.     Defendants admit the allegations stated in paragraph 19 of the Complaint generally describe the "proof of work" protocol and how it functions.

20.     Regarding paragraph 20, Defendants admit that Mr. Mitsuishi met with Plaintiff in April of 2015 for fifteen (15) minutes and that they discussed Sunday Group and its business. All other allegations are denied.

21.     Defendants admit the allegations stated in paragraph 21 of the Complaint that Plaintiff entered into a Series AA Preferred Stock Subscription Agreement dated April 19, 2015, and the allegations as to the amount of his investments, but deny all remaining allegations in paragraph 21

22.     Regarding paragraph 22, Section 1(b) of the Subscription Agreement speaks for itself and is the best evidence of its contents, and Defendants deny any characterization of the referenced provision of the Subscription Agreement that contradicts, paraphrases or otherwise varies from the express language thereof.  Defendants deny all remaining allegations in paragraph 22.

23.     Regarding paragraph 23, Section 4 of the Subscription Agreement speaks for itself and is the best evidence of its contents, and Defendants deny any characterization of the referenced provision of the Subscription Agreement that contradicts, paraphrases or otherwise varies from the express language thereof.  Defendants deny all remaining allegations in paragraph 23.

24.     Defendants deny the allegations stated in paragraph 24 of the Complaint.

25.     Regarding paragraph 25, Defendants admit that in late 2017, Plaintiff provided money to Sunday Group in exchange for a future interest in the future cryptocurrency token named M-Token that Sunday Group was developing. Defendants also admit the allegations that generally describe the theory for the project as using blockchain concepts to allow internet users to establish and maintain their online reputation, but deny that such allegations fully describe the project or that these allegations fully or accurately represent Mr. Mitsuishi or Sunday Group's statements to Plaintiff or others. Defendants deny that Mr. Mitsuishi or Sunday Group made any false statements to Plaintiff or any other Investors, and all remaining allegations.

26.     Regarding paragraph 26, Defendants admit that Dr. Kleinrock is the Chairman of Sunday Group's Board of Advisors and admit that he is a computer science expert." Defendants

lack information and knowledge as to whether Plaintiff was impressed that Dr. Kleinrock was affiliated with Sunday Group. Defendants deny all remaining allegations in paragraph 26 of the Complaint.

27.     Regarding paragraph 27, Defendants lack information and knowledge as to whether Plaintiff signed the purported Mobby MOU. Defendants did not create, endorse, or approve of that document, and certainly did not sign it. However, Defendants admit that $10,000 USD purchased the right to receive 1 unit of Mobby aka "M-Token." Admit that Dr. Nakamura purchased the right to receive 200 M-Token units. Admit that $10,000 multiplied by 200 equals $2,000,000. All other allegations are denied.

28.     Defendants deny the allegations stated in paragraph 28 of the Complaint.

29.     Regarding paragraph 29, Defendants deny that Mr. Mitsuishi or SGI Trust solicited any investment or payments from Plaintiff related to mining or BitClub. Rather, Plaintiffs requested that Mr. Mitsuishi assist Plaintiff in making an investment with BitClub. Mr. Mitsuishi complied with the relevant agreement and received no compensation or consideration in return for his efforts. All other allegations are denied.

30.     Regarding paragraph 30, Defendants admit that Plaintiff entered into the referenced Agreement with SGI Trust. Admit that Plaintiff transferred 545.455 bitcoin and admit that this amount (less commission to Ryu Imachi approved of by Plaintiff), was transferred to BitClub. All other allegations are denied.

31.     Regarding paragraph 31, Defendants are without information or knowledge as to whether Plaintiff received any return on his investment with BitClub. Defendants deny that SGI Trust and Mr. Mitsuishi did not transfer Plaintiff's investment to BitClub and deny that they knew that BitClub was fraudulent investment scheme. All other allegations are also denied.

32.     Defendants deny the allegations stated in paragraph 32 of the Complaint.

33.     Regarding paragraph 33, Defendants are without sufficient information or knowledge as to truth of the allegations and therefore deny as to the distributions that Plaintiff alleges to have received from BitClub. All other allegations in paragraph 33 are denied.

