1  FELIX S. LEE (CSB No. 197084)
   flee@fenwick.com
2  CHRISTOPHER J. STESKAL (CSB No. 212297)
   csteskal@fenwick.com
3  CASEY T. O'NEILL (CSB No. 264406)
   coneill@fenwick.com
4  CLAIRE MENA (CSB No. 339324)
   cmena@fenwick.com
5  FENWICK & WEST LLP
   Silicon Valley Center
6  801 California Street
   Mountain View, CA  94041
7  Telephone:     650.988.8500
   Facsimile:      650.938.5200
8
   JOHN D. TENNERT III (Nevada Bar No. 11728)
9  jtennert@fennemorelaw.com
   WADE BEAVERS (Nevada Bar No. 13451)
10 wbeavers@fennemorelaw.com
   FENNEMORE CRAIG, P.C.
11 7800 Rancharrah Parkway
   Reno, NV 89511
12 Telephone: 775.788.2212
   Facsimile: 775.786.1172
13
   Attorneys for Plaintiff and Counterdefendant
14 TETSUYA NAKAMURA

15                    UNITED STATES DISTRICT COURT

16                         DISTRICT OF NEVADA

17 TETSUYA NAKAMURA,                        Case No.: 2:22-cv-01324-MMD-EJY

18            Plaintiff,                      PLAINTIFF AND
                                             COUNTERDEFENDANT TETSUYA
19       v.                                  NAKAMURA'S MOTION TO
                                             DISMISS COUNTERCLAIMS
20 SUNDAY GROUP INCORPORATED, et al.,

21            Defendants.

22
   SUNDAY GROUP INCORPORATED AND
23 TOSHIKI (TODD) MITSUISHI

24            Counterclaimants,

25       v.

26 TETSUYA NAKAMURA,

27            Counterdefendant.

28

FENWICK & WEST LLP
ATTORNEYS AT LAW

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION .............................................................................................................. 1

II.     STATEMENT OF FACTS ................................................................................................ 2

    A.      Initial Equity Investment in Sunday Group ........................................................ 2

    B.      The "Mobby" Cryptocurrency Investment........................................................... 2

    C.      Harassment Allegations and Counterclaims ........................................................ 3

III.    STANDARD OF REVIEW ............................................................................................... 4

IV.     ARGUMENT ..................................................................................................................... 5

    A.      Defendants Fail To State A Claim For Abuse Of Process Against Dr. Nakamura ........................................................................................................... 5

        1.      Defendants fail to allege that Dr. Nakamura intended to engage in a willful act to abuse the legal process……………………………………………..5

    B.      Defendants Fail To State A Claim For Intentional Interference With Contractual Relations .......................................................................................... 8

        1.      Defendants cannot allege that Dr. Nakamura intended to disrupt any contractual relationship………………………………………………………9

    C.      Defendants Fail To State A Claim For Conspiracy Against Dr. Nakamura ........ 10

V.      CONCLUSION ................................................................................................................. 13

FENWICK & WEST LLP
ATTORNEYS AT LAW

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................................... 4

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ............................................................................................... 4

*Blanford v. SunTrust Mortgage, Inc.*,
    2012 WL 4613023 (D. Nev. Oct. 1, 2012) .................................................... 8, 9, 10

*Consol. Generator-Nevada, Inc. v. Cummins Engine Co.*,
    971 P.2d 1251 (Nev. 1998) ................................................................................... 11

*Cooper v. Pickett*,
    137 F.3d 616 (9th Cir. 1997) ..................................................................... 7, 9, 10, 11

*Hampton v. Nustar Mgmt. Fin. Grp.*,
    2007 WL 119146 (D. Nev. Jan. 10, 2007) ........................................................... 5, 6

*Honghui Deng v. Nevada ex rel. Board of Regents for Nevada System of Higher Education*,
    2020 WL 1470866 (D. Nev. Mar. 25, 2020) ....................................................... 11

*Hussein v. Frederick*,
    2007 WL 9658420 (D. Nev. Apr. 3, 2007), *aff'd*, 436 F. App'x 831 (9th Cir. 2011) ..................................................................................................................... 8

*InjuryLoans.com, LLC v. Buenrostro*,
    529 F. Supp. 3d 1178 (D. Nev. 2021) .................................................................... 6

*J.J. Indus., LLC v. Bennett*,
    71 P.3d 1264 (Nev. 2003) .............................................................................. 8, 9, 10

*Jafbros, Inc. v. Geico Indem. Co.*,
    127 Nev. 1148 (2011) ....................................................................................... 9, 10

*LaMantia v. Redisi*,
    38 P.3d 877 (Nev. 2002) ..................................................................................... 5, 7

