1   FELIX S. LEE (CSB No. 197084)
    flee@fenwick.com
2   CHRISTOPHER J. STESKAL (CSB No. 212297)
    csteskal@fenwick.com
3   CASEY O'NEILL (CSB No. 264406)
    coneill@fenwick.com
4   CLAIRE MENA (CSB No. 339324)
    cmena@fenwick.com
5   FENWICK & WEST LLP
    Silicon Valley Center
6   801 California Street
    Mountain View, CA 94041
7   Telephone:    650.988.8500
    Facsimile:    650.938.5200
8
    JOHN D. TENNERT III (Nevada Bar No. 11728)
9   jtennert@fennemorelaw.com
    WADE BEAVERS (Nevada Bar No. 13451)
10  wbeavers@fennemorelaw.com
    FENNEMORE CRAIG, P.C.
11  7800 Rancharrah Parkway
    Reno, NV 89511
12  Telephone: 775.788.2212
    Facsimile: 775.786.1172
13
    Attorneys for Plaintiff and Counterdefendant
14  TETSUYA NAKAMURA

15                  **UNITED STATES DISTRICT COURT**

16                        **DISTRICT OF NEVADA**

17

18   TETSUYA NAKAMURA,                      Case No.: 2:22-cv-01324-MMD-EJY

19                  Plaintiff,              PLAINTIFF AND COUNTERDEFENDANT
                                           TETSUYA NAKAMURA'S MOTION TO
20          v.                             DISMISS COUNTERCLAIMANTS'
                                           AMENDED COUNTERCLAIMS
21   SUNDAY GROUP INCORPORATED, *et al.*,

22                  Defendants.

23   SUNDAY GROUP INCORPORATED AND
     TOSHIKI (TODD) MITSUISHI
24
25                  Counterclaimants,
            v.
26
     TETSUYA NAKAMURA,
27
                    Counterdefendant.
28

FENWICK & WEST LLP
ATTORNEYS AT LAW

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION TO DISMISS ..................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ..................................................... 1

I.  INTRODUCTION ................................................................................. 1

II.  STATEMENT OF FACTS ........................................................................ 2

    A.  Initial Equity Investment in Sunday Group .......................................... 2

    B.  The "Mobby" Cryptocurrency Investment ............................................ 2

    C.  Harassment Allegations and Counterclaims ........................................ 3

III.  STANDARD OF REVIEW ...................................................................... 5

IV.  STATEMENT OF ISSUES TO BE DECIDED ...................................................... 6

V.  ARGUMENT .................................................................................. 6

    A.  The Defamation Claim Fails ....................................................... 6

        1.  The Alleged Statements Made in the Securities Complaint and to Investors Are Insufficient ................................ 7

        2.  The Alleged Statements to Dr. Kleinrock Are Insufficient ................................................................ 8

        3.  A Defamation Claim Based on the Alleged Statements Is Untimely ............................................................ 9

    B.  The Business Disparagement Claim Fails ........................................... 9

    C.  The Intentional Interference with Contractual Relations Claim Fails ................................................................ 10

    D.  The Intentional Interference with Prospective Economic Advantage Claim Fails ............................................................ 12

    E.  The Abuse of Process Claim Fails ................................................. 14

    F.  The Conspiracy Claim Fails ....................................................... 16

VI.  CONCLUSION ............................................................................... 17

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

3

**CASES**

4

*Allstate Ins. Co. v. Shah*,
  2017 WL 1228406 (D. Nev. Mar. 31, 2017) .......................................................... 6

5

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................... 5

6

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................................... 5

7

8

*Blanford v. SunTrust Mortg., Inc.*,
  2012 WL 4613023 (D. Nev. Oct. 1, 2012) .......................................................... 11

9

*Boskovich v. Nye Cnty.*,
  2022 WL 2481636 (D. Nev. July 5, 2022) ...................................................... 6, 14

10

11

*Brown v. Tromba*,
  2022 WL 206106 (D. Nev. Jan. 24, 2022) ............................................................ 9

12

*Clark Cnty. Sch. Dist. v. Virtual Educ. Software, Inc.*,
  213 P.3d 496 (Nev. 2009) ...................................................................................... 9

13

*Constantino v. McDaniel*,
  2010 WL 1279083 (D. Nev. Mar. 29, 2010) ......................................................... 9

14

15

*Cunningham-Dirks v. Nevada*,
  2013 WL 77470 (D. Nev. Jan 3, 2013) .............................................................. 7, 8

16

*Donovan v. Flamingo Palms Villas, LLC*,
  2009 WL 10693913 (D. Nev. June 23, 2009) ................................................ 11, 16

17

18

*Erie R.R. Co. v. Tompkins*,
  304 U.S. 64 (1938) ................................................................................................. 6

19

*Hampton v. Nustar Mgmt. Fin. Grp.*,
  2007 WL 119146 (D. Nev. Jan. 10, 2007) ..................................................... 14, 15

20

21

*Herman v. Venetian Casino Resort LLC*,
  498 P.3d 776 (Nev. 2021) .................................................................................... 13

22

*Hinton v. Pac. Enters.*,
  5 F.3d 391 (9th Cir. 1993) ..................................................................................... 9

23

24

*Hussein v. Frederick*,
  2007 WL 9658420 (D. Nev. Apr. 3, 2007), *aff'd*, 436 F. App'x 831 (9th Cir. 2011) .......... 16

25

*InjuryLoans.com, LLC v. Buenrostro*,
  529 F. Supp. 3d 1178 (D. Nev. 2021) ............................................................ 14, 15

26

27

*J.J. Indus., LLC v. Bennett*,
  71 P.3d 1264 (Nev. 2003) ............................................................................... 10, 11

28

FENWICK & WEST LLP
ATTORNEYS AT LAW

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW

**TABLE OF AUTHORITIES**
(Continued)

**Page(s)**

*Jafbros, Inc. v. Geico Indem. Co.*,
   373 P.3d 929 (Nev. 2011) .................................................................................................. 11

*Kraja v. Bellagio, LLC*,
   202 F. Supp. 3d 1163 (D. Nev. 2016) ........................................................................... 12, 13

