FELIX S. LEE (CSB No. 197084)
flee@fenwick.com
CHRISTOPHER J. STESKAL (CSB No. 212297)
csteskal@fenwick.com
CASEY O'NEILL (CSB No. 264406)
coneill@fenwick.com
CLAIRE MENA (CSB No. 339324)
cmena@fenwick.com
FENWICK & WEST LLP
Silicon Valley Center
801 California Street
Mountain View, CA 94041
Telephone:    650.988.8500
Facsimile:    650.938.5200

JOHN D. TENNERT III (Nevada Bar No. 11728)
jtennert@fennemorelaw.com
WADE BEAVERS (Nevada Bar No. 13451)
wbeavers@fennemorelaw.com
FENNEMORE CRAIG, P.C.
7800 Rancharrah Parkway
Reno, NV 89511
Telephone: 775.788.2212
Facsimile: 775.786.1172

Attorneys for Plaintiff and Counterdefendant
TETSUYA NAKAMURA

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| TETSUYA NAKAMURA,<br><br>   Plaintiff,<br><br>  v.<br><br>SUNDAY GROUP INCORPORATED, *et al.*,<br><br>   Defendants. | Case No.: 2:22-cv-01324-MMD-EJY<br><br>PLAINTIFF AND COUNTERDEFENDANT TETSUYA NAKAMURA'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS COUNTERCLAIMANTS' AMENDED COUNTERCLAIMS |
| SUNDAY GROUP INCORPORATED AND TOSHIKI (TODD) MITSUISHI,<br><br>   Counterclaimants,<br><br>  v.<br><br>TETSUYA NAKAMURA,<br><br>   Counterdefendant. | |

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................... 1

II. ARGUMENT ................................................................................................................. 1

    A. Rule 9(b)'s Heightened Pleading Requirements Apply ............................ 1

    B. Counterclaimants Fail to Support Their Defamation Claim ..................... 3

        1. Alleged Statements in the Securities Complaint and to Investors ................................................................................... 3

        2. Alleged Statements to Dr. Kleinrock ........................................... 6

        3. The Defamation Claim is Untimely ............................................. 6

    C. Counterclaimants Fail to Support Their Business Disparagement Claim ......................................................................................................... 7

    D. Counterclaimants Fail to Support Their Intentional Interference with Contractual Relations Claim .............................................................. 8

    E. Counterclaimants Fail to Support Their Intentional Interference with Prospective Economic Advantage Claim ........................................ 10

    F. Counterclaimants Fail to Support Their Civil Conspiracy Claim ........... 11

III. CONCLUSION ............................................................................................................ 12

PLAINTIFF'S REPLY IN SUPP. OF MOTION TO DISMISS COUNTERCLAIMANTS' AMENDED COUNTERCLAIMS     i     Case No.: 2:22-cv-01324-MMD-EJY

FENWICK & WEST LLP
ATTORNEYS AT LAW

# TABLE OF AUTHORITIES

**CASES**

*Bank of Nevada v. Friedman*,
    420 P.2d 1 (Nev. 1966) .................................................................................................. 6

*Blanford v. SunTrust Mortg., Inc.*,
    2012 WL 4613023 (D. Nev. Oct. 1, 2012) ..................................................................... 9

*Boink Sys., Inc. v. Las Vegas Sands Corp.*,
    2008 WL 11389204 (D. Nev. May 30, 2008) ............................................................ 3, 4

*Calvillo v. Experian Info. Sols., Inc.*,
    2020 WL 1549574 (D. Nev. Apr. 1, 2020) ..................................................................... 6

*Carrington Mortg. Servs., LLC v. Absolute Bus. Sols., LLC*,
    2016 WL 1465339 (D. Nev. Apr. 14, 2016) ................................................................... 9

*Clark Cnty. Sch. Dist. v. Virtual Educ. Software, Inc.*,
    213 P.3d 496 (Nev. 2009) ........................................................................................ 7, 8

*Cohen v. Hansen*
    2015 WL 3609689 (D. Nev. June 9, 2015) .................................................................. 3

*Constantino v. McDaniel*,
    2010 WL 1279083 (D. Nev. Mar. 29, 2010) .................................................................. 6

*Cunningham-Dirks v. Nevada*,
    2013 WL 77470 (D. Nev. Jan. 3, 2013) ..................................................................... 4, 5

*Diamond Resorts Int'l, Inc. v. Reed Hein & Assocs., LLC*,
    2019 WL 6310717 (D. Nev. Nov. 25, 2019) ............................................................ 3, 11

*Dow Chem. Co. v. Mahlum*,
    970 P.2d 98 (Nev. 1998) *abrogated on other grounds by GES, Inc v. Corbitt*, 21 P.3d
    11 (Nev. 2001) ................................................................................................................ 9

