FELIX S. LEE (CSB No. 197084)
flee@fenwick.com
CHRISTOPHER J. STESKAL (CSB No. 212297)
csteskal@fenwick.com
CASEY O'NEILL (CSB No. 264406)
coneill@fenwick.com
CLAIRE MENA (CSB No. 339324)
cmena@fenwick.com
FENWICK & WEST LLP
Silicon Valley Center
801 California Street
Mountain View, CA 94041
Telephone: 650.988.8500
Facsimile: 650.938.5200

JOHN D. TENNERT III (Nevada Bar No. 11728)
jtennert@fennemorelaw.com
WADE BEAVERS (Nevada Bar No. 13451)
wbeavers@fennemorelaw.com
FENNEMORE CRAIG, P.C.
7800 Rancharrah Parkway
Reno, NV 89511
Telephone: 775.788.2212
Facsimile: 775.786.1172

*Attorneys for Plaintiff and Counterdefendant Tetsuya Nakamura*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| TETSUYA NAKAMURA,<br><br>    Plaintiff,<br><br>v.<br><br>SUNDAY GROUP INCORPORATED, *et al.*,<br><br>    Defendants. | Case No.: 2:22-cv-01324-MMD-EJY<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION TO COMPEL DOCUMENTS RESPONSIVE TO DISCOVERY REQUESTS**<br><br>**ORAL ARGUMENT REQUESTED** |
| SUNDAY GROUP INCORPORATED AND TOSHIKI (TODD) MITSUISHI<br><br>    Counterclaimants,<br><br>v.<br><br>TETSUYA NAKAMURA,<br><br>    Counterdefendant. | |

# MOTION TO COMPEL DOCUMENTS RESPONSIVE TO DISCOVERY REQUESTS

Plaintiff Tetsuya Nakamura ("Dr. Nakamura"), by and through counsel of record, hereby moves for an order compelling Defendants Sunday Group Incorporated ("Sunday Group"), SGI Trust, Toshiki (Todd) Mitsuishi, and James Pack (collectively, "Defendants") to complete their production of documents responsive to Dr. Nakamura's discovery requests. Dr. Nakamura makes this motion pursuant to Federal Rule of Civil Procedure 37 and Local Rule 26-7.

This Motion is based on the following Memorandum of Points and Authorities, the Declaration of Claire Mena and the exhibits attached thereto, any further briefing on this matter, and any oral argument the Court may permit at a hearing on this matter.

Dated: February 21, 2025

**FENWICK & WEST LLP**

By: /s/ *Felix S. Lee*
    Felix S. Lee

*and*

**FENNEMORE CRAIG, P.C.**

By: /s/ *John D. Tennert III*
    John D. Tennert III (Nevada Bar No. 11728)

*Attorneys for Plaintiff and Counterdefendant Tetsuya Nakamura*

**TABLE OF CONTENTS**

I. INTRODUCTION .................................................................................................... 1
II. FACTS AND PROCEDURAL HISTORY .............................................................. 1
III. LEGAL STANDARD ............................................................................................... 4
IV. ARGUMENT ............................................................................................................ 4
    A. The Court Should Order Immediate Production of Signal Messages ...................... 4
    B. The Court Should Order Immediate Production of All Responsive Business Communications ........................................................................................................ 6
    C. The Court Should Require a Factual Proffer Concerning Document Preservation ................................................................................................................ 8
V. CONCLUSION ........................................................................................................ 9

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Apple Inc. v. Samsung Elecs. Co.*,
881 F. Supp. 2d 1132, 1136 (N.D. Cal. 2012) ........................................................... 6, 8

*Cornwell v. Electra Cent. Credit Union*,
439 F.3d 1018, 1027 (9th Cir. 2006) ............................................................................ 4

*D.S. v. Clark County School Dist.*,
2023 WL 5748720 (D. Nev. 2023) .............................................................................. 4

