# EXHIBIT D

F. Lee October 10, 2024 Letter to T. Pack



801 California Street
Mountain View, CA 94041

650.988.8500
Fenwick.com

Felix S. Lee
flee@fenwick.com  |  650.335.7123

October 10, 2024

**VIA EMAIL**

Timothy R. Pack, Esq.
Aaron D. Lebenta, Esq.
Clyde Snow & Sessions, PC
One Utah Center, Thirteenth Floor
201 South Main Street
Salt Lake City, UT 84111

Re:    *Tetsuya Nakamura v. Sunday Group Inc. et al.*, No. 22-cv-01324-MMD-EJY

Dear Tim and Aaron:

We write to memorialize our October 4 and October 7, 2024 telephonic meet-and-confer discussions, wherein we followed up on numerous deficiencies we identified in your document production in our letters sent on August 20, 2024 and September 30, 2024. As set forth below, in numerous instances you unable to provide any explanation for why responsive documents had not yet been produced. As we have been signaling to you for months, if these issues are not resolved to our satisfaction immediately – including but not limited to production of certain key categories of documents in the next few days – we will have no choice but to seek court intervention.

**Missing Document Sources**

*Custodians.* On our October 4 and 7 meet-and-confer calls, you stated that your clients only collected potentially responsive documents from two custodians: James Pack and Todd Mitsuishi. We reminded you of your obligation to identify all custodians reasonably likely to have responsive documents, and to collect and produce those responsive documents. You confirmed that you will determine an appropriately broad list of custodians and that we can supplement the list if needed.

*Email.*  We have identified the below email domains and addresses for Mr. Pack and Mr. Mitsuishi which appear to have been used for responsive communications. In our August 20, 2024 letter and September 3, 2024 letter, we asked you to confirm that you and your clients have preserved, collected, and produced all responsive documents from each of these email accounts.

When we met and conferred on October 4 and October 7, you explained that you had not informed your clients of this request until the week of October 4, 2024 – *over six weeks after we sent our August 20, 2024 letter*, because you had been busy with other matters and were

Timothy R. Pack, Esq.
October 10, 2024
Page 2


not "focusing" on this case. You stated that your clients understand that the production of these documents cannot "take months and months to complete" and that your clients understand this is "serious."

Additionally, when we met and conferred on October 4 and October 7, Mr. Lebenta specifically stated that he provided your clients with a preservation notice. You were unable to confirm, however, whether these emails had been preserved.

Please confirm the date that your clients received a preservation notice, and that you and your clients have preserved, collected, and will produce all responsive documents from each of these email accounts.

1. James Pack

    1. jpack29@gmail.com
    2. jpack29@yahoo.com
    3. jpack29@protonmail.com
    4. jp@mobby.ai
    5. jpack29@outlook.com
    6. jp@dagtech.info
    7. jpack29@me.com
    8. jpack@iorthopedicsinc.com
    9. jp@sundaygroupinc.com
    10. jp@mobby.ai

2. Todd Mitsuishi

    1. toddmits@gmail.com
    2. toddmits@protonmail.com
    3. tm@sundaygroupinc.com
    4. tm@sundayholdings.com
    5. tm@mobby.ai

*Slack.* We have identified correspondence referring to Slack workspaces, channels, and messaging apparently containing responsive communications. For example, DEF 006698 refers to the following Slack channels: mobbyoffice.slack.com; mobbiai.slack.com; sundaygrouphq.slack.com; and mobbyai.slack.com. Additional references to Slack communications can be found in DEF 017397, DEF 004458, and DEF 006671. We have not seen any Slack communications in documents your clients have produced thus far.

Timothy R. Pack, Esq.
October 10, 2024
Page 3

In our August 20, 2024 letter and our September 3, 2024 letter, we asked you to confirm that you and your clients have preserved and collected all responsive Slack materials and to let us know when you plan to produce them.

When we met and conferred on October 4 and October 7, you indicated that your clients were searching for and self-collecting Slack messages, but you were unable to confirm the collection process or whether the agreed upon search terms were being applied to the messages. You were also unable to confirm the Slack channels in your clients' possession. You indicated that if it is more efficient to export Slack messages, upload messages to a document review platform, and apply the agreed upon search terms, that you do not believe you "have an objection," that it "might be quicker," and that you will look into it.

