Mark L. Smith (NV Bar #14762)
msmith@sffirm.com
Jacob L. Fonnesbeck (NV Bar #11961)
jfonnesbeck@sffirm.com
**SF FIRM, LLP**
6345 South Pecos Road, Suite 202
Las Vegas, NV 89120
Telephone: (725) 666-8701

Aaron D. Lebenta (UT Bar # 10180)
adl@clydesnow.com
Timothy R. Pack (UT Bar # 12193)
trp@clydesnow.com
**CLYDE SNOW & SESSIONS PC**
201 South Main Street, Suite 2200
Salt Lake City, UT 84111
Telephone: (801) 322-2516

James E. Magleby (UT Bar # 7247)
magleby@mcpc.law
**MAGLEBY CATAXINOS PC**
141 W. Pierpont Avenue
Salt Lake City, Utah 84101-3605
Telephone: 801.359.9000

*Attorneys for Defendants*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| TETSUYA NAKAMURA, an individual,<br><br>Plaintiff,<br><br>v.<br><br>SUNDAY GROUP INCORPORATED, a Delaware corporation, *et al.*,<br><br>Defendants. | Case No.: 2:22-cv-01324-MMD-EJY<br><br>PUBLIC VERSION WITH REDACTIONS (ECF NO. 104)<br><br><br>**DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL DOCUMENTS RESPONSIVE TO DISCOVERY REQUESTS** |

Defendants Sunday Group Incorporated, James Pack, Toshiki (Todd) Mitsuishi, and SGI Trust (collectively, "Defendants"), submit this Memorandum in Opposition to Plaintiff/Counterclaim Defendant Tetsuya Nakamura's ("Nakamura") Motion to Compel Documents Responsive to Discovery Requests (the "Motion" or "MTC").

1

## TABLE OF CONTENTS

I.      INTRODUCTION ......................................................................................... 1

II.     STATEMENT OF FACTS ........................................................................ 5

        A.      Nakamura's Document Request No. 2 and Sunday Group's Objections ............... 5

        B.      Nakamura has not served a discovery request for Mr. Hashimoto and Ms. Vaughan's emails and has never requested that Defendants meet and confer on the scope of the emails to be produced .................................................................. 6

        C.      Defendants have acted in good faith and produced a significant amount of documents; Nakamura has failed to comply with his discovery obligations and produced only a minimal amount of documents...................................................... 8

        D.      Status of Signal Message Production.......................................................... 8

III.    LEGAL STANDARD................................................................................ 9

IV.     ARGUMENT ......................................................................................... 10

        A.      The Motion is Moot as to Ms. Vaughan's Emails and the Signal Messages........ 10

        B.      Plaintiff's Motion to Compel Emails from Mr. Hashimoto's Sunday Group Email Accounts Should be Denied ......................................................... 10

        C.      The Court Should Deny Nakamura's Motion to Compel Documents from Personal Email Accounts and Devices of Sunday Group Consultants and Employees......................................................................................... 14

        D.      Nakamura's Request for a Factual Proffer Regarding Document Preservation Should be Denied ......................................................................... 20

V.      CONCLUSION........................................................................................ 23

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL**

1

<u>**TABLE OF AUTHORITIES**</u>

2

Page(s)

3

<u>**Cases**</u>

4

*Agarwal v. Oregon Mut. Ins. Co.*,
2013 WL 211093 (D. Nev. Jan. 18, 2013)....................................................................... 5

5

*City of Colton v. Am. Promotional Events, Inc.*,
2011 WL 13223947 (C.D. Cal. Oct. 6, 2011) ............................................................... 21

6

*In re Citric Acid Litigation*,
191 F.3d 1090 (9th Cir. 1999) .............................................................................. passim

7

*In re Datacom Sys., Inc.*,
No. 14-11096 ABL, 2014 WL 10077651 (Bankr. D. Nev. July 25, 2014) ................... 5

8

*Iovino v. Am Tr. Fin. Servs., Inc.*,
2024 WL 4696161 (D. Nev. Nov. 6, 2024) ............................................... 5, 11, 14, 20

9

*Matthew Enter., Inc. v. Chrysler Grp. LLC*,
No. 13-CV-04236-BLF, 2015 WL 8482256 (N.D. Cal. Dec. 10, 2015) ...... 16, 17, 19

10

*Nakanelua v. United Pub. Workers, AFSCME, Loc. 646, AFL-CIO*,
2021 WL 6498865 (D. Haw. Nov. 2, 2021) ................................................. 17, 18, 19

11

*Nugget Hydroelectric, L.P. v. Pac. Gas & Elec. Co.*,
981 F.2d 429 (9th Cir. 1992) ......................................................................................... 9

12

*Oracle Am., Inc. v. Hewlett Packard Enter. Co.*,
328 F.R.D. 543 (N.D. Cal. 2018)........................................................................... 21, 22

13

*Rivera v. NIBCO, Inc.*,
364 F.3d 1057 (9th Cir. 2004) ............................................................................... 10, 15

14

*Sorosky v. Burroughs Corp.*,
826 F.2d 794 (9th Cir. 1987) ....................................................................................... 11

15

*State Farm Mut. Auto. Ins. Co. v. Precious Physical Therapy, Inc.*,
2020 WL 7056039 (E.D. Mich. Dec. 2, 2020) ...................................................... 19, 20

16

*Taylor v. Aria Resort & Casino*, LLC,
2013 WL 2355462 (D. Nev. May 29, 2013).................................................................. 5

17

*U.S. v. Int'l Union of Petroleum & Indus. Workers, AFL-CIO*,
870 F.2d 1450 (9th Cir. 1989) ..................................................................................... 16

18

*Ubiquiti Networks, Inc. v. Kozumi USA Corp.*,
2013 WL 1767960 (N.D. Cal. Apr. 15, 2013) ....................................................... 17, 19

19

*Waymo LLC v. Uber Techs., Inc.*,
2017 WL 2972806 (N.D. Cal. July 12, 2017) .............................................................. 19

20

*Weston v. DocuSign, Inc.*,
2024 WL 3446924 (N.D. Cal. July 15, 2024)........................................................ 18, 19

21

*Williams v. Garrett*,
2024 WL 1675445 (D. Nev. Apr. 18, 2024) ...................................................... 11, 13, 14

22

23

<u>**Rules**</u>

24

D. Nev. CIV LR 26 .............................................................................................. 3, 11, 14
Fed. R. Civ. P. 26 ............................................................................................................. 9
Fed. R. Civ. P. 37 ........................................................................................................... 22

