Mark L. Smith (NV Bar #14762)
msmith@sffirm.com
Jacob L. Fonnesbeck (NV Bar #11961)
jfonnesbeck@sffirm.com
**SF FIRM, LLP**
6345 South Pecos Road, Suite 202
Las Vegas, NV 89120
Telephone: (725) 666-8701

Aaron D. Lebenta (UT Bar # 10180)
adl@clydesnow.com
Timothy R. Pack (UT Bar # 12193)
trp@clydesnow.com
**CLYDE SNOW & SESSIONS PC**
201 South Main Street, Suite 2200
Salt Lake City, UT 84111
Telephone: (801) 322-2516

James E. Magleby (UT Bar # 7247)
magleby@mcpc.law
**MAGLEBY CATAXINOS PC**
141 W. Pierpont Avenue
Salt Lake City, Utah 84101-3605
Telephone: 801.359.9000

*Attorneys for Defendants*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| TETSUYA NAKAMURA, an individual,<br><br>Plaintiff,<br><br>v.<br><br>SUNDAY GROUP INCORPORATED, a Delaware corporation, *et al.*,<br><br>Defendants. | Case No.: 2:22-cv-01324-MMD-EJY<br><br>**DECLARATION OF AARON D. LEBENTA SUPPORTING DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL DOCUMENTS RESPONSIVE TO DISCOVERY REQUESTS** |

I, Aaron D. Lebenta declares as follows:

1. I am admitted *pro hac vice* to this Court, I am a partner at Clyde Snow & Sessions based in Salt Lake City, Utah, and I am counsel for Defendants in this matter.

2. I submit this declaration in support of Defendants' Memorandum in Opposition to Plaintiff Tetsuya Nakamura's ("Nakamura") Motion to Compel Documents Responsive to Discovery Requests.

3. Nakamura served requests for production ("RFPs") on each of the named defendants, Sunday Group Incorporated ("Sunday Group"), SGI Trust, Toshiki (Todd) Mitsuishi, and James Pack (collectively, "Defendants"), on September 8, 2023. Defendants served responses and objections to the RFPs on October 30, 2023. [*See* Defendants' Responses and Objections to RFPs, attached as Exhibit 1.]

4. Defendants submitted their Initial Disclosures on July 18, 2023. These disclosures do not list either Stephanie Vaughan or Ken Hashimoto. [*See* Defendants' Initial Disclosures attached as Exhibit 2.]

5. It is my understanding that Ms. Vaughan is a former consultant for Sunday Group, and that Mr. Hashimoto, who is also a consultant, also provides accounting services for Sunday Group.

6. In January 2024, the parties met and conferred and exchanged correspondence regarding Nakamura's Document Request No 2. Those discussions resulted in Defendants agreeing to search the email accounts for Mitsuishi and Pack by applying forty-five (45) search terms to the universe of communications. Nakamura never submitted a Rule 34 request seeking communications from any other individuals.

7. In October of 2024, Nakamura raised the issue of collecting emails from additional custodians with a Sunday Group email address. Defendants raised objections, and the parties had several meet-and-confer discussions regarding the issue. [*See generally* Declaration of Claire Mena, "Mena Decl.," Dkt. 100-1, at Ex. D, E and F]. Ultimately, Defendants asked

2   Case No.: 2:22-cv-01324-MMD EJY

**DECLARATION OF AARON D. LEBENTA SUPPORTING DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL DOCUMENTS RESPONSIVE TO DISCOVERY REQUESTS**
4905-1421-8536, v. 4

Nakamura to propose a list of Sunday Group email custodians to search for Defendants' consideration. In an email dated December 16, 2024, Nakamura provided a list of custodians to Defendants; Ms. Vaughan's name was <u>not</u> included. [*See* Ex. F to the Mena Decl., at 3-4].

8. Following a meet and confer call with Nakamura in January 2025, Defendants agreed to produce emails from certain other custodians that that have "@sundaygroupinc.com" email accounts.

9. In an email dated February 4, 2025, Defendants provided Nakamura with a list of fourteen (14) individuals with Sunday Group email accounts that they would search for responsive documents; neither Ms. Vaughan's nor Mr. Hashimoto's names were on the list. [February 4, 2025 email, attached as Exhibit 3.] Subject to their objections, including as to relevance, overbreadth and proportionality, Defendants collected and produced responsive documents from @sundaygroupinc.com email addresses of the custodians listed in their February 4, 2025 email.

10. Despite the prior communications, and production of many thousands of emails, Nakamura pushed for Sunday Group emails for Mr. Hashimoto and Ms. Vaughan, as custodians, on February 10, 2025. To be clear, well prior to this time, Defendants had already produced a significant number of documents involving Ms. Vaughan's or Mr. Hashimoto's Sunday Group email addresses: (a) for Ms. Vaughan, 539 documents that hit on "sv@sundaygroup.com," including 412 emails "to" or "from" that email address; and (b) for Mr. Hashimoto, 1,376 documents that hit on "kh@sundaygroup.com," including 256 emails "to" or "from" that email address.

11. Nevertheless, in a good faith effort to resolve the dispute regarding Ms. Vaughan, and subject to their objections, Defendants have voluntarily produced her email communications from her @sundaygroupinc.com and @mobby.ai email accounts.

12. The situation with Mr. Hashimoto's emails is more complicated. There are over 20,000 emails and related documents, comprising approximately 64,000 pages, in Hashimoto's Sunday Group email account that have been collected, from July 2017 through February of 2025. In addition, thousands of emails and tens of thousands of pages are written in Japanese or a mix of Japanese and English. Defendants counsel is not aware of a US-based e-discovery platform that searches Japanese characters. Thus, searching the Japanese language in the Hashimoto communications to see if they may have relevant and responsive information requires translation. Plaintiff has refused to share the cost of translating documents. But translation is only the start – once translated, Defendants would then incur substantial additional costs in attorney time and processing fees to search an enormous database of documents, review the hits for relevance, and produce the responsive documents.

13. Defendants have attempted to meet and confer with Nakamura on the issue of Mr. Hashimoto's emails, as custodian, requesting that Plaintiff provide search terms and share in the costs. Nakamura has rebuffed these requests. To my knowledge, Nakamura has not claimed he has communicated with Hashimoto, or otherwise articulated how emails from Sunday Group's accountant are relevant, much less attempted to narrow the time or scope of the request.

14. To date, Defendants have produced over 29,500 individual documents and communications which consist of over 67,400 pages. They have produced emails and other documents from at least 15 different custodians. Defendants have incurred substantial costs in

connection with their efforts to review and produce documents to Nakamura, in the tens of thousands of dollars in attorney fees and at least $19,000 in charges from e-discovery vendors.

15. By contrast, in total, through March 12, 2025, Nakamura had produced a mere 342 documents consisting of 1,549 pages of information. On March 13, 2025, he produced an additional approximately 60 pages of documents.

16. It is my understanding that, for some of his communications, Defendant and Sunday Group Officer Todd Mitsuishi began using a text message program called "Signal," a secure and encrypted communication platform. Because of the encryption, it has been exceedingly difficult to export messages to a usable and searchable format. The alternative is to take manual screenshots of the messages – which is not only time consuming, but also cannot be searched for keywords. Defendants' counsel have been searching for a solution to this frustrating problem, at times believing there was a solution that would allow the download of the messages, and then learning such was not the case. But, Defendants have always committed to producing relevant and responsive Signal messages.

17. Most recently, Defendants provided Mr. Mitsuishi's phone to a well-known e-discovery company based on their indication that they had advanced software that should be able to download and retrieve the Signal messages from his phone. After time, expense, and delay, the vendor recently informed counsel that they could not retrieve the messages. More specifically, Defendants' counsel were originally informed that Signal messages could not be downloaded/collected and searched like other text messages. Then a vendor represented that it could recover Signal messages from an image of a mobile phone in a searchable format. Then, that same vendor later informed Defendants' counsel that they were unsuccessful in downloading the Signal messages. As a result, Mr. Mitsuishi has begun the long and arduous process of

capturing screen shots of his responsive Signal messages. Barring any additional unforeseen complications, Defendants anticipate that they will complete the collection and production of the Signal messages by March 28, 2025.

18. Defendants have objected to Nakamura's demand that they collect and produce documents that may be contained in the personal email accounts and personal phones of current and former Sunday Group employees and consultants, on the basis, *inter alia,* that they lack possession, custody and control over such personal email accounts and devices. Additionally, Nakamura has not claimed he communicated with any of these individuals or otherwise articulated the category of information he is seeking, because it is not proportional and would be unduly burdensome and to both Defendants and the privacy interests of their current and former employees/consultants. Defendants have raised these objections – including that they lack access to these personal accounts and devices – repeatedly, both in oral meet and confer conferences and in an email on February 12, 2025. A copy of this email is attached as Ex. U to the Mena Declaration, Dkt. 100-1.

19. Defendants have produced relevant and responsive documents, subject to their objections, contained in personal email accounts and devices, including from phones and computers, for the named defendants, Todd Mitsuishi and James Pack.

20. Although Defendants initially agreed to apply 45 search terms, including the term "Mobby" to search for documents and communications in Mr. Mitsuishi's and Mr. Pack's email accounts, those terms have proven to be grossly overbroad in application, particularly when applied to other custodians, because they generate a significant number of false hits on irrelevant documents. The term Mobby for example is exceedingly broad, as that has been Sunday Group's primary focus for years.

21. Nakamura has not served any discovery requests, including interrogatories or requests for production of documents, seeking information regarding the preservation of documents. Notwithstanding this failure, his counsel has made informal requests for such information to Defendants' counsel during meet and confer discussions, without citing any authority that a party or his counsel must respond to informal requests for information made outside of discovery procedures. Neither Nakamura nor his counsel have provided any details of any preservation notices provided to Nakamura, much less a disclosure about their communications with him about spoliation and preservation.

22. In response to those informal requests on these topics, Defendants counsel responded that such questions called for a disclosure of communications that were protected by the attorney-client privilege, repeating this in an email sent February 12, 2025 – before Nakamura filed his motion to compel. *See* Ex. U to the Mena Declaration, Dkt. 100-1.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

DATED: March 14, 2025                **CLYDE SNOW & SESSIONS, P.C.**

By: */s/Aaron D. Lebenta*
    Aaron D. Lebenta