FELIX S. LEE (CSB No. 197084)
flee@fenwick.com
CHRISTOPHER J. STESKAL (CSB No. 212297)
csteskal@fenwick.com
CASEY O'NEILL (CSB No. 264406)
coneill@fenwick.com
CLAIRE MENA (CSB No. 339324)
cmena@fenwick.com
FENWICK & WEST LLP
Silicon Valley Center
801 California Street
Mountain View, CA 94041
Telephone: 650.988.8500
Facsimile: 650.938.5200

JOHN D. TENNERT III (Nevada Bar No. 11728)
jtennert@fennemorelaw.com
WADE BEAVERS (Nevada Bar No. 13451)
wbeavers@fennemorelaw.com
FENNEMORE CRAIG, P.C.
7800 Rancharrah Parkway
Reno, NV 89511
Telephone: 775.788.2212
Facsimile: 775.786.1172

*Attorneys for Plaintiff and Counterdefendant*
*Tetsuya Nakamura*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| TETSUYA NAKAMURA,<br><br>Plaintiff,<br><br>v.<br><br>SUNDAY GROUP INCORPORATED, *et al.*,<br><br>Defendants.<br><br>SUNDAY GROUP INCORPORATED AND TOSHIKI (TODD) MITSUISHI<br><br>Counterclaimants,<br><br>v.<br><br>TETSUYA NAKAMURA,<br><br>Counterdefendant. | Case No.: 2:22-cv-01324-MMD-EJY<br><br>**PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO COMPEL DOCUMENTS RESPONSIVE TO DISCOVERY REQUESTS**<br><br>**ORAL ARGUMENT REQUESTED** |

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ........................................................................................................... 1

II. ARGUMENT ................................................................................................................... 1

    A. The Court Should Order Immediate Production of Signal Messages ..................... 1

    B. The Court Should Order Immediate Production of All Responsive Business Communications ....................................................................................................... 3

        1. Mr. Hashimoto's Communications ............................................................. 3

        2. Non-Sunday Group Domain Accounts ....................................................... 6

    C. Discovery Requests at Issue ..................................................................................... 9

    D. The Court Should Require a Factual Proffer Concerning Document Preservation ............................................................................................................... 9

III. CONCLUSION ................................................................................................................ 11

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Allstate Ins. Co. v. Shah*,
  2022 WL 3359639 (D. Nev. Aug. 15, 2022) ................................................................. 3, 8

*Bank of New York v. Meridien BIAO Bank Tanzania Ltd.*,
  171 F.R.D. 135 (S.D.N.Y 1997) ..................................................................................... 6

*Chevron Corp. v. Salazar*,
  275 F.R.D. 437 (S.D.N.Y. 2011) ............................................................................ 6, 7, 8

*City of Colton v. Am. Promotional Events, Inc.*,
  2011 WL 13223947 (C.D. Cal. Oct. 6, 2011) ............................................................... 10

*Compass Bank v. Morris Cerullo World Evangelism*,
  104 F. Supp. 3d 1040 (S.D. Cal. 2015) ........................................................................ 11

*Evenson v. Johnson Bros. Liquor Co.*,
  2020 WL 12948540 (D. Minn. May 19, 2020) .............................................................. 6

*Export-Import Bank of the United States v. Asia Pulp & Paper Co.*,
  233 F.R.D. 338 (S.D.N.Y. 2005) ................................................................................... 8

*In re Citric Acid Litigation*,
  191 F.3d 1090 (9th Cir. 1999) ....................................................................................... 7

*In re Napster, Inc. Copyright Litig.*,
  462 F. Supp. 2d 1060 (N.D. Cal. 2006) ....................................................................... 10

*Iovino v. Am Tr. Fin. Servs., Inc.*,
  2024 WL 4696161 (D. Nev. Nov. 6, 2024) .................................................................... 9

*Johnson v. Williams*,
  2023 WL 2189031 (D. Nev. Feb. 23, 2023) ................................................................... 1

*Maadanian v. Mercedes-Benz USA, LLC*,
  2025 WL 372091 (W.D. Wash. Feb. 3, 2025) ............................................................... 9

*Matthew Enter., Inc. v. Chrysler Grp. LLC*,
  2015 WL 8482256 (N.D. Cal. Dec. 10, 2015) ............................................................... 7

*Nakanelua v. United Pub. Workers, AFSCME, Local 646, AFL-CIO*,
  2021 WL 6498865 (D. Haw. Nov. 2, 2021) ................................................................... 7

*Oracle Am., Inc. v. Hewlett Packard Enter. Co.*,
  328 F.R.D. 543 (N.D. Cal. 2018) .......................................................................... 10, 11

Case 2:22-cv-01324-MMD-EJY   Document 109   Filed 03/28/25   Page 4 of 18

*Santos v. Baca*,
   2015 WL 6956643 (D. Nev. Nov. 10, 2015) .................................................................. 1

*Shim-Larkin v. City of New York*,
   2019 WL 5198792 (S.D.N.Y. Sept. 16, 2019) .............................................................. 6

*Small v. Univ. Med. Ctr.*,
   2018 WL 3795238 (D. Nev. Aug. 9, 2018) ................................................................ 10

*State Farm Mut. Auto. Ins. Co. v. Precious Physical Therapy, Inc.*,
   2020 WL 7056039 (E.D. Mich. Dec. 2, 2020) ............................................................. 7

*Tradeshift, Inc. v. BuyerQuest, Inc.*,
   2021 WL 1586283 (N.D. Cal. Apr. 23, 2021) ............................................................. 7

*U.S. v. Int'l Union of Petroleum & Indus. Workers, AFL-CIO*,
   870 F.2d 1450 (9th Cir. 1989) ...................................................................................... 7

*Ubiquiti Networks, Inc. v. Kozumi USA Corp.*,
   2013 WL 1767960 (N.D. Cal. Apr. 15, 2013) ............................................................. 7

*Waymo LLC v. Uber Techs., Inc.*,
   2017 WL 2972806 (N.D. Cal. July 12, 2017) ............................................................. 7

*Williams v. Garrett*,
   2024 WL 1675445 (D. Nev. Apr. 18, 2024) ............................................................. 5, 9

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure Rule 37(e) .......................................................................... 11

Local Rule 26-6(b) ................................................................................................................. 9

PLAINTIFF'S REPLY ISO MOTION TO COMPEL DOCUMENTS     iii     Case No.: 2:22-cv-01324-MMD-EJY

## I. INTRODUCTION

The opposition confirms that Defendants have been grossly dilatory in collecting and producing responsive communications – many of which Dr. Nakamura has been seeking for the better part of eight months. *First*, Defendants concede that they possess responsive Signal messages, which they have not produced, even though they represented to Dr. Nakamura and the Court that they would be produced months ago. Moreover, Defendants belatedly disclosed in their opposition that these preceding months have been spent collecting Signal messages on *just one device* – a task which could not possibly take this amount of time if proper diligence were applied. *Second*, Defendants minimize the relevance of Ken Hashimoto's communications, as well as communications stored on other Sunday Group personnel's devices and accounts. Defendants ignore the fact that they have already admitted, both in their initial disclosures and at meet-and-confers with Dr. Nakamura's counsel, that these custodians' accounts contain responsive communications. In doing so, Defendants fail to establish that the burden of collecting and producing these communications outweighs their likely relevance *or* that Defendants do not control these communications as a matter of law. *Finally*, Defendants concede that custodians other than James Pack and Todd Mitsuishi never received a preservation notice or were instructed to preserve their communications, which coupled with other irregularities and gaps in Defendants' production, raises potential spoliation issues. For all these reasons, Dr. Nakamura's motion to compel should be granted.

## II. ARGUMENT

### A. The Court Should Order Immediate Production of Signal Messages

Defendants' opposition openly concedes they had an obligation to produce Signal messages, but argues that a forthcoming production of the messages will moot this aspect of the motion. *See* Opp. at 3, 10. A motion is only moot, however, "[w]here a party voluntarily *provides* the discovery that a motion to compel seeks." *Santos v. Baca*, 2015 WL 6956643, at *2 (D. Nev. Nov. 10, 2015) (emphasis added) (finding that motion to compel responses to six items was moot as to the five items that Defendants responded to); *Johnson v. Williams*, 2023 WL 2189031, at *1 (D. Nev. Feb. 23, 2023) (finding that motion to compel was moot *only* after defendants

1  demonstrated that they had produced all documents that plaintiff requested in the motion and
2  plaintiff did not file a reply). Defendants have yet to provide all Signal messages. Instead, they
3  conveniently state that the "[p]roduction is expected to be complete on or before March 28, 2025"
4  (Opp. at 3), the date this reply brief is due to be filed, which leaves Dr. Nakamura with no time to
5  review the messages for completeness and respond prior to filing.

6        More fundamentally, Defendants have repeatedly provided deadlines by which they would
7  produce these Signal messages (and other responsive documents) and blown them—a fact which
8  Defendants do not and cannot dispute. Defendants' opposition claims that they have "always
9  committed to reviewing and producing the Signal messages" (Opp. at 9), but for nearly eight
10 months (if not longer), they have not fulfilled that commitment. Defendants claim there were
11 "unexpected technical delays and obstacles" (Opp. at 3) regarding the Signal messages, but do not
12 provide any meaningful details or evidence in support, nor do they provide *any* details regarding
13 their efforts to overcome these obstacles. For example, they do not say they began the process of
14 collecting Signal messages in July 2024 when Dr. Nakamura's counsel identified the absence of
15 text and other messages in Defendants' productions. They represent instead that "*[m]ost recently*"
16 they "provided Mr. Mitsuishi's phone to a well-known e-discovery company" to retrieve Signal
17 messages and that "[a]s a result [of the vendor's inability to retrieve the messages] Mr. Mitsuishi
18 has begun the long and arduous process of capturing screen shots of his responsive Signal
19 messages." Opp. at 9 (emphasis added). Moreover, Defendants do not deny their original excuses
20 for the delays, including shockingly a lack of "focus[]" on this case. Mot. at 5; Mena Decl. at Ex.
21 D. Thus, given this documented history of delinquency, Dr. Nakamura could not simply rely upon
22 yet *another* representation that these messages were forthcoming, therefore necessitating this
23 motion.

24       In addition, Defendants' opposition reveals for the first time that they have improperly
25 limited the request for responsive Signal messages to *only one custodian*—Mr. Mitsuishi—and
26 appear to only be searching for Signal messages on just his device. If Mr. Mitsuishi has
27 responsive Signal communications, it is likely that he would have communicated on that platform
28 with other custodians such as James Pack, Karl Roller, or Professor Leonard Kleinrock (to cite

PLAINTIFF'S REPLY ISO MOTION TO COMPEL DOCUMENTS      2      Case No.: 2:22-cv-01324-MMD-EJY

just a few examples), who by definition would then also have Signal messages to collect and produce. *All* responsive Signal messages, *including Signal messages from custodians other than Mr. Mitsuishi*, should be ordered produced.

### B. The Court Should Order Immediate Production of All Responsive Business Communications

Defendants' broader refusal to produce responsive business communications is unsupported.[1] Numerous outstanding discovery requests compel production of documents from Mr. Hashimoto's account and from the accounts of other Sunday Group personnel, regardless of whether Dr. Nakamura served a document request directed to a particular individual listed in initial disclosures. Defendants cannot avoid these requests by relying on their own failure to collect from custodians with responsive communications.

#### 1. Mr. Hashimoto's Communications

Defendants do little to support their argument that the burden of producing Mr. Hashimoto's documents outweighs the relevance. In filing a motion to compel, the party "must include a threshold showing of relevancy" which "is a relatively low threshold." *Allstate Ins. Co. v. Shah*, 2022 WL 3359639, at *1 (D. Nev. Aug. 15, 2022). Then, "[t]he party opposing discovery has the burden of showing that the discovery is, among other things, irrelevant, overly broad, or unduly burdensome." *Id*. at *2. "In deciding whether to restrict discovery . . . the Court 'should consider the totality of the circumstances, weighing the value of the material sought against the burden of providing it, and taking into account society's interest in furthering the truth-seeking function in the particular case before the court.'" *Id*.

With respect to Mr. Hashimoto, Defendants take the confusing position that the scope of relevance is limited to "the narrow periods of April 2015, 'early 2017,' and 'late 2018,' and alleged misrepresentations by Mitsuishi." Opp. at 3. This is simply not true. A central allegation supporting Dr. Nakamura's equity investment claims, for example, is that Defendants failed to

---

[1] Dr. Nakamura understands that Defendants produced communications from sv@sundaygroup.inc.com and sv@mobby.ai.com. Assuming Defendants produced all responsive communications from all Sunday Group or affiliated entity email domains for Ms. Vaughan, the issues presented by this motion are moot as to those – and only those – email domain accounts for Ms. Vaughan.

PLAINTIFF'S REPLY ISO MOTION TO COMPEL DOCUMENTS         3         Case No.: 2:22-cv-01324-MMD-EJY

appropriately use the capital invested to create a viable product. ECF No. 1 at ¶ 24. Certain claims, such as fraud in the inducement, may have accrued at the time Dr. Nakamura made the initial investment, but other claims, such as breach of contract and fiduciary duty, are based on facts which continue to develop to this day.

Defendants' position regarding Mr. Hashimoto's emails is equally perplexing because Defendants themselves admit in their initial disclosures that Mr. Hashimoto has "information and knowledge about the Mobby Project, including information related to finances and accounting." Mena Decl. at Ex. J. Mr. Hashimoto's communications were also specifically broached when the parties met and conferred on October 4 and October 7, 2024. Mena Decl. at Ex. D. On this call, Defendants expressly agreed to produce responsive documents within Mr. Hashimoto's account, including a document in which Mr. Hashimoto indicates that Dr. Nakamura's equity investment was sent to Genesis Mining. *Id.*; Supplemental Declaration of Claire Mena ("Supp. Mena Decl.") at Ex. E.[2] It was also on this call that counsel for Dr. Nakamura specifically raised the issue that only communications from Mr. Pack and Mr. Mitsuishi were produced and reminded counsel of their obligation to identify, collect, and produce from all custodians reasonably likely to have responsive documents and communications. Mena Decl. at Ex. D. Defendants agreed (*id.*) and when the parties subsequently met and conferred on January 29, 2025, counsel for Defendants confirmed that if an individual is "on initial disclosures and [has] an account [they] produced it" (Supp. Mena Decl. ¶ 12). On February 4, 2025, counsel for Defendants emailed a list of custodians, but conspicuously omitted Mr. Hashimoto's name. Lebenta Decl. at Ex. 3. Defendants' claim that Dr. Nakamura "only requested communications to and from Sunday Group officers James Pack and Todd Mitsuishi" is simply not true, and not supported in Defendants' opposition. *See* Opp. at 4. And, recently, the parties have corresponded regarding Mr. Hashimoto's emails (the suggestion that Dr. "Nakamura refused" to meet and confer is

---

[2] Defendants contend that Mr. Hashimoto's documents and communications are not responsive to Dr. Nakamura's claims related to failure to produce Sunday Group's financial statements under a Series AA Preferred Stock Subscription Agreement because Sunday Group produced financial statements. Opp. at 4 n.3. Barebones financial statements produced to date, which do little to shed any light onto Sunday Group operations or use of Dr. Nakamura's capital, further support the need to collect documents from Mr. Hashimoto.

PLAINTIFF'S REPLY ISO MOTION TO COMPEL DOCUMENTS      4      Case No.: 2:22-cv-01324-MMD-EJY

incorrect) but appear to have reached an impasse, as Defendants have not responded to a request to produce a hit report for Mr. Hashimoto based on previously agreed search terms. *See also* Supp. Mena Decl. at Ex. F (on March 6, 2025, counsel for Dr. Nakamura stated "[w]e are open to discussing limitation of the search terms, if necessary, once [Defendants] have prepared a hit report" and that "[w]e are open to discussing [the issue regarding Japanese communications] as needed").

Defendants' reliance on *Williams v. Garrett*, does little to bolster their position. 2024 WL 1675445 (D. Nev. Apr. 18, 2024). In *Williams*, the defendant objected to the plaintiff's document request on the basis that it called for information pertaining to another inmate which plaintiff was not permitted to access under an administrative regulation. *Id*. The court denied the motion to compel, explaining that even if it was permissible under the administrative regulation, the plaintiff did not provide a specific showing that the burden of production would be minimal or lead to relevant evidence. *Id*. at 2. In stark contrast, Dr. Nakamura has demonstrated the relevance of Mr. Hashimoto's (and others') communications and Defendants have conceded as much. Mena Decl. at Ex. J. Mr. Hashimoto, according to Defendants, had a finance role at Sunday Group, and key components of this case include: misuse of invested funds and related misstatements; likely commingling of funds among Sunday Group-affiliated entities; and a failure to maintain or disclose financial statements which were contractually required. As compared to likely relevance, Defendants have done little to demonstrate that the request is "unduly burdensome" other than cite to a relatively low volume of previous productions (29,500 documents) and volume of Mr. Hashimoto's total documents (20,000 documents, some of which are in Japanese, the language of many of the investors Sunday Group targeted). Opp. at 8, 13. Finally, producing emails that "hit" the search term "kh@sundaygroup.com" rather than collecting documents and communications from Mr. Hashimoto's account (Opp. at 10) is not sufficient as a matter of basic discovery practice.

### 2. Non-Sunday Group Domain Accounts

Defendants' opposition also does little to support their position that they do not have possession, custody, or control of non-Sunday Group domain accounts used for Sunday Group business.

*First*, the opposition misconstrues the meaning of "control." Control "does not require that the party have legal ownership or actual physical possession of the documents [] at issue; rather, documents [] are considered to be under a party's control when that party has the right, authority, or practical ability to obtain the documents [] from a non-party to the action." *Shim-Larkin v. City of New York*, 2019 WL 5198792, at *9 (S.D.N.Y. Sept. 16, 2019) (granting plaintiff's motion for spoilation sanctions where employee failed to preserve text messages) (quoting *Bank of New York v. Meridien BIAO Bank Tanzania Ltd.*, 171 F.R.D. 135, 146 (S.D.N.Y 1997)). Courts routinely find that "'employers have control over their employees and can be required to produce documents [] in their employees' possession.'" *Shim-Larkin*, 2019 WL 5198792, at *9 (quoting *Chevron Corp. v. Salazar*, 275 F.R.D. 437, 448 (S.D.N.Y. 2011)). Communications from employee's personal devices and accounts "fit comfortably within [this] scope" of control if there is a basis to conclude that they were substantively used to conduct company business. *Evenson v. Johnson Bros. Liquor Co.*, 2020 WL 12948540, at *12 (D. Minn. May 19, 2020) (granting plaintiff's motion to compel responsive text messages). In determining whether a company has "control," courts look to one or more factors including: whether the employee used the personal device or account for work purposes, whether the employee was ever provided with a designated work account, or whether an employee agreement grants employer access. *Evenson*, 2020 WL 12948540, at *8-11 (granting motion to compel responsive text messages where defendant knew that employees were regularly using cell phones within their scope of employment, the employer paid the phone service costs, and the employees stated in their depositions that they utilized cell phones to send work-related text messages); *Salazar*, 275 F.R.D. at 448-49 (holding that responsive emails on the former employee's Gmail account fell within the scope of the subpoena, noting that the employee never maintained a dedicated work email address and sent litigation related emails on this account). Here, employee agreements clearly state that "[a]ll works

FENWICK & WEST LLP

performed by [Sunday Group personnel] are property of the Company" (Mena Decl. at Ex. K), employees routinely used their personal devices and accounts for business purposes (Mena Decl. ¶ 22), and *some never even received a work-issued account*, meaning that all work-related communications by definition would reside *only* on personal devices (Mena Decl. at Ex. J). Here, unlike the moving party in *Nakanelua v. United Pub. Workers, AFSCME, Local 646, AFL-CIO*, Dr. Nakamura has established "why such a fiduciary relationship would give Defendants a legal right to the custodians' personal emails." 2021 WL 6498865, at *2 (D. Haw. Nov. 2, 2021),

Defendants' reliance on *In re Citric Acid Litigation*, which does not even address employee personal devices or accounts, is misplaced. 191 F.3d 1090, 1106-08 (9th Cir. 1999). In *In re Citric Acid*, the plaintiff served a subpoena to one entity, C&L-US, requesting the production of documents from a separate entity, C&L-Switzerland. *Id*. at 1107. The court explained that C&L-US could not compel a separate entity to produce documents, and so it would be futile to order documents where the party has no practicable ability to do so. *Id*. at 1107-08. Similarly, in *U.S. v. Int'l Union of Petroleum & Indus. Workers, AFL-CIO*, the court affirmed the district court's refusal to enforce a subpoena, concluding that the international union did not have the right to collect an affiliated local union's election records. 870 F.2d 1450, 1454 (9th Cir. 1989). Here, unlike a separate legal entity or union, Sunday Group, as an employer, has control over its employees, and thus has the right to collect responsive communications that reside on employee devices and accounts.[3]

The same can be said for responsive communications from former employee and contractor devices and accounts. *See Salazar*, 275 F.R.D. at 448-49; *State Farm Mut. Auto. Ins.*

---

[3] Defendants rely on two dated Northern District of California cases (*Matthew Enter., Inc. v. Chrysler Grp. LLC*, 2015 WL 8482256, at *3-4 (N.D. Cal. Dec. 10, 2015) and *Ubiquiti Networks, Inc. v. Kozumi USA Corp.*, 2013 WL 1767960, at *1-3 (N.D. Cal. Apr. 15, 2013)), ignoring recent Northern District of California cases which have ordered companies to produce responsive communications residing on employee personal devices and accounts. *See, e.g.*, *Tradeshift, Inc. v. BuyerQuest, Inc.*, 2021 WL 1586283, at *2 (N.D. Cal. Apr. 23, 2021) ("The Court also disagrees that when [the] CEO used his personal email to conduct company business, those emails are somehow outside the company's reach or discovery obligations. Such an approach would gut Rule 34 and make it way too easy for high-level executives to hide evidence"); *Waymo LLC v. Uber Techs., Inc.*, 2017 WL 2972806, at *2 (N.D. Cal. July 12, 2017) ("[the company] must produce responsive documents in the custody, control or possession of its officers . . . It cannot hide responsive documents simply because these officers' work for Otto Trucking was done using their personal email accounts . . .").

*Co. v. Precious Physical Therapy, Inc.*, 2020 WL 7056039, at *6-7 (E.D. Mich. Dec. 2, 2020). In *Salazar*, the defendant, similar to Defendants in this case, maintained that he did not have "custody or control or access to [the former employee's] Gmail account" despite the fact that the employee never maintained a dedicated work email address and received and sent emails related to the litigation from her Gmail account. *Salazar*, 275 F.R.D. at 448-49. The former employee admitted that she would have turned over responsive emails from her Gmail account had her former employer requested them. The court held that any responsive emails from the former employee's Gmail account fell within the scope of the subpoena and explained that "courts insist that corporations, at the very least, ask their former employees to cooperate before asserting that they have no control over documents in the former employees' possession." *Id.* (quoting *Export-Import Bank of the United States v. Asia Pulp & Paper Co.*, 233 F.R.D. 338, 341 (S.D.N.Y. 2005)). Here, Defendants do not suggest that they took even this preliminary step of asking former employees and contractors to produce responsive communications and that such individuals declined.

Additionally, as with Mr. Hashimoto's emails, Defendants' opposition does little to meet their burden of "showing that the discovery is, among other things, irrelevant, overly broad, or unduly burdensome." *Allstate Ins.*, 2022 WL 3359639, at *2. Defendants concede that Sunday Group personnel possess relevant text messages and emails on personal accounts and devices. *See, e.g.*, Lebenta Decl. at Ex. 2 (stating that Karl Roller "has information and knowledge regarding the following subjects: (1) Communications related to Plaintiff's transaction with BitClub; and (2) transfer of funds to BitClub and administrative work related to creating BitClub accounts for Plaintiff"). Several Sunday Group personnel, including co-founder Mr. Roller, never received a Sunday Group email address (*id.*; Mena Decl. at Ex. J), and routinely used their personal accounts (e.g., @hotmail.com) and devices to discuss issues relevant to Dr. Nakamura's claims (Mena Decl. ¶ 20, at Ex. P). This is further confirmed by Defendants' own document productions: Defendants produced responsive text messages with Karl Roller *from Mr. Mitsuishi's device*. Mena Decl. at Ex. P. Contrary to Defendants' assertion, Dr. Nakamura is not seeking to "embark on an intrusive fishing expedition." Opp. at 15. Dr. Nakamura simply

FENWICK & WEST LLP

requests that Defendants produce responsive communications that evidently exist and are within their control.

Defendants object to the burden of collecting and producing additional communications without specifying the volume and assert without specific substantiation that there are logistical difficulties in accessing communications on password protected personal property. Opp. at 20. Ultimately, Dr. Nakamura's discovery requests are not "'unnecessarily burdensome and overly broad' with minimal chance of leading to relevant evidence" as Defendants suggest. *Williams*, 2024 WL 1675445, at *2.

### C. Discovery Requests at Issue

Defendants argue that Dr. Nakamura failed to comply with Local Rule 26-6(b) by not setting forth the text of the at-issue discovery requests and responses. Defendants then conclude that the only discovery request at issue is Dr. Nakamura's Request for Production ("RFP") No. 2, which sought communications with individuals in Defendants' first initial disclosures, namely, Todd Mitsuishi and James Pack. Opp. at 5. Numerous RFPs from Dr. Nakamura compel production of the materials sought, not just RFP No. 2. *See* Supp. Mena Decl. at Ex. B. In response to those RFPs, regardless of who was listed in Defendants' first initial disclosures, Defendants have an obligation to identify an appropriate custodian list and canvass those accounts for responsive materials. *See Maadanian v. Mercedes-Benz USA, LLC*, 2025 WL 372091, at *3 (W.D. Wash. Feb. 3, 2025) (granting motion to compel and noting obligation to disclose appropriate custodian list). This issue was raised during the meet-and-confer process and Defendants eventually conceded the point. *Id.* at Mena Decl. at Ex. E.[4]

### D. The Court Should Require a Factual Proffer Concerning Document Preservation[5]

Finally, in opposition, Defendants do not deny that they sent preservation notices to *only two custodians*—Mr. Mitsuishi and Mr. Pack—and did not send notices to any other custodian

---

[4] To the extent that the Court entertains Defendants' argument under Local Rule 26-6(b), at most, Dr. Nakamura should be permitted to re-file this motion itemizing the numerous discovery requests which encompass the materials sought, as Dr. Nakamura has done here on reply.

[5] *Iovino v. Am Tr. Fin. Servs., Inc.*, 2024 WL 4696161, at *3 (D. Nev. Nov. 6, 2024) does not support Defendants' position that Dr. Nakamura must serve a discovery request for *information on preservation* and Defendants point to no other case law to support this position. Opp. at 20.

PLAINTIFF'S REPLY ISO MOTION TO COMPEL DOCUMENTS  9  Case No.: 2:22-cv-01324-MMD-EJY

even though Defendants now concede an obligation to collect and produce from numerous other custodians. Defendants do not even suggest that they implemented a litigation hold on custodians' Sunday Group accounts to ensure that email communications were not deleted or autodeleted in regular course. Defendants, however, have "a duty to suspend any existing policies relating to deleting or destroying files and preserve all relevant documents related to litigation." *Small v. Univ. Med. Ctr.*, 2018 WL 3795238, at *60 (D. Nev. Aug. 9, 2018) (sanctioning defendant in the form of a jury instruction which stated that the court found defendant failed to comply with its legal duty to preserve discoverable information). "This affirmative duty requires agents or corporate officers having notice of discovery obligations to communicate those obligations to employees in possession of discoverable materials." *Id*. (explaining that "[a]n inquiry must be made concerning the people who have discoverable information, and where relevant information is likely to be stored"). Defendants argue that facts relevant to their preservation process are privileged. The case law they cite does not support this argument, however. In *City of Colton v. Am. Promotional Events, Inc.*, for example, the court explained that "[t]he content of litigation hold letters is protected by the attorney-client and work product privileges" but – significantly – where a court "makes a preliminary finding of potential document spoliation . . . the disclosure of litigation hold instructions" may be warranted. 2011 WL 13223947, at *2 (C.D. Cal. Oct. 6, 2011).

     Moreover, contrary to Defendants' assertion that Dr. Nakamura has "fail[ed] to identify when he believes the Defendants' duty to preserve arose in this case" (Opp. at 22), there is no ambiguity as to when Defendants' duty to preserve arose. As Defendants point out, "[a]s soon as a potential claim is identified, a litigant is under a duty to preserve evidence which it knows or reasonably should know is relevant to the action." *Oracle Am., Inc. v. Hewlett Packard Enter. Co.*, 328 F.R.D. 543, 549 (N.D. Cal. 2018) (quoting *In re Napster, Inc. Copyright Litig.*, 462 F. Supp. 2d 1060, 1067 (N.D. Cal. 2006)). Dr. Nakamura sent Defendants a demand letter on February 18, 2022, outlining the exact concerns which are the basis for the claims he subsequently asserted in this action and stating that "Sunday Group and its affiliates [] must

FENWICK & WEST LLP

preserve potentially relevant evidence . . .". Supp. Mena Decl. at Ex. A. Upon receipt of that demand letter, there was not mere "general apprehension of [a] lawsuit[]." *Oracle*, 328 F.R.D. at 549. Rather, litigation was "reasonably foreseeable." *Id.* The "duty to preserve arises not only during litigation, but also extends to the period before litigation when a party should reasonably know that evidence may be relevant to anticipated litigation." *Id.* (quoting *Compass Bank v. Morris Cerullo World Evangelism*, 104 F. Supp. 3d 1040, 1051 (S.D. Cal. 2015)). Here, the duty to preserve was evident from at least February 18, 2022 onward.

Finally, Defendants mistakenly minimize issues apparent within text messages Mr. Mitsuishi and Mr. Pack produced. It is not that one custodian no longer has his communications and one custodian maintained his communications over the years. The issue is that Defendants produced two sets of communications from both Mr. Mitsuishi and Mr. Pack in which one thread from each custodian omits messages. This raises the question of whether the individual Defendants intentionally or inadvertently erased messages, whether messages between the two of them or with others. Defendants' response that "[i]nformation is lost for purposes of Rule 37(e) only if it is irretrievable from another source" (Opp. at 22) misses the point. The cited examples of apparently missing messages underscore Dr. Nakamura's genuine concern over spoliation, based on (among other things) belated preservation attempts by Mr. Mitsuishi and Mr. Pack; no preservation efforts with respect to other custodians; and the use of Signal, which is notoriously used to protect (and potentially *automatically erase*) the most sensitive communications. Under the circumstances, the Court should order that all defense custodians submit declarations regarding their preservation efforts and any spoliation on this topic.

## III.   CONCLUSION

The Court should grant Dr. Nakamura's motion to compel.

| | | |
|---|---|---|
| 1 | Dated: March 28, 2025 | Respectfully submitted, |
| 2 | | **FENWICK & WEST LLP** |
| 3 | | By: /s/ *Felix S. Lee* |
| 4 | | Felix S. Lee |
| 5 | | *and* |
| 6 | | **FENNEMORE CRAIG, P.C.** |
| 7 | | By: /s/ *John D. Tennert III* |
| | | John D. Tennert III (Nevada Bar No. 11728) |
| 8 | | |
| 9 | | *Attorneys for Plaintiff and Counterdefendant Tetsuya Nakamura* |

**CERTIFICATION OF COMPLIANCE WITH FRCP 26(C) AND LOCAL RULE 26-7(B)**

Pursuant to Federal Rule of Civil Procedure 26(c) and Local Rule 26-7(b), the undersigned counsel for Dr. Nakamura certifies that the parties have met and conferred on the issues that Dr. Nakamura addresses in this motion, and has made a good faith effort to resolve this discovery dispute. These efforts are described in the declaration of Claire Mena filed concurrently with this motion. After personal consultation and sincere effort to do so, the parties are unable to resolve the matter without Court action.

Dated: March 28, 2025            /s/ *Felix S. Lee*
                                     Felix S. Lee

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the March 28, 2025, he caused a copy of the foregoing Plaintiff's Reply Memorandum in Support of Motion to Compel Documents Responsive to Discovery Requests to be served electronically to counsel of record for all parties who have appeared in this action through the Court's CM/ECF system (as all such counsel appear to be registered CM/ECF users).

Dated: March 28, 2025                /s/ *Felix S. Lee*
                                     Felix S. Lee