34.     Regarding paragraph 34, Defendants admit that Plaintiff has made demand for return of the alleged investment amounts, but deny any allegations of breaches of contract or false inducements or the existence of any other obligation to return moneys to Plaintiff.  Defendants deny the remaining allegations in other allegations in paragraph 34 of the Complaint.

35.     Defendants deny the allegations stated in paragraph 35 of the Complaint.

36.     Defendants incorporate by reference their responses to the preceding allegations as though fully set herein in responding to paragraph 36.

37.     Regarding paragraph 37, Defendants admit that Mr. Mitsuishi visited Japan in April of 2015 and that Plaintiff entered into the Subscription Agreement with Sunday Group dated April 19, 2015.  Defendants deny that any false or misleading statements or omissions were made to Plaintiff, and all remaining allegations in paragraph 37.

38.     Defendants deny the allegations stated in paragraph 38 of the Complaint.

39.     Defendants deny the allegations stated in paragraph 39 of the Complaint.

40.     Regarding paragraph 40, Defendants admit that Mr. Mitsuishi visited Japan in April of 2015 and that Plaintiff entered into the Subscription Agreement with Sunday Group dated April 19, 2015. Defendants deny that any false or misleading statements or omissions were made to Plaintiff, and all remaining allegations in paragraph 40.

41.     Defendants deny the allegations stated in paragraph 41 of the Complaint.

42.     Defendants deny the allegations stated in paragraph 42 of the Complaint.

43.     Defendants deny the allegations stated in paragraph 43 of the Complaint.

44.     Regarding paragraph 44, Defendants admit that Mr. Mitsuishi visited Japan in April of 2015 and that Plaintiff entered into the Subscription Agreement with Sunday Group dated April 19, 2015. Defendants deny that any false or misleading statements or omissions were made to Plaintiff, and all remaining allegations in paragraph 44.

45.     Defendants deny the allegations stated in paragraph 45 of the Complaint.

46.     Defendants deny the allegations stated in paragraph 46 of the Complaint.

47.     Defendants deny the allegations stated in paragraph 47 of the Complaint.

48.     Regarding paragraph 48, Defendants admit that Mr. Mitsuishi visited Japan in April of 2015 and that Plaintiff entered into the Subscription Agreement with Sunday Group. Defendants deny that any false or misleading statements or omissions were made to Plaintiff, and all remaining allegations in paragraph 48.

49.     Defendants deny the allegations stated in paragraph 49 of the Complaint.

50.     Defendants deny the allegations stated in paragraph 50 of the Complaint.

51.     Defendants deny the allegations stated in paragraph 51 of the Complaint.

52.     Defendants deny the allegations stated in paragraph 52 of the Complaint.

53.     Regarding paragraph 53, Defendants admit that Mr. Mitsuishi visited Japan in April of 2015 and that Plaintiff entered into the Subscription Agreement with Sunday Group. Defendants deny that any false or misleading statements or omissions were made to Plaintiff, and all remaining allegations in paragraph 53.

54.     Regarding paragraph 54, Defendants state that the Subscription Agreement speaks for itself and is the best evidence of its contents, and Defendants deny any characterization of the Subscription Agreement that contradicts, paraphrases or otherwise varies from the express language thereof. Defendants admit that Plaintiff acquired 4,000 shares of Series AA Preferred stock of Sunday group at a price of $5 per share and that he later increased his shareholding. Admit that Plaintiff is a shareholder of Sunday Group. All other allegations are denied.

55.     Regarding paragraph 55, Defendants admit that Mr. Mitsuishi has been the CEO of Sunday Group and that now Mr. Pack is the CEO of Sunday Group. Admit that Mr. Pack has served as Sunday Group's Treasurer and Secretary. All other allegations are denied.

56.     The allegations in paragraph 56 are legal conclusions to which no response is required.  To the extent any response is required, Defendants deny the allegations in paragraph 56.

57.     Defendants deny the allegations stated in paragraph 57 of the Complaint.

58.     Defendants deny the allegations stated in paragraph 58 of the Complaint.

59.     Regarding paragraph 59, Defendants admit that Mr. Mitsuishi visited Japan in April of 2015 and that Plaintiff entered into the Subscription Agreement with Sunday Group.

Defendants deny that any false or misleading statements or omissions were made to Plaintiff, and all remaining allegations in paragraph 59.

60.     Defendants state that the Subscription Agreement speaks for itself and is the best evidence of its contents, and Defendants deny any characterization of the Subscription Agreement that contradicts, paraphrases or otherwise varies from the express language thereof. Defendants admit that Plaintiff acquired 4,000 shares of Series AA Preferred stock of Sunday group at a price of $5 per share and that he later increased his shareholding. Defendants deny the remaining allegations in paragraph 60.

61.     Regarding paragraph 61, Defendants admit that Mr. Mitsuishi has been the CEO of Sunday Group and that now Mr. Pack is the CEO of Sunday Group. Admit that Mr. Pack has served as Sunday Group's Treasurer and Secretary. All other allegations are denied.

62.     The allegations in paragraph 62 are legal conclusions to which no response is required.  To the extent any response is required, Defendants deny the allegations in paragraph 62.

63.     Defendants deny the allegations stated in paragraph 63 of the Complaint.

64.     The allegations in paragraph 64 are legal conclusions to which no response is required. To the extent any response is required, Defendants deny the allegations in paragraph 64..

65.     Regarding paragraph 65, Defendants deny any misrepresentations or omissions to Plaintiffs. Defendants admit that Sunday Group and Nakamura entered into an agreement regarding M-Tokens, but deny that the MOU is a completely accurate representation of that agreement.

66.     Defendants deny the allegations stated in paragraph 66 of the Complaint.

67.     Defendants deny the allegations stated in paragraph 67 of the Complaint.

68.     Regarding paragraph 68, Defendants admit that Plaintiff sent a letter dated February 18, 2022, but deny the letter had any legal effect or validity and deny all remaining allegations in paragraph 68.

69.     Defendants deny the allegations stated in paragraph 69 of the Complaint.

70.     The allegations in paragraph 70 are legal conclusions to which no response is required.  To the extent any response is required, Defendants deny the allegations in paragraph 70.

71.     Regarding paragraph 71, Defendants deny any misrepresentations or omissions to Plaintiffs. Defendants admit that Sunday Group and Nakamura entered into an agreement regarding M-Tokens, but deny that the MOU is a completely accurate representation of that agreement.

72.     Defendants deny the allegations stated in paragraph 72 of the Complaint.

73.     Defendants deny the allegations stated in paragraph 73 of the Complaint.

74.     Regarding paragraph 74, Defendants admit that Plaintiff sent a letter dated February 18, 2022, but deny the letter had any legal effect or validity and deny all remaining allegations in paragraph 74.

75.     Defendants deny the allegations stated in paragraph 75 of the Complaint.

76.     Regarding paragraph 76, Defendants deny any misrepresentations or omissions to Plaintiffs. Defendants admit that Sunday Group and Nakamura entered into an agreement regarding M-Tokens, but deny that the MOU is a completely accurate representation of that agreement.

77.     The allegations in paragraph 77 are legal conclusions to which no response is required.  To the extent any response is required, Defendants deny the allegations in paragraph 77.

78.     Defendants deny the allegations stated in paragraph 78 of the Complaint.

79.     Defendants deny the allegations stated in paragraph 79 of the Complaint.

80.     Defendants deny the allegations stated in paragraph 80 of the Complaint.

81.     Regarding paragraph 81, Defendants deny any false or misleading statements were made to Plaintiff. Admit that SGI  Trust entered into the Mining Agreement. All other allegations are denied.

82.     Defendants deny the allegations stated in paragraph 82 of the Complaint.

83.     Defendants deny the allegations stated in paragraph 83 of the Complaint.

84.     Regarding paragraph 84, Defendants deny any false or misleading statements were made to Plaintiff. Admit that SGI entered into the Mining Agreement. All other allegations are denied.

85.     Defendants deny the allegations stated in paragraph 85 of the Complaint.

86.     Defendants deny the allegations stated in paragraph 86 of the Complaint.

87.     Defendants deny the allegations stated in paragraph 87 of the Complaint.

88.     Regarding paragraph 88, Defendants deny any false or misleading statements were made to Plaintiff. Admit that SGI entered into the Mining Agreement. All other allegations are denied.

89.     Defendants deny the allegations stated in paragraph 89 of the Complaint.

90.     Defendants deny the allegations stated in paragraph 90 of the Complaint.

91.     Defendants deny the allegations stated in paragraph 91 of the Complaint.

92.     Regarding paragraph 92, Defendants deny any false or misleading statements were made to Plaintiff. Admit that SGI entered into the Mining Agreement. All other allegations are denied.

93.     Defendants deny the allegations stated in paragraph 93 of the Complaint.

94.     Defendants deny the allegations stated in paragraph 94 of the Complaint.

95.     Defendants deny the allegations stated in paragraph 95 of the Complaint.

96.     Defendants deny the allegations stated in paragraph 96 of the Complaint.

97.     Regarding paragraph 97, Defendants deny any false or misleading statements were made to Plaintiff. Admit that SGI signed the Mining Agreement. All other allegations are denied.

98.     Regarding Paragraph 98, Defendants admit that Plaintiff transferred 545.55 bitcoin to SGI, but state that the Mining Agreement speaks for itself and is the best evidence of its contents, and Defendants deny any characterization of the Mining Agreement that contradicts, paraphrases or otherwise varies from the express language thereof.

99.     The allegations in paragraph 99 contain legal conclusions to which no response is required. To the extent any response is required, Defendants deny the allegations in paragraph 99.

100.   Defendants deny the allegations stated in paragraph 100 of the Complaint.

101.   All allegations not specifically admitted herein are denied.

## AFFIRMATIVE DEFENSES

1.   Plaintiff has failed to state a claim against Defendants upon which relief can be granted.

2.   Plaintiff's claims against Defendants are barred, in whole or in part, because the applicable statutes of limitation have expired, including, but not limited to, NRS § 11.190(1)(b), 2(c), 3(d), 3(e), 11.380, and NRS § 90.670.

3.   Plaintiff's claims against Defendants are barred, in whole or in part, because certain claims are derivative in nature and Plaintiff failed to comply with Fed. R. Civ. P. 23.1, and/or such other legal requirements  that exist for maintaining a derivative claim or action.

4.   Plaintiff's claims against Defendants are barred, in whole or in part, by Plaintiff's failure to mitigate damages.

5.   Plaintiff's claims against Defendants are barred, in whole or in part, by the doctrines of waiver, release, estoppel and/or laches.

6.   Plaintiff's claims against Defendants are barred, in whole or in part, by the doctrine of unclean hands and/or in pari delicto.

7.   Plaintiff's claims against Defendants fail, in whole or in part, for failure to join one or more indispensable parties.

8.   Plaintiff's fraud claims against Defendants are barred, in whole or in part, by the failure to plead such claims with particularity.

9.   Plaintiff's breach of contract claims against Defendants are barred, in whole or in part, for Plaintiff's failure to perform his obligations.

10.   Plaintiff's breach of contract claims against Defendants are barred, in whole or in part, by lack of consideration.

11.   Plaintiff's breach of contract claims against Defendants are barred, in whole or in part, by his prior breaches of contract.

12.     Plaintiff's tort claims are barred, in whole or in part, by the economic loss rule.

13.     Plaintiff's equitable claims, including but not limited to his claims for unjust enrichment, are barred in whole or in part to the extent a valid contract exists, and/or for failure to exhaust legal remedies.

14.     Plaintiff's claims are barred, by whole or in part, because Defendants' actions were not the proximate cause of any injuries to Plaintiff, and/or by the existence of any intervening or superseding causes.

15.     Plaintiff's claims and/or any recovery thereon are barred or reduced, in whole or in part, to the extent he has received payment from any collateral source.

16.     Plaintiff's common law claims are barred, in whole or in part, to the extent they are preempted by statute.

17.     Defendants reserve the right to assert additional affirmative defenses as discovery continues in this matter.

## COUNTERCLAIM

1.     Sunday Group and Toshiki (Todd) Mitsuishi hereby counterclaim against Tetsuya Nakamura as follows:

## PARTIES, JURISDICTION, AND VENUE

2.     Sunday Group is Nevada corporation with its principal place of business in Nevada.

3.     Mr. Mitsuishi is a resident of Nevada.

4.     Counterclaim Defendants Tetsuya Nakamura ("Nakamura") is a citizen of Japan.

5.     This Court has original subject matter jurisdiction over the action pursuant to 28 U.S.C. § 1332(a)(2), as there is complete diversity between Dr. Nakamura and Defendants. The matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of Nevada and a citizen or subject of a foreign state.

6.     Further this Court has supplemental jurisdiction under 28 U.S.C. §1367 because the claims below form part of the same case and controversy stated in Plaintiff's Complaint.

7.      Venue for this action lies in the District of Nevada pursuant to 28 U.S.C. §§ 1391(b)(2) or (b)(3). A substantial part of the events giving rise to Dr. Nakamura's claims occurred in this district as contemplated by § 1391(b)(2). Alternatively, venue in this district is appropriate because Defendants are subject to personal jurisdiction in this district as contemplated by § 1391(b)(3).

### GENERAL ALLEGATIONS

### Sunday Group and its Mobby Project

8.      A part of Sunday Group's operations is to develop and complete the Mobby Project.

9.      The Mobby Project aims to develop a layer-one blockchain system and its representative digital asset token (known as Mobby) based on academic peer-reviewed research by the Mobby Project team which includes world renowned and award-winning professors and specialists in the fields of computer science, mathematics, artificial intelligence, and cryptography. The Mobby Project's goal is to leverage (globally formed) beliefs about reputation, in an automated manner, by use of novel AI mechanisms, to deliver theoretical and practical improvements in scalability and throughput, while staying dedicated to the Project's core principles: security, transparency, fairness, and simplicity.

10.     The Mobby Project offered the right to acquire a future interest in its future token named Mobby ("M-Token"). Individuals who purchased M-Tokens are referred to herein as the "Token Investors".

11.     Sunday Group has put in place a Board of Advisors. The Chairman of the Board of Advisors is Dr. Leonard Kleinrock of the University of California, Los Angeles.

### Nakamura and Tsuneyasu Takeda

12.     On information and belief, Nakamura, two gentlemen named Tsuneyasu Takeda ("Takeda") and Ryu Imachi ("Imachi"), were owners of a software company entity named UPUB Co., Ltd.

13.     On information and belief, Imachi is an owner of a project/entity named Sundale.

14.     On information and belief, Nakamura has made investments in a crypto-currency project (xcoin/xcoinwallet) owned and/or operated by Takeda. At one point, Takeda hired Mr. Mitsuishi to provide consulting services for this crypto-currency project.

15.     Up until March of 2021, Takeda and Mr. Mitsuishi have always enjoyed a cordial and respectful relationship. In fact, Mr. Mitsuishi considered Takeda a friend.

**Nakamura Invests in the Mobby Project**

16.     To raise capital for the Mobby Project, Sunday Group worked with Imachi and his entity Sundale to contact potential investors.

17.     Nakamura is an experienced businessman. On information and belief, his net worth in is the equivalent of millions, and perhaps billions of United States dollars.

18.     Having previously invested in Sunday Group, Nakamura decided to invest in the Mobby Project in 2017.

19.     Mr. Mitsuishi made clear to Nakamura, and any other investors he spoke with, that the development of the Project is very technically complex and that there was no guarantee of a return on the investment.

20.     Mr. Mitsuishi explained to Nakamura, and any other Token Investors he spoke with, that, like all investments, the Mobby Project was an investment that was not without risk.

21.     Mr. Mitsuishi made clear to Nakamura and other Token Investors that they were purchasing the right to receive M-Tokens when Sunday Group have completed developing the Mobby Project.

22.     Mr. Mitsuishi made clear to Nakamura and other Token Investors that 1 Unit of M-Tokens was valued at $10,000 USD and that an investor could acquire 1 Unit of M-Tokens for $10,000 USD.

23.     Nakamura thereafter purchased 200 Units of M-Tokens for $10,000 each and a total price of $2 million USD (the "Mobby Payment").

24.     Due to changes in the blockchain and related industries and the Covid 19 pandemic, development of the Mobby Project was delayed.

**STIPULATION AND ORDER EXTENDING TIME**

25.     Nevertheless, Sunday Group has been diligently working on and progressing the Mobby Project.

26.     Sunday Group has kept its investors, as well as the Token Investors, including Nakamura, reasonably informed of the Mobby Project's status and progress through frequent updates in both English and its translation in Japanese.

27.     Sunday Group has a "customer support" team that responds to questions or concerns from Token Investors. Nakamura has never contacted Sunday Group's customer support team.

28.     Sunday Group has every intention of completing the Mobby Project and delivering M-Tokens to Nakamura, and others, at a time judged best by Sunday Group's officers and its Board of Advisors.

### Nakamura Campaign to Extort Sunday Group and Mr. Mitsuishi

29.     Beginning in March of 2021, Nakamura and Takeda begin a campaign of harassment and extortion against Sunday Group and Mr. Mitsuishi for the purpose of harming the Sunday Group, Mr. Mitsuishi, and the Mobby Project in order to try to force a return of Nakamura's Mobby Payment.

30.     Given Mr. Mitsuishi and Takeda's prior friendly relationship, on information and belief, Nakamura forced and/or coerced Takeda into participating in Nakamura's extortion campaign.

31.     On or about March 4, 2021, Nakamura emailed the Chairman of Sunday Group's Board of Advisors, Dr. Leonard Kleinrock, making false claims about Sunday Group, Mr. Mitsuishi, and the Mobby Project, including false claims of money laundering and failing to comply with SEC regulations.

32.     Nakamura even suggested to Dr. Kleinrock that Sunday Group has defrauded him.

33.     Nakamura requested that Dr. Kleinrock not inform Mr. Mitsuishi of his March 4, 2021 email.

34.     Nakamura knew that Dr. Kleinrock was important to the economic success and credibility of Sunday Group and the Mobby Project.

35.     Nakamura sent and/or authorized the sending of the March 4, 2021 email in an effort to interfere with Sunday Group's economic relationship with Dr. Kleinrock.

36.     As a result of Nakamura's March 4, 2021 email, Sunday Group has ~~been~~ suffered damage to its goodwill and reputation, and has been forced to incur legal expenses and costs with a public relations firm in order to repair the harm caused and protect the reputation of the Mobby Project and Dr. Kleinrock.

37.     On August 3, 2021, Nakamura and Takeda send an email to Mr. Mitsuishi. Nakamura claimed he is representing the Token Investors. Nakamura stated that if he does not receive a refund of his Mobby Payment that he will contact regulators regarding Sunday Group. Nakamura also demanded a return of his Series AA investment in Sunday Group in the amount of $1,235,000, despite the fact that he had only invested $340,000. Nakamura included a photo of himself and Takeda in the August 3, 2021 email.

38.     On August 5, 2021, Nakamura and Takeda sent another email to Mr. Mitsuishi wherein Nakamura claimed he has contacted the SEC.

39.     On August 6, 2021, Nakamura and Takeda sent an email to Mr. Mitsuishi and include a photo and video of Nakamura and Takeda to confirm their identities to Mr. Mitsuishi. In that email, Nakamura demanded that Sunday Group pay over $10 million USD within twenty-four (24) hours or else he may contact regulators and Dr. Kleinrock's employer, UCLA, regarding Sunday Group.

40.     On August 6, 2021, Mr. Mitsuishi responded that Sunday Group will consider offering, to all purchasers of M-Tokens, a buy-back of their right to acquire M-Tokens.

**Nakamura Threatens Mr. Mitsuishi and Dr. Kleinrock**

41.     On August 8, 2021, Nakamura and Takeda emailed Mr. Mitsuishi and refused to accept the buy back offer and again demanded that Sunday Group pay Nakamura the exorbitant sum.

42.     Nakamura closed his August 8, 2021 email with a threat to the lives of Mr. Mitsuishi and Dr. Kleinrock: "I expect that you make a prudent decision, not only for us investors, but also for lives to live hereafter of Dr. Kleinrock and your very self."

**Mr. Mitsuishi Fears for His Life**

43.     After receiving Nakamura's August 8, 2021 death threat, Mr. Mitsuishi began to fear for his life and the life of his wife.

44.     It is Mr. Mitsuishi's understanding that Nakamura and Takeda are extremely wealthy and powerful individuals, and therefore took the threat very seriously.

45.     Mr. Mitsuishi believed that he was being followed and therefore refused to leave his home for long periods of time.

46.     In short, Mr. Mitsuishi suffered severe emotional trauma and health issues as a result of Nakamura's actions.

47.     In late August 2021, Sunday Group informed the Token Investors that Mr. Mitsuishi was taking a leave of absence as Sunday Group's CEO due to issues with his health. Those issues were caused by Nakamura's conduct described above.

**The M-Token Buyback Offer**

48.     In late August 2021, Sunday Group administered a buy back program, available to all Token Investors, which included the right to sell their M-Tokens for $10,000 per Unit of M-Token - the precise amount of consideration for which they purchased the M-Tokens.

49.     While a few of the Token Investors opted to have Sunday Group buy back their M-Tokens, Nakamura declined to exercise that right.

50.     But despite Sunday Group's offer to buy back any Token Investors' M-Tokens, Nakamura nevertheless continues his threats and extortion.

**STIPULATION AND ORDER EXTENDING TIME**

51.     Among other things, on August 24, 2021, Nakamura and Takeda emailed Mr. Mitsuishi and threatened that unless Sunday Group admitted to engaging in wrongful conduct that Nakamura would file a complaint with the SEC against Mr. Mitsuishi and/or Sunday Group.

**Nakamura Files a False Complaint with the Nevada Division of Securities**

52.     When Sunday Group refused to bend to Nakamura's attempts at intimidation and extortion, Nakamura filed a complaint with the Nevada Secretary of State, Securities Division sometime between September 2021 to November 2021 (the "Securities Complaint").

53.     On information and belief, Nakamura filed the Securities Complaint on behalf of himself and on behalf of other Token Investors he claimed to represent. He did so to cause harm to Sunday Group, Mr. Mitsuishi, and the Mobby Project.

54.     On information and belief, Nakamura circulated the Securities Complaint to one or more Token Investors.

55.     In December 2021, Sunday Group is informed of Nakamura's Securities Complaint.

56.     On information and belief, some of the Token Investors Nakamura claimed to represent did not know that he had filed the Securities Complaint and did not authorize him to file the Securities Complaint on their behalf.

57.     Sunday Group is also informed that some of the Token Investors listed by Nakamura in the Securities Complaint are not acquainted with Nakamura.

58.     It is unknown how Nakamura obtained a list of the Token Investors.

59.     On information and belief, Nakamura conspired with Takeda and/or Imachi to obtain a confidential list of the Token Investors without their knowledge.

60.     On information and belief, the Securities Complaint contains false and misleading statements regarding Sunday Group and its principals.

61.     The listing of certain Token Investors in the Securities Complaint, without their permission or knowledge, has caused Sunday Group substantial harm to, *inter alia,* its goodwill

and reputation, as well as its ability to attract additional investors or other opportunities to raise capital, the full scope and extent of which is presently unknown.

## FIRST CAUSE OF ACTION
### (Intentional Interference with Contractual Relations - Sunday Group Against Nakamura)

62.     Sunday Group and Mr. Mitsuishi incorporate by reference the previous allegations stated herein.

63.     Sunday Group had valid and existing contracts with certain Token Investors and Nakamura had actual knowledge of such contracts.

64.     Nakamura, through himself and his agents, intended to disrupt the contracts by making false and misleading claims regarding Sunday Group and its principals, and by making threats against the life of Sunday Group's then CEO – Mr. Mitsuishi.

65.     As a result of Nakamura's conduct, Sunday Group was forced to offer to buy back the Token Investors' M-Tokens.

66.     Some of the Token Investors elected to have Sunday Group buy back their M-Tokens, which required Sunday Group to pay certain sums of money to said Token Investors they had collected for the purposes of the Project.  The money paid to Token Investors constitutes damages to Sunday Group.

67.     Further, Nakamura's wrongful actions alleged herein have caused Sunday Group to incur a substantial amount of legal fees, public relations related costs, and internal time and effort to deal with and contain the disruption Nakamura has caused to the contractual relationships between Sunday Group and its Token Investors.

68.     Accordingly, Nakamura's actions have caused Sunday Group to suffer special and general damages in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
### (Intentional Infliction of Emotional Distress – Mr. Mitsuishi Against Nakamura)

69.     Sunday Group and Mr. Mitsuishi incorporate by reference the previous allegations stated herein.

70.     Nakamura's threats of extortion, intimidation, and against Mr. Mitsuishi's life described above constitute extreme and outrageous conduct.

71.     Mr. Mitsuishi suffered severe and extreme emotional distress as alleged herein.

72.     Nakamura intended to cause Mr. Mitsuishi severe or extreme emotional distress or acted with reckless disregard for causing Mr. Mitsuishi severe or extreme emotional distress.

73.     Nakamura's wrongful conduct was the actual and proximate cause of Mr. Mitsuishi's severe and extreme emotional distress.

74.     As a result, Mr. Mitsuishi has suffered special and general damages in an amount to be determined a trial, but no less than $10,000,000 USD.

### THIRD CAUSE OF ACTION
### (Abuse of Process – Sunday Group and Mr. Mitsuishi Against Nakamura)

75.     Sunday Group and Mr. Mitsuishi incorporate by reference the previous allegations stated herein.

76.     Nakamura filed claims and made allegations against Sunday Group and Mr. Mitsuishi through both the Securities Complaint and in this matter not to resolve an actual and proper legal dispute, but for the ulterior purposes of: (1) intimidating and threatening Sunday Group and Mr. Mitsuishi into paying Nakamura exorbitant sums of money; and (2) to harm the success of the Mobby Project.

77.     Nakamura's filing of the Securities Complaint and the Complaint in this matter is just another act, in a series of willful acts alleged herein, designed to intimate, harass, and extort Sunday Group and its principals.

78.     Among other things, Nakamura's willful acts include, but are not limited, misrepresenting that he represents Token Investors, making false claims representations to Token Investors with the purpose of compelling Sunday Group to make extortion payments to Nakamura, and making threats of violence against Mr. Mitsuishi and Dr. Kleinrock.

79.     As a result, Sunday Group and Mr. Mitsuishi have suffered special and general damages, including emotional distress damages, in an amount to be determined a trial, but no less than $15,000,000 USD.

## FOURTH CAUSE OF ACTION
### (Civil Conspiracy – Sunday Group and Mr. Mitsuishi Against Nakamura)

80.     Sunday Group and Mr. Mitsuishi incorporate by reference the previous allegations stated herein.

81.     Nakamura, together with Takeda and possibly Imachi, conspired together and had a meeting of the minds to accomplish the torts alleged herein as the First, Second, and Third Causes of Action.

82.     Nakamura and his co-conspirators undertook the concerted actions alleged herein and intended to commit the torts alleged herein, and intended to cause the harm and damages alleged above.

83.     As a result, Sunday Group and Mr. Mitsuishi have suffered special and general damages, including emotional distress damages, in an amount to be determined a trial, but no less than $15,000,000 USD.

## PRAYER FOR RELIEF

WHEREFORE, Sunday Group and Mr. Mitsuishi pray for the following relief:

1.     That the relief prayed for in Nakamura's Complaint be dismissed with prejudice and that Nakamura taken nothing thereunder.

2.     That the Court award damages as alleged and prayed for in this Counterclaim, including compensatory, special, general, exemplary, punitive, all other damages available at law and equity.

3.     That Defendants be awarded their reasonable attorney's fees and costs where allowed by law.

4.     For any other relief deemed just and equitable by the Court.

Defendants hereby rely on Plaintiff's jury demand.

1

DATED: May 8, 2023                              **CLYDE SNOW & SESSIONS, P.C.**

2

By: */s/Timothy R. Pack*

3
                                                Timothy R. Pack (UT Bar # 12193)

4
                                                Attorneys for Defendants
                                                SUNDAY GROUP INCORPORATED,
5                                               SGI TRUST, TOSHIKI (TODD) MITSUISHI
                                                AND JAMES PACK

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28