*Land Baron Invs., Inc. v. Bonnie Springs Family LP*,
    356 P.3d 511 (Nev. 2015) .................................................................................... 6, 7

*Local Ad Link, Inc. v. AdzZoo, LLC*,
    2009 WL 10694069 (D. Nev. Dec. 15, 2009) ...................................................... 11

FENWICK & WEST LLP
ATTORNEYS AT LAW

*M & R Inv. Co. v. Goldsberry*,
  707 P.2d 1143 (Nev. 1985) ............................................................................ 9

*Mazzeo v. Gibbons*,
  2010 WL 11629641 (D. Nev. Mar. 19, 2010) .............................................. 5

*McCart-Pollak v. On Demand Direct Response LLC*,
  2022 WL 6200115 (D. Nev. Oct. 6, 2022) ................................................ 7, 8

*Mirch v. Clifton*,
  131 Nev. 1322 (2015) .................................................................................... 5

*Nat'l Right to Life Pol. Action Comm. v. Friends of Bryan*,
  741 F. Supp. 807 (D. Nev. 1990) ................................................................. 8

*Neubronner v. Milken*,
  6 F. 3d 666 (9th Cir. 1993) ........................................................................... 7

*Operation: Heroes, Ltd. v. Procter & Gamble Prods., Inc.*,
  2015 WL 5768534 (D. Nev. Sept. 29, 2015) .......................................... 9, 10

*Peterson v. Sheriff, Clark County*,
  598 P.2d 623 (Nev. 1979) ........................................................................... 11

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*,
  806 F.2d 1393 (9th Cir. 1986) ...................................................................... 5

*Starr v. Baca*,
  652 F.3d 1202 (9th Cir. 2011) ...................................................................... 4

*Sutherland v. Gross*,
  772 P.2d 1287 (Nev. 1989) ........................................................................... 8

*Syufy Enters. V. Nat'l Gen. Theatres, Inc.*,
  575 F.2d 233 (9th Cir. 1978) ...................................................................... 12

*Tai-Si Kim v. Kearney*,
  2010 WL 3433130 (D. Nev. Aug. 30, 2010) .......................................... 12, 13

*Vess. v. Ciba-Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003) ................................................................... 4, 5

*Wheeler v. Blue Cross/Blue Shield of Wyoming*,
  1986 WL 15382 (D. Nev. Oct. 30, 1986) ................................................... 12

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 8(a) ............................................................ 5

Federal Rule of Civil Procedure 9(b) ............................................... 2, 4, 5, 7

FENWICK & WEST LLP
ATTORNEYS AT LAW

Federal Rule of Civil Procedure 12(b)(6) .................................................................... 1, 4

FENWICK & WEST LLP
ATTORNEYS AT LAW

Fenwick & West LLP
Attorneys at Law

1

<u>**NOTICE OF MOTION AND MOTION TO DISMISS**</u>

2      Dr. Tetsuya Nakamura, a plaintiff and counterdefendant in this action, by and through his

3 undersigned counsel, and pursuant to Federal Rule of Civil Procedure 12(b)(6), hereby moves to

4 dismiss three of the four counterclaims brought against him by Defendants Sunday Group Inc.

5 ("Sunday Group") and Toshiki (Todd) Mitsuishi (together with James Pack and SGI Trust, the

6 "Defendants").  Specifically, Dr. Nakamura moves to dismiss the counterclaims for intentional

7 interference with contractual relations, abuse of process, and civil conspiracy.  This motion is

8 supported by the following Memorandum of Points and Authorities, the pleadings and papers on

9 file, any argument of counsel, and such other matters as are properly before the Court.

10 <u>**NOTICE OF MOTION AND MOTION TO DISMISS**</u>

11 **I.**     **INTRODUCTION**

12      This action involves a blockchain technology startup known as Sunday Group.  The

13 startup solicited investments with a sales pitch that promised steep returns and touted the creation

14 of a revolutionary cryptocurrency.

15      Plaintiff Dr. Tetsuya Nakamura (and others) invested assets worth millions of dollars into

16 Sunday Group and related projects and received nothing in return.  Defendants have not made

17 good on their promises or even honored basic obligations to shareholders – share certificates have

18 not been issued; required financial disclosures have not been provided; the "Mobby"

19 cryptocurrency never materialized; and the professor supposedly key to the Mobby project has

20 disclaimed involvement.  And a separate cryptocurrency mining project in which investments

21 were solicited from investors by SGI Trust – turned out to be a Ponzi scheme being prosecuted by

22 the Department of Justice.

23      Dr. Nakamura initiated this action on August 16, 2022.  In response to his complaint,

24 Defendants first attempted to skirt responsibility for their misdeeds by moving to dismiss.  ECF

25 Dkt. No. 27.  The Court denied that motion in its entirety.  ECF Dkt. No. 44.  Since then,

26 Defendants have attempted to muddy the waters by asserting baseless and wholly implausible

27 counterclaims against Dr. Nakamura.  In sum, they accuse Dr. Nakamura of using this action –

28 pursuant to which he seeks to vindicate his basic rights as an investor – as well as various forms

1    of correspondence, to "harass" Defendants.

2         Three of Defendants' four counterclaims – intentional interference with contractual

3    relations, abuse of process, and civil conspiracy – fail on the pleadings.  The interference claim

4    fails because Defendants have not alleged any facts demonstrating the required specific intent to

5    interfere with Mobby investor relationship, much less with the particularity required by Rule 9(b)

6    given that these claims sound in fraud.  The second claim fails because Defendants have not

7    alleged the required improper use of legal process, *i.e.*, initiating this action, even if ill-founded (it

8    is not), and thus the alleged acts cannot amount to abuse of process as a matter of law.  The same

9    holds true for Dr. Nakamura exercising his entitlement to file an investor grievance with the State

10   of Nevada.  Finally, the civil conspiracy claim fails because Defendants' own pleading

11   contradicts the notion that any conspiracy was formed, *i.e.*, it actually rebuts any averment that

12   the requisite agreement or concerted action exists to support such claim.

13   **II.    STATEMENT OF FACTS**

14       **A.    Initial Equity Investment in Sunday Group**

15       In April 2015, Defendant Mitsuishi visited Japan to solicit equity investments in Sunday

16   Group, a cryptocurrency startup.  He met with Dr. Nakamura on that trip, and based on Mr.

17   Mitsuishi's representations Dr. Nakamura purchased shares of Sunday Group preferred stock.  Dr.

18   Nakamura contends that Sunday Group subsequently failed to honor its obligations to its

19   shareholders, such as the obligation to promptly deliver Dr. Nakamura his share certificates and

20   the obligation to provide Dr. Nakamura financial disclosures.  Dr. Nakamura has asserted claims

21   such as breach of contract and fraud based on the facts surrounding his equity investment in

22   Sunday Group.

23       **B.    The "Mobby" Cryptocurrency Investment**

24       In late 2017, Sunday Group and Mr. Mitsuishi successfully solicited further capital

25   investment from Dr. Nakamura and others into a cryptocurrency project dubbed "Mobby" that

26   Sunday Group claimed to be developing.  CC ¶¶ 8-10, 16-18.[1]  The Mobby project offered its

27   _____

28   [1] Unless otherwise indicated, CC ¶ references herein refer to paragraphs in the Counterclaim
     section of Defendants' Answer and Counterclaim.  ECF No. 47 at 12 *et seq.*  Defendants'

FENWICK & WEST LLP
ATTORNEYS AT LAW

investors the right to acquire a future interest in a hypothetical M-Token, and Dr. Nakamura purchased the right to receive 200 units of M-Tokens valued at $10,000 USD each. *Id.*, ¶¶ 10, 23. Dr. Nakamura has alleged that Sunday Group representatives made materially false statements about the Mobby project, including statements regarding Professor Leonard Kleinrock's role with the project, and that Dr. Nakamura relied on those false statements when he invested in the project. *See, e.g.*, Complaint, ECF Dkt. No. ¶¶ 26, 66-67, 72, 76.

Following Dr. Nakamura's investment, changes in the blockchain and other factors allegedly delayed the Mobby project. CC ¶ 24. Sunday Group contends it nevertheless kept investors "reasonably informed" of the project's status and progress. *Id.*, ¶ 26. Defendants never issued the M-tokens to Dr. Nakamura as promised, and Dr. Nakamura brought claims against Defendants to redress that wrong—rescission of contract and breach of fiduciary duty. These claims are governed by Japanese law based on a contractual choice of law provision.[2]

### C.   Harassment Allegations and Counterclaims

According to Defendants, beginning in March 2021, Dr. Nakamura and another individual, Tsuneyasu Takeda, began a "campaign of harassment and extortion against Sunday Group and Mr. Mitsuishi for the purpose of harming the Sunday Group, Mr. Mitsuishi, and the Mobby Project in order to try to force a return of Nakamura's [investment in the project]." CC ¶ 29. Mr. Takeda was a preexisting business contact of Dr. Nakamura's who previously had a friendly relationship with Mr. Mitsuishi. *Id.*, ¶¶ 15, 30. Defendants contend that Dr. Nakamura "forced and/or coerced Takeda into participating in Nakamura's extortion campaign." *Id.*, ¶ 30.

The purported "harassment and extortion" campaign is alleged to have entailed:

- Dr. Nakamura reaching out to Dr. Kleinrock to inform him of the wrongdoing perpetrated by Defendants and their failure to comply with U.S. Securities and Exchange Commission regulations; (CC ¶¶ 31-36)
- Communications among Dr. Nakamura, Mr. Takeda, and Mr. Mitsuishi demanding repayment of Dr. Nakamura's investments in Sunday Group and the

_____

allegations are assumed to be true for purposes of this motion to dismiss only.

[2] In addition to the foregoing two investments, Dr. Nakamura, through SGI Trust and Mr. Mitsuishi, invested in a purported cryptocurrency mining center, BitClub Network ("BCN"). The U.S. Department of Justice has since prosecuted BCN as an alleged Ponzi scheme. Dr. Nakamura has brought additional tort claims against SGI Trust and Mr. Mitsuishi to recover related losses.

Fenwick & West LLP
Attorneys at Law

Mobby project, given Defendants' failure to comply with their contractual obligations and fiduciary duties; (*id.*, ¶¶ 37-39)

- Refusing to accept Sunday Group's M-Token buyback offer (at a fraction of what Dr. Nakamura's invested cryptocurrency is now worth); (*id.*, ¶¶ 41-42)

- An email from Dr. Nakamura to Mr. Mitsuishi which ended by saying "I expect that you make a prudent decision, not only for us investors, but also for lives to live hereafter of Dr. Kleinrock and your very self." This simple admonition that the parties' lives would be better off if the dispute was resolved has been purportedly (and inexplicably) construed by Mr. Mitsuishi as a "death threat." (*id.*, ¶¶ 41-42); and

- Dr. Nakamura exercising his right to file a grievance with the Securities Division of the Nevada Secretary of State (the "Securities Complaint") and allegedly circulating it to one or more other Mobby project investors. (*id.*, ¶¶ 52-55)

Defendants allege that this "harassment" campaign caused them substantial harm, including damage to Mr. Mitsuishi's emotional state and health and damage to Sunday Group's good will and reputation. CC ¶¶ 46-47, 61. On that basis, Defendants bring counterclaims against Dr. Nakamura for intentional interference with contractual relations, intentional infliction of emotional distress, abuse of process, and civil conspiracy. *Id.*, ¶ 62 *et seq.*

## III.   STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6), a complaint (here, a countercomplaint) must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This requires that a claimant plead more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* "Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The facts offered must "plausibly suggest an entitlement to relief," such that it is not unfair to require the opposing party to defend against those claims. *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). Unless a claim crosses the line from what is merely conceivable, to plausible, it must be dismissed. *Twombly*, 550 U.S. at 570.

When a claim is grounded in fraud – as Defendants are by claiming by asserting that Dr. Nakamura made "false and misleading statements" to the Nevada Division of Securities, to Mobby Token Investors, Dr. Kleinrock, and Mr. Mitsuishi (CC ¶¶ 37, 64, 78) – the complaint must meet the heightened pleading requirements of Rule 9(b) to survive dismissal. *See Vess v.*

FENWICK & WEST LLP
ATTORNEYS AT LAW

*Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003). Even when fraud is not a necessary element, but the claim includes fraudulent conduct and relies on that conduct as part of the basis of the claim, the claim is "grounded in fraud" and the "pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b)." *Id*. at 1103-04. Thus, to survive a motion to dismiss under Rule 9(b) a claimant must state with particularity "the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). The FAC fails to meet this heightened pleading standard. Further, and as explained more fully below, even if the heightened pleading standard did not apply, Defendants' claims would nonetheless fail under the Rule 8(a) plausibility standard.

## IV.  ARGUMENT

### A.  Defendants Fail To State A Claim For Abuse Of Process Against Dr. Nakamura

Defendants assert that Dr. Nakamura abused the legal process through the filing of this action and the filing of the Securities Complaint. CC ¶¶ 76-78. To establish abuse of process, Defendants must plead: (1) An ulterior purpose by the defendants other than resolving a legal dispute; and (2) a willful act in the use of the legal process that is not proper in the regular conduct of the proceeding. *LaMantia v. Redisi*, 38 P.3d 877 (Nev. 2002). Under Nevada law, this tort "hinges on the misuse of regularly issued process." *Hampton v. Nustar Mgmt. Fin. Grp.*, 2007 WL 119146, at *3 (D. Nev. Jan. 10, 2007); *Mirch v. Clifton*, 131 Nev. 1322, at *1 (2015) (dismissing abuse of process claim because appellant "allege[d] misconduct by respondents prior to the issuance of any process"). Abuse of the legal process arises when a "legal procedure has been set in motion in proper form, with probable cause, but nevertheless has been perverted to accomplish an ulterior purpose for which it was not designed." *Mazzeo v. Gibbons*, 2010 WL 11629641, at *2 (D. Nev. Mar. 19, 2010).

### 1.  Defendants fail to allege that Dr. Nakamura intended to engage in a willful act to abuse the legal process

Defendants do not, and cannot, plausibly allege any willful act by Dr. Nakamura to abuse the legal process. First, Defendants assert that Dr. Nakamura abused the legal process by the

FENWICK & WEST LLP
ATTORNEYS AT LAW

FENWICK & WEST LLP
ATTORNEYS AT LAW

filing of the complaint in this matter. CC ¶¶ 76-78. Nevada courts have consistently held, however, that the "mere filing of a complaint itself is insufficient to establish the tort of abuse of process." *Hampton*, 2007 WL 119146, at *3 (dismissing abuse of process claim upon finding that although plaintiff alleged an ulterior motive for filing the action, plaintiff failed "to allege any abusive measures taken after the filing of the complaint that would establish a willful act of process not proper in the regular conduct of the proceeding."); *see also InjuryLoans.com, LLC v. Buenrostro*, 529 F. Supp. 3d 1178, 1189-90 (D. Nev. 2021) (dismissing abuse of process claim as the allegations mainly concerned "Plaintiffs' filing of the Complaint and the allegations therein, but not procedural shenanigans taken to accomplish Plaintiffs' allegedly improper purpose after initiating this action."). Rather, abuse of process "is the misuse of process, no matter how properly obtained, for any purpose other than that which it was designed to accomplish." *InjuryLoans.com*, 529 F. Supp. 3d at 1189.

Defendants' counterclaim does not remotely state facts substantiating that the filing of this action constitutes abuse of process, most notably because it fails to allege any "abusive measures taken after the filing of the complaint." *Hampton*, 2007 WL 119146, at *3. Each action that Defendants cite – the filing of the Securities complaint (CC ¶¶ 76-78), misrepresentations regarding the representation of token investors (*id.*, ¶¶ 37, 56-61), false representations to token investors (*id.*, ¶ 31), and threats to Mr. Mitsuishi and Dr. Kleinrock (*id.*, ¶¶ 41-42) – each allegedly occurred ***prior*** to the filing of this complaint. Ultimately, the "tort requires a willful act that would not be proper in the ***regular conduct of the proceeding***" and Dr. Nakamura's filing of the complaint in this matter "does not meet this requirement." *See Land Baron Invs., Inc. v. Bonnie Springs Family LP*, 356 P.3d 511, 520 (Nev. 2015) (emphasis added) (citations and quotations omitted); *InjuryLoans.com*, 529 F. Supp. 3d at 1190.

Second, Defendants assert that Dr. Nakamura abused the legal process through the filing of the Securities Complaint with the Nevada Secretary of State for the supposed purpose of harming the Mobby project and intimidating Defendants into reimbursing Dr. Nakamura's investments. CC ¶¶ 76-78. This allegation is a complete non-starter given that the Supreme Court of Nevada has held that "abuse of process claims do not encompass actions involving

administrative agencies." *Land Baron*, 356 P.3d at 520.  A claim for abuse of process involves an abuse of the legal process and "courts are not usually involved in the conduct of administrative agencies." *Id*. (finding that the district court erred in denying the motion for directed verdict on the abuse of process counterclaim, as the "filing a citizen's complaint does not demonstrate abuse of legal process").  Ultimately, the "utilized process must be ***judicial***, as the tort protects the integrity of the ***court***." *Id*. at 519-20 (finding that the district courted erred in denying appellant's motion for a directed verdict on the abuse of process claim.) (emphasis added).

Further, because Defendants' claim is expressly premised on allegations of fraud (CC ¶ 60), they must allege with particularity the "who, what, when, where, and how" of the conduct that gave rise to this claim against Dr. Nakamura in order to avoid dismissal.  *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997).  Here, Defendants' allegations are fatally lacking in particularity, *i.e.*, the only allegation in Countercomplaint purporting to characterize what the Securities Complaint said is a single sentence claiming that on "information and belief, the Securities Complaint contains false and misleading statements regarding Sunday Group and its principals." CC ¶ 60.  The lack of any specifics demonstrating how anything Dr. Nakamura disclosed to the Secretary of State was false or misleading dooms this claim as Defendants fail to show how he acted in a manner "not proper in the regular conduct of the proceeding." *LaMantia*, 38 P.3d at 877.  Compounding the infirmities of this claim is the fact that it is plead on "information and belief," which does not pass muster under Rule 9(b) standards.  *Neubronner v. Milken*, 6 F. 3d 666, 672 (9th Cir. 1993) (allegations pleaded on information and belief do not satisfy Rule 9(b)).

Finally, to the extent that Defendants attempt to rely on other alleged "willful acts," these actions fare no better in establishing an abuse of process claim.  Defendants allege that Dr. Nakamura misrepresented that he represents token investors (CC ¶¶ 37, 56-61), made false representations to token investors (*id.*, ¶ 31), and threatened Mr. Mitsuishi and Dr. Kleinrock (*id.*, ¶¶ 41-42).  None of these allegations, however, can be construed as a "legal process" and thus any associated abuse of process allegations fails as a matter of law.  *McCart-Pollak v. On Demand Direct Response LLC*, 2022 WL 6200115, at *5 (D. Nev. Oct. 6, 2022) (dismissing abuse of

1

process claim because misrepresentations to the Court prior to and during discovery were not

2

legal processes; alleged misrepresentations is a legal conclusion); *Hussein v. Frederick*, 2007 WL

3

9658420, at *5 (D. Nev. Apr. 3, 2007), *aff'd*, 436 F. App'x 831 (9th Cir. 2011) (describing the

4

use of subpoenas as a legal process as compared to other acts such as intimidating and paying off

5

witnesses); and *McCart-Pollak*, 2022 WL 6200115, at *5 (dismissing the abuse of process claim

6

based on allegations of misrepresentations to the Court prior to and during discovery and

7

allegations of threats).

8

Thus, for all of the foregoing reasons, Defendants' abuse of the legal process claim must

9

be dismissed.

10

**B.      Defendants Fail To State A Claim For Intentional Interference With Contractual Relations**

11

12

Defendants allege that Dr. Nakamura disrupted the contractual relations between Sunday

13

Group and its Mobby investors.  CC ¶¶ 63-67.  To establish intentional interference with

14

contractual relations, a party must allege: (1) A valid and existing contract; (2) defendant's

15

knowledge of the contractual relationship; (3) intentional acts by Defendant intended or designed

16

to disrupt the contractual relationship; (4) actual disruption of the contractual relationship; and (5)

17

resulting damage to Plaintiff.  *Nat'l Right to Life Pol. Action Comm. v. Friends of Bryan*, 741 F.

18

Supp. 807, 813 (D. Nev. 1990); *Sutherland v. Gross*, 772 P.2d 1287 (Nev. 1989).  As the Nevada

19

Supreme Court explained, "[a]t the heart of an intentional interference action is whether Plaintiff

20

has proved *intentional acts by Defendant* intended or designed to disrupt Plaintiff's contractual

21

relations."  *J.J. Indus., LLC v. Bennett*, 71 P.3d 1264, 1268 (Nev. 2003) (citations and quotations

22

omitted) (emphasis in original) (reversing a portion of the judgment against respondent upon

23

finding that there was insufficient evidence to support that respondent intentionally interfered

24

with the contract.).  As such, the claimant must identify an action that is "aimed at intentionally

25

interfering" with the contract.  *Blanford v. SunTrust Mortgage, Inc*., 2012 WL 4613023, at *4 (D.

26

Nev. Oct. 1, 2012) (dismissing plaintiff's claim upon finding that plaintiff failed to "explain how

27

that unreasonable delay was specifically intended to cause the alleged buyer's to breach their

28

short sale contract as required by this cause of action.").  To do so, the claimant must establish

FENWICK & WEST LLP
ATTORNEYS AT LAW

facts to sustain the allegations; a claimant cannot simply make conclusory allegations that a party's actions are "willful, malicious, oppressive, and tortious." *See Jafbros, Inc. v. Geico Indem. Co.*, 127 Nev. 1148, 1148 (2011) (finding that the district court did not err in dismissing Jafbros' claim for intentional interference with contractual relations, as Jafbros failed to establish the required intent); *see also M & R Inv. Co. v. Goldsberry*, 707 P.2d 1143, 1144-45 (Nev. 1985) (reversing judgment for appellant upon finding that the jury verdict was not supported by substantial evidence to demonstrate an actual intent to interference with the contract).  And where Defendants' claim is expressly premised on allegations of fraud (CC ¶ 64), Defendants must allege with particularity the "who, what, when, where, and how" of the conduct that gave rise to this claim against Dr. Nakamura in order to avoid dismissal.  *Cooper*, 137 F.3d at 627.

### 1.   Defendants cannot allege that Dr. Nakamura intended to disrupt any contractual relationship

Defendants do not allege, and cannot plausibly allege, that Dr. Nakamura intended to disrupt any contract between Sunday Group and Mobby project investors.  Defendants merely allege in a conclusory fashion that Dr. Nakamura had knowledge of Sunday Group's relationship with other Mobby project investors and that Dr. Nakamura intended to disrupt those relationships through purported false statements and threats.  CC ¶¶ 63-64.

As an initial matter, "mere knowledge of the contract is insufficient to establish that the defendant intended or designed to disrupt the plaintiff's contractual relationship." *See J.J. Indus.*, 71 P.3d at 1268; *Operation: Heroes, Ltd. v. Procter & Gamble Prods., Inc.*, 2015 WL 5768534, at *3 (D. Nev. Sept. 29, 2015).  Instead, specific intent is required to hold a party liable for intentional interference with a contract.  *Operation: Heroes*, 2015 WL 5768534, at *5 (citing *J.J. Indus.*, 71 P.3d at 1268).  To establish specific intent, a claimant "must demonstrate that the defendant intended to induce the other party to breach the contract with the plaintiff." *Id.* at *3. Here, Defendants do not actually assert how Dr. Nakamura's alleged false statements "were *intended or designed* to disrupt" the contract with other Mobby project investors. *Id.* at *5 (emphasis in original); *Blanford*, 2012 WL 4613023, at *4.  Likewise, Defendants do not actually assert how Dr. Nakamura's alleged threats "were *intended or designed* to disrupt" the contract

FENWICK & WEST LLP
ATTORNEYS AT LAW

with other Mobby project investors.  *Id*.  Defendants have, at best, "identified a volitional act which may have resulted in the interference" and "this alone is not sufficient." *Operation: Heroes*, 2015 WL 5768534, at *5.

Moreover, Defendants' counterclaim is devoid of any facts to demonstrate Dr. Nakamura's motive to disrupt the contract between Mobby project investors and Sunday Group. To establish intentional interference with contractual relations, a claimant "must establish that the defendant had a motive to induce breach of the contract with the third party." *J.J. Indus.*, 71 P.3d at 1268.  Here, Defendants do not establish a cognizable motive for Dr. Nakamura to disruptive the relationship between Mobby project investors and Sunday Group.  To the contrary, if Dr. Nakamura's goal is to retrieve his own investments from Defendants, it is unclear as to why Dr. Nakamura would encourage Sunday Group to deplete its funds to pay other investors.

Even if the requisite motive for interference were adequately plead, these allegations fail for the additional reason that they are fatally lacking in particularity–failing to allege which investors the statements were made to, what the misstatements were, where the misstatements were made, etc. *Cooper*, 137 F.3d at 627.  In the absence of such well-pled facts, Defendants cannot remotely state a claim given the lack of factual support for any claim of intent, or for how the alleged false statements caused the supposed harm, *i.e.*, the repurchase of the M-Tokens. *Jafbros*, 127 Nev. at 1148.

Ultimately, conclusory allegations are insufficient to establish the requisite intent for a claim of intentional interference with contractual relations.  *See Jafbros,* 127 Nev. at 1148 (explaining that while the plaintiff "made conclusory allegations that these actions were willful, malicious, oppressive, and tortious, the factual assertions it included in the complaint [did] not sustain these conclusions.").  And here, Defendants lack well-pleaded facts to demonstrate a specific intent to disrupt any contract between Mobby investors and Sunday Group.  As such, Defendants' intentional interference with contractual relations claim must be dismissed.

## C.   Defendants Fail To State A Claim For Conspiracy Against Dr. Nakamura

Defendants' claim for civil conspiracy – which is based on the same allegations that Dr. Nakamura, along with Mr. Takeda and "possibly" Mr. Imachi made "false statements" and threats

FENWICK & WEST LLP
ATTORNEYS AT LAW

to accomplish an unlawful purpose (CC ¶¶ 81-82) – fails for similar reasons. *See supra*, Secs. IV.A.-B.

To establish civil conspiracy, a party must allege: (1) a combination of two or more persons who; (2) through some concerted action; (3) intend to accomplish an unlawful objective for the purpose of harming another; and (4) damage results from the act or acts. *See Local Ad Link, Inc. v. AdzZoo, LLC*, 2009 WL 10694069, at *7 (D. Nev. Dec. 15, 2009). Under Nevada law, a claimant must "set forth factual allegations that the [parties] agreed to accomplish some unlawful objective for the purpose of harming" the claimant. *Honghui Deng v. Nevada ex rel. Board of Regents for Nevada System of Higher Education*, 2020 WL 1470866, at *3 (D. Nev. Mar. 25, 2020) (dismissing the conspiracy claim because the plaintiff failed to "set forth factual allegations that the defendants agreed to accomplish some unlawful objective for the purpose of harming him."); *Consol. Generator-Nevada, Inc. v. Cummins Engine Co.*, 971 P.2d 1251, 1256 (Nev. 1998) (finding that the district court was current in granting both parties' motions for summary judgment on the civil conspiracy issue, as there was no evidence that the parties formed an agreement). "Mere association is insufficient to support a charge of conspiracy." *Peterson v. Sheriff, Clark County*, 598 P.2d 623, 625 (Nev. 1979) (finding that the charge of conspiracy to commit arson must be dismissed). Further, to the extent that Defendants' claim is premised on allegations of fraud (CC ¶¶ 57-60), they must allege with particularity the "who, what, when, where, and how" of the conduct that gave rise to this claim against Dr. Nakamura in order to avoid dismissal. *Cooper*, 137 F.3d at 627.

Defendants fail to allege that Dr. Nakamura entered into an agreement with Mr. Takeda or Mr. Imachi. Here, Defendants allege in a conclusory fashion that Dr. Nakamura, "together with [Mr.] Takeda and possibly [a third individual, Ryu] Imachi, conspired together and had a meeting of the minds to accomplish the torts alleged herein" . . . undertaking "concerted actions." CC ¶¶ 81-82. Defendants do not set forth ***any*** factual allegations – much less allegations with required particularity – that Dr. Nakamura, with Mr. Takeda and Mr. Imachi, "agreed to accomplish some unlawful objective for the purpose of harming" Defendants. *Honghui Deng*, 2020 WL 1470866, at *3. To the contrary, Defendants' own pleading contradicts this notion, given their allegation

FENWICK & WEST LLP
ATTORNEYS AT LAW

FENWICK & WEST LLP
ATTORNEYS AT LAW

that that "Nakamura forced and/or coerced [Mr.] Takeda into participating in Nakamura's extortion campaign." CC ¶ 30. Taking Defendants' allegations as true, Defendants fail to establish that any conspiracy was formed.

Even if such allegations of coercion were ignored, Defendants establish nothing more than parallel conduct between Dr. Nakamura, Mr. Takeda, and Mr. Imachi. Parallel conduct, however, "in and of itself, does not equate with proof of a conspiracy." *Syufy Enters. V. Nat'l Gen. Theatres, Inc.*, 575 F.2d 233, 236 (9th Cir. 1978) (finding that the fact that all film exhibitors refused to bid for films on a day/date basis merely established parallel conduct and did not establish proof of conspiracy in violation of antitrust laws); *Wheeler v. Blue Cross/Blue Shield of Wyoming*, 1986 WL 15382, at *2 (D. Nev. Oct. 30, 1986) ("something more than the mere exchange of information and parallel behavior" is required "to support an inference of conspiracy."). Defendants allege that Dr. Nakamura and Mr. Imachi obtained a list of Mobby token investors to include the names of the investors in the Securities Complaint. CC ¶¶ 57-59. With regard to Mr. Takeda, Defendants allege that Dr. Nakamura and Mr. Takeda engaged in an email campaign to harass Mr. Mitsuishi and Dr. Kleinrock. *Id.*, ¶¶ 37-39, 41-42, 61. Such allegations are insufficient. These allegations are not "placed in a context that raises a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action." *Tai-Si Kim v. Kearney*, 2010 WL 3433130, at *8 (D. Nev. Aug. 30, 2010). Absent factual allegations of an agreement, there could be "various independent business reasons" Dr. Nakamura allegedly participated in activities with Mr. Takeda or Mr. Imachi. *Syufy Enters.*, 575 F.2d at 236.

Regardless, even if these fatal legal defects are ignored, the Countercomplaint fails to allege with particularized facts several key factors: what combination of individuals agreed, when they agreed, a meeting of the minds on a specific course of action, what unlawful acts were committed and when, or that the specific actions proximately caused any of the Defendants' purported damages.

Ultimately, Defendants fail to allege facts demonstrating an agreement to form a conspiracy between Dr. Nakamura, Mr. Takeda, and Mr. Mitsuishi. Accordingly, Defendants'

abuse of the legal process claim must be dismissed. *See Tai-Si Kim*, 2010 WL 3433130, at *8 (granting defendants motion to dismiss upon finding that plaintiffs "failed to allege facts raising a reasonable expectation that discovery will uncover an agreement").

**V.      CONCLUSION**

The Court should grant Dr. Nakamura's motion to dismiss Defendants' counterclaims for intentional interference with contractual relations, abuse of process, and civil conspiracy.

Dated:   July 21, 2023                                    **FENWICK & WEST LLP**

By:   _/s/ Felix S. Lee_
Felix S. Lee

*and*

**FENNEMORE CRAIG, P.C.**

By:   _/s/ John D. Tennert III_
John D. Tennert III (Nevada Bar No. 11728)

Attorneys for Plaintiff and Counterdefendant
TETSUYA NAKAMURA