*LaMantia v. Redisi*,
   38 P.3d 877 (Nev. 2002) .................................................................................................... 14

*Land Baron Invs., Inc. v. Bonnie Springs Family LP*,
   356 P.3d 511 (Nev. 2015) ................................................................................................... 15

*LKimmy, Inc. v. Bank of Am., N.A.*,
   2020 WL 13533714 (D. Nev. June 12, 2020) ...................................................................... 9

*Local Ad Link, Inc. v. AdzZoo, LLC*,
   2009 WL 10694069 (D. Nev. Dec. 15, 2009) ............................................................ 6, 8, 16

*Mazzeo v. Gibbons*,
   2010 WL 11629641 (D. Nev. Mar. 19, 2010) .................................................................... 14

*McCart-Pollak v. On Demand Direct Response LLC*,
   2022 WL 6200115 (D. Nev. Oct. 6, 2022) ......................................................................... 16

*Mirch v. Clifton*,
   131 Nev. 1322 (2015) ......................................................................................................... 15

*Motogolf.com, LLC v. Top Shelf Golf, LLC*,
   528 F. Supp. 3d 1168 (D. Nev. 2021) .................................................................................. 6

*Motschenbacher v. R.J. Reynolds Tobacco Co.*,
   498 F.2d 821 (9th Cir. 1974) ............................................................................................... 6

*Neubronner v. Milken*,
   6 F.3d 666 (9th Cir. 1993) ............................................................................................ 12, 16

*Operation: Heroes, Ltd. v. Procter & Gamble Prods., Inc.*,
   2015 WL 5768534 (D. Nev. Sept. 29, 2015) ..................................................................... 11

*Orr v. Bank of Am., NT & SA*,
   285 F.3d 764 (9th Cir. 2002) ............................................................................................. 10

*Rimini St., Inc. v. Oracle Int'l Corp.*,
   2017 WL 4227939 (D. Nev. Sept. 22, 2017) ............................................................... 10, 14

*Starr v. Baca*,
   652 F.3d 1202 (9th Cir. 2011) ............................................................................................. 5

*SVI, Inc. v. Supreme Corp.*,
   2016 WL 7190548 (D. Nev. Dec. 12, 2016) .......................................................... 10, 12, 13, 14

## TABLE OF AUTHORITIES
### (Continued)

**Page(s)**

*Sykes v. Henderson Police Dep't,*
  2023 WL 5561224 (D. Nev. Aug. 29, 2023),
  *amended and superseded,* 2023 WL 6295595 (D. Nev. Sept. 26, 2023)...............................8

*Universal Ent. Corp. v. Aruze Gaming Am., Inc.,*
  2020 WL 2840153 (D. Nev. May 30, 2020)...........................................................................6

*Vess v. Ciba-Geigy Corp. USA,*
  317 F.3d 1097 (9th Cir. 2003) ..............................................................................................5

*Vested Hous. Grp., LLC v. Principal Real Estate Invs., LLC,*
  2014 WL 129830 (D. Nev. Jan. 10, 2014),
  *aff'd,* 648 F. App'x 646 (9th Cir. 2016).................................................................5, 6, 12, 16

*Weinstein v. Meritor, Inc.,*
  2017 WL 4397947 (D. Nev. Sept. 29, 2017) .......................................................................10

*Wheeler v. Blue Cross/Blue Shield of Wyoming,*
  1986 WL 15382 (D. Nev. Oct. 30, 1986) .......................................................................16, 17

**STATUTES AND RULES**

Fed. R. Civ. P. 8(a) .....................................................................................................................2, 6

Fed. R. Civ. P. 9(b) .................................................................................................................*passim*

Fed. R. Civ. P. 12(b)(6)...................................................................................................................5

1

**NOTICE OF MOTION AND MOTION TO DISMISS**

2      Dr. Tetsuya Nakamura, the plaintiff and counterdefendant in this action, by and through

3   his undersigned counsel, and pursuant to Federal Rule of Civil Procedure 12(b)(6), hereby moves

4   to dismiss six of the seven counterclaims brought against him by Sunday Group Inc. ("Sunday

5   Group") and Toshiki (Todd) Mitsuishi (together, "Counterclaimants," and collectively with

6   James Pack and SGI Trust, "Defendants"). Specifically, Dr. Nakamura moves to dismiss the

7   counterclaims for defamation, business disparagement, intentional interference with contractual

8   relations, intentional interference with prospective economic advantage, abuse of process, and

9   civil conspiracy. This motion is supported by the following Memorandum of Points and

10  Authorities, the pleadings and papers on file, any argument of counsel, and such other matters as

11  are properly before the Court.

12

**MEMORANDUM OF POINTS AND AUTHORITIES**

13  **I.      INTRODUCTION**

14      This case concerns a startup company in the blockchain industry. The company is known

15  as Sunday Group. In an all too typical scenario, Sunday Group touted the creation of a

16  revolutionary cryptocurrency project that would generate steep returns for investors. Sunday

17  Group failed to deliver those returns. Indeed, the company failed to deliver any product

18  whatsoever and willfully disregarded basic obligations to shareholders. To this day, Sunday

19  Group has not complied with its contractual requirements, such as providing contractually

20  designated financial reports to investors.

21      Plaintiff Dr. Nakamura invested millions of dollars in Sunday Group and related projects

22  only to discover that those projects were not what Sunday Group's principals represented them to

23  be. Dr. Nakamura thus had no choice but to file this action, to exercise his rights as a shareholder

24  and recover his investments. In response, Counterclaimants first attempted to skirt responsibility

25  for their misdeeds by moving to dismiss. That motion was meritless and was denied in its

26  entirety.

27      Now, Counterclaimants attempt to muddy the waters by asserting counterclaims—seven

28  in total—against Dr. Nakamura. Three of the counterclaims were belatedly added after

FENWICK & WEST LLP
ATTORNEYS AT LAW

Dr. Nakamura moved to dismiss the first version of Counterclaimants' countercomplaint. Counterclaimants' claims allege that Dr. Nakamura deployed this action, and other correspondence, to harass Counterclaimants and unlawfully compel a return of capital.

Six of the counterclaims fail to satisfy Rule 8(a) notice pleading standards, not to mention Rule 9(b)'s heightened pleading requirements. Counterclaimants do not articulate *facts*, as opposed to bare conclusions, demonstrating actionable misstatements, deceitful conduct, or other bad acts by Dr. Nakamura. Rote assertions of harassment and ill intent do not suffice. The Court should therefore dismiss the claims of: (1) defamation; (2) business disparagement; (3) intentional interference with contractual relations; (4) intentional interference with prospective economic advantage; (5) abuse of process; and (6) civil conspiracy. That leaves only the counterclaim of intentional infliction of emotional distress, which will fail as well in due course.

## II.    STATEMENT OF FACTS

### A.    Initial Equity Investment in Sunday Group

In April 2015, Counterclaimant Todd Mitsuishi visited Japan to solicit equity investments in Sunday Group, a supposed blockchain industry startup company.[1] He met with Dr. Nakamura on that trip. Based on Mr. Mitsuishi's representations, Dr. Nakamura purchased shares of Sunday Group preferred stock. Dr. Nakamura alleges in this action that Sunday Group subsequently failed to honor obligations to shareholders, such as the obligation to promptly deliver Dr. Nakamura his share certificates and the obligation to provide Dr. Nakamura financial disclosures. Dr. Nakamura has asserted claims such as breach of contract and fraud based on the facts surrounding his equity investment in Sunday Group.

### B.    The "Mobby" Cryptocurrency Investment

In late 2017, Sunday Group and Mr. Mitsuishi successfully solicited further capital investment from Dr. Nakamura and others into a cryptocurrency project dubbed "Mobby" (the "Mobby Project") that Sunday Group claimed to be developing. ACC ¶¶ 8-10, 16-18.[2] The

---

[1] A blockchain is a decentralized digital ledger that records cryptocurrency transactions.

[2] Unless otherwise indicated, ACC ¶ references are to paragraphs in the Amended Counterclaim

FENWICK & WEST LLP
ATTORNEYS AT LAW

FENWICK & WEST LLP
ATTORNEYS AT LAW

Mobby Project offered its investors the right to acquire a future interest in a hypothetical M-Token, and Dr. Nakamura purchased the right to receive 200 units of M-Tokens valued at $10,000 USD each. *Id.* ¶¶ 10, 23. Dr. Nakamura has alleged that Sunday Group representatives made materially false statements about the Mobby Project, including statements regarding University of California, Los Angeles Professor Leonard Kleinrock's ("Dr. Kleinrock") role advising on the project, and that Dr. Nakamura relied on those false statements when he invested.

Following Dr. Nakamura's investment, unspecified "changes in the blockchain" and other factors allegedly delayed the Mobby Project. *Id.* ¶ 24. Sunday Group contends it nevertheless kept investors "reasonably informed" of the project's status and progress. *Id.* ¶ 26. Defendants never issued the M-Tokens to Dr. Nakamura as promised, and Dr. Nakamura has brought claims against Defendants to redress that wrong—rescission of contract and breach of fiduciary duty. These claims are governed by Japanese law based on a contractual choice of law provision.[3]

### C.     Harassment Allegations and Counterclaims

According to Counterclaimants' responsive pleading, beginning in March 2021, Dr. Nakamura and another individual, Tsuneyasu Takeda, began a "campaign of harassment and extortion against Sunday Group and Mr. Mitsuishi for the purpose of harming [] Sunday Group, Mr. Mitsuishi, and the Mobby Project in order to try to force a return of Nakamura's [investment in the project]." *Id.* ¶ 29. Mr. Takeda is a preexisting business contact of Dr. Nakamura's who had a historically friendly relationship with Mr. Mitsuishi. *Id.* ¶¶ 15, 30. Counterclaimants say Dr. Nakamura "forced and/or coerced Takeda into participating in [Dr.] Nakamura's extortion campaign." *Id.* ¶ 30.

---

section of Counterclaimants' Answer and Counterclaim. ECF No. 59 at 12 *et seq.* Counterclaimants' allegations are assumed to be true for purposes of this motion to dismiss only.

[3] In addition to the foregoing two investments, Dr. Nakamura, through co-defendants SGI Trust and Mr. Mitsuishi, invested in a purported cryptocurrency mining center, BitClub Network ("BCN"). The U.S. Department of Justice has since prosecuted several individuals associated with BCN. Dr. Nakamura has brought additional tort claims against SGI Trust and Mr. Mitsuishi to recover related losses.

The "campaign" allegedly entailed:

- Dr. Nakamura reaching out to Dr. Kleinrock, the supposed advisor to the Mobby Project, to inform Dr. Kleinrock of the wrongdoing perpetrated by Counterclaimants and of their failure to comply with U.S. Securities and Exchange Commission regulations (*id.* ¶¶ 31-36);

- Dr. Nakamura reaching out to Dr. Kleinrock, the supposed advisor to the Mobby Project, to inform Dr. Kleinrock of the wrongdoing perpetrated by Counterclaimants and of their failure to comply with U.S. Securities and Exchange Commission regulations (*id.* ¶¶ 31-36);

- Dr. Nakamura's refusal to accept Sunday Group's M-Token buyback offer (at a fraction of what Dr. Nakamura's invested cryptocurrency is now worth) (*id.* ¶¶ 41-42);

- An email from Dr. Nakamura to Mr. Mitsuishi which ended by saying, "I expect that you make a prudent decision, not only for us investors, but also for lives to live hereafter of Dr. Kleinrock and your very self." This simple admonition that the parties' lives would be better off if the dispute was resolved has been purportedly (and inexplicably) construed by Mr. Mitsuishi as a "death threat." (*id.* ¶¶ 42-43);

- Dr. Nakamura filing a grievance with the Securities Division of the Nevada Secretary of State (the "Securities Complaint") claiming to represent himself and other investors he supposedly did not actually represent, and allegedly circulating the Securities Complaint to one or more other Mobby Project investors (*id.* ¶¶ 52-54); and

- "False statements" Dr. Nakamura allegedly made in the Securities Complaint, directly to other Mobby Project investors, and in some (unidentified) 44-page document, to harm Sunday Group, along with attempts to persuade other investors to file complaints with government regulators (*id.* ¶¶ 63-66, 68-69).

Counterclaimants allege that Dr. Nakamura's harassment campaign caused them substantial harm, including damage to Mr. Mitsuishi's emotional state and health and damage to Sunday

Group's good will, reputation, and financial state. *Id.* ¶¶ 46-47, 68. On that basis, Counterclaimants bring claims against Dr. Nakamura for defamation, business disparagement, intentional interference with contractual relations, intentional interference with prospective economic advantage, abuse of process, intentional infliction of emotional distress, and civil conspiracy.

## III.   STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6), the allegations must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This requires that a claimant plead more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* "Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The facts offered must "plausibly suggest an entitlement to relief," such that it is not unfair to require the opposing party to defend against those claims. *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). Unless a claim crosses the line from what is merely conceivable, to plausible, it must be dismissed. *Twombly*, 550 U.S. at 570.

Additionally, Rule 9(b)'s heightened pleading requirements apply to allegations of fraudulent conduct. *Vested Hous. Grp., LLC v. Principal Real Estate Invs., LLC*, 2014 WL 129830, at *3 (D. Nev. Jan. 10, 2014), *aff'd*, 648 F. App'x 646 (9th Cir. 2016) (the Ninth Circuit has "ruled that Rule 9(b) applies to *any* state law cause of action where fraud is an essential element of the claim") (emphasis in original); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1104 (9th Cir. 2003) (because "[f]raud allegations may damage a defendant's reputation regardless of the cause of action in which they appear, [] they are therefore properly subject to Rule 9(b) in every case"). This includes scenarios where the claimant alleges both fraudulent and non-fraudulent conduct, rather than a unified course of conduct in support of the claim. *Vested Hous. Grp.*, 2014 WL 129830, at *4 (citing *Vess*, 317 F.3d at 1104). Four of the counterclaims here—intentional interference with contractual relations, intentional interference with prospective economic advantage, abuse of process, and civil conspiracy—are rooted in deceit, and therefore must be pleaded with particularity as required by Rule 9(b).

FENWICK & WEST LLP
ATTORNEYS AT LAW

Counterclaimants allege that Dr. Nakamura made "false and misleading statements" to the Nevada Division of Securities, Mobby Project investors, Dr. Kleinrock, and Mr. Mitsuishi. ACC ¶¶ 35, 37, 64.[4] Counterclaimants must detail "the who, what, when, where, and how of the misconduct charged," the "facts necessary to identify the transaction," and the falsity of the statements. *Vested Hous. Grp.*, 2014 WL 129830, at *3 (internal quotations and citations omitted).

## IV.   STATEMENT OF ISSUES TO BE DECIDED

Whether under Rule 9(b) or Rule 8(a), six counterclaims fail on the pleadings.

## V.   ARGUMENT

### A.   The Defamation Claim Fails

Defamation requires: (1) a false and defamatory statement; (2) an unprivileged publication to a third person; (3) fault, amounting to at least negligence; and (4) actual or presumed damages. *Boskovich v. Nye Cnty.*, 2022 WL 2481636, at *3 (D. Nev. July 5, 2022); *Allstate Ins. Co. v. Shah*, 2017 WL 1228406, at *3 (D. Nev. Mar. 31, 2017).[5] Even if Rule 9(b) does not apply to the defamation claim, a claimant must still plead to "whom, when, where, [and] how" the statements were made and specifics regarding falsity. *Local Ad Link, Inc. v. AdzZoo, LLC*, 2009 WL 10694069, at *11 (D. Nev. Dec. 15, 2009).

The defamation count itself claims Dr. Nakamura made "false and defamatory statements" to Mobby Project investors and in the Securities Complaint concerning Sunday Group and Mr. Mitsuishi. ACC ¶ 102. Elsewhere in their pleading, Counterclaimants allege that Dr. Nakamura made certain false statements (1) in the Securities Complaint, to Mobby Project

---

[4] *Cf. Motogolf.com, LLC v. Top Shelf Golf, LLC*, 528 F. Supp. 3d 1168, 1177 (D. Nev. 2021) (applying Rule 9(b) and granting motion to dismiss intentional interference with contractual relations claim since claim was rooted in deceit); *Universal Ent. Corp. v. Aruze Gaming Am., Inc.*, 2020 WL 2840153, at *22 (D. Nev. May 30, 2020) (applying Rule 9(b) to intentional interference with prospective economic advantage claim based upon false and misleading statements).

[5] In a diversity case like this one, "a federal court must follow the substantive law of the state in which it sits." *Motschenbacher v. R.J. Reynolds Tobacco Co.*, 498 F.2d 821, 823 (9th Cir. 1974) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)). This Court must apply Nevada law to the state tort claims.

FENWICK & WEST LLP
ATTORNEYS AT LAW

investors, and through an unidentified 44-page document (*id*. ¶ 64), and (2) in certain

communications to Dr. Kleinrock (*id*. ¶¶ 31-32, 35). As pleaded, neither set of allegations is a

viable basis for this claim.

### 1.    The Alleged Statements Made in the Securities Complaint and to Investors Are Insufficient

Counterclaimants allege that Dr. Nakamura made four different misstatements: he is said

to have falsely stated that (1) Sunday Group engaged in fraudulent conduct or acted illegally

related to the raising of capital for the Mobby Project; (2) Sunday Group or its principals

misrepresented the scope of Dr. Kleinrock's involvement in the Mobby Project; (3) Sunday

Group or its principals represented to certain token investors that the exchange-listing of

M-tokens was imminent; and (4) Sunday Group or its principals represented to certain investors

that the value of M-Tokens once listed would increase at least tenfold, and potentially as much as

several hundred to several thousand times in value. *Id.* ¶ 65.

These predicates for defamation are not viable for three reasons. ***First***, the four alleged

defamatory statements are, at most, generalities. Defamation requires something more. The claim

requires at least one discrete and material factual misstatement regarding Counterclaimants,

which they do not plead. Alleging that Dr. Nakamura called Counterclaimants fraudsters and that

they made misrepresentations on certain topics is not enough. *Cunningham-Dirks v. Nevada*,

2013 WL 77470, at *9 (D. Nev. Jan 3, 2013) (generalities like "allegations of criminal behavior

claiming he was dangerous, creating an unlawful detention" are not sufficient to state a claim for

defamation).

***Second***, Counterclaimants say "false statements were made in the Securities Complaint,

directly to [Mobby Project investors], and through a 44-page document authored by [Dr.]

Nakamura." ACC ¶ 64. They fail, however, to attribute any purported misstatement to any

medium of communication. *Id.* This, in turn, fails to put Dr. Nakamura on notice of the specific

statements claimed to be actionable defamation, when he made the statements, how he made the

statements, to whom he made the statements, or, if the statements were made to individual

FENWICK & WEST LLP
ATTORNEYS AT LAW

investors, which investors. *Local Ad Link*, 2009 WL 10694069, at *11 (a pleading must allege to "whom, when, where, [and] how" the statement was made).

**Third**, Counterclaimants do not plead sufficient detail regarding the falsity of the alleged statements. For example, they do not explain in any respect how anything Dr. Nakamura said about Dr. Kleinrock, or the imminency of the M-Token release, or the representations regarding prospective returns on M-Tokens, was false. *Id.* at *10-11 (alleged statements such as "McNulty is a criminal," "the SEC is about to shut LocalAdLink down," and "McNulty has 'lied about everything,'" do "not explicitly allege[] the falsity" of the statement). In short, the conclusory assertion that Dr. Nakamura lied on certain topics is not actionable defamation.

## 2.   The Alleged Statements to Dr. Kleinrock Are Insufficient

Likewise, Counterclaimants do not adequately allege a defamation predicate in statements Dr. Nakamura supposedly made directly to Dr. Kleinrock. Judging by the count in their pleading, which refers only to the Securities Complaint and statements to investors, Counterclaimants do not attempt to base their defamation claim on statements made directly to Dr. Kleinrock. ACC ¶ 102 (alleging statements made only in the Securities Complaint and to token investors). But if Counterclaimants argue that statements made to Dr. Kleinrock support defamation, they have not pleaded it. **First**, their pleading claims Dr. Nakamura sent an email to Dr. Kleinrock on March 4, 2021 regarding Sunday Group, Mr. Mitsuishi, and the Mobby Project. *Id.* ¶ 31. They "list generalities about the defamatory statements that were made" (*Cunningham-Dirks*, 2013 WL 77470, at *9), including (1) statements about money laundering, (2) statements about compliance with the SEC, and (3) "suggest[ions]" that Sunday Group defrauded Dr. Nakamura (ACC ¶¶ 31-32, 35). Again here, the pleading does not identify specific statements made, as opposed to generalized topics on which Dr. Nakamura spoke, which is not enough. *Cunningham-Dirks*, 2013 WL 77470, at *9. **Second**, counterclaimants do not detail how or why statements to Dr. Kleinrock were false, also fatal. *Local Ad Link, Inc*, 2009 WL 10694069, at *11. **Third**, because Counterclaimants plead that Dr. Kleinrock was "the Chairman of Sunday Group's Board of Advisors" (ACC ¶ 31), any statements made to Dr. Kleinrock would not constitute publication to a *third party* as required for a defamation claim. *See Sykes v.*

FENWICK & WEST LLP
ATTORNEYS AT LAW

*Henderson Police Dep't*, 2023 WL 5561224, at *5 (D. Nev. Aug. 29, 2023), *amended and superseded*, 2023 WL 6295595 (D. Nev. Sept. 26, 2023) (claimant must plead facts to show publication to a third party).

### 3.   A Defamation Claim Based on the Alleged Statements Is Untimely

Separately, the defamation claim is time-barred. Even assuming *arguendo* that Counterclaimants had adequately pleaded a predicate statement for defamation, the claim is constrained by a two-year statute of limitations. *Brown v. Tromba*, 2022 WL 206106, at *5 (D. Nev. Jan. 24, 2022). Counterclaimants have "the burden of alleging facts which [render the claim timely or] would give rise to any tolling of the statute." *Constantino v. McDaniel*, 2010 WL 1279083, at *1 (D. Nev. Mar. 29, 2010) (citing *Hinton v. Pac. Enters.*, 5 F.3d 391, 395 (9th Cir. 1993)). Counterclaimants have not met their burden of pleading timeliness insofar as they allege false statements in the Securities Complaint or to token investors. They do not allege any facts demonstrating the timing of those statements. The same is true for the unidentified 44-page document they mention. Additionally, the supposed March 4, 2021 email to Dr. Kleinrock is not a timely predicate for this claim. The date of that email falls outside the two-year limitations period, which would have lapsed on March 4, 2023, roughly two months before Counterclaimants' first responsive pleading and five months before they asserted defamation in their amended pleading. Untimeliness further compels dismissal of the defamation claim. *See Brown*, 2022 WL 206106, at *5 (holding that the two-year statute of limitations barred plaintiff's defamation claim).

### B.   The Business Disparagement Claim Fails

Much like defamation, business disparagement requires: (1) a false and disparaging statement; (2) the unprivileged publication by the defendant; (3) malice; and (4) special damages. *LKimmy, Inc. v. Bank of Am., N.A.*, 2020 WL 13533714, at *4 (D. Nev. June 12, 2020); *Clark Cnty. Sch. Dist. v. Virtual Educ. Software, Inc.*, 213 P.3d 496, 504 (Nev. 2009). Counterclaimants' basis for this claim is somewhat unclear, but the predicate for the claim appears to be identical to that for the defamation claim and fails for largely the same reasons. *First*, as discussed for defamation, Counterclaimants have not adequately alleged (1) a specific

FENWICK & WEST LLP
ATTORNEYS AT LAW

disparaging statement, as opposed to generalities; (2) the specific medium in which a specific statement was made; or (3) facts supporting the falsity of such a statement. Additionally, this claim too is constrained by a two-year limitations period, which is an independent basis for dismissing it. *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 781 (9th Cir. 2002) (two-year statute of limitations applies to business disparagement claims).

*Third*, actionable business disparagement requires that the disparagement *caused* special damages. *Weinstein v. Meritor, Inc.*, 2017 WL 4397947, at *5 (D. Nev. Sept. 29, 2017); *SVI, Inc. v. Supreme Corp.*, 2016 WL 7190548, at *5 (D. Nev. Dec. 12, 2016) (claimant must allege that disparaging comments are the proximate cause of the economic loss). Counterclaimants claim Dr. Nakamura's statements "caused Sunday Group to suffer general and special damages, including the money paid to buy-back [investors'] M-Tokens, harm to reputation and good will, expenses incurred to manage with the disruption to the Mobby Project, as well as harm to Sunday Group's ability to attract additional investors or other opportunities to raise capital" (ACC ¶ 119), but they do not plead a single corroborating fact to support these averments. Their allegations are as this thin and conclusory as they are scattershot. Counterclaimants do not plead any facts demonstrating a nexus between Dr. Nakamura's statements and Sunday Group's purported damages. In fact, their pleading suggests other reasons for any economic damage to Sunday Group. *See*, *e.g.*, *id.* ¶ 24 (citing "changes in the blockchain and related industries and the Covid 19 pandemic"). This belies causation. *Rimini St., Inc. v. Oracle Int'l Corp.*, 2017 WL 4227939, at *9 (D. Nev. Sept. 22, 2017) (causation is not sufficiently alleged if pleadings indicate that the alleged harm could easily have been caused by other acts). Both defamation and disparagement should be dismissed on the pleadings.

### C.   The Intentional Interference with Contractual Relations Claim Fails

Counterclaimants' intentional interference with contractual relations claim is also fatally defective. Intentional interference with contractual relations requires: (1) a valid and existing contract; (2) knowledge of the contractual relationship; (3) intentional acts intended or designed to disrupt the contractual relationship; (4) actual disruption of the contractual relationship; and (5) resulting damage. *J.J. Indus., LLC v. Bennett*, 71 P.3d 1264, 1268 (Nev. 2003). Intent is key.

FENWICK & WEST LLP
ATTORNEYS AT LAW

The claimant must identify an action that is "aimed at *intentionally* interfering" with a particular contract. *Blanford v. SunTrust Mortg., Inc.*, 2012 WL 4613023, at *4 (D. Nev. Oct. 1, 2012) (emphasis added). There must be specific intent "to induce the other party to breach the contract." *Operation: Heroes, Ltd. v. Procter & Gamble Prods., Inc.*, 2015 WL 5768534, at *3, 5 (D. Nev. Sept. 29, 2015). Moreover, where, as here, the claim asserts deception as its basis (*see, e.g.*, ACC ¶ 72 (Dr. Nakamura "intended to disrupt the contracts by making false and misleading claims)), heightened pleading is required. *See Donovan v. Flamingo Palms Villas, LLC*, 2009 WL 10693913, at *5 (D. Nev. June 23, 2009). Counterclaimants have not satisfied basic notice pleading requirements for this claim, much less the heightened requirements of Rule 9(b).

**Second**, Counterclaimants fail to plead facts satisfying the elements of this claim. **For one**, they do not support an inference that Dr. Nakamura *intended* to disrupt contracts between Sunday Group and other Mobby Project investors. They state a conclusion that Dr. Nakamura knew of Sunday Group's relationship with other Mobby Project investors and intended to disrupt those relationships (ACC ¶¶ 71-72), but as a matter of law, this does not plead intent. *See Operation: Heroes*, 2015 WL 5768534, at *5 (with facts, claimant "must show that [the] actions were *intended or designed* to disrupt" the contract) (emphasis in original); *Blanford*, 2012 WL 4613023, at *4 (with facts, claimant must identify an action "aimed at intentionally interfering with" a contract); *Jafbros, Inc. v. Geico Indem. Co.*, 373 P.3d 929, at *1 (Nev. 2011) (conclusory allegations are insufficient to support an intentional interference claim). Indeed, nowhere in their pleading do Counterclaimants attempt to explain Dr. Nakamura's motive to disrupt contracts with other investors, much less plead required particularized facts that establish such motive. *See J.J. Indus.*, 71 P.3d at 1268 (to plead intent, a claimant "must establish that the defendant had a motive to induce breach of the contract with the third party").

**Additionally**, Counterclaimants do not adequately plead causation, i.e., a nexus between Dr. Nakamura's actions and the disruption of any contract, supporting the elements of "actual disruption" and "resulting damages." *J.J. Indus.*, 71 P.3d at 1267. The pleading asserts false and misleading statements, as well as threats to Mr. Mitsuishi, which supposedly resulted in disruption, including the buy-back of other investors' M-Tokens. ACC ¶¶ 72-74.

FENWICK & WEST LLP
ATTORNEYS AT LAW

1   Counterclaimants provide no supporting facts. They draw no link between (a) Dr. Nakamura's

2   supposed misstatements or threats, and (b) other investors' pursuit of a buy-back or resulting

3   monies paid. Nor do they explain why Sunday Group had to indulge any of the purported

4   requests for buy-backs. Instead, they concede that the recent market climate stalled the project,

5   obviously prompting buy-back interest, which undercuts the notion that Dr. Nakamura's actions

6   did something to galvanize other investors. Counterclaimants also fail to explain how an alleged

7   threat to Mr. Mitsuishi relates in any way to other investors' decisions. The absence of well-

8   pleaded intent and causation both defeat this claim.

### D.    The Intentional Interference with Prospective Economic Advantage Claim Fails

11      Likewise, intentional interference with prospective economic advantage requires:

12  (1) a claimant's prospective contractual relationship with a third party; (2) knowledge of the

13  prospective relationship; (3) intent to harm the claimant by preventing the relationship;

14  (4) the absence of privilege or justification; and (5) actual harm to the claimant due to the

15  conduct. *Kraja v. Bellagio, LLC*, 202 F. Supp. 3d 1163, 1174 (D. Nev. 2016). "A prospective

16  contractual relationship [the typical advantage at issue] must be something presently expected

17  and of pecuniary value to the [claimant]." *SVI*, 2016 WL 7190548, at *5 (internal quotations

18  omitted). To establish "actual harm," a pleading must allege that the contract would have been

19  awarded *but for* the interference. *Id*. This claim fails as well.

20      ***First***, as with the other causes of action, the predicate for the claim appears to be false

21  and misleading statements regarding "the Mobby Project, Sunday Group, and its principals"

22  (ACC ¶ 83), which subjects this claim to Rule 9(b)'s particularized pleading requirements. The

23  allegations fall short. ***First***, Counterclaimants fail to isolate any specific misleading statement or

24  provide details regarding content, medium, or falsity, as discussed above, which compels

25  dismissal. *Vested Hous. Grp.*, 2014 WL 129830, at *4. Allegations made on information and

26  belief do not satisfy Rule 9(b). *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993).

27  Counterclaimants ignore this principle. *See, e.g.*, ACC ¶ 60 ("On information and belief, the

FENWICK & WEST LLP
ATTORNEYS AT LAW

Securities Complaint falsely alleges . . .”), ¶ 68 (“On information and belief, Nakamura also contacted certain Token Investors and made the same false and misleading statements . . .”).

**Second**, Counterclaimants fail to plead facts supporting the elements of this claim. **For one**, much like they do for the preceding claim, they state only that “Sunday Group had prospective contractual relationships between itself and one or more third-parties regarding future investments in Sunday Group and/or the Mobby Project.” *Id.* ¶ 80. They do not identify the third parties, explain their relationship to the Mobby Project, or otherwise describe the prospective economic advantage with any semblance of detail. *SVI*, 2016 WL 7190548, at *6 (dismissing intentional interference with prospective economic advantage claim because claimant failed to allege “any facts to show the existence of any prospective contractual relationship”).

**Additionally**, Counterclaimants fail to plead mental state here as well, making only conclusory assertions regarding Dr. Nakamura’s intent. *See, e.g.*, ACC ¶¶ 82, 83 (“[Dr.] Nakamura intended to harm Sunday Group by blocking and preventing the relationships and by preventing third parties from investing in Sunday Group and/or the Mobby Project” and Dr. Nakamura “intended to disrupt these prospective relationships by making false and misleading claims”). This is not enough. *SVI*, 2016 WL 7190548, at *6 (conclusory allegations that defendant “intentionally acted, intended, and designed” a plan to disrupt claimant’s business is insufficient to state a claim); *Kraja*, 202 F. Supp. 3d at 1174 (dismissing complaint because claimant did not plausibly allege intent to harm claimant or that the actions were not justified). Tellingly, Counterclaimants overreach when they suggest that Dr. Nakamura was “substantially certain” that his alleged actions would disrupt prospective contractual relationships. That assertion is unsupported by a single fact demonstrating Dr. Nakamura’s state of mind, and it strains credulity, as Dr. Nakamura could never have predicted with “certainty” third-party actions in a volatile market. *See Herman v. Venetian Casino Resort LLC*, 498 P.3d 776, at *2 (Nev. 2021) (claimant must be “substantially certain” that the actions would interfere with contractual relationship).

***Finally***, Counterclaimants do not allege *how* Dr. Nakamura's alleged actions interfered with the prospective contractual relationships (*Boskovich*, 2022 WL 2481636, at *2) or that Counterclaimants "would have been awarded the contract *but for* [Dr. Nakamura's] interference" (*Rimini St.*, 2017 WL 4227939, at *9 (emphasis added)). The allegation that Dr. Nakamura's actions "caused Sunday Group to incur actual harm" and that "Sunday Group has lost the benefit of receiving additional capital which would benefit the Mobby Project" (ACC ¶ 85) is rote, speculative and factually unsupported. This further compels dismissal. *SVI*, 2016 WL 7190548, at *5 (dismissing claim absent factually supported allegation that prospective contract would have been awarded but for the interference).

### E.    The Abuse of Process Claim Fails

Next, abuse of process requires: (a) an ulterior purpose other than resolving a legal dispute; and (b) a willful act in the use of the legal process that is not proper in the regular conduct of the proceeding. *LaMantia v. Redisi*, 38 P.3d 877, 879 (Nev. 2002). This tort "hinges on the misuse of regularly issued process." *Hampton v. Nustar Mgmt. Fin. Grp.*, 2007 WL 119146, at *3 (D. Nev. Jan. 10, 2007). Abuse of the legal process arises when a "legal procedure has been set in motion in proper form, with probable cause, but nevertheless has been perverted to accomplish an ulterior purpose for which it was not designed." *Mazzeo v. Gibbons*, 2010 WL 11629641, at *2 (D. Nev. Mar. 19, 2010). Counterclaimants have not adequately pleaded abuse of process.

***First***, they assert that Dr. Nakamura abused the legal process by the filing of the complaint in this matter. ACC ¶¶ 76-78. Nevada courts have repeatedly held, however, that the "mere filing of a complaint is insufficient to establish [the tort of] abuse of process." *InjuryLoans.com, LLC v. Buenrostro*, 529 F. Supp. 3d 1178, 1189-90 (D. Nev. 2021) (dismissing abuse of process claim as the allegations mainly concerned claimants' "filing of the Complaint and the allegations therein, but not procedural shenanigans taken to accomplish [claimants'] allegedly improper purpose after initiating this action"); *see also, e.g.*, *Hampton*, 2007 WL 119146, at *3 (dismissing abuse of process claim upon finding that although claimant alleged an ulterior motive for filing the action, claimant failed "to allege any abusive measures taken after

FENWICK & WEST LLP
ATTORNEYS AT LAW

FENWICK & WEST LLP
ATTORNEYS AT LAW

the filing of the complaint that would establish a willful act of process not proper in the regular conduct of the proceeding"). Rather, abuse of process "is the misuse of process, no matter how properly obtained, for any purpose other than that which it was designed to accomplish." *InjuryLoans.com*, 529 F. Supp. 3d at 1189.

Counterclaimants allege no facts suggesting the filing of this action was an abuse of process, most notably because they allege no "abusive measures taken ***after*** the filing of the complaint," as is required. *Hampton*, 2007 WL 119146, at *3 (emphasis added); *see also Mirch v. Clifton*, 131 Nev. 1322, at *1 (2015) (dismissing abuse of process claim because appellant "allege[d] misconduct by respondents prior to the issuance of any process"). Each action challenged—the filing of the Securities Complaint (ACC ¶¶ 76-78), misrepresentations as to whether Dr. Nakamura was authorized to speak for other token investors (*id.* ¶¶ 37, 56-61), false representations to token investors (*id.* ¶ 31), and threats to Mr. Mitsuishi and Dr. Kleinrock (*id.* ¶¶ 41-42)—is said to have occurred ***before*** Dr. Nakamura filed this action. Ultimately, the "tort requires a willful act that would not be proper in the ***regular conduct of the proceeding***," and Dr. Nakamura's filing of the complaint does not meet this requirement. *Land Baron Invs., Inc. v. Bonnie Springs Family LP*, 356 P.3d 511, 520 (Nev. 2015) (emphasis added) (citations and quotations omitted).

***Second***, Counterclaimants assert that Dr. Nakamura abused the legal process through the filing of the Securities Complaint for the supposed purpose of harming the Mobby Project and intimidating Counterclaimants into reimbursing Dr. Nakamura's investments. ACC ¶ 96. This allegation is a non-starter. Nevada's Supreme Court has held that "abuse of process claims do not encompass actions involving administrative agencies." *Land Baron*, 356 P.3d at 520. A claim for abuse of process involves an abuse of the legal process and "courts are not usually involved in the conduct of administrative agencies." *Id*. (the "filing a citizen's complaint does not demonstrate abuse of legal process"). Rather, the "utilized process must be ***judicial***, as the tort protects the integrity of the ***court***." *Id*. at 519-20 (emphasis added).

***Third***, if Counterclaimants rely on other alleged "willful acts" to support their abuse of process claim, they fare no better. They contend Dr. Nakamura misstated that he speaks for other

token investors, made false representations to token investors, and threatened Mr. Mitsuishi and Dr. Kleinrock. ACC ¶ 98. Even if true, none of these activities would constitute a "legal process" that Dr. Nakamura abused. *McCart-Pollak v. On Demand Direct Response LLC*, 2022 WL 6200115, at *5 (D. Nev. Oct. 6, 2022) (misrepresentations to the Court prior to and during discovery are not legal processes); *Hussein v. Frederick*, 2007 WL 9658420, at *5 (D. Nev. Apr. 3, 2007), *aff'd*, 436 F. App'x 831 (9th Cir. 2011) (acts such as intimidating and bribing witnesses are not legal processes).

*Fourth*, as discussed above, to the extent that alleged false or misleading statements comprise the willful acts Dr. Nakamura employed to abuse the legal process, Counterclaimants have failed to satisfy the heightened pleading requirements applicable to deceit. *Vested Hous. Grp.*, 2014 WL 129830, at *4; *see also Neubronner*, 6 F.3d at 672 (allegations pleaded on information and belief without supporting facts do not satisfy Rule 9(b)).

### F.   The Conspiracy Claim Fails

Finally, civil conspiracy requires: (1) a combination of two or more persons who; (2) through some concerted action; (3) intend to accomplish an unlawful objective for the purpose of harming another; and (4) damage resulting from the act or acts. *Local Ad Link*, 2009 WL 10694069, at *7. The "mere exchange of information and parallel behavior" is not enough to demonstrate conspiracy. *Wheeler v. Blue Cross/Blue Shield of Wyoming*, 1986 WL 15382, at *2 (D. Nev. Oct. 30, 1986). There must be concerted, collusive action. *See id.*

Counterclaimants assert that Dr. Nakamura "together with [Mr.] Takeda and possibly [Mr.] Imachi, conspired together and had a meeting of the minds to accomplish the torts alleged [] as the First, Second, and Third Causes of Action" (ACC ¶ 123), which are intentional interference with contractual relations and prospective economic advantage as well as intentional infliction of emotional distress. The conspiracy allegations are inadequate, especially to the extent predicated on counts one and two which are rooted in deceit and subject to Rule 9(b). *See Donovan*, 2009 WL 10693913, at *5 (applying Rule 9(b) to civil conspiracy claim grounded in fraud); *see also Neubronner*, 6 F.3d at 672 (allegations made on information and belief do not satisfy Rule 9(b)).

FENWICK & WEST LLP
ATTORNEYS AT LAW

Counterclaimants set forth no facts, as opposed to a bare conclusion, supporting an inference that Dr. Nakamura, Mr. Takeda, and Mr. Imachi formed a conspiratorial agreement. The allegations are silent as to the scope, content, time, place, or nature of such an agreement. *See, e.g.*, ACC ¶ 123 ("possibly . . . conspired"). In fact, the pleading contradicts the notion of an agreement formed when Counterclaimants allege that Dr. Nakamura strong-armed others against their will (*see, e.g.*, *id.* ¶ 30 ("on information and belief, [Dr.] Nakamura forced and/or coerced [Mr.] Takeda into participating in [Dr.] Nakamura's extortion campaign"). At most, the pleadings indicate a "mere exchange of information and parallel behavior" between Dr. Nakamura, Mr. Takeda, and Mr. Imachi. *Wheeler*, 1986 WL 15382, at *2. This is not enough to demonstrate conspiracy. *Id.* As with the primary tort claims discussed above, the civil conspiracy claim fails on the pleadings.

## VI.   CONCLUSION

The Court should grant Dr. Nakamura's motion to dismiss the counterclaims of defamation, business disparagement, intentional interference with contractual relations, intentional interference with prospective economic advantage, abuse of process, and civil conspiracy. Because this is Counterclaimants' second unsuccessful attempt to assert counterclaims, the Court should dismiss these claims with prejudice to any further attempt by any Counterclaimants to reassert them.

Dated:  October 5, 2023

**FENWICK & WEST LLP**

By: */s/ Felix S. Lee*
   Felix S. Lee

and

**FENNEMORE CRAIG, P.C.**

By: */s/ John D. Tennert III*
   John D. Tennert III (Nevada Bar No. 11728

Attorneys for Plaintiff and Counterdefendant
TETSUYA NAKAMURA