*Flowers v. Carville*,
    310 F.3d 1118 (9th Cir. 2002) ........................................................................................ 7

*Grand Canyon Skywalk Dev. LLC v. Cieslak*,
    2014 WL 2123255 (D. Nev. May 21, 2014) ................................................................... 6

*J.J. Indus., LLC v. Bennett*,
    71 P.3d 1264 (Nev. 2003) ............................................................................................... 9

*Levitt v, Leisure Sports Inc.*,
    734 P.2d 1221 (Nev. 1987) ........................................................................................... 11

*Local Ad Link, Inc. v. AdzZoo, LLC*,
    2009 WL 10694069 (D. Nev. Dec. 15, 2009) ........................................................ *passim*

*Mattel, Inc. v. MGA Ent., Inc.*,
    705 F.3d 1108 (9th Cir. 2013) ........................................................................................ 7

*Motogolf.com, LLC v. Top Shelf Golf, LLC*,
  528 F. Supp. 3d 1168 (D. Nev. 2021) ................................................................. 2, 8, 10

*Neubronner v. Milken*,
  6 F.3d 666 (9th Cir. 2022) .................................................................................... 12

*Okeke v. Biomat USA, Inc.*,
  927 F. Supp. 2d 1021 (D. Nev. 2013) ..................................................................... 4

*Rimini St., Inc. v. Oracle Int'l Corp.*,
  2017 WL 4227939 (D. Nev. Sept. 22, 2017) ......................................................... 10

*SVI, Inc. v. Supreme Corp.*,
  2016 WL 7190548 (D. Nev. Dec. 12, 2016) ............................................................ 8

*Taylor v. Silva*,
  615 P.2d 970 (1980) ................................................................................................ 9

*Torres v. Rothstein*,
  2021 WL 41306 (D. Nev. Jan. 5, 2021) ................................................................... 7

*Universal Ent. Corp. v. Aruze Gaming Am., Inc.*,
  2020 WL 2840153 (D. Nev. May 30, 2020) .......................................................... 10

*Vess v. Ciba-Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003) .................................................................. 2, 3, 10, 11

*Vested Hous. Grp., LLC v. Principal Real Est. Investors, LLC*,
  2014 WL 129830 (D. Nev. Jan. 10, 2024) ............................................................... 2

*Wheeler v. Blue Cross/Blue Shield of Wyoming*,
  1986 WL 15382 (D. Nev. Oct. 30, 1986) .............................................................. 12

*Williams v. Univ. Med. Ctr. of S. Nev.*,
  2010 WL 3001707 (D. Nev. July 28, 2010) ............................................................ 7

*Wilson v. Greater Las Vegas Ass'n of Realtors*,
  2015 WL 1014365 (D. Nev. Mar. 9, 2015) ........................................................... 11

*Wise v. Schreiber*,
  2017 WL 662981 (D. Nev. Feb. 17, 2017) .............................................................. 6

*WMCV Phase 3, LLC v. Shushok & McCoy, Inc.*,
  750 F. Supp. 2d 1180 (D. Nev. 2010) .................................................................. 3, 8

**STATUTES AND RULES**

Fed. R. Civ. P. 8(a) ..........................................................................................*passim*

Fed. R. Civ. P. 9(b) ..........................................................................................*passim*

FENWICK & WEST LLP
ATTORNEYS AT LAW

PLAINTIFF'S REPLY IN SUPP. OF MOTION TO DISMISS COUNTERCLAIMANTS' AMENDED COUNTERCLAIMS     iii     Case No.: 2:22-cv-01324-MMD-EJY

# REPLY MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

The opposition does not remotely make the required showing that any of the six claims for which dismissal is sought is adequately pleaded, and indeed, makes a variety of fatal concessions that confirm that dismissal is appropriate. ***First***, Counterclaimants admit that the abuse of process claim has no merit, and it therefore should be dismissed with prejudice. ***Second***, Counterclaimants make the meritless assertion that Federal Rule of Civil Procedure 9(b) does not apply to their intentional interference and conspiracy claims, despite the fact that their complaint repeatedly asserts that Dr. Nakamura intentionally made "false and misleading claims." These causes of action consequently sound in fraud and particularized factual pleading is required. That standard has not been met – at no point does the complaint provide particularized facts required to support its claims, and Counterclaimants tacitly concede as such by leading in each instance with the argument that Rule 9(b) should not be applied. ***Third***, even if Rule 9(b) did not apply, Counterclaimants have not alleged adequate facts to support their claims. With regard to their defamation claim, they misread case law and ignore authority from this Court requiring that they plead the who, what, when and how of any alleged defamatory and disparaging statements. Their rote allegations that they were defamed do not pass muster. Similarly, the opposition has no convincing rejoinder to the fact that the business disparagement claim fails to allege facts supporting any connection between Dr. Nakamura's alleged statements and any alleged harm, which is an essential element of the claim. The intentional interference claims fare no better, given that among other defects, they allege no facts, only bare conclusions, regarding Dr. Nakamura's alleged intent to disrupt existing or prospective business relationships. Finally, the civil conspiracy claim is also fatally defective as it is premised on impermissible speculation "upon information and belief" regarding the necessary meeting of the minds and collusion.

For all of these reasons, Dr. Nakamura's motion to dismiss should be granted.

## II. ARGUMENT

### A. Rule 9(b)'s Heightened Pleading Requirements Apply

Counterclaimants wrongly argue that Rule 9(b) does not apply to their claims for

FENWICK & WEST LLP
ATTORNEYS AT LAW

intentional interference with contractual relations, intentional interference with prospective business advantage, and civil conspiracy. In actuality, "Rule 9(b) applies to *any* state law cause of action where fraud is an essential element." *Vested Hous. Grp., LLC v. Principal Real Est. Investors, LLC*, 2014 WL 129830, at *3 (D. Nev. Jan. 10, 2024). Rule 9(b) *also* applies to claims where, although fraud is not an essential element, the allegations sound in fraud. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003) (Rule 9(b) applies where claimant "nonetheless [] allege[s] in the complaint that the defendant has engaged in fraudulent conduct," *i.e.*, where the claim is "grounded in fraud" or "sounds in fraud.").

The rationale for these principles is plain – a party cannot avoid Rule 9(b) by using alternative causes of action to assert misrepresentation and deception, which is what Counterclaimants are attempting here. What matters is whether the claim rests on allegations of deceit. *Id.* at 1108 ("Rule 9(b) cannot be evaded simply by avoiding the use of [the] magic word [fraud]."); *see also Motogolf.com, LLC v. Top Shelf Golf, LLC*, 528 F. Supp. 3d 1168, 1177 (D. Nev. 2021) (dismissing intentional interference claim under Rule 9(b) where fraud was not asserted but claim was based on allegedly misleading representations).

Counterclaimants concede the two intentional interference claims rest in substantial part on allegedly false and misleading statements.[1] They also concede that the conspiracy claim is based on those same interference claims as well as intentional infliction of emotional distress. *Id.* at 22. Counterclaimants' concessions in this regard are unavoidable, as "false and misleading" statements are a primary basis for each of these three claims. *See* ACC ¶ 72 ("intended to disrupt the contracts by making false and misleading claims . . . and by making threats against the life of Sunday Group's then CEO"), ¶ 83 ("intended to disrupt these prospective relationships by making false and misleading claims"), ¶ 123 ("conspired together and had a meeting of the minds to accomplish . . . the First, Second, and Third Causes of Action.").

Because each allegation relevant to the alleged intentional interference and conspiracy

---

[1] *See* Opp. at 18 (claim is based on "false and defamatory statements and threating [sic] Mitsuishi"), 20 (claim "is based on Nakamura's intentional actions in making false and misleading claims in the Securities Complaint and to Token Investors").

claims is interwoven with purported deception – *i.e.*, a supposed harassment campaign involving false statements – those claims "sound in fraud," and Rule 9(b) applies. *Vess*, 317 F.3d at 1103. Authorities cited in opposition are not to the contrary.[2] Here, Counterclaimants make no real effort to demonstrate that their intentional interference with contractual relations, intentional interference with prospective business advantage, and civil conspiracy claims meet Rule 9(b)'s pleading requirements, and for good reason – they do not. As shown in Dr. Nakamura's motion, and as discussed further below, each fails to plead the alleged false and misleading statements with the specificity required by Rule 9(b), much less Rule 8(a)(2).

### B. Counterclaimants Fail to Support Their Defamation Claim

#### 1. Alleged Statements in the Securities Complaint and to Investors

Tellingly, Counterclaimants' lead argument in opposing dismissal of their defamation claim is to dispute the requirement that they must allege to "whom, when, where, [and] how" each allegedly defamatory statement was made and the falsity of each statement, in tacit concession to the fact that their complaint fails to do so. *Local Ad Link, Inc. v. AdzZoo, LLC*, 2009 WL 10694069, at *11 (D. Nev. Dec. 15, 2009). To support this argument, the opposition miscites *Cohen v. Hansen* (Opp. at 11) for the proposition that a party can plead defamation "in general terms and without supporting details." 2015 WL 3609689 (D. Nev. June 9, 2015). In fact, *Cohen* did not address the pleading standard for a defamation claim at all, but rather held that damages could be presumed for purposes of summary judgment for certain types of defamatory statements. *Id.* at *4, 11. Under *Cohen* and controlling law, Counterclaimants are required to plead to "whom, when, where, and how" each allegedly defamatory statement was made and the falsity of each statement – a pleading standard they do not meet.[3]

---

[2] *See, e.g.*, *Diamond Resorts Int'l, Inc. v. Reed Hein & Assocs., LLC*, 2019 WL 6310717, at *2, 4, 7 (D. Nev. Nov. 25, 2019) (finding that Rule 9(b) applied to false advertising and deceptive trade practices claims, in contrast to claims which *did not rest on allegations of deceit*); *WMCV Phase 3, LLC v. Shushok & McCoy, Inc.*, 750 F. Supp. 2d 1180, 1193 (D. Nev. 2010) (declining to apply Rule 9(b) to civil conspiracy and other claims, in contrast to claim of fraud and racketeering, because "neither the Complaint as a whole nor the other separate causes of action therein necessarily rel[ied] on a theory of fraud").

[3] The other cases cited in opposition are equally distinguishable because (unlike here) they involved false statement that were alleged with the requisite specificity. For example, in *Boink*

Specifically, Counterclaimants allege only that Dr. Nakamura falsely stated that Sunday Group and/or its principals "engaged in fraudulent conduct and acted illegally," "misrepresented the scope of Dr. Kleinrock's involvement," represented to investors that token listing was imminent, and represented that token value would increase. Opp. at 9-10 (citing ACC ¶ 65). However, Counterclaimants do not specify, among other things, what exactly was said, the persons to whom it was said, when it was said, or why the statements are false. *Local Ad Link*, 2009 WL 10694069, at *11 (must allege "whom, when, where, [and] how"). For example, the pleading does not explain what Dr. Nakamura said he was told about Dr. Kleinrock's involvement and how it differed from reality. The complaint also does not explain how Dr. Nakamura's characterization of what he was told on token listing and value was false. ACC ¶ 65. Rather than identify the alleged false statements with the requisite specificity, Counterclaimants allege in conclusory fashion that, based upon "information and belief," false statements were levied in a "Securities Complaint, directly to Token Investors, and through a 44-page document." *Id.* ¶ 64.[4] Such barebone allegations are legally insufficient to state a fraud claim. *Cunningham-Dirks v. Nevada*, 2013 WL 77470, at *9 (D. Nev. Jan. 3, 2013) (dismissing defamation claim because generalized accusations of "criminal intentions . . . criminal behavior" are insufficient given a failure to identify "who made the statements, what the actual statements were, and to whom they were made."); *Local Ad Link*, 2009 WL 10694069, at *11.

Counterclaimants are also flatly wrong in arguing they are not required to plead facts demonstrating the falsity of the alleged statements at issue, and that Dr. Nakamura cited no

---

*Sys., Inc. v. Las Vegas Sands Corp.*, the alleged defamation involved specific false statements to potential customers and business partners that a company's "cash advance platform and ATM equipment did not function properly," despite near-concurrent contrary knowledge that the technology did function properly. *See* 2008 WL 11389204, at *1, 4 (D. Nev. May 30, 2008) (internal quotation marks omitted). In *Okeke v. Biomat USA, Inc.*, defendants allegedly told a specified person that the claimant had been terminated from his company "because he sexually harassed a woman." 927 F. Supp. 2d 1021, 1027 (D. Nev. 2013) (internal quotation marks omitted).

[4] *See also id.* ¶ 31 (alleging "false claims" in March 4, 2021 email without identifying such claims or alleging facts demonstrating falsity); *id.* ¶¶ 37, 39, 41, 51 (citing emails in August 2021 without attributing any false statements to the emails); *id* ¶ 52 (citing a "Securities Complaint" without identifying a single statement within the complaint with specificity).

authority for this point. Opp. at 12; Mot. at 8. Most notably, *Local Ad Link* dismissed a defamation claim because the plaintiff had not "explicitly alleged the falsity of any of the alleged statements." 2009 WL 10694069, at *11. Thus, a claimant must allege facts, as opposed to a rote conclusion, supporting how and why a statement is untrue. *See id.* Counterclaimants' attempt to avoid the holding of *Local Ad Link* by arguing that the plaintiff in that action "literally failed to allege that any of the statements were false" is entirely without basis. Opp. at 12. The *Local Ad Link* complaint expressly pleaded that the allegedly defamatory statements were "false and damaging" (*see* Lee Decl., Ex. A ¶¶ 54-55), but it failed to provide any supporting specifics, and on those grounds, the court dismissed the defamation claim for failure to "allege the falsity of any of the allegedly defamatory statements." 2009 WL 10694069, at *11. The same result is warranted here for the same reasons. Counterclaimants' assertion that being required to plead facts supporting falsity "would impose a tremendous and unwarranted burden well beyond the requirements of Rule 8(a)" is both a misstatement of the law as well as an open admission that they cannot satisfy the requirement. Opp. at 12.[5] Thus, failure to plead falsity provides yet another independent basis for dismissal of the defamation claim.

The opposition also ignores or misunderstands Dr. Nakamura's argument regarding failure to link specific defamatory statements with specific mediums of communication. Counterclaimants have not done this, nor do they assert that they have. They mention certain mediums (namely, the Securities Complaint (ACC ¶ 102), a 44-page memorandum (*id.* ¶ 64), and direct communications to investors (*id.* ¶ 102)), but they do not clarify which statements were made in which mediums – this is defective pleading of a defamation claim and therefore an

---

[5] In opposition, Counterclaimants highlight their assertion that Dr. Nakamura attributed statements in the Securities Complaint to other investors despite allegedly having no authority to speak for some of them. Opp. at 10. There are no well-pleaded facts to support this supposed false attribution. The pleading does not cite a single statement from the Securities Complaint with any specificity, say which individuals Dr. Nakamura claimed he spoke for, give any detail regarding those individuals' authorization or lack thereof, or provide any facts to support the conclusion that a specific statement in the Securities Complaint was false. Rather, the pleading alleges only "[o]n information and belief" that "some of the Token Investors" did not authorize the Securities Complaint's filing and were not acquainted with Dr. Nakamura. ACC ¶¶ 56-57, 61-62. This highly generalized, barebones, and speculative allegation falls well short of the applicable pleading standard. *Cunningham-Dirks*, 2013 WL 77470, at *9.

independent reason for dismissal. *See Local Ad Link*, 2009 WL 10694069, at *11.

### 2. Alleged Statements to Dr. Kleinrock

Separately, as noted in Dr. Nakamura's opening brief, the asserted defamation count is not based on any statements made to Dr. Kleinrock. ACC ¶¶ 101-09. The opposition tries to backfill by arguing that an alleged March 4, 2021 email to Dr. Kleinrock contained defamatory falsities. Opp. at 12-13. This attempt fails because briefs are not permitted to amend pleadings. *Calvillo v. Experian Info. Sols., Inc.*, 2020 WL 1549574, at *4 (D. Nev. Apr. 1, 2020) ("a party may not amend its complaint through its opposition to a motion to dismiss."). Regardless, the alleged statements to Dr. Kleinrock are as general and non-specific as the alleged statements in the Securities Complaint and to token investors, and thus fail for the same reasons. Counterclaimants offer no meaningful rebuttal to this in opposition.

### 3. The Defamation Claim is Untimely

Counterclaimants agree, and the law is clear, that dismissal is appropriate if a statute of limitations defense appears on the face of a pleading. *See* Opp. at 14; *Wise v. Schreiber*, 2017 WL 662981, at *1 (D. Nev. Feb. 17, 2017). "When the complaint shows on its face that the cause of action is barred, the burden falls upon the [claimant] to satisfy the court that the bar does not exist." *Bank of Nevada v. Friedman*, 420 P.2d 1, 4 (Nev. 1966). Here, Counterclaimants concede that claims relating to the March 4, 2021 email to Dr. Kleinrock are time barred by the two-year limitations period and they have not alleged facts establishing tolling.[6] Opp. at 15. Likewise, Counterclaimants concede they did not plead any time frame for the alleged statements to token investors. *Id.* at 14. They are required to plead those statements with specificity (including when

---

[6] *See Constantino v. McDaniel*, 2010 WL 1279083, at *1 (D. Nev. Mar. 29, 2010) ("If a petition reveals on its face that the statute of limitations has run, the petitioner has the burden of alleging facts which would give rise to any tolling of the statute."). Counterclaimants' citation to *Grand Canyon Skywalk Dev. LLC v. Cieslak*, 2014 WL 2123255 (D. Nev. May 21, 2014), is misplaced. The *Cieslak* Court declined to dismiss a defamation claim where "plausible inferences from the well-pled facts" suggested that the memorandum in which the alleged statements were made was not published and thus not discovered until some point within the two-year limitations period. *Id.* at *2. Here, Counterclaimants have alleged no facts supporting an inference either way regarding discovery of the email, and further, have pleaded and argued that Dr. Nakamura's "harassment" campaign began in mid-2021 (ACC ¶ 29; Opp. at 4-5), placing them on notice more than two years before they asserted defamation.

they occurred), and not just rely on what they "expect the evidence will show" (*id.*), especially in a case involving investments and investor dialogue which occurred years prior. *See* ECF No. 1.[7]

Finally, the opposition is wrong that defamation should be treated as a continuing tort for purpose of assessing timeliness. Opp. at 15. Counterclaimants' own authority confirms the opposite—each publication of an alleged defamatory statement is a discrete act.[8] The opposition is also wrong that defamation is a compulsory counterclaim that triggers procedural tolling. Dr. Nakamura asserts claims such as breach of contract and fiduciary duty and fraud for contractual violations and representations made regarding his equity, token, and mining investments. *See* ECF No. 1. Those events occurred years before his supposed 2021 defamation campaign, and regardless, Dr. Nakamura's claims based on false inducement and misuse of investments rest on facts distinct from the alleged defamation. *See Torres v. Rothstein*, 2021 WL 41306, at *3 (D. Nev. Jan. 5, 2021) (counterclaims not compulsory where basis for claims not contemporaneous); *Mattel, Inc. v. MGA Ent., Inc.*, 705 F.3d 1108, 1110 (9th Cir. 2013) (alleged trade secret disclosure by defecting employees distinct from alleged trade secret theft by opposing company).

### C. Counterclaimants Fail to Support Their Business Disparagement Claim

The lack of specificity that dooms Counterclaimants' defamation claim is equally fatal to their business disparagement claim, as the ACC fails to adequately plead: (1) specific disparaging statements, (2) specific mediums in which they were made, and (3) facts demonstrating falsity. Opp. at 16. As noted in Dr. Nakamura's opening papers, each of these defects is grounds for dismissal of this cause of action. Mot. at 9-10; *Clark Cnty. Sch. Dist. v. Virtual Educ. Software, Inc.*, 213 P.3d 496, 504 (Nev. 2009).

Additionally, on causation, the opposition wrongly argues that it is not required to plead

---

[7] Counterclaimants correctly point out that they have alleged a range of possible months when the Securities Complaint was filed, September 2021 to November 2021 (ACC ¶ 52), and thus Dr. Nakamura withdraws his argument that the defamation claim is untimely to the extent based on statements in the Securities Complaint. The entire claim still fails. *See* § II(B)(1)-(2), *supra*.

[8] *See Williams v. Univ. Med. Ctr. of S. Nev.*, 2010 WL 3001707, at *2 (D. Nev. July 28, 2010) ("A continuing tort exists when no single incident fairly or realistically can be identified as the cause . . . ." (citing *Flowers v. Carville*, 310 F.3d 1118, 1126 (9th Cir. 2002)), *2, 4-6 (adopting "single publication rule" while rejecting continuing tort and equitable tolling arguments).

such facts under Rule 8(a)(2) – and in so doing concedes it has not met that pleading standard. Opp. at 16-17. This Court and the Nevada Supreme Court have unequivocally held that a claimant must allege *facts* demonstrating that disparaging comments proximately caused damages. *See, e.g.*, *SVI, Inc. v. Supreme Corp.*, 2016 WL 7190548, at *5 (D. Nev. Dec. 12, 2016) (citing *Clark Cnty. Sch. Dist.*, 213 P.3d at 505).[9] Similarly, Counterclaimants have not alleged any facts specifically identifying investor relationships disrupted or otherwise tying Dr. Nakamura's statements to economic harm. ACC ¶ 119. They assume and infer causation of damages,[10] which is defective pleading as a matter of law. *SVI*, 2016 WL 7190548, at *5. Indeed, they all but concede their pleading deficiency with their suggestion that "[d]iscovery is available . . . to gain additional information." Opp. at 17.

### D. Counterclaimants Fail to Support Their Intentional Interference with Contractual Relations Claim

Next, as noted above, the counterclaim for intentional interference with contract is based wholly or substantially on deceit. ACC ¶ 72 ("intended to disrupt the contracts by making ***false and misleading claims***") (emphasis added). These allegations must therefore be pleaded with particularity, and the opposition's assertions to the contrary fly directly in the face of governing law. *Motogolf.com*, 528 F. Supp. 3d at 1174 n.3, 1177 (intentional interference claim failed under Rule 9(b) absent alleged "dates, times, speakers, and the precise contents of the statements"). *Shushok*, cited in opposition, does not hold otherwise, as neither the complaint nor the claim relied on a theory of deceit. 750 F. Supp. 2d at 1193-94.

Counterclaimants have not pleaded sufficient detail regarding Dr. Nakamura's alleged misstatements as discussed above. Beyond that, the opposition glosses over the need to plead

---

[9] In *SVI*, the claimant alleged that the defendants had contacted a company's current customer and misstated that the company would not be able to fulfill the customer's order. *Id*. Allegedly, this "caused, and [would] continue to cause . . . lost business income, lost opportunities, and a misperception of increased risk." *Id*. (internal quotation marks omitted). The court rejected the business disparagement claim as pleaded, because the claimant did not identify the customer or "allege any *facts*" to show that the customer contact "resulted in [economic harm]." *Id*.

[10] ACC ¶ 119; Opp. at 17 ("reasonably inferable that . . . would cause harm"; "reasonable to infer and conclude that . . . harms its ability to attract new investors.").

*intent with facts*, arguing instead that Counterclaimants can rely upon assumptions and inferences that Dr. Nakamura contacted other investors and government regulators to further "extortionist goals . . . trying to convince the other investors to join forces with him . . . to unwind their investments." Opp. at 19. Speculation about intent and boilerplate recitations of the intent element do not suffice. ACC ¶¶ 29 ("for the purpose of harming"), ¶ 72 ("intended to disrupt the contracts"); *Carrington Mortg. Servs., LLC v. Absolute Bus. Sols., LLC*, 2016 WL 1465339, at *2 (D. Nev. Apr. 14, 2016) (facts are required; "not merely a conclusory allegation"); *J.J. Indus., LLC v. Bennett*, 71 P.3d 1264, 1268 (Nev. 2003) (plaintiff must plead facts indicating "specific motive or purpose" to disrupt specific contracts); *see also Blanford v. SunTrust Mortg., Inc.*, 2012 WL 4613023, at *2, 4 (D. Nev. Oct. 1, 2012) (same).

Additionally, intentional interference requires factual allegations indicating that the interference caused contract disruption. *J.J. Indus.*, 71 P.3d at 1267. Counterclaimants fail, however, to allege that any contract was breached or otherwise disrupted. Rather, they argue instead that they "believe[]" Dr. Nakamura caused them to create a token buy-back program in which certain investors participated. Opp. at 19. There is no authority for the proposition that a voluntary "buy back" program undertaken by the claimant qualifies as contract disruption. Counterclaimants are also unable to point to a single fact in their pleading that connects anything Dr. Nakamura said or did to their decision to offer a buy-back, much less to other investors' decisions to accept the buy-back. A conclusory "belief" that the buy-back would not have occurred "but for" Dr. Nakamura's misleading statements does not satisfy even Rule 8(a)(2), and further, it ignores the need to plead both actual *and* proximate causation. *Dow Chem. Co. v. Mahlum*, 970 P.2d 98, 107 (Nev. 1998) *abrogated on other grounds by* GES, Inc v. Corbitt, 21 P.3d 11 (Nev. 2001). The pleading itself concedes the presence of intervening market factors which presumably prompted buy-back interest. ACC ¶ 24; *Taylor v. Silva*, 615 P.2d 970, 971-72 (1980) (intervening factors sever proximate causation).

Finally, this cause of action (but not the next, § II(E), *infra*) includes an averment that Dr. Nakamura's supposed "death threat" to Mr. Mitsuishi was another type of interference. ACC ¶ 72. The Court should apply Rule 9(b) to the entire claim because all relevant averments are

interwoven with deception and thus the claim "sounds in fraud." *Vess*, 317 F.3d at 1103. But even if the Court were to apply Rule 8(a)(2) to this allegation, a claim on that basis still fails. Counterclaimants do not advance any facts demonstrating (1) intent to use a death threat to Mr. Mitsuishi to somehow disrupt other token investor contracts (there is no assertion that investors heard about the supposed death threat), or (2) actual or proximate causation, that is, that the death threat actually and foreseeably led to the token buy-back or any other economic harm.

### E. Counterclaimants Fail to Support Their Intentional Interference with Prospective Economic Advantage Claim

Counterclaimants' other intentional interference cause of action rests entirely on Dr. Nakamura's supposedly "false and misleading claims" (ACC ¶ 83; *accord* Opp. at 20), and consequently, Rule 9(b) applies to the entirety of the claim. As a result, these allegations fail for lack of particularity for the same reasons stated above. The opposition's suggestion otherwise is unsupported, and indeed Counterclaimants' own authority confirms that Rule 9(b) applies. Opp. at 20; *Motogolf.com*, 528 F. Supp. 3d at 1174, 1177-78 (applying Rule 9(b) to intentional interference claims); *Universal Ent. Corp. v. Aruze Gaming Am., Inc.*, 2020 WL 2840153, at *22-23 (D. Nev. May 30, 2020) (same).

Counterclaimants also fail to muster any convincing rejoinder to the fact that the complaint fails to set forth specifics as to what prospective business relationships were interfered with. Opp. at 20. The opposition argues that it is permissible for them to "alleg[e] a certain class of prospective customers without identifying them specifically," but this misses the point. Opp. at 20, citing *Motogolf.com*, 528 F. Supp. 3d at 1178. Here, Counterclaimants have not identified any "certain class" of prospective customers, investors, or other business partners. The pleading states only that "Sunday Group had prospective contractual relationships between itself and one ***or more third-parties*** regarding future investments . . . ," which does not remotely satisfy the requirements of governing law. ACC ¶ 80 (emphasis added); *cf. Rimini St., Inc. v. Oracle Int'l Corp.*, 2017 WL 4227939, at *9-10 (D. Nev. Sept. 22, 2017) (general allegation that "plaintiff had ongoing expectations in continuing economic relationships with . . . customers" insufficient).

Finally, the opposition advances the inexplicable argument that harm is not an element of

an interference claim, when the very authority cited in support of that averment expressly states that the final element of such claim is "actual harm to the plaintiff as a result of the defendant's conduct." *Levitt v, Leisure Sports Inc.*, 734 P.2d 1221, 1225 (Nev. 1987); Opp. at 21. The opposition makes no effort to distinguish the authorities cited in Dr. Nakamura's opening papers dismissing interference claims for failure to plead ***facts*** demonstrating such harm (Mot. at 14) and the only allegations of harm the opposition cites are entirely conclusory recitations of the harm element. Opp. at 21 (citing ACC ¶¶ 82, 85). Conclusions of law and speculation about what future trial evidence may show are defective pleading. *Wilson v. Greater Las Vegas Ass'n of Realtors*, 2015 WL 1014365, at *7 (D. Nev. Mar. 9, 2015) (dismissing on the pleadings despite claimant's "hope that she [would] uncover facts supporting her claims through discovery.").

### F. Counterclaimants Fail to Support Their Civil Conspiracy Claim

The opposition is wrong in claiming that Rule 9(b) does not apply to the civil conspiracy claim. It plainly does as it is rooted substantially in deception. *Vess*, 317 F.3d at 1108. The conspiracy claim incorporates the two intentional interference claims discussed above, which as noted above sound in fraud and therefore this claim must be plead with particularity.[11] But regardless of the pleading standard, the claim fails.

*First*, Counterclaimants do not set forth facts establishing a conspiracy. Rather, they regurgitate assertions from their pleading that Dr. Nakamura and Mr. Takeda "worked together . . . to further their own goals." Opp. at 23; *see* ACC ¶¶ 123-24 ("meeting of the minds"; "concerted actions"). They then presuppose that a conspiracy was formed. Opp. at 23. Suppositions are not sufficient to state a claim. *Vess*, 317 F.3d at 1108 (exchange of cash alleged but claim failed absent particulars of when, where, and how conspiracy transpired).[12]

---

[11] The authorities Counterclaimants cite in arguing that Rule 8(a)(2) applies are distinguishable, and indeed hold that conspiracy claims *are* subject to Rule 9(b) where the alleged aim of the conspiracy is some type of deceit; in contrast, Rule 8(a)(2) applies where deceit forms no basis for the conspiracy claim. *See Diamond Resorts*, 2019 WL 6310717, at *7 (applying Rule 8(a)(2) to civil conspiracy based on non-fraudulent intentional interference); *Local Ad Link*, 2009 WL 10694069, at *7 (Rule 8(a)(2) applies to civil conspiracy "so long as the cause of action did not encompass the alleged plan . . . to defraud [], but only the broader plan to compete" unlawfully).

[12] The suggestion that Dr. Nakamura used ellipses to mischaracterize a statement in the countercomplaint is misplaced. Opp. at 22 n.15. Dr. Nakamura quoted the statement in full ten

FENWICK & WEST LLP
ATTORNEYS AT LAW

*Second*, Counterclaimants' repeated reliance on allegations based "upon information and belief" is fatal to their claim. *See, e.g.*, ACC ¶ 59 ("On information and belief, Nakamura conspired with Takeda and/or Imachi . . . ."). In opposition, they conveniently excise that phrase when quoting their pleading. Opp. at 3 n.3. Information and belief pleading cannot support a claim for conspiracy if the conspiracy allegedly involved deceit. *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 2022) (allegations on information and belief do not satisfy Rule 9(b)).

*Third*, that Dr. Nakamura has not moved to dismiss the intentional infliction of emotional distress claim does not mean that a conspiracy to commit that tort is well pleaded, as Counterclaimants suggest in opposition. Opp. at 22-23. Emails or images "from both Nakamura and Takeda" (*id.* at 23) appear to be the sole basis upon which Counterclaimants surmise that a conspiracy to launch an emotional assault existed. An email from or copying two individuals may be an example of the "exchange of information and parallel behavior," but this does not satisfy the required elements of conspiracy. *Wheeler v. Blue Cross/Blue Shield of Wyoming*, 1986 WL 15382, at *2 (D. Nev. Oct. 30, 1986). The complaint must plead *facts* demonstrating a *meeting of the minds* with concerted, collusive action. *Id.* Counterclaimants have advanced no such facts, and their conspiracy claim is therefore fatally defective and should be dismissed.

### III.  CONCLUSION

The Court should dismiss all six counterclaims with prejudice.

Dated:  January 12, 2024         **FENWICK & WEST LLP**

                                 By: */s/ Felix S. Lee*
                                     Felix S. Lee

                                 **FENNEMORE CRAIG, P.C.**

                                 By: */s/ John D. Tennert III*
                                     John D. Tennert III (Nevada Bar No. 11728

                                     Attorneys for Plaintiff and Counterdefendant
                                     TETSUYA NAKAMURA

---

lines earlier in his motion. Mot. at 16.