*F.D.I.C. v. Halpern*,
271 F.R.D. 191 (D. Nev. 2010) .................................................................................... 6

*F.D.I.C. v. Lewis*,
2014 WL 7330931 (D. Nev. Dec. 18, 2014) ................................................................ 4

*F.T.C. v. AMG Servs., Inc.*,
291 F.R.D. 544 (D. Nev. 2013) .................................................................................... 4

*Ho v. Marathon Pat. Grp., Inc.*,
2021 WL 8532066 (C.D. Cal. Nov. 22, 2021) ............................................................. 7

*In re Skanska USA Civil Southeast Inc.*,
2021 WL 4953239 (N.D. Fla. Aug. 5, 2021) ............................................................... 7

*Johnson v. Mammoth Recreations, Inc.*,
975 F.2d 604 (9th Cir. 1992) ........................................................................................ 5

*Jones v. Zimmer*,
2014 WL 3725873 (D. Nev. July 28, 2014) ................................................................ 4

*Kellgren v. Petco Animal Supplies, Inc.*,
2016 WL 4097521 (S.D. Cal. May 26, 2016) ............................................................. 7

*Linksmart Wireless Tech., LLC v. Caesars Entertainment Corp.*,
2020 WL 4431498 (D. Nev. July 31, 2020) ................................................................ 6

*Micron Tech., Inc. v. Rambus Inc.*,
645 F.3d 1311, 1320 (Fed. Cir. 2011) .......................................................................... 8

*Painters Joint Comm. v. Employee Painters Trust Health & Welfare Fund*,
2011 WL 4573349 (D. Nev. Sept. 29, 2011) ............................................................... 4

*Sanhueza v. Lincoln Tech. Inst., Inc.*,
2014 WL 6485797 (D. Nev. Nov. 18, 2014) ............................................................... 4

*Small v. Univ. Med. Center*,
  2018 WL 3795238 (D. Nev. Aug. 9, 2018) .................................................................... 6, 8

*State Farm Mut. Auto. Ins. Co. v. Precious Physical Therapy, Inc.*,
  2020 WL 7056039 (E.D. Mich. Dec. 2, 2020) ..................................................................... 7

*Waymo LLC v. Uber Techs., Inc.*,
  2017 WL 2972806 (N.D. Cal. July 12, 2017) ...................................................................... 8

*Weston v. DocuSign, Inc.*,
  2024 WL 3446924 (N.D. Cal. July 15, 2024) ...................................................................... 8

*Wong v. Regents of Univ. of Cal.*,
  410 F.3d 1052 (9th Cir. 2005) ......................................................................................... 4, 5

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 34(a) ........................................................................................ 6

Federal Rule of Civil Procedure 37 ............................................................................................ 1

Local Rule 26-7 .......................................................................................................................... 1

## I. INTRODUCTION

Dr. Nakamura has tried for over a year to resolve with Defendants the unambiguous gaps in their document productions. But after numerous meet-and-confer conferences and multiple missed deadlines—most recently, a Court-approved January 15, 2025 deadline to complete their document production[1]—Defendants still have failed to comply with their discovery obligations, on some of the potentially most critical documents in this case. Specifically, Defendants have:

- failed to produce any communications from the Signal messaging platform—an application that is designed to transmit a user's most sensitive messages—and have failed to commit to any date by which such production will occur;

- failed to complete production of emails from all appropriate Sunday Group custodians' email addresses; and

- refused to collect or produce communications from Sunday Group personnel who used mediums other than the Sunday Group email domain (e.g., @hotmail.com), despite the undisputed fact that multiple critical witnesses used such alternative mediums to conduct business.

The Court should order immediate production of all responsive Signal messages and all responsive communications from Sunday Group personnel. Additionally, given Defendants' apparent acknowledgement that only two of many important custodians received a document preservation notice, the Court should order that all defense custodians submit a sworn declaration describing any document deletion that has occurred.

## II. FACTS AND PROCEDURAL HISTORY

Dr. Nakamura commenced this action on August 16, 2022 to recover certain investments he made in and through Defendants. ECF No. 1. Dr. Nakamura is a Japanese citizen residing in Japan. Sunday Group is a purported blockchain industry startup formed and operating in Nevada. Dr. Nakamura alleges that Defendants induced his investments with false representations and breached fiduciary, contractual and other legal duties.[2]

---

[1] By stipulation dated December 2, 2024, Defendants represented that they "plan[ned] to complete [document production] in response to existing discovery requests by Plaintiff . . . by no later than January 15, 2025," and on that and other bases, the Court approved a continuance of the fact discovery deadline to April 2, 2025. *See* ECF No. 96.

[2] Defendants solicited three investments from Dr. Nakamura over a course of several years, which are worth millions of dollars: (1) an initial equity investment in Sunday Group; (2) a digital currency-based investment whereby Dr. Nakamura purchased the right to receive "M-Tokens"

After initial motion practice, discovery commenced in earnest in 2023. From the fall of 2023 through 2024, Dr. Nakamura and Defendants served requests for production ("RFPs"), responded and objected to those requests, and met and conferred as necessary. *See* Declaration of Claire Mena ("Mena Decl.") ¶¶ 4-5. On July 30, 2024, the parties met and conferred regarding the status of document discovery. *Id.* ¶ 8. Dr. Nakamura identified certain apparently missing document sources in Defendants' productions (e.g., Slack messages, WhatsApp messages). *Id.* at Ex. A. On September 3, 2024, Dr. Nakamura followed up by letter regarding the missing document sources and other perceived deficiencies in Defendants' productions (e.g., missing financial statements), and requested confirmation that Defendants had preserved and collected all communications. *Id.* at Ex. B. On September 27, 2024, Dr. Nakamura followed up by letter again, reiterating the same document deficiency concerns. *Id.* at Ex. C.

On October 4 and October 7, 2024, the parties met and conferred further. *Id*. ¶ 12. Dr. Nakamura identified additional missing document sources in Defendants' productions (e.g., documents and communications from custodians other than Defendants James Pack and Todd Mitsuishi) and requested confirmation that Defendants had preserved and collected all responsive communications. *Id*. at Ex. D. At a subsequent November 5, 2024, meet-and-confer, Defendants represented that a text message production would occur before Thanksgiving. *Id*. ¶ 14. That did not occur. Defendants moved the agreed upon deadline two more times, and it was not until the Court-approved January 15, 2025 deadline that text messages were produced. *Id*. ¶ 14. Significantly, however, the text message productions did not include Signal messaging application communications, which Defendants have confirmed exist. *Id*. ¶ 19. Then, on January 29, 2025, Defendants belatedly produced email correspondence from custodians other than Defendants James Pack and Todd Mitsuishi, having finally acknowledged that they have an obligation to identify and produce from all custodians with responsive documents, not just the

---

from a "Mobby Project" Sunday Group claimed to be developing; and (3) another digital currency-based investment in which defendants Todd Mitsuishi and SGI Trust promised to place funds with a third-party digital currency "mining" operation, BitClub Network ("BCN"), that turned out to be a Ponzi scheme. *Id.* ¶¶ 3-5, 20-33.

individual Defendants. Even that production fell short—for example, emails from certain Sunday Group email domain accounts likely to contain responsive communications, including Stephanie Vaughan's and Ken Hashimoto's (key leaders of the Mobby project that is at issue in this litigation) were not produced.

On January 29, 2025—two weeks after the Court approved deadline by which Defendants had agreed to complete their document production—the parties met and conferred one final time regarding the status of document discovery. *Id*. ¶ 18. In that discussion, Defendants said they were attempting to collect and produce responsive Signal messages. *Id*. ¶ 19. But when asked when those messages would be produced, Defendants were unwilling to provide a deadline, agreeing only to target three weeks from the date of the meet-and-confer—another date that has now come and gone. *Id*. Additionally, Defendants confirmed that they had not collected, and did not intend to produce, communications from Sunday Group personnel—whether they be co-founders, employees, advisors, or contractors—to the extent that those individuals used non-company accounts (e.g., @hotmail.com) to communicate regarding Sunday Group business. *Id*. ¶ 20. This is despite Defendants' apparent acknowledgement in initial disclosures that those personnel are material witnesses in this case and that some or all should be contacted through Defendants' counsel. Examples include: Karl Roller (known Sunday Group co-founder); Dr. Leonard Kleinrock (alleged advisor to Sunday Group); and others listed as persons with knowledge relevant to Defendants' claims or defenses.[3] *Id*. Defendants further contend they have no obligation to produce from accounts other than the Sunday Group email domain. *Id*. ¶ 21. Still more troubling, at the meet-and-confer, Defendants appeared to confirm that no custodians other

---

[3] In addition to James Pack and Todd Mitsuishi, the following individuals are listed on Sunday Group's initial disclosures as individuals who were employees, independent contractors, advisors, or co-founders: Vassilis Zikas, Muhammad Ishaq, Gilad Canes, Alyona Karmazin, Yun Lu, Dimitris Starantzis, Richard Carback, Bilel Naeem, John Andrews, Zane Karl, Rafail Ostrovsky, Yehuda Afek, Steve Crocker, Leonard Kleinrock, Fred Almeida, Petros Drineas, Michele Ciampi, Ken Hashimoto, Karl Roller, and Crystal Lilly. Defendants apparently did not collect responsive texts or communications from other messaging applications from any of these individuals. Additionally, Defendants apparently did not collect emails from the following individuals, as they did not have a Sunday Group email address: Fred Almeida, Petros Drineas, Michele Ciampi, Ken Hashimoto, Karl Roller, and Crystal Lilly. Finally, there appear to be individuals who are not listed on the initial disclosures, like Stephanie Vaughan, who are in possession of responsive communications as well.

than Defendants James Pack and Todd Mitsuishi ever received a preservation notice in this case. *Id*. ¶ 23.

### III. LEGAL STANDARD

A party seeking discovery may move to compel when the opposing party has refused to provide the information requested. *Sanhueza v. Lincoln Tech. Inst., Inc.*, 2014 WL 6485797, at *1 (D. Nev. Nov. 18, 2014). The burden is then on the party resisting discovery to show it should not be required to produce the requested discovery. *F.D.I.C. v. Lewis*, 2014 WL 7330931, at *2 (D. Nev. Dec. 18, 2014) ("The party resisting discovery carries the heavy burden of showing why discovery should be denied."). "Specifically, the party opposing discovery bears the burden of showing the discovery is overly broad and [un]duly burdensome, or not relevant." *Painters Joint Comm. v. Employee Painters Trust Health & Welfare Fund*, 2011 WL 4573349, at *5 (D. Nev. Sept. 29, 2011), *order corrected on reconsideration sub nom. Painters Joint Comm. v. J.L. Wallco, Inc.*, 2011 WL 5854714 (D. Nev. Nov. 21, 2011) (same). "Broad assertions of harm are insufficient to meet that burden." *Jones v. Zimmer*, 2014 WL 3725873, at *1 (D. Nev. July 28, 2014). Instead, the "objecting party must specifically detail the reasons why each request is irrelevant and may not rely on boilerplate, generalized, conclusory, or speculative arguments." *F.T.C. v. AMG Servs., Inc.*, 291 F.R.D. 544, 553 (D. Nev. 2013) (internal citation and quotation omitted). In addition, relevance for purposes of discovery "is considerably broader than relevance for trial purposes." *Id*. at 552.

### IV. ARGUMENT

#### A. The Court Should Order Immediate Production of Signal Messages

Defendants' continued disregard of discovery deadlines is unacceptable. Discovery "schedules [are set] to permit the court and the parties to deal with cases in a thorough and orderly manner." *Wong v. Regents of Univ. of Cal.*, 410 F.3d 1052, 1062 (9th Cir. 2005); *see also D.S. v. Clark County School Dist.*, 2023 WL 5748720, at *2 n.4 (D. Nev. 2023) (explaining that decades of Ninth Circuit precedent reflect that case management deadlines established in the scheduling order must be taken seriously) (citing *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1027 (9th Cir. 2006) ("The use of orders establishing a firm discovery cutoff date is

commonplace, and has impacts generally helpful to the orderly progress of litigation, so that the enforcement of such an order should come as a surprise to no one"); *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 610 (9th Cir. 1992) ("A scheduling order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril . . . Disregard of the order would undermine the court's ability to control its docket, disrupt the agreed-upon course of the litigation, and reward the indolent and the cavalier.") (internal citation and quotation omitted). Efforts to "foster the efficient treatment and resolution of cases" are only successful "if the deadlines are taken seriously by the parties." *Wong*, 410 F.3d at 1060.

    For text and messaging application communications, Dr. Nakamura's counsel identified the absence of text messages from Defendants' production in **July of last year**, and thus they have had more than half a year to collect such data. Since then, Defendants have repeatedly set and missed document production deadlines, including (1) a before-Thanksgiving deadline, (2) a "December 13, but December 20 is more realistic" deadline, and (3) the Court-approved January 15, 2025 deadline. Opposing counsel has provided a host of pretexts for delays in document collections and productions: international travel, "stuff" with family and a child in boarding school, issues with document review vendors (Mena Decl. ¶ 18), and even astonishingly an admitted lack of "focus[]" on this case (*Id*. at Ex. D). And, when Defendants finally produced text messages, they still failed to produce Signal messages and have refused to commit to a deadline for that production. The continual delay and "[d]isruption to the schedule of the court and other parties . . . is not harmless." *Wong*, 410 F.3d at 1062. Text messages recently produced are highly relevant to the merits of the case, and the same can be expected for Signal messages. Indeed, Signal is known for end-to-end encryption, suggesting that Sunday Group personnel may have used it so mask their communications, and that they may have purposefully chosen to wait until the very end of document discovery (and beyond) to produce the most important communications in the case.[4] This delay has significantly imperiled the case schedule in this matter, given that the

---

[4] For example, in a text message thread between Mr. Pack and Mr. Mitsuishi, Mr. Pack texts Mr. Mitsuishi about ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ Mena Decl. at Ex. G.

PLAINTIFF'S MOTION TO COMPEL      5      Case No.: 2:22-cv-01324-MMD-EJY

close of fact discovery is merely weeks away. The Court should order that Defendants immediately produce all responsive Signal messages.

### B. The Court Should Order Immediate Production of All Responsive Business Communications

Defendants have also failed to produce documents from key witnesses in this matter. Specifically, Defendants have not produced communications from Stephanie Vaughan's or Ken Hashimoto's Sunday Group email accounts (sv@sundaygroupinc.com); and (kh@sundaygroupinc.com). This is perplexing, given that communications Defendants *have* produced indicate Ms. Vaughan's involvement in relevant matters and given that Defendants' initial disclosures concede that Mr. Hashimoto has "information and knowledge about the Mobby Project, including information related to finances and accounting." Mena Decl. at Ex. N.

Under Federal Rule of Civil Procedure 34(a), parties are required to produce relevant documents and other physical items within the possession, custody, or control of the party upon whom the request is served. This rule is broadly construed. *Linksmart Wireless Tech., LLC v. Caesars Entertainment Corp.*, 2020 WL 4431498, at *3 (D. Nev. July 31, 2020). "[P]ossession, custody or control" can mean actual possession, custody, or control or "the legal right to obtain the documents on demand." *F.D.I.C. v. Halpern*, 271 F.R.D. 191, 193 (D. Nev. 2010). Thus, a party may be ordered to produce documents and communications in the possession of a non-party entity if that party has a legal right to obtain those documents and communications or has control over the entity who is in possession of the documents and communications. *Linksmart Wireless Tech.*, 2020 WL 4431498, at *3. Defendants have a duty "to identify, locate and maintain, information that is relevant to specific, predictable, and identifiable litigation." *Small v. Univ. Med. Center*, 2018 WL 3795238, at *59 (D. Nev. Aug. 9, 2018) (quoting *Apple Inc. v. Samsung Elecs. Co.*, 881 F. Supp. 2d 1132, 1136 (N.D. Cal. 2012)). All responsive communications from Ms. Vaughan and Mr. Hashimoto should be produced forthwith.

In addition, Defendants have adopted the indefensible position that they do not have possession, custody, or control of non-Sunday Group domain accounts used for Sunday Group business. At the parties' most recent meet-and-confer, counsel for Defendants claimed: "Not our

devices. We can't get them." Mena Decl. ¶ 22. That is not the law. "[A]n employer has 'control' of a current employee and the legal right to obtain business communications from a current employee *regardless* of whether the communication is located on a personal" device or personal account. *See, e.g.*, *In re Skanska USA Civil Southeast Inc.*, 2021 WL 4953239, at *3 (N.D. Fla. Aug. 5, 2021) (emphasis in original) (explaining that the company had an obligation to produce responsive information, regardless of whether the information resided on the employee's personal device); *Ho v. Marathon Pat. Grp., Inc.*, 2021 WL 8532066, at *4 (C.D. Cal. Nov. 22, 2021) (explaining that an employer "has control . . . if it has the legal right to obtain [communications] upon demand") (internal citation and quotation omitted); *Kellgren v. Petco Animal Supplies, Inc.*, 2016 WL 4097521, at *4 (S.D. Cal. May 26, 2016) (no "rationale as to why text messages should be treated any differently than email communications"). Courts also routinely order employers to request responsive communications from *former* employees and independent contractors. *See, e.g.*, *State Farm Mut. Auto. Ins. Co. v. Precious Physical Therapy, Inc.*, 2020 WL 7056039, at *6-7 (E.D. Mich. Dec. 2, 2020).

*State Farm* is on point. There, the defendants argued that they could not identify accounts and produce emails because they did not own or control their current and former employee and independent contractor accounts. *Id*. at *3-6. The court rejected that argument, ordering the production of business emails residing on personal devices which were in the possession of current and former employees and independent contractors. *Id*. at *6-7. The court noted the absence of evidence suggesting the defendants lacked the ability to obtain communications; defendants did not assert, for example, that they asked their personnel to produce documents, and the individuals refused. *Id*. Where communications ostensibly did not exist, the court ordered defendants to certify as much in writing. *Id*.

As in *State Farm*, Defendants "cannot shuck [their] discovery obligations simply because [they] did not issue" cell phones or email addresses to employees, independent contractors, advisors, or others such as Sunday Group co-founder Karl Roller. *In re Skanska*, 2021 WL 4953239, at *4. Numerous documents produced to date evidence these individuals' use of non-Sunday Group email domains (e.g., @hotmail.com; @cs.ucla.edu) (Mena Decl. ¶ 20) and text and

other messaging applications for Sunday Group business (*Id*. at Ex. D). And Defendants have not represented, and cannot represent, that they lack the ability to obtain these communications. Among other reasons they cannot do so, consulting agreements produced to date explicitly state that ████████████████████████████████████████████████ Mena Decl. at Ex. K; *cf. Weston v. DocuSign, Inc.*, 2024 WL 3446924, at *2 (N.D. Cal. July 15, 2024) (explaining that the employer had control, noting that employee agreements mandated that if employees used personal devices to transmit company information, they would have "to make a prompt and reasonable search for such information" and that the employer "may have access to such personal [devices] . . . to retrieve it"); *Waymo LLC v. Uber Techs., Inc.*, 2017 WL 2972806, at *2 (N.D. Cal. July 12, 2017) (finding that the company must produce documents from officers' personal email accounts where they conducted business through those accounts).

The Court should order Defendants to collect and produce documents from all accounts used for Sunday Group business.

### C. The Court Should Require a Factual Proffer Concerning Document Preservation

Finally, a party has the duty to preserve evidence when litigation is "pending or reasonably foreseeable." *Small*, 2018 WL 3795238, at *58 (*citing Micron Tech., Inc. v. Rambus Inc.*, 645 F.3d 1311, 1320 (Fed. Cir. 2011)). This is an objective standard: the court considers "whether a reasonable party in the same factual circumstances would have reasonably foreseen litigation." *Id*. Once the party is put on notice, the party has a "duty to preserve evidence which it knows, or reasonably should know, is relevant to the claim or potential litigation." *Id*. This duty "includes an obligation to identify, locate and maintain, information that is relevant to specific, predictable, and identifiable litigation." *Id*. at *59 (quoting *Apple*, 881 F. Supp. 2d at 1136). Information within the possession of employees or "key players" falls within this duty. *Id*. "Once a duty to preserve is triggered, a party has a duty to suspend any existing policies relating to deleting or destroying files and preserve all relevant documents related to litigation." *Id*. at *60.

As evidenced by the discussion at the parties' most recent meet-and-confer, Defendants have failed to take steps to preserve evidence relevant to this litigation. Defendants represented

that they sent a preservation notice to James Pack and Todd Mitsuishi, on some unspecified date, but that they did not at any point send a preservation notice *to any other custodian*, not even to the custodians with Sunday Group email domain accounts from which Defendants eventually conceded they must produce. And, even more troubling, James Pack and Todd Mitsuishi may have not abided by this preservation notice: certain communications Defendants have produced indicate that Todd Mitsuishi and James Pack may have attempted to delete their text messages. Mena Decl. ¶ 24, Exs. Q-T. Under the circumstances, the Court should order counsel for Defendants to submit a declaration from all Sunday Group personnel known to have communicated on responsive topics, confirming that communications have not been deleted or identifying the deleted communications.

V.   **CONCLUSION**

In sum, the Court should order immediate production of Signal messages and all email, text, and messaging application communications from all Sunday Group personnel known or believed to have communicated regarding Sunday Group business, and should order that non-spoliation declarations be submitted.

Respectfully submitted,

Dated: February 21, 2025

**FENWICK & WEST LLP**

By: /s/ *Felix S. Lee*
    Felix S. Lee

*and*

**FENNEMORE CRAIG, P.C.**

By: /s/ *John D. Tennert III*
    John D. Tennert III (Nevada Bar No. 11728)

*Attorneys for Plaintiff and Counterdefendant Tetsuya Nakamura*

**CERTIFICATION OF COMPLIANCE WITH FRCP 26(C) AND LOCAL RULE 26-7(B)**

Pursuant to Federal Rule of Civil Procedure 26(c) and Local Rule 26-7(b), the undersigned counsel for Dr. Nakamura certifies that the parties have met and conferred on the issues that Dr. Nakamura addresses in this motion, and has made a good faith effort to resolve this discovery dispute. These efforts are described in the declaration of Claire Mena filed concurrently with this motion. After personal consultation and sincere effort to do so, the parties are unable to resolve the matter without Court action.

By: /s/ *Felix S. Lee*
Felix S. Lee

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the February 21, 2025, he caused a copy of the foregoing Motion to Compel Documents Responsive to Discovery Requests to be served electronically to counsel of record for all parties who have appeared in this action through the Court's CM/ECF system (as all such counsel appear to be registered CM/ECF users).

By: /s/ *Felix S. Lee*
    Felix S. Lee