Further, you stated that you did not know the company's preservation period for Slack or whether the Slack channels had been preserved and collected.

Please confirm the process you and your clients are using to collect Slack messages, the list of Slack channels in your clients' possession, and when you plan to make a Slack production. Additionally, please confirm the preservation period for Slack and that the Slack channels have been preserved.

_Text and Messaging Application Communications_. We also see indications that text messages and WhatsApp and other messaging applications were used for responsive communications. For example, the April 8, 2024 draft report of Brendan D. Saltaformaggio (the "Saltaformaggio Report"), which you previously disclosed to us, encloses screenshots of SMS messages from Mr. Mitsuishi's smartphone, which Mr. Mitsuishi apparently exchanged with Joe Abel, relevant to claims arising from Dr. Nakamura's BitClub Network ("BCN") investment. Neither those messages nor other text messages appear in your clients' document productions. The Saltaformaggio Report also includes screenshots of Mr. Mitsuishi's Chatwork conversation logs relevant to the BCN investment. As explained in our September 3, 2024 letter, Chatwork communications do not appear in your clients' document productions. In fact, we see little if any message traffic at all in your clients' document productions, despite clear indications that text and messaging applications such as WhatsApp were used for responsive communications. In our August 20, 2024 letter and our September 3, 2024 letter, we asked you to confirm that your clients have preserved and collected all responsive messaging traffic and to let us know when you plan to produce those materials.

When we met and conferred on October 4 and October 7, you explained that your clients are doing a self-collection for text messages. Thus, because your clients are doing a self-collection, rather than an export of the text messages to review on a document review platform, your clients' process entails searching through the text messages with a broader set of search terms

Timothy R. Pack, Esq.
October 10, 2024
Page 4

than those agreed upon because of their inability to apply Boolean terms when searching through text messages on a phone. For example, if an agreed upon search term was "Mobby w/5 development" your clients would search for messages that hit on the term "Mobby."

With regard to Chatwork, you explained that you do not believe that Chatwork has an export function, and that Mr. Mitsuishi does not have access to Chatwork messages. You explained that it is Mr. Imachi's account and that he has access to the messages. However, based on the messages that you identified in Dr. Saltaformaggio's report, Mr. Mitsuishi appears to be a party to the Chatwork messages.

You referred to the below image as "First Screenshot of Todd Mitsuishi's Chat Log with Mahito Kon and Ryu Imachi."



You referred to the below image as "Second Screenshot of Todd Mitsuishi's Chat Log with Mahito Kon and Ryu Imachi."

Timothy R. Pack, Esq.
October 10, 2024
Page 5



With regard to messages with Mr. Abel, you stated that your clients are self-collecting
messages with Mr. Abel and that the collection can be completed "relatively quickly."

Further, when we met and conferred on October 4 and October 7, you created a distinction
between employees of Sunday Group and independent contractors. With regard to employees,
you stated that you do not know if employees use company mobile devices or the mobile
device policy regarding Sunday Group's access to employee mobile devices. You indicated that
you would collect responsive messages residing with employees. With regard to independent
contractors, you stated that you assume that counsel does not have the right to collect
messages on mobile devices. You stated that you would confirm your clients' mobile device
policy.

Please confirm that your clients have preserved and collected all responsive messaging traffic
and let us know when you plan to produce those materials. Further, please confirm that you
intend to rely on this independent contractor versus employee distinction in refusing to collect
responsive communications from independent contractors' mobile devices.

*Network/Cloud Drive Materials.* We have identified in your clients' productions almost no
materials which resided on network/cloud drives (e.g., Google Drive), as opposed to
communications exchanged by email. In our August 20, 2024 and September 9, 2024 letters, we
asked you to confirm that your clients have preserved and collected those materials and to let
us know when you plan to produce them.

Timothy R. Pack, Esq.
October 10, 2024
Page 6

When we met and conferred on October 4 and October 7, you stated that you did not previously collect documents from Google Drive. You stated that had not been aware of responsive documents on the drive, but are now aware of such responsive documents (you did not provide any explanation for why you previously were unaware of responsive documents in these locations). You also were unable to confirm whether your clients use any other network/cloud drives.

Please confirm that your clients have preserved and collected materials on Google Drive, as well as any other network/cloud drives, and let us know when you plan to produce them.

*Medical Records.* We have identified one, and only one, responsive medical document (DEF 023540) in your clients' productions. When we met and conferred on July 31, 2024, you indicated that Mr. Mitsuishi is in the process of obtaining additional responsive medical records. We have yet to receive the additional medical records. When we met and conferred on October 4 and October 7, you stated that you are "trying to kick [Mr. Mitsuishi] in the pants to get it done." Please let us know when you plan to produce additional medical records.

**Other Deficiencies**

We have identified other deficiencies in your clients' document productions as well.

*RFP No. 5: Sunday Group Financial Statements and Related Records.* Request 5 of our September 8, 2023 requests for production ("RFPs") to each defendant in this matter seeks documents "reflecting or relating to Sunday Group's financial status, including without limitation capitalization tables, financial statements, balance sheets, income statements, profit and loss statements, and cashflow statements, from the date of the SUBSCRIPTION AGREEMENT to the present . . . ." Sunday Group's, and your other clients', October 23, 2023 responses and objections ("R&Os") to the RFPs indicated willingness to meet and confer and produce documents responsive to this request notwithstanding boilerplate objections asserted.

We met and conferred on November 29, 2023, and in that discussion, you said you take this request to seek "the financial statements that are set out in the Subscription Agreement," you indicated that you "have not seen those yet but hopefully will be getting them soon," and you agreed to produced responsive documents. Yet it has been almost a year since the November 29, 2023 meet-and-confer call, and your clients' document productions do not appear to include responsive documents. We see no capitalization tables, financial statements, or similar records. Nor do we see Sunday Group bank account statements, which are equally responsive to this request.

Timothy R. Pack, Esq.
October 10, 2024
Page 7

When we met and conferred on October 4 and October 7, you stated that you plan to produce financial statements and related records. You could not confirm a timeline and explained that the CFO "is tied up." You noted that you consider the production of financial statements and related records to be a "priority." We explained that in addition to Sunday Group's discovery obligations, the company's failure to provide Dr. Nakamura financial statements is a breach of the April 19, 2015 Series AA Preferred Stock Subscription Agreement (the "Subscription Agreement"). *See* Subscription Agreement ¶ 4(a)(ii). It is one of the contractual breaches upon which Dr. Nakamura has asserted claims in this matter. We further explained the inconsistency of your clients' second amended answer and counterclaims filed July 12, 2024, as it denies the allegation that Defendants failed to provide Dr. Nakamura access to financial statements to which he is entitled. ECF No. 84 ¶ 38.

Please confirm that you and your clients have preserved and collected these materials. Also, given that these financial statement documents should be readily available, please produce them by this **Tuesday, October 15**, or we will seek immediate Court intervention.

*RFP No. 8: Documents Concerning Issuance or Exchange-Listing of M-Tokens.* Request 8 of our RFPs seeks documents "relating to DR. NAKAMURA'S investment in MOBBY, including without limitation DOCUMENTS concerning the issuance or exchange-listing of 'M-Tokens.'" Your clients' second amended answer and counterclaims filed July 12, 2024 alleges that "Sunday Group and its partner in the development of the Mobby Project, DAG Technologies, Inc. ('DAG'), have substantially completed the development of the Mobby Project and are preparing to distribute M-Tokens to the M-Token purchasers." ECF No. 84 ¶ 5. Recent Sunday Group correspondence with investors has stated the same. Your clients' R&Os asserted boilerplate objections to this request but indicated willingness to meet and confer and produce responsive documents.

We met and conferred on November 29, 2023, and you agreed to provide documents relating to your clients' progress or attempts to issue M-Tokens or to list M-Tokens on an exchange, including internal communications or communications with exchanges. Yet, your clients' document productions do not appear to include any recent internal or external correspondence pertaining to exchange listing, or any documents reflecting the recent purported substantial completion of the Mobby project and imminent issuance of M-Tokens. In our September 9, 2024 letter, we noted that if activity was recent, you may need to recollect materials from your clients on these issues.

We met and conferred on October 4 and 7, and you stated that our "concerns are well taken." You further stated that your clients have told you that the token is minted and that you believe a "token allocation agreement" will be sent out. We explained to you that we would expect to

Timothy R. Pack, Esq.
October 10, 2024
Page 8

see other documents including documents regarding listing the token on an exchange, minting the token, and releasing the token.

Please confirm that you and your clients have preserved and collected these materials and let us know when you plan to produce them.

*RFP No. 11: Mobby Project Financial Statements and Related Records.* Request 11 of our RFPs seeks documents "reflecting or relating to MOBBY financial status, including without limitation balance sheets, income statements, profit and loss statements, and cashflow statements from January 1, 2017 to the present . . . ." Here too, your clients' R&Os objected in boilerplate fashion but indicated willingness to meet and confer and produce responsive documents.

We met and conferred on November 29, 2023, and you confirmed your intention to search for and produce responsive documents, saying, "my position is that it should be produced." Yet, your clients' document productions do not appear to include responsive documents. We have not seen balance sheets, income statements, profit and loss statements, cashflow statements, or bank account records.

We met and conferred on October 4 and 7, and you once again indicated your willingness to produce these documents.

Please confirm that you and your clients have preserved and collected these materials. Again, given that these financial statement documents should be readily available, please produce them by this **Tuesday, October 15**, or we will seek immediate Court intervention.

*RFP No. 13: Documents Concerning Transfer or Use of Digital Currency Invested in Mobby.* Request 13 of our RFPs seeks documents reflecting or relating to the transfer or use of digital currency or other capital Dr. Nakamura invested in the Mobby project. Your clients' R&Os again objected in boilerplate fashion but indicated willingness to meet and confer and produce responsive documents, which the R&Os said you were searching for.

We met and conferred on November 29, 2023, and you did not assert any specific objection to producing the requested documents, but rather, indicated intention to do so. Yet, we have not seen responsive documents in your clients' productions, such as documents identifying the digital wallets that currently hold the digital currency invested.

When we met and conferred on October 4 and 7, you indicated that a balance sheet could demonstrate the transfer or use of digital currency invested in Mobby. You further stated that you can produce wallet addresses to trace the transfer or use of digital currency invested in Mobby.

Timothy R. Pack, Esq.
October 10, 2024
Page 9

Please confirm that you and your clients have preserved and collected these documents. And given that these documents should be readily available, please produce them by this **Tuesday, October 15**, or we will seek immediate Court intervention.

*RFP No. 16: Documents Concerning Relationship between SGI Trust and Other Defendants.*
Request 16 of our RFPs seeks documents relating to the relationship between SGI Trust and any other defendant. The R&Os for SGI Trust and Mr. Mitsuishi objected in boilerplate fashion to this request but indicated willingness to meet and confer and produce responsive documents, which the R&Os said your clients were searching for.

We met and conferred on November 29, 2023, and discussed Request 16 and the relationship, if any, between SGI Trust and other defendants. You stated a belief that Mr. Mitsuishi was trustee of SGI Trust, a private trust. You said you had seen a formation document for SGI Trust which would be produced and that you would search for additional responsive documents (e.g., documents reflecting amendments or beneficiary designations). Yet, your clients' productions do not appear to include any documents concerning SGI Trust's formation or its relationship with Mr. Mitsuishi, not even a certificate of trust.

We then met and conferred on October 4 and 7, and you stated that you should have formation documents and trust agreements "in the next few days." You confirmed that SGI Trust is a standalone entity that does not have any connection to Sunday Group, and that it does not have a corporate email or document repository. You also indicated that you believed that all corporate SGI Trust documents were in the possession of Mr. Mitsuishi.

Please confirm that you and your clients have preserved and collected these documents. Since you stated that such documents could be ready "in the next few days", please produce them by this **Tuesday, October 15**, or we will seek immediate Court intervention.

*RFP No. 21: Documents Concerning Transfer or Use of Digital Currency for BCN Investment.*
Request 21 of our RFPs seeks documents reflecting or relating to the transfer or use of digital currency or other capital Dr. Nakamura invested pursuant to the Cloud Mining Agreement. The R&Os for SGI Trust and Todd Mitsuishi objected in boilerplate fashion but indicated willingness to meet and confer and produce responsive documents, which the R&Os said your clients were searching for.

We met and conferred on November 29, 2023, and you did not assert any specific objection to producing the requested contracts, but rather, indicated intention to do so. Your clients' productions appeared to include one document responsive to this request (DEF 002117), which references a spreadsheet that was not produced. In our September 3, 2024 letter, we

Timothy R. Pack, Esq.
October 10, 2024
Page 10

requested that you produce that spreadsheet and any additional responsive documents but you have yet to do so.

We met and conferred on October 4 and 7, and discussed DEF 002117. At first, you took the position that Ken Hashimoto, the sender of the Google document, is not an employee and that Sunday Group does not have access to his files. You indicated that you believe he is an independent contractor. You took the position that documents residing with independent contractors are not within the possession, custody, or control of Sunday Group. We explained that Mr. Hashimoto's email address, KH@sundaygroupinc.com, appears to be a Sunday Group domain. You subsequently confirmed that DEF 002117 and other responsive Google Drive documents, will be produced, so long as they are in Sunday Group's control.

Please produce that spreadsheet and any additional responsive documents. The spreadsheet at a minimum should be produced by **Tuesday, October 15**, or we will seek immediate Court intervention.

*RFP No. 23: Documents Concerning Distributions from BCN Investment.* Request 23 of our RFPs seeks documents reflecting or relating to any distributions Dr. Nakamura received pursuant to the Cloud Mining Agreement. The R&Os for SGI Trust and Mr. Mitsuishi objected in boilerplate fashion but indicated willingness to meet and confer and produce responsive documents, which the R&Os said your clients were searching for.

We met and conferred on November 29, 2023, and you noted your intent to procure and disclose an expert's forensic report of financial transfers made. As explained above, your clients provided the Saltaformaggio Report, which enclosed screenshots of SMS messages and Chatwork conversation logs.

As explained above, when we met and conferred on October 4 and 7, you explained that you do not believe that Chatwork has an export function and that Mr. Mitsuishi does not have access to Chatwork messages. You explained that it is Mr. Imachi's account and that he has access to the messages. However, based on the messages that you identified in Dr. Saltaformaggio's report, Mr. Mitsuishi appears to be a party to the Chatwork messages.

Please confirm that you and your clients have preserved, collected, and produced all SMS messages and Chatwork and other messaging application communications responsive to this request, along with any other responsive communications or documents. If all such documents have not been produced, confirm when those documents will be produced.

*RFP No. 33: Contracts with Token Purchasers.* Finally, Request 33 of our RFPs seeks "contracts with certain Token Investors" referred to in your clients' pleading, as since amended. Your

Timothy R. Pack, Esq.
October 10, 2024
Page 11

clients' R&Os again objected in boilerplate fashion but indicated willingness to meet and confer and produce responsive documents.

We met and conferred on November 29, 2023, and you did not assert any specific objection to producing the requested contracts, but rather, indicated intention to do so. Yet, we have not seen these contracts in your clients' productions.

We met and conferred on October 4 and 7, and explained that the request relates to documents concerning the tortious interference counterclaim. You stated that you would produce these documents.

Please confirm that you and your clients have preserved and collected these documents.  And given that these documents should be readily available, please produce them by this **Tuesday, October 15**, or we will seek immediate Court intervention.

* * *

In sum, we have identified above a variety of categories of documents that you have committed to producing for literally months, and which should be readily available.  We expect that all of these documents will be produced by **Tuesday, October 15**.  We have also asked for various information regarding your document production (e.g., which sources have been preserved and searched, which custodians are in the scope of collection etc.) and we also expect you to provide that information by the same date. We are also available to further meet and confer on any of these issues, though we will not accept any further delay given the extensive passage of time and significant efforts we have poured into meeting and conferring on your document production to date.

Sincerely,

FENWICK & WEST LLP

/s/ *Felix S. Lee*

Felix S. Lee