25

26

27

28

## I.  **INTRODUCTION**

Sunday Group develops and manages cutting edge blockchain related software and systems through a team of scientists, technologists and experienced managers. [Second Amended Counterclaim, ¶ 9, Dkt. 84, "SACC]. Defendant James Pack and Defendant/Counterclaimant Mitsuishi are directors and officers of Sunday Group.  Sunday Group also has a Board of Advisors, whose Chairman is Dr. Leonard Kleinrock, of the University of California, Los Angeles,. [*Id.,* ¶ 11]. Since 2017, Sunday Group's main focus has been on the "Mobby Project," which aims to develop a layer-one blockchain system and its representative digital asset token based on academic, peer-reviewed research by the Mobby Project team, which includes world renowned and award-winning professors and specialists in the fields of computer science, mathematics, artificial intelligence, and cryptography. [*Id.*, ¶ 9]. In general terms, the Mobby Project's mission is to create a better internet experience, that is more secure, transparent, and trustworthy.

Sunday Group offered interested buyers ("Token Purchasers") to essentially pre-purchase a right to acquire a future token, named "Mobby" or "M-Tokens," once the Mobby Project was complete, for a price of $10,000 USD per unit (i.e., $10,000 USD purchased a right to acquire 1 unit of M-Tokens in the future).  [*Id.,* ¶¶ 10, 22].

Giving Nakamura's claims the benefit of doubts for purposes of analyzing relevance, Nakamura's claims arise from three transactions, and related (but incorrect) assumptions.  First, in April 2015 Nakamura made an equity investment of $350,000 in Sunday Group itself, pursuant to a Series AA Preferred Stock Subscription Agreement. [Complaint, ¶¶ 20-21, Dkt. 1]. Second, in "late 2017," Nakamura alleges he entered into a Memorandum of Understanding to Participate in Private Sale (the "Mobby MOU") with Sunday Group to pre-purchase a right to acquire 200 units of M-Tokens – at a price of $ 2 million USD – upon completion of development, and that his method of payment for the purchase was to transfer 4,228.14 units of a cryptocurrency known as

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL**

Etherium ("ETH") – which, at the exchange rate at the time, was worth $ 2 million USD. [*Id.*, ¶¶ 25-27]. Nakamura complains that the M-Tokens have not yet been delivered, and thus asserts he was induced into the Mobby MOU by four purported misrepresentations made by Mitsuishi. [*Id.*] Third, in "early 2018," Nakamura – a sophisticated businessperson and billionaire – alleges that he "invested [in] a third party [cryptocurrency] mining company, BitClub Network ('BCN')," and transferred 545.455 bitcoin to certain "digital wallet addresses," on the premise that the funds would, in turn, be invested in BCN." [*Id.*, ¶¶ 29-30]. Nakamura complains that Defendants Mitsuishi and SGI Trust had not "been able to substantiate that they had in fact made the contractually obligated payment to BCN."[1]  [*Id.* , ¶ 32]. In sum, the relevant time period for these transactions is April 2015, "late 2017," and "early 2018," and Nakamura's allegations rely in large part upon purported misrepresentations before these events.

Despite the narrow scope of Nakamura's allegations, Defendants have vigorously responded to Nakamura's ever-increasing demand for more and more and more documents, at great expense and time. The overbreadth of Nakamura's requests is demonstrated by his unsupportable and overbroad position that virtually every document and communication regarding the "Mobby Project" and Sunday Group's business is relevant and must be searched for and produced, even though his claims are far more narrow in scope. Although lodging valid objections, Defendants have in good faith attempted to accommodate Nakamura's excessive demands, having produced nearly 30,000 separate documents and communications (over 67,000 pages) thus far, and incurring over $19,000 in charges from e-discovery vendors, plus far more in legal fees to review the documents. Nakamura, by contrast, has produced just over 1,600 *pages* of documents. The

---

[1] Nakamura's assumption was that Mitsuishi / SGI trust simply kept the bitcoin, but Defendants have provided proof directly to Plaintiff showing that assumption to be incorrect. Notably, Plaintiff has stopped asserting that Mitsuishi/SGI kept the bitcoin.

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL**

discovery burdens in this case have essentially been one-sided.

Despite these already disproportionate productions and burdens, Nakamura now seeks to compel production of an additional three categories of documents: (1) "Signal" text messages from Defendant Todd Mitsuishi; (2) production of emails from Sunday Group domain addresses of two Sunday Group representatives (Stephanie Vaughan & Ken Hashimoto); and (3) communications (emails/text messages) that may be located in the *personal* email accounts (such as "Hotmail" or "Gmail") or on the *personal* mobile phones that are owned by current and even former Sunday Group employees and consultants (none of whom even allegedly communicated with Nakamura). Nakamura's Motion should be denied.

Two of the categories are – or are expected to be – moot before the Court considers the Motion. First, Ms. Vaughan's Sunday Group domain emails (from sv@sundaygroup.inc.com and sv@mobby.ai.com) were produced by March 7, 2025. Second, Defendants have agreed to produce the Signal messages, but unexpected technical delays and obstacles[2] in the retrieval and production of those messages have slowed the process and forced Defendants to rely upon a manual-screenshot process. Production is expected to be complete on or before March 28, 2025. However, Defendants object to producing two categories of discovery.

Defendants object to the wholesale production of Mr. Hashimoto's Sunday Group domain emails (kh@sundaygroupinc.com), for a number of reasons. Nakamura has not actually served a discovery request for those communications, a fact emphasized by his failure to identify the discovery requests and responses at issue in violation of D. Nevada CIV LR 26-6(b). Rather,

---

[2] Defendants' counsel were originally informed that Signal messages could not be recovered and searched like other text messages. Then a vendor represented that it could recover Signal messages from an image of a mobile phone in a searchable format. Then, that same vendor later informed Defendants' counsel that they were unsuccessful in downloading the Signal messages.. [Declaration of Aaron D. Lebenta, ¶¶16-17, "Lebenta Decl.," filed concurrently].

Nakamura has only requested communications to and from Sunday Group officers James Pack and Todd Mitsuishi. Moreover, Nakamura has not carried his burden to show email communications with Hashimoto, Sunday Group's accountant, are relevant to Nakamura's claims. As noted, Nakamura's claims focus on the narrow periods of April 2015, "early 2017," and "late 2018," and alleged misrepresentations by Mitsuishi. Tellingly, Nakamura has not articulated which types of Hashimoto's emails he is seeking or how they are relevant and proportional. There are of course no allegations that Mr. Hashimoto made a false statements to Nakamura, and emails related to Mr. Hashimoto *after* the alleged misrepresentations occurred have no relevance to Nakamura's claims.[3] Moreover, because Mr. Hashimoto is a native Japanese speaker, the burden of even reviewing his emails is substantial and unwarranted, particularly without a showing of relevance.

Next, Sunday Group ardently objects to Nakamura's request that Sunday Group collect and produce documents that may be located in *personal* emails and devices of current and former Sunday Group employees and contractors because, *inter alia,* Sunday Group does not have possession, custody and control over these personal e-mail accounts and devices.

Finally, the Motion should be denied to the extent it seeks to compel Defendants to provide a factual proffer from all "Sunday Group personnel" regarding preservation because, *inter alia,* Nakamura has not identified any discovery request calling for that information, has mischaracterized Defendants' objections and statements, and has failed to make a threshold showing of when Defendants' duty to preserve evidence arose or that information has been lost.

---

[3] Nakamura has claims related to an alleged failure to produce Sunday Group's financial statements under a Series AA Preferred Stock Subscription Agreement. [Complaint, ¶ 38]. Perhaps Nakamura made the assumption that financial statements did not exist, but this assumption has also proven false as Sunday Group has produced those financial statements to Nakamura. Similar to his claims related to the Mobby Project, these claims do not establish the relevance of their request for every email involving Ken Hashimoto that may discuss Sunday Group's business or finances, writ large.

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## II.    STATEMENT OF FACTS

### A.    Nakamura's Document Request No. 2 and Sunday Group's Objections.

Pursuant to local rule LR 26-6(b), Nakamura's motion was required "to set forth in full the text of the discovery originally sought. . . ." *Id*.  Nakamura failed to comply with the rule, giving the Court no information about the specific request, and leaving Defendants' counsel to guess.[4] Nonetheless, and wanting to get to the merits, Defendants offer that Nakamura might be relying on his Document Request No. 2, reproduced as follows (along with Defendants' Response):

**REQUEST NO. 2:** All COMMUNICATIONS to or from any of the individuals listed in DEFENDANTS' <u>Initial Disclosures dated July 18, 2023</u>, related to DR. NAKAMURA, the SUBSCRIPTION AGREEMENT, MOBBY, the MOBBY MOU, BCN, the CLOUD MINING AGREEMENT, or otherwise relating to the allegations in the Complaint or the allegations in DEFENDANTS' amended answer and counterclaims (ECF No. 59).

**RESPONSE TO REQUEST NO. 2:** Defendant incorporates by reference each of the general objections set forth above as if fully set forth herein. Defendant further objects to this request on the grounds that it is overbroad and unduly burdensome because Plaintiff requests communications between any party, for any time period, and related to no less than nine (9) topics, including related to all allegations in the Complaint. This is the type of "blockbuster" request that imposes an undue burden on Defendant, particularly when read cumulatively with Plaintiff's forty-two other requests, in that Plaintiff seeks production of virtually "all" DOCUMENTS, not only relating to the entire case, but which collectively exceed the scope of the case. *See In re Datacom Sys., Inc.*, No. 14-11096 ABL, 2014 WL 10077651, at *16 (Bankr. D. Nev. July 25, 2014) ("A party is entitled to reasonable, relevant discovery; however, the use of a blockbuster production request calling for all possible documents relating to the entire case pending before the Court does impose an undue burden.").

---

[4] The Court could deny the MTC on this basis alone, because "[w]ithout the complete text of the requests and responses, if any, '[t]he Court cannot determine that particular responses ... are improper.'" *Iovino v. Am Tr. Fin. Servs., Inc.*, 2024 WL 4696161, at *3 (D. Nev. Nov. 6, 2024) (citation omitted).  *See also*, *Agarwal v. Oregon Mut. Ins. Co.*, 2013 WL 211093, at *3 (D. Nev. Jan. 18, 2013) (denying motion to compel, in part, for failure to comply with [the local rule] because "judges are not like pigs, hunting for truffles buried in briefs"). "Practically speaking, the failure to comply with [the local rule] improperly shifts the burden to the Court to sift through and root for issues that should be clear on the face of a discovery motion." *Taylor v. Aria Resort & Casino*, LLC, 2013 WL 2355462, at *4 (D. Nev. May 29, 2013).

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Defendant further objects to this Request to the extent it seeks information protected by the attorney-client privilege, attorney work-product doctrine, joint defense privilege, common interest exception, duty of confidentiality, or any other applicable privilege, immunity, doctrine or protection. Thus, if any non-privileged responsive documents exists, Defendant will produce such documents pursuant to the controlling protective order.

Defendant further objects that this Request seeks material that is neither relevant to the subject matter of the action nor reasonably calculated to lead to the discovery of admissible evidence. Defendant further objects to this Request to the extent that it seeks materials not within Defendant's custody or control. Subject to and without waiving the foregoing objections, Defendant is willing to meet and confer with Plaintiff to discuss a reasonable scope of production of documents responsive to this Request.

[Defendants' Response to Nakamura's RFP No. 2, attached as Exhibit 1 to the Lebenta Decl.].

Defendants' Initial Disclosures, dated July 18, 2023, do not list either Ms. Vaughan or Mr. Hashimoto. [Lebenta Decl., ¶ 4, and Ex. 2 thereto].

In January 2024, the parties met and conferred and exchanged correspondence regarding Nakamura's Document Request No 2. [Lebenta Decl., ¶ 6]. Those discussions resulted in Defendants agreeing to search the email accounts for Mitsuishi and Pack by applying forty-five (45) search terms to the universe of communications. [*Id*.] Nakamura never submitted a Rule 34 request seeking communications from any other individuals. [*Id*.]

**B.    Nakamura has not served a discovery request for Mr. Hashimoto and Ms. Vaughan's emails and has never requested that Defendants meet and confer on the scope of the emails to be produced.**

In October of 2024, Nakamura raised the issue of collecting emails from additional custodians with a Sunday Group email address. [*Id.,* ¶ 7]. Defendants raised objections, and the parties had several meet-and-confer discussions regarding the issue. [*Id.*] Ultimately, Defendants asked Nakamura to propose a list of Sunday Group email custodians to search for Defendants' consideration. [*Id.*] In an email dated December 16, 2024, Nakamura provided a list of custodians to Defendants; Ms. Vaughan's name was <u>not</u> included. [*Id.*]

1

2

3       Following a meet and confer call with Nakamura in January 2025, Defendants agreed to

4   produce emails from certain other custodians that that have "sundaygroupinc.com" email accounts.

5   [*Id*., ¶ 8]. In an email dated February 4, 2025, Defendants provided Nakamura with a list of

6   fourteen (14) individuals with Sunday Group email accounts that they would search for responsive

7   documents; neither Ms. Vaughan's nor Mr. Hashimoto's names were on the list. [*Id*., ¶ 9]. Subject

8   to their objections, including as to relevance, overbreadth and proportionality, Defendants

9   collected and produced responsive documents from sundaygroupinc.com email addresses of the

10   custodians listed in their February 4, 2025 email. [*Id.*]

11       Despite the prior communications, and production of many thousands of emails, Nakamura

12   pushed for Sunday Group emails for Mr. Hashimoto and Ms. Vaughan, as custodians, on February

13   10, 2025.[5] [*Id.* at ¶ 10]. In a good faith effort to resolve the dispute regarding Ms. Vaughan, and

14   subject to their objections, Defendants have voluntarily produced her email communications from

15   her @sundaygroupinc.com and @mobby.ai email accounts. [*Id.* ¶ 11].

16       Although Nakamura has never served a discovery request for Mr. Hashimoto's e-mail,

17   Defendants attempted to meet and confer with Nakamura on this issue, requesting that Plaintiff

18   provide search terms and share in the costs of translation. Nakamura refused. [*Id*., ¶¶ 12-13].

19   Nakamura has also not claimed he has communicated with Hashimoto, or otherwise articulated

20   how emails from Sunday Group's accountant are relevant, let alone narrowed the scope. [*Id.*]

---

[5] Well prior, Defendants had already produced a significant number of documents involving Ms. Vaughan's or Mr. Hashimoto's Sunday Group email addresses: (a) for Ms. Vaughan, 539 documents that hit on "sv@sundaygroup.com," including 412 emails "to" or "from" that email address; and (b) for Mr. Hashimoto, 1,376 documents that hit on "kh@sundaygroup.com," including 256 emails "to" or "from" that email address. [Lebenta Decl., at ¶ 10]. Nakamura's assertion that Defendants have "not produced communications from Stephanie Vaughan's and Ken Hashimoto's Sunday Group email accounts," is thus inaccurate. [Nakamura MTC, at 6].

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL**

**C.    Defendants have acted in good faith and produced a significant amount of documents; Nakamura has failed to comply with his discovery obligations and produced only a minimal amount of documents.**

Nakamura's document requests to Defendants in general, and now their informal requests aimed at Mr. Hashimoto and Ms. Vaughan's emails specifically, are exceedingly overbroad. But despite the overbreadth of Nakamura's requests, Defendants have acted in good faith to provide a tremendous amount of information and documents to Nakamura. To date, Defendants have produced over 29,500 individual documents and communications which consist of over 67,400 pages. [Lebenta Decl., ¶ 14.] Defendants have incurred substantial costs in connection with their efforts to review and produce documents to Nakamura, in the tens of thousands of dollars in attorney fees and at least $19,000 in charges from e-discovery vendors. [*Id.*]

In total, through March 12, 2025, Nakamura had produced a mere 342 documents consisting of 1,549 pages of information, and a mere 60 additional pages on March 13, 2025. [*Id.*, ¶ 15]. The disparity between the documents produced by Defendants and Nakamura not only confirms the overbreadth and burdensome nature of Nakamura's requests, but also that he has not attempted to meet the standards he insists on applying to Defendants.

**D.    Status of Signal Message Production.**

For some of his communications, Mr. Mitsuishi began using a text message program called "Signal," a secure and encrypted communication platform.[6] Because of the encryption, it has been exceedingly difficult to export messages to a usable and searchable format.  [Lebenta Decl., ¶ 16.] The alternative is to take manual screenshots of the messages – which is not only time consuming, but also cannot be searched for keywords. [*Id.*] Defendants' counsel have been searching for a solution to this frustrating problem, at times believing there was a solution that would allow the

---

[6] https://signal.org

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL**

1   download of the messages, and then learning such was not the case. [*Id.*] But Defendants have
2   always committed to reviewing and producing the Signal messages.[7] [*Id.*].
3       Most recently, Defendants provided Mr. Mitsuishi's phone to a well-known e-discovery
4   company based on their indication that they had advanced software that should be able to download
5   and retrieve the Signal messages from his phone. [*Id., ¶* 17]. After time, expense, and delay, the
6   vendor recently informed counsel that they could not retrieve the messages. [*Id.*] As a result, Mr.
7   Mitsuishi has begun the long and arduous process of capturing screen shots of his responsive
8   Signal messages. [*Id.*] Barring any additional unforeseen complications, Defendants anticipate that
9   they will complete the collection and production of the Signal messages by March 28, 2025. [*Id.*]

10  ### III.    LEGAL STANDARD

11      "Parties may obtain discovery regarding any nonprivileged matter that is <u>relevant</u> to any
12  party's claim or defense and <u>proportional</u> to the needs of the case, considering the importance of
13  the issues at stake in the action, the amount in controversy, the parties' relative access to relevant
14  information, the parties' resources, the importance of the discovery in resolving the issue, and
15  whether the burden or benefit of the proposed discovery outweighs its likely benefit." Fed. R. Civ.
16  P. 26(b)(1) (emphasis added). When a party moves to compel disputed discovery, the moving party
17  must make an initial showing of relevancy. *See, e.g., Nugget Hydroelectric, L.P. v. Pac. Gas &*

---

[7] The Court should disregard Nakamura's baseless and unsupported statement that "Sunday Group personnel may have used [Signal] to mask their communications," or that Defendants "purposefully" delayed producing the "most important communications in this case." [Nakamura MTC, at 5]. Nakamura's lone example of a purportedly "important" communication is misleading – it is a text message from July 2017 between Defendants James Pack and Todd Mitsuishi where they discuss a "new opportunity" that is "probably a scam." [*See id.; see also* Ex. G to Declaration of Claire Mena, Dkt. 100-1, "Mena Decl.]. Nakamura quotes this text, with no context, to insinuate that it relates to a claim in this case. But it does not relate to Nakamura, the Mobby Project, the mining investment, or any other issue in this case. And, Nakamura has made no effort to establish any relation or other relevance of the text to any of the issues here, let alone that Defendants purposefully delayed producing this irrelevant communication.

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL**

*Elec. Co.*, 981 F.2d 429, 438–39 (9th Cir. 1992). Although relevance is broadly defined, it does have boundaries. *Garneau v. City of Seattle*, 147. F.3d 802, 812 (9th Cir. 1998); *Rivera v. NIBCO, Inc.*, 364 F.3d 1057,1072 (9th Cir. 2004)("[d]istrict courts need not condone the use of discovery to engage in 'fishing expeditions'") (citation omitted).

## IV.    ARGUMENT

### A.    The Motion is Moot as to Ms. Vaughan's Emails and the Signal Messages.

As discussed above, Defendants have not opposed Nakamura's request for Ms. Vaughan's emails, although they could have, nor the Signal messages. While Defendants maintain their objections to the relevance,  overbreadth and burden of Nakamura's Document Request No. 2, and while Nakamura has never served a request for Ms. Vaughan's emails, Defendants have already produced additional emails for Ms. Vaughan, in a good faith effort to resolve the dispute. Further, Defendants have committed to providing the Signal messages. Thus, the Motion is, or is expected to be, moot as to these categories of communications.

### B.    Plaintiff's Motion to Compel Emails from Mr. Hashimoto's Sunday Group Email Accounts Should be Denied.

Defendants have produced thousands of emails to Nakamura, from at least fifteen custodians. [Lebenta Decl., ¶ 14]. Nevertheless, Nakamura claims Defendants have failed to produce documents from "key witnesses" because, purportedly, they have "not produced communications from…Ken Hashimoto's Sunday Group email account[]." [Nakamura MTC, 6].

In the first instance, Nakamura's assertion that Hashimoto (or Vaughan for that matter) are "key witnesses" is belied by the fact that he did not actually serve a discovery request that included communications from these witnesses. Further, it is not accurate to say that Defendants had not produced communications from Hashimoto's Sunday Group e-mail account, when in fact there are 1,376 "hits" for "kh@sundaygroup.com" in the productions already made, (*see* fn. 5*, supra*). A

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL**

1    cynic might conclude that Nakamura is attempting to generate discovery disputes, but has to reach

2    ever farther afield, as Defendants have produced tens of thousands of documents.

3          But beyond these facts, Nakamura has failed to make any effort to comply with the most

4    basic requirements of a Rule 26(b) motion to compel. Nakamura has the burden to establish that

5    the requested discovery is both relevant and proportional. *See Williams v. Garrett*, 2024 WL

6    1675445, at *1 (D. Nev. Apr. 18, 2024). In addition, Nakamura must show: "(1) which discovery

7    requests are the subject of the motion to compel; (2) which of the responses are disputed; (3) why

8    he believes the response is deficient; (4) why defendants' objections are not justified; and (5) why

9    the information he seeks through discovery is relevant to the prosecution of this action." *Id*.

10         As to proportionality, "[i]n a motion to compel a request for production, the moving party

11   is required to make a 'specific showing that the burdens of production would be minimal and that

12   the requested documents would lead to relevant evidence.'" *Id.*, at *3 (quoting *Sorosky v.

13   Burroughs Corp.,* 826 F.2d 794, 805 (9th Cir. 1987)). Nakamura has not met these requirements.

14         First, as discussed above, Nakamura has not identified which request is at issue as required

15   by D. Nev. CIV LR 26-6(b). *See id.; accord Williams,* 2024 WL 1675445, at *1. This alone is

16   grounds to deny a motion to compel, because "'it improperly shifts the burden to the Court to sift

17   through and root for issues that should be clear on the face of a discovery motion.'" *Iovino v. Am

18   Tr. Fin. Servs., Inc.,* 2024 WL 4696161, at *3 (D. Nev. Nov. 6, 2024) (citations omitted). But since

19   Document Request No. 2 is the only request that seeks "COMMUNICATIONS," Defendants

20   proceed on the assumption that Nakamura meant to identify this request.

21         Second, Nakamura has not established that he has made a request for Mr. Hashimoto's

22   emails. Document Request No. 2 requests communications from individuals listed in Sunday

23   Group's July 18, 2023 Initial Disclosures. [Lebenta Decl., ¶ 3, Ex. 1]. Hashimoto is not listed in

the referenced Disclosures. [*Id.*, ¶ 4]. Accordingly, there is no pending obligation to provide his communications. As a result, Nakamura has failed to establish elements 1 and 2 above (which responses are disputed and why Nakamura believes the response is deficient).

Third, Nakamura has not attempted to explain why Defendants' objections are not justified and why he thinks he is entitled to all of Mr. Hashimoto's emails.

Fourth, and most importantly, Nakamura does not even attempt to carry his burden to establish the relevance or proportionality of his request. The only analysis he offers is to characterize Mr. Hashimoto as a "key leader[] of the Mobby project that is at issue in this litigation." [Nakamura MTC, at 2]. This bald assertion does not equate to a specific showing of relevance to the actual claims and issues to justify the costs and burdens of further searching tens of thousands of additional emails. Moreover, the scope of Nakamura's claims are quite narrow.

Even though it is not Defendants' burden to disprove relevance, the lack of relevance is easily established. Nakamura's claims are based upon incorrect assumptions about alleged wrongdoing by Sunday Group and Mitsuishi, which took place in April 2015, "late 2017," and "early 2018." Nakamura does not allege any communications with Hashimoto, much less that Hashimoto made – or had anything to do with – the alleged misrepresentations. With these facts, the Plaintiff's burden to show relevance is even more important, and it is telling that Nakamura's counsel has made no effort to limit their efforts to any topic or time period, much less the relevant time frame. Rather, Nakamura has sought every single business communication related to the Mobby Project with no restriction as to scope or time.[8]

---

[8] This is not an exaggeration of the overbreadth of Nakamura's position. He has requested that Sunday Group search all documents and communications for the term "Mobby," along with 44 other search terms. [Lebenta Decl., ¶ 20]. While Defendants initially agreed to these terms as they related to searching Mr. Pack's and Mr. Mitsuishi's accounts, they have proven to be grossly overbroad in application, and certainly so when applied to all custodians – generating false hits on

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL**

The issues involving Hashimoto's Sunday Group emails are further complicated by the volume of emails, and the fact that he is a native Japanese speaker. Altogether, there are over 20,000 emails and related documents, comprising approximately 64,000 pages, in Hashimoto's Sunday Group email account, from July 2017 through February of 2025. [Lebenta Decl., ¶ 12]. Searching through 64,000 pages of emails simply because Nakamura now characterizes Mr. Hashimoto as a "key" witness will be exceedingly burdensome and costly. [*Id.*] Nakamura must articulate what specific emails he seeks and why such emails would be relevant to the claims.

In addition, thousands of emails and tens of thousands of pages are written in Japanese or a mix of Japanese and English. [*Id.*, ¶ 12] Defendants counsel is not aware of a US-based e-discovery platform that searches Japanese characters. [*Id.*] Thus, searching the Japanese language Hashimoto communications to see if they may have relevant and responsive information requires translation. [*Id.*] But translation is only the start – once translated, Defendants would then incur substantial additional costs in attorney time and processing fees to search an enormous database of documents, review the hits for relevance, and produce the responsive documents. [*Id.*]  This is unduly burdensome, particularly given Plaintiff's failure to articulate relevance.

"Courts are not required to compel disclosure that is 'unnecessarily burdensome and overly broad' with minimal chance of leading to relevant evidence." *Williams*, 2024 WL 1675445, at *2 (citation omitted). Because Nakamura has failed to carry his burden to make a specific showing that further emails from Hashimoto would lead to relevant evidence or would impose minimal burden, the Motion should be denied. *Id*. at *3.

---

irrelevant documents.  [*Id.*] Searching for "Mobby" in Sunday Group emails is the practical equivalent of asking Nakamura to search for the term "Nakamura" in his communications.

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL**

1
2

**C.     The Court Should Deny Nakamura's Motion to Compel Documents from Personal Email Accounts and Devices of Sunday Group Consultants and Employees.**

3
4
5
6
7
8
9

The overbreadth in Nakamura's discovery demands is highlighted by the fact that – in addition to the tens of thousands of pages of documents he has received from Defendants already – Nakamura now asks the Court to compel Defendants to collect and produce documents from the *personal* email accounts or devices owned by both current and *former* employees and *independent contractors/consultants* of Sunday Group.[9]  The Court should deny this extraordinary request for a number of reasons.

10
11
12
13
14

<u>First</u>, and once again, the Motion is procedurally deficient because Plaintiff has violated the local rule that requires a moving party to provide verbatim the specific request(s) for production at issue.  D. Nevada CIV LR 26-6(b); *see also Williams,* 2024 WL 1675445 at *1 (reproducing request and response).  This alone is grounds to deny the MTC.  *Iovino,* 2024 WL 4696161, at *3

15
16
17
18
19
20
21
22
23
24
25

<u>Second</u>, Nakamura has – once again – failed to make a "'specific showing that the burdens of production would be minimal and that the requested documents would lead to relevant evidence.'" *Williams,* 2024 WL 1675445, at *3 (citation omitted). Indeed, Nakamura has put forth even less effort to make the required "specific showing[s]" to compel Defendants to collect and produce document from personal emails or devices of contractors and employees, than he did with respect to Hashimoto's Sunday Group email addresses. Other than broadly and vaguely proclaiming that "Sunday Group personnel" may have used non-company email accounts, phones, texts or other messaging applications to communicate regarding "Sunday Group business," [Nakamura MTC, at 3, 6-7], Nakamura makes no attempt to explain with any specificity what

26
27
28

---

[9] Defendants have produced relevant and responsive documents, subject to their objections, contained in personal email accounts and devices, including from phones and computers, for the named defendants, such as Todd Mitsuishi and James Pack.  [Lebenta Decl., ¶ 19].

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL**

relevant evidence he is seeking or how collecting from personal email and devices may lead to relevant evidence. He has not even attempted to show that any of the individuals – whose privacy he seeks to invade – had anything to do with the agreements at issue or ever communicated with Nakamura. A general reference to "Sunday Group business" is so overbroad that it says virtually nothing as to what documents he is even seeking. To be certain, the whole business of Sunday Group is not at issue in this case, and even if an employee or consultant used a personal email account or phone to conduct some Sunday Group business from time to time, that alone does not satisfy the requisite specific showing that they have any information of relevance to any claim or issue in this case. Rather, it is apparent that what Nakamura is asking the Court to do is to order Defendants to embark on an intrusive fishing expedition into the private communication platforms of nonparties, just because they happen to be current and former employees and consultants of Sunday Group. *See Rivera v. NIBCO, Inc.,* 364 F.3d 1057, 1072 (9th Cir. 2004) ("[d]istrict courts need not condone the use of discovery to engage in 'fishing expeditions'").

Third, although it is not Defendants' obligation to show their burden when Plaintiff has not met his initial burden, the requested relief is overwhelmingly burdensome and intrusive. Nakamura acknowledges that *Defendants do not own the accounts or phone/devices at issue.* Nor do Defendants have access to those accounts and devices, let alone possession, custody or control over them. To compel Defendants to collect and produce documents from these nonparty, *personal* emails and devices would therefore be an enormous burden on both the Defendants and on the nonparties and their privacy interests. Notably, Nakamura does not even suggest how Defendants would go about accomplishing the collection – should they ask nonparties to hand over their phones, e-mail passwords, and phone passwords?

Fourth, Nakamura has failed to carry his burden to prove Defendants have possession,

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL**

custody or control over in the *personal* e-mail accounts or personal devices of current or former consultants or employees of Sunday Group. Nakamura, as the party seeking the documents, has the burden of proving Defendants have possession, custody and control of the documents he seeks. *U.S. v. Int'l Union of Petroleum & Indus. Workers, AFL-CIO*, 870 F.2d 1450, 1452 (9th Cir. 1989).

Nakamura concedes – as he must – that that Defendants do not have actual possession of the personal property of its current or former employees or contractors, or that Defendants somehow possess the passwords to their personal accounts. Instead, he primarily relies on decisions from outside the Ninth Circuit to argue that Defendants have "control" over documents located in a personal email account or messaging applications on a phone if the employee or consultant used the account or device to conduct "Sunday Group business." [Nakamura MTC, at 6-7]. The Court should reject this oversimplified and incorrect view of control.

"'Control is defined as the legal right to obtain documents upon demand.'" *In re Citric Acid Litigation,* 191 F.3d 1090, 1107 (9th Cir. 1999) (citation omitted). "[T]he Ninth Circuit has explicitly rejected an invitation 'to define "control" in a manner that focuses on the party's practical ability to obtain the requested documents.'" *Matthew Enter., Inc. v. Chrysler Grp. LLC*, No. 13-CV-04236-BLF, 2015 WL 8482256, at *3–4 (N.D. Cal. Dec. 10, 2015) (quoting *Citric Acid,* 191 F.3d at 1107-08). In this Circuit, "[d]ocuments are not discoverable under Rule 34 if the entity [or individual] that holds them 'could legally – and without breaching any contract – continue to refuse to turn over such documents.'" *Id.* (quoting *Citric Acid,* 191 F.3d at 1108). "Ordering a party to produce documents that it does not have the legal right to obtain will oftentimes be futile, precisely because the party has no certain way of getting those documents." *Citric Acid,* 191 F.3d at 1108.

In *Matthew Enterprises*, the court relied on these principles to deny a motion to compel the

responding party to produce emails from personal accounts of its employees, even though "many of them use their personal accounts for business purposes" – the same argument made here. *See Matthew Enter.,* 2015 WL 8482256 at *3. The court rejected the moving party's reliance on an employee handbook that required employees to "keep internal information in the sole possession" of the employer as establishing control because it "does not create a legal right for [the responding party] to take back any information now stored in personal accounts." *Id.* at *4 (cleaned up). The court also observed that, even if it were to compel the responding party "to collect from its employees' personal accounts," it would be "'futile'" because the moving party had "not identified any authority under which [the responding party] could force employees to turn them over." *Id.* (quoting *Citric Acid,* 191 F.3d at 1108).

Similarly, in *Ubiquiti Networks, Inc. v. Kozumi USA Corp.,* the court relied on same these principles to deny a motion to compel responding party defendants to produce emails from a consultant's personal gmail address, even though the consultant used his gmail to do business for the responding parties. *Ubiquiti,* 2013 WL 1767960, at *1–3 (N.D. Cal. Apr. 15, 2013). The court held that neither the existence of an ongoing "consultant relationship" with the responding parties, nor the fact that the consultant used his personal gmail account to do business, were sufficient without a contract between the consultant and responding parties that would given them "legal control over emails within [the consultant's] possession" and allow the party employing the consultant to "legally compel [him] to produce the documents." *Id.* at *2-3.

In *Nakanelua v. United Pub. Workers, AFSCME, Loc. 646, AFL-CIO,* the court applied the same analysis and came to the same conclusion., rejecting a motion to compel the responding party defendants to "retrieve and produce" responsive emails in the personal accounts of individuals, regardless of whether they were "an officer, director or employee" of the responding parties. *See*

*Nakanelua,* 2021 WL 6498865, at *1–2 (D. Haw. Nov. 2, 2021). The court observed that "[n]othing before the Court establishes that any of these custodians are contractually or legally required to disclose their personal emails to [the responding parties]," and even if the moving party had established that each custodian was a fiduciary, the moving party did "not explain why such a fiduciary relationship would give [the responding party defendants] a legal right to custodians' personal emails." *Id.* at *2.

This Court should follow these well-reasoned decisions, rather than Nakamura's out-of-Circuit authority, to conclude that Nakamura has failed to carry his burden to show that Defendants' have a legal right of control over documents in the personnel email and devices of Sunday Group's employees and consultants. Just as in these cases, neither being an employee or consultant of Sunday Group, nor the assertion that some Sunday Group business may have been conducted from personal accounts, is sufficient evidence of control. And, Nakamura has failed to identify any contract that gives Defendants the "legal right to obtain documents **on demand**" from employees' or consultants' personal accounts. *Citric Acid,* 191 F.3d at 1107 (emphasis added).

Notably, one of the few cases from this Circuit that Nakamura cites, *Weston v. DocuSign, Inc.,* gives an example of the type of language that would give an employer the necessary right of control: employment agreements that mandate if employees use personal devices to transmit company information, they agree "to make a prompt and reasonable search for such information," and that the employee "may have access to such personal [devices] … to retrieve it." *Weston,* 2024 WL 3446924, *2 (N.D. Cal. July 15, 2024) (alteration brackets and ellipses in original) (internal quotations omitted) [cited in Nakamura MTC, at 8]. There is no language anywhere close to this in the Sunday Group Consulting Agreement that Nakamura submits with his MTC.

The best Plaintiff can do is point to a provision in one Consulting Agreement that states

1  that "███████████████████████████████████████████

2  ███████." [*See* Ex. K, ¶ 5, to the Mena Decl., filed under seal]. This language fails to establish

3  the necessary legal right of Sunday Group to obtain access to personal devices or accounts **on**

4  **demand**, unlike in *Weston*.  Further, it is clear that the plural term "████" was used deliberately

5  to apply to ████████████████████████████████████, and not all "████"

6  they may perform. Moreover, Plaintiff omits that the very next clause of the provision limits its

7  reach by stating, "███████████████████████████████████████

8  ███████████████████████████████████████████████

9  ███████." [*See id.*]. Even assuming the Consulting Agreement had any applicability to

10  the question of control over personal email and devices (it does not), such personal accounts and

11  devices would reasonably fit within this proviso as "████████████████████████

12  ███████." [*Id.*]  Simply put, Nakamura has identified nothing that would allow Defendants

13  to compel Sunday Group's current or former employees/consultants to produce documents in their

14  personal email accounts or devices on demand; quite the opposite, the employees or consultants

15  'could legally – and without breaching any contract – continue to refuse to turn over such

16  documents.'"[10] *Citric Acid,* 191 F.3d at 1108. [11]

17  Finally, Defendants note that even in the case most heavily relied upon by Nakamura –

18  *State Farm Mut. Auto. Ins. Co. v. Precious Physical Therapy, Inc.*, 2020 WL 7056039, at *6 (E.D.

___

[10]   The Court should disregard Nakamura's perplexing assertion that "Defendants have not represented … that they lack the ability to obtain these communications." [Nakamura MTC at 7]. This is precisely what Defendants have represented, repeatedly, both orally in meet and confer conferences, and by email on February 12, 2025, where they also cited to *Nakanelua, Matthew Enterprises,* and *Ubiquiti.*  [Lebenta Decl., ¶ 18; *see also* Ex. U to the Mena Decl.].
[11]   Nakamura's citation to *Waymo LLC v. Uber Techs., Inc*., 2017 WL 2972806 (N.D. Cal. July°12, 2017), is not persuasive as this decision did not analyze the issue of control or discuss any contract provisions, contrary to the directions provided by the Ninth Circuit. *See id.* at *2.

Mich. Dec. 2, 2020) – the court did not compel the responding party to produce documents in *former* employees' or contractors' possession. *See id.* at *7. While the Court directed the responding party to ask its former employees and contractors for responsive documents, this is only because the responding party expressly stated it did not object to making such requests. Here, Defendants do object to undertaking this burden, given the vast amounts of documents already produced by Defendants (over 40X the number of pages that Nakamura has produced), the lack of relevance of these documents, the burden of production, and – not insignificantly – the almost certain conflict that will arise if Defendants request the *personal* passwords for phones and e-mail, or even worse request to take possession of the *personal property* of the affected individuals. Perhaps more importantly, the approach used by the *State Farm* court runs counter to the Ninth Circuit's observation in *Citric Acid,* that "[o]rdering a party to produce documents that it does not have the legal right to obtain will oftentimes be futile, precisely because the party has no certain way of getting those documents." *Citric Acid,* 191 F.3d at 1108.

### D.    Nakamura's Request for a Factual Proffer Regarding Document Preservation Should be Denied.

Lastly, Nakamura asks the Court to order "counsel for defendants to submit a declaration from all Sunday Group personnel known to have communicated on responsive topics, confirming that communications have not been deleted or identifying the deleted communications." [Nakamura MTC, at 8]. Nakamura has provided no justifiable basis for such an order.

First and foremost, as with the other categories in his motion to compel, Nakamura failed to carry his burden to identify which discovery requests would support the motion to compel such an undertaking, in violation of LR 26-6(b); *see also, e.g., Iovino,* 2024 WL 4696161, at *3. This failure is particularly egregious here, because Nakamura has not served any discovery requesting information on preservation. [Lebenta Decl., ¶ 21]. Instead, Nakamura's counsel has made

informal requests for this information to Defendants' counsel during meet and confer discussions. [*Id.*] Plaintiff has cited no authority that a party or his counsel must respond to informal requests for discovery made outside of the discovery procedures authorized by the Federal Rules of Civil Procedure, with the attendant protections, let alone that a party can compel a response to such an informal request. [*Id.*]

Furthermore, counsel for Defendants dispute Nakamura's unseemly characterization of defense counsel's statements in response to those informal requests. In response to questions from Nakamura's counsel on this topic, Defendants' counsel properly responded that such questions called for a disclosure of communications that were protected by the attorney-client privilege.[12] [*Id.*, ¶ 22]. This is consistent with the law. *See City of Colton v. Am. Promotional Events, Inc.,* 2011 WL 13223947, at *2 (C.D. Cal. Oct. 6, 2011) ("The content of litigation hold letters is protected by the attorney-client and work product privileges."). Defendants' counsel also repeated their position in a February 12, 2025 email to Nakamura's counsel, just prior to Nakamura filing this Motion. [*See* Lebenta Decl., ¶ 21; *see also* Ex. U to the Mena Decl.]. There is no basis to pierce any privilege, particularly based on a characterization of a conversation between counsel that is disputed, and when neither Defendants nor their counsel had any obligation to respond.

Additionally, in his Motion, Nakamura has not attempted to identify any date by which he contends Defendants' duty to preserve evidence arose. This is a threshold requirement to a duty to preserve. *See, e.g., Oracle Am., Inc. v. Hewlett Packard Enter. Co.,* 328 F.R.D. 543, 549 (N.D. Cal. 2018) ("'As soon as a potential claim is identified, a litigant is under a duty to preserve evidence which it knows or reasonably should know is relevant to the action.'" (citation omitted)).

---

[12] Demonstrating the near-absurdity of the request, neither Nakamura nor his counsel have provided any details of any preservation notices provided to Nakamura, much less a disclosure about their communications with him about spoliation and preservation. [Lebenta Decl., ¶ 21].

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL**

"However, 'a general apprehension of lawsuits [over a particular product] does not create a duty to preserve all documentation related to [that product].'" *Id.* (alterations in original) (citation omitted). "Rather, when 'litigation is "reasonably foreseeable" is a flexible fact-specific standard that allows a district court to exercise the discretion necessary to confront the myriad factual situations inherent in the spoliation inquiry.'" *Id.* (citation omitted).

By failing to identify when he believes the Defendants' duty to preserve arose in this case, Nakamura has also failed to establish that there was any information that should have been preserved that was lost to justify his request that the Court even start down this road of inquiry. Additionally, the text messages excerpts between Defendants Mitsuishi and Pack do not suggest information was lost, let alone that they "attempted to delete their text messages" – a serious accusation of intentional destruction of evidence that is wholly unsupported. [Nakamura MTC at 9]. Further, the text strings significantly predate the filing of the lawsuit, [*See* Ex. Q-T to the Mena Decl.], and the text string appearing at Exhibits S and T are from the fall of 2018 – four years before Nakamura filed suit.  Furthermore, these Exhibits do not show that any texts were lost. Nakamura has texts from both sides of the conversation, and there is no indication that there are any missing texts in that conversation. *Cf. Oracle,* 328 F.R.D. at 552 ("'Information is lost for purposes of Rule 37(e) only if it is irretrievable from another source, including other custodians.'" (additional citations omitted).[13] Indeed, it is unclear what Nakamura's complaint is here.

Nakamura has thus failed to provide any basis for the order he seeks regarding preservation. He has neither identified a discovery request calling for this information, nor demonstrated either

---

[13] The 2015 Advisory Committee's notes to Rule 37 also state that '[b]ecause electronically stored information often exists in multiple locations, loss from one source may often be harmless when substitute information can be found elsewhere.' Fed. R. Civ. P. 37(e), *advisory committee's note* to 2015 amendment.

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL**

the date Defendants' duty to preserve evidence arose in this case or that information has been lost to create even a preliminary inference of spoliation.

## V.    **CONCLUSION**

For the foregoing reasons, Nakamura's Motion to Compel is moot as to the Stephanie Vaughan and Signal Message issues, and should be denied in all other respects.

DATED: March 14, 2025                    MAGLEBY CATAXINOS, P.C.

                                         By: */s/James Magleby*
                                         James Magleby (UT Bar 7247)

                                         Attorneys for Defendants
                                         SUNDAY GROUP INCORPORATED,
                                         SGI TRUST, TOSHIKI (TODD) MITSUISHI
                                         AND JAMES PACK

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL**

1

2

## CERTIFICATE OF SERVICE

3    I hereby certify that on this 14th day of March, 2025, the foregoing DEFENDANTS'

4    OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL - PUBLIC VERSION WITH

5    REDACTIONS, was served on the parties by the Court's electronic filing system, via CM/ECF.

6                                    */s/ Sabrina Afridi*

7                                    Sabrina Afridi
                                     Legal Assistant
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL**