Mark L. Smith (NV Bar #14762)
msmith@sffirm.com
Jacob L. Fonnesbeck (NV Bar #11961)
jfonnesbeck@sffirm.com
**SF FIRM, LLP**
6345 South Pecos Road, Suite 202
Las Vegas, NV 89120
Telephone: (725) 666-8701

Aaron D. Lebenta (UT Bar # 10180)
adl@clydesnow.com
Timothy R. Pack (UT Bar # 12193)
trp@clydesnow.com
**CLYDE SNOW & SESSIONS PC**
201 South Main Street, Suite 2200
Salt Lake City, UT 84111
Telephone: (801) 322-2516

James E. Magleby (UT Bar # 7247)
magleby@mcpc.law
**MAGLEBY CATAXINOS PC**
141 W. Pierpont Avenue
Salt Lake City, Utah 84101-3605
Telephone: 801.359.9000

*Attorneys for Defendants*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| TETSUYA NAKAMURA, an individual,<br><br>Plaintiff,<br><br>v.<br><br>SUNDAY GROUP INCORPORATED, a Delaware corporation, *et al.*,<br><br>Defendants. | Case No.: 2:22-cv-01324-MMD-EJY<br><br>PUBLIC VERSION WTIH REDACTIONS<br><br>**DEFENDANTS' MOTION TO COMPEL DOCUMENTS FROM PLAINTIFF** |

**TABLE OF CONTENTS**

MEMORANDUM OF POINT AND AUTHORITIES ................................................................ 1

INTRODUCTION ................................................................................................................... 1

    Nakamura's Claims ......................................................................................................... 2

    The Counterclaims .......................................................................................................... 3

STATEMENT OF FACTS RELEVANT TO MOTION ........................................................ 4

    Discovery Requests/Responses at Issue in this Motion .................................................. 4

    Efforts to Meet and Confer ............................................................................................. 8

LEGAL STANDARD ............................................................................................................. 10

ARGUMENT .......................................................................................................................... 11

    I.     Nakamura Should be Ordered to Produced Documents and Communications
           with Other Token Purchasers .................................................................................. 11

    II.    Nakamura Should be Ordered to Produce Crypto Related Investment
          Documents ............................................................................................................... 16

          A.     Nakamura's Financial Records are Relevant to Whether He is a
                 "Consumer" Under the Consumer Contract Act of Japan ........................ 17

          B.     Nakamura's Crypto-Related Investment Experience is Directly
                 Relevant to Whether He Mistakenly Believed the Alleged
                 Representations ........................................................................................ 18

          C.     Documents and Information Related to Nakamura's Investment
                 Experience and Wealth Are Relevant to his Eighth Claim Under the
                 Civil Code of Japan ................................................................................. 20

          D.     Documents and Information Related to Nakamura's Investment
                 Experience Are Relevant to Nakamura's Common Law Fraud Claims ... 21

CONCLUSION ........................................................................................................................ 22

**DEFENDANTS' MOTION TO COMPEL DOCUMENTS FROM PLAINTIFF**

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Albert H. Wohlers & Co. v. Bartgis*,
114 Nev. 1249, 969 P.2d 949 (1998) ...................................................................... 22

*Collins v. Burns*,
103 Nev. 394, 741 P.2d 819 (1987) ........................................................................ 22

*Guinn v. CDR Invs., LLC*,
No. 23-16220, 2024 WL 1477394 (9th Cir. Apr. 5, 2024) ..................................... 22

*Ins. Co. of N. Am. v. Hilton Hotels U.S.A., Inc.*,
908 F. Supp. 809 (D. Nev. 1995) ........................................................................... 22

*Nugget Hydroelectric, L.P. v. Pac. Gas & Elec. Co.*,
981 F.2d 429 (9th Cir. 1992) .................................................................................. 11

*Tōkyō Chihō Saibansho* [Tokyo Dist. Ct.] March 30, 2021, Hei (wa) no. 28275, Westlaw
Japan, 2021WLJPCA03308012 ...............................................................................17

*Tōkyō Chihō Saibansho* [Tokyo Dist. Ct.] June 24, 2022, Rei 1 (wa) no. 27723, Westlaw
Japan, 2022WLJPCA06248002 ...............................................................................18

*Tōkyō Chihō Saibansho* [Tokyo Dist. Ct.] Jan. 20, 2014, Hei 24 (wa) no. 15748, Westlaw
Japan, 2014WLJPCA01208006 ...............................................................................19

*Tōkyō Chihō Saibansho* [Tokyo Dist. Ct.] April 13, 2022, Rei 2 (wa) no. 7287, Westlaw
Japan, 2022WLJPCA04138005 ...............................................................................19

*Tōkyō Chihō Saibansho* [Tokyo Dist. Ct.] September 16, 2011, Hei 21 (wa) no. 37069,
Westlaw Japan, 2011WLJPCA09169012 ................................................................20

**Rules**

Fed. R. Civ. P. 26(b)(1) ................................................................................................. 11

Fed. R. Civ. P. 37(a)(1) ................................................................................................... 1

**Other Authorities**

LR 26-6 ............................................................................................................................ 1

*Article-by-Article commentary*, Government of Japan Consumer Affairs Agency, (Sept.
2023), page 15-16 .....................................................................................................17

*Minpō*, at art. 96, para. 1. Tadashi Õe, 要件事実民法1 [Requirement important Matter Civil
Code1, 336-337, (July 30, 2016) .............................................................................20

**DEFENDANTS' MOTION TO COMPEL DOCUMENTS FROM PLAINTIFF**

Pursuant to Fed. R. Civ. P. 37(a)(1) and LR 26-6, Defendants Sunday Group Incorporated, James Pack, Toshiki (Todd) Mitsuishi, and SGI Trust (collectively, "Defendants"), move to compel Plaintiff Tetsuya Nakamura ("Nakamura") to: (1) Comply with Defendants' Requests for Production Nos. 2 and 15 related to documents and communications with other Token Purchasers (defined below); (2) comply with Defendants' Interrogatory Nos. 6 and 12 and Request for Production Nos. 10, 19 and 20 related to Nakamura's digital/crypto currency investment history and experience; and (3) image his mobile telephone(s) and other messaging-capable devices, and electronically gather his e-mail files for searching, in order to permit the use of search terms or other standard techniques to ensure a complete collection and production of relevant documents.

DATED: March 31, 2025

**MAGLEBY CATAXINOS PC**

By: */s/James Magleby*
James Magleby (UT Bar 7247)

Attorneys for Defendants
SUNDAY GROUP INCORPORATED,
SGI TRUST, TOSHIKI (TODD) MITSUISHI
AND JAMES PACK

## MEMORANDUM OF POINT AND AUTHORITIES

### INTRODUCTION

Sunday Group Incorporated ("Sunday Group") has been developing the "Mobby Project," which is a layer-one blockchain system and its representative digital asset token based on academic, peer-reviewed research by the Mobby Project team, which includes world renowned and award-winning professors and specialists in the fields of computer science, mathematics, artificial intelligence, and cryptography. [Second Amended Counterclaim ("SACC"), ¶ 9, Dkt. 84]. Sunday Group also has a Board of Advisors, whose Chairman is Dr. Leonard Kleinrock, of the

**DEFENDANTS' MOTION TO COMPEL DOCUMENTS FROM PLAINTIFF**

University of California, Los Angeles. [*Id.*, ¶ 11]. In general terms, the Mobby Project's mission is to create a better internet experience, that is more secure, transparent, and trustworthy.

<u>Nakamura's Claims</u>

Nakamura is a billionaire, a sophisticated businessman, and an experienced investor who – having buyer's remorse when his investments in the Sunday Group and Mobby Project did not pay out as quickly as he hoped and when the price of cryptocurrency rose – decided to bring fraud and fraud-type claims to undo the transactions and claw-back the cryptocurrency he used to pay for his investment. [*See* Complaint, generally, Dkt. 1].  Plaintiff's claims relate to three transactions, one involving an investment into Sunday Group pursuant to a "Subscription Agreement" in April 2015, one involving the purchase of 200 units of "Mobby Tokens" or "M-Tokens" pursuant to an "MOU" in November 2017, and one involving a payment to a cryptocurrency mining company named BitClub Network, or "BCN" in March 2018.  The claims relating to the M-Tokens purchase are the most relevant to this MTC.  Nakamura alleges that Sunday Group and Defendant Todd Mitsuishi ("Mitsuishi") made specific misrepresentations that induced him to enter into the Mobby MOU, which is governed by Japanese law. Nakamura seeks a recission remedy under certain Japanese statutes. [Complaint, Counts 7-9, Dkt. 1.] Those statutes and on-point Japanese case law provide that Nakamura's experience as an investor, as well as his yearly income and net worth, are expressly relevant to the prima facie elements of those claims.

Accordingly, Defendants propounded written discovery requests seeking documents and information regarding Nakamura's investment experience, which were narrowly tailored to seek only the most directly relevant history for now: his crypto related investment history and experience, as well as his tax returns. Nakamura has objected based, primarily on relevance, and has maintained these objections through several meet-and-confer conferences, despite Defendants'

**DEFENDANTS' MOTION TO COMPEL DOCUMENTS FROM PLAINTIFF**

citation to legal authorities showing the relevance of his investment history. Defendants seek an order compelling Nakamura to turn over documents and information related to his crypto related investment history and experience, as well as his tax returns.

Discovery into Nakamura's experience and sophistication with cryptocurrency is also relevant to his Nevada common law fraud claims related to the cryptocurrency mining company BCN.  Nakamura's payment was to non-party BCN, which – as Nakamura knew - could only make money so long as price of the crypto being mined was above the cost of the mining.[1]  [Complaint ¶¶ 29-33, Dkt. 1].  Nakamura's cryptocurrency experience is directly relevant to fraud related elements such as falsity, reasonable reliance, and damages.

### The Counterclaims

Sunday Group and Todd Mitsuishi asserted counterclaims against Nakamura for, among others, Intentional Interference with Economic Relations, Defamation, and Business Disparagement.  [Second Amended Answer and Counterclaim ("SACC"), generally, Dkt. 84]. Counterclaim Plaintiffs have alleged that Nakamura interfered with the Mobby Project by, *inter alia,* contacting other investors in the Mobby Project ("Token Purchasers") and U.S. government regulators – including the Securities and Exchange Commission ("SEC") and the Nevada Division of Securities – making false claims to them about the Mobby Project, and then encouraging the Token Purchasers to repeat those false claims to the Securities and Exchange Commission as well as the Nevada Securities Division. [*Id.*  ¶¶ 91-129, Dkt. 84].  Nakamura admitted that he has in

---

[1] Plaintiff alleges that Defendants Mitsuishi and SGI Trust had not "been able to substantiate that they had in fact made the contractually obligated payment to BCN."  [*Id.* ¶ 32].  Nakamura's assumption was that Mitsuishi / SGI trust simply kept the bitcoin, but Defendants have provided proof directly to Plaintiff showing that assumption to be incorrect. Notably, Plaintiff has stopped asserting that Mitsuishi/SGI kept the bitcoin delivered to BCN.

**DEFENDANTS' MOTION TO COMPEL DOCUMENTS FROM PLAINTIFF**

fact communicated with the Token Purchasers. [Answer to Second Amended Counterclaim ("ASACC") ¶¶ 56-57, Dkt. 87.]

Defendants thus served discovery requests seeking communications between Nakamura and seventeen (17) other Token Purchasers. After Nakamura failed to produce these communications, Defendants discovered from a non-party text messages between Nakamura and another Token Purchaser wherein Nakamura admitted he has submitted complaints to U.S. regulators in the names of other Token Purchasers, but without their knowledge or consent. Despite several meet and confer attempts to resolve this issue – both before and after Defendants produced the Nakamura-withheld text messages they independently obtained from one of the Token Purchasers – Nakamura has still not produced any such communications or provided any valid justification for nonproduction.[2]  Accordingly, Defendants seek an order compelling Nakamura to produce documents and electronic communications between Nakamura and any other Token Purchaser. Defendants also seek an order that Nakamura's communications devices (such as his mobile telephone(s) be imaged, and his e-mail files be delivered to counsel for searching.

## STATEMENT OF FACTS RELEVANT TO MOTION

### *Discovery Requests/Responses at Issue in this Motion*

On July 7, 2023, Defendants served their First Set of Requests for Production of Documents, which included Documents Requests Nos. 2 and 10. [Declaration of Aaron D. Lebenta, "Lebenta Decl.," and Ex. 1 thereto]. On July 21, 2023, Defendants served their Second Set of Requests for Production of Documents, which included Documents Requests Nos. 15, 19, and 20. [*Id*. at Ex. 2.] On September 15, 2023, Defendants served their First Set of Interrogatories, which included Interrogatory No. 6. [*Id*. at Ex. 3.] On January 6, 2025, Defendants served their

---

[2] Logic says that either Nakamura's self-collection was inadequate, or the text message was deleted or lost. Either way, Defendants seek the Court's assistance to remedy the problem.

**DEFENDANTS' MOTION TO COMPEL DOCUMENTS FROM PLAINTIFF**

Second Set of Interrogatories, which included Interrogatory No. 12. . [*Id.* at Ex. 4.] The text of the discovery requests and Nakamura's responses are as follows:

### Defendants' Request for Production 2:

All COMMUNICATIONS and DOCUMENTS to or from any individual related to any of the DEFENDANTS, MOBBY, the SUBSCIRPTION AGREEMENT, Dr. Leonard Kleinrock, and/or the MOBBY MOU. Such individuals include, but are not limited to, any individual listed on any complaints or COMMUNICATIONS to or from the Nevada Office of the Secretary of State Securities Division or other state or federal governmental agency, Dr. Leonard Kleinrock, Tsuneyasu Takeda, Ryu Imachi, and any personal assistant, agent, or representatives of Nakamura.

<u>Nakamura's Response</u>:

Dr. Nakamura incorporates by reference each of the general objections set forth above as if fully set forth herein. Dr. Nakamura further objects to this Request to the extent it seeks information protected by the attorney-client privilege, attorney work-product doctrine, joint defense privilege, common interest exception, duty of confidentiality, or any other applicable privilege, immunity, doctrine or protection. Dr. Nakamura further objects that this Request seeks material that is neither relevant to the subject matter of the action nor reasonably calculated to lead to the discovery of admissible evidence. Dr. Nakamura further objects to this Request on grounds that it is overbroad and unduly burdensome, in part because it seeks all communications and documents to or from any individual, including communications to which Dr. Nakamura may not have been a party. Dr. Nakamura objects to the extent that this Request seeks materials not within Dr. Nakamura's custody or control. Dr. Nakamura further objects on grounds that this Request is not limited to a reasonable time period. Subject to and without waiving the foregoing objections, Dr. Nakamura is willing to meet and confer with Defendants to discuss a reasonable scope of production of documents responsive to this Request.

[Ex. 1 to Lebenta Decl.]

### Defendants' Request For Production 15:

All COMMUNICATIONS to or from any person (including without limitation any MOBBY PURCHASER and any governmental agency (including without limitation the Securities and Exchange Commission and/or the State of Nevada Division of Securities) regarding any statement, allegation, assertion or claim that DEFENDANTS engaged in any of the conduct described in paragraphs 26-28 and/or Counts VII-IX of the Complaint (Dkt. 1).

**DEFENDANTS' MOTION TO COMPEL DOCUMENTS FROM PLAINTIFF**

<u>Nakamura's Response</u>:

Dr. Nakamura incorporates by reference each of the general objections set forth above as if fully set forth herein. Dr. Nakamura further objects to this Request to the extent it seeks documents protected by attorney-client privilege, the work product immunity or other such privileges or immunities. Dr. Nakamura further objects to the extent that this Request seeks materials not within Dr. Nakamura's custody or control or equally accessible to Defendants. Dr. Nakamura further objects that this Request seeks material that is neither relevant to the subject matter of the action nor reasonably calculated to lead to the discovery of admissible evidence. Dr. Nakamura further objects to this Request on grounds that the term "MOBBY PURCHASER" is vague and ambiguous and seeks to impute to Dr. Nakamura knowledge regarding individuals other than Dr. Nakamura who may have entered into certain investment agreements. Subject to and without waiving the foregoing objections, Dr. Nakamura directs Defendants to documents the parties have produced in this action or which Defendants have represented they will produce.

[Ex. 2 to Lebenta Decl.]

**Defendants' Request For Production 10:**

All financial related DOCUMENTS summarizing any and all DIGITAL CURRENCY acquisitions and investments you have made within the last 10 years, including the nature of the investment and the consideration paid for the investment.

<u>Nakamura's Response</u>:

Dr. Nakamura incorporates by reference each of the general objections set forth above as if fully set forth herein. Dr. Nakamura further objects to this Request to the extent it seeks information protected by the attorney-client privilege, attorney work-product doctrine, joint defense privilege, common interest exception, duty of confidentiality, or any other applicable privilege, immunity, doctrine or protection. Dr. Nakamura further objects that this Request seeks material that is neither relevant to the subject matter of the action nor reasonably calculated to lead to the discovery of admissible evidence. Dr. Nakamura further objects to this Request on grounds that it is overbroad and unduly burdensome. Dr. Nakamura further objects to this Request to the extent that the specified 10-year time period is unreasonably broad.

[Ex. 1 to Lebenta Decl.]

**Defendants' Request For Production 19:**

All DOCUMENTS, financial and account statements showing Plaintiff's ownership, control, and disposition of any DIGITAL CURRENCY within the last

**DEFENDANTS' MOTION TO COMPEL DOCUMENTS FROM PLAINTIFF**

10 years, including without limitation the length of time that Plaintiff held or sold such assets.

Nakamura's Response:

Dr. Nakamura incorporates by reference each of the general objections set forth above as if fully set forth herein. Dr. Nakamura further objects to this Request as overbroad and unduly burdensome, including with respect to the responsive time period. Dr. Nakamura further objects to this Request on grounds that it seeks documents which are neither relevant to the subject matter of the action nor reasonably calculated to lead to the discovery of admissible evidence. Dr. Nakamura further objects to the extent that this Request seeks materials not within Dr. Nakamura's custody or control or equally accessible to Defendants. Subject to and without waiving the foregoing objections, Dr. Nakamura is willing to meet and confer with Defendants to discuss a reasonable scope of production of documents, if any.

[Ex. 2 to Lebenta Decl.]

**Defendants' Request For Production 20:**

All DOCUMENTS related to taxes and tax returns within the last ten years showing Plaintiff's total assets and investments.

Nakamura's Response:

Dr. Nakamura incorporates by reference each of the general objections set forth above as if fully set forth herein. Dr. Nakamura further objects to this Request as overbroad and unduly burdensome, including with respect to the responsive time period, and as vague and ambiguous through use of the phrase "[a]ll DOCUMENTS related to taxes and tax returns." Dr. Nakamura further objects to this Request on grounds that it seeks documents which are neither relevant to the subject matter of the action nor reasonably calculated to lead to the discovery of admissible evidence.

[*Id.*]

**Defendants' Interrogatory 6:**

List all transactions in which YOU have been involved related to a future acquisition of any existing or proposed DIGITAL CURRENCY.

Nakamura's Response:

Objections: Dr. Nakamura incorporates by reference each of the general objections set forth above as if fully set forth herein. Dr. Nakamura objects that this Interrogatory is vague and ambiguous in its use of the terms "YOU," "involved," and "related to a future acquisition of any existing or proposed DIGITAL

**DEFENDANTS' MOTION TO COMPEL DOCUMENTS FROM PLAINTIFF**

CURRENCY." Dr. Nakamura objects that this Interrogatory is overly broad and unduly burdensome in that it seeks irrelevant information, it is not limited to a reasonable time period, it seeks a description of "all transactions" related to a future acquisition of any existing or proposed "DIGITAL CURRENCY," and it seeks information about transactions involving persons other than Dr. Nakamura or Defendants, including "present and former employees, agents, representatives, attorneys, and any other PERSONS acting on Dr. Nakamura's behalf." Dr. Nakamura further objects that this Interrogatory seeks to impose obligations beyond and/or different than those in the Federal Rules of Civil Procedure, the Federal Rules of Evidence, the United States District Court for the District of Nevada's Local Rules, said Court's or this Court's (Judge's) standing orders or rules, or any other applicable rules, statutes, or laws.

[Ex. 3 to Lebenta Decl.]

**Defendants Interrogatory 12:**

State each business, venture, partnership, entity, individual and/or opportunity with which, and/or in which, you have invested DIGITAL CURRENCY since January 1, 2015.

<u>Nakamura's Response:</u>

Objections: Dr. Nakamura incorporates by reference each of the general objections set forth above as if fully set forth herein. Dr. Nakamura objects to this Interrogatory as overbroad and unduly burdensome, including with respect to the responsive time period, and as vague and ambiguous through the use of the terms "business, venture, partnership, entity, individual and/or opportunity" and "invested." Dr. Nakamura further objects to this Interrogatory on grounds that it seeks information that is neither relevant to the subject matter of the action nor reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections, Dr. Nakamura is willing to meet and confer with Defendants to discuss a reasonable scope of response to this Interrogatory.

[Ex. 4 to Lebenta Decl.]

***Efforts to Meet and Confer***

1.      On August 21, 2024, Defendants delivered a letter to Nakamura regarding, *inter alia*: (a) his failure to produce any documents and information related to his cryptocurrency related investment history (inadequate response to Interrogatory No. 6 and Request for Production 10)

**DEFENDANTS' MOTION TO COMPEL DOCUMENTS FROM PLAINTIFF**

and (b) his failure to produce communications with individuals listed in his initial disclosures, which include a number of Token Purchasers. [Lebenta Decl., ¶ 7 and Ex. 5 thereto].

2.      Nakamura did not respond to this letter, or substantively respond to issues raised therein in a meet and confer conference occurring in October 2024. His counsel instead indicated they would look into the issues raised. However, Nakamura provided no further response, information or productions of documents in the months that followed. [*Id.*, ¶ 8].[3]

3.      Defendants discovered and recently produced copies of text message conversations that occurred in September and December 2021 between Nakamura and a Token Purchaser, Kisenosato Yutaka (aka Hagiwara) ("Kisenosato") – a famous Japanese sumo wrestler. Kisenosato voluntarily provided these texts to Defendants – they did not come from Nakamura (although they should have). As discussed below, the text string directly relates to the Mobby Project and Nakamura's claims, but also to the Counterclaims because it discusses Nakamura's filing of complaints relating to the Mobby Project with U.S. regulators on behalf of himself and purportedly on behalf of other Token Purchasers, including whether Nakamura obtained consent from the other Token Purchasers to file a complaint on their behalf – issues central to the Counterclaims against Nakamura. [*Id.*, ¶ 9].[4]

4.      Nakamura never produced these text messages or other communications with Kisenosato. Further, Nakamura has not produced text messages or other communications (except

---

[3] On February 28, 2025, Defendants served additional interrogatories and document requests related to Nakamura's experience in investing in start-up companies. Defendants believe these responses are also deficient and will present this issue to the Court when appropriate. [Lebenta Decl., ¶ 8, n.1].

[4] On March 18, 2025, Defendants produced an additional three text messages they received from this Token Purchaser. However, Defendants remain uncertain whether they have received all relevant communications between Nakamura and this Token Purchaser, as the Token Purchaser provided them on a voluntary basis. [Lebenta Decl., ¶ 9, n. 2.]

**DEFENDANTS' MOTION TO COMPEL DOCUMENTS FROM PLAINTIFF**

perhaps one chat lot) with any of the other Token Purchasers that he identified and claimed to represent in his complaint to U.S. regulators.[5] [*Id.*, ¶ 10.]

5.     On January 29, 2025, Defendants sent another letter regarding Nakamura's failure to produce communications with other Token Purchasers. That letter also reminded Nakamura of his failure to produce documents related to his investment history in cryptocurrency or other digital assets, which issue had been pending since August 2024. [*Id.*, ¶ 11.]

6.     On January 29, 2025, the parties met and conferred by Zoom and discussed the issues in Defendants' August 21, 2024 and January 29, 2025 letters. The parties agreed to have another conference to discuss the issues in more detail. [*Id.* at ¶ 12.]

7.     On February 12, 2025, the parties met and conferred via zoom on Nakamura's outstanding deficient discovery responses. During that discussion, Nakamura's counsel indicated they were not inclined to produce information and documents related to Nakamura's investment history, but that they would discuss the issue with their client. Counsel for Nakamura also stated they would search for communications with other Token Purchasers. Nakamura's attorneys stated that Nakamura's mobile telephone had not been imaged, and that responsive documents had been gathered from their client via "self-collection" or that Nakamura had "self-collected" the documents produced thus far. [*Id.* at ¶ 13.]

## LEGAL STANDARD

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of

---

[5] Nakamura has produced screenshots of a chat log that presumably includes Nakamura and what appear to be three to four other individuals. However, as the chat log generally uses screennames, rather than actual names, it is unclear who is participating in the chat, and whether they are other Token Purchasers. Although Defendants have been asking Nakamura to identify the participants in chat since their August 21, 2024 letter, Nakamura has thus far declined to do so. [Lebenta Decl., ¶ 10, n. 3.]

**DEFENDANTS' MOTION TO COMPEL DOCUMENTS FROM PLAINTIFF**

the issues at stake in the action, the amount in controversy, the parties' relative access to relevant

information, the parties' resources, the importance of the discovery in resolving the issue, and

whether the burden or benefit of the proposed discovery outweighs its likely benefit." Fed. R. Civ.

P. 26(b)(1). When a party moves to compel disputed discovery, the moving party must make an

initial showing of relevancy. *See, e.g., Nugget Hydroelectric, L.P. v. Pac. Gas & Elec. Co.*, 981

F.2d 429, 438–39 (9th Cir. 1992) (citation omitted).

## ARGUMENT

### I.   Nakamura Should be Ordered to Produced Documents and Communications with Other Token Purchasers.

Sunday Group and Mr. Mitsuishi asserted counterclaims against Nakamura for Intentional

Interference with Economic Relations, Defamation, and Business Disparagement, alleging that

Nakamura interfered with the Mobby Project by contacting other Token Purchasers, making false

claims to them about the Defendants, and then encouraging the Token Purchasers to repeat those

false claims to the SEC as well as the Nevada Securities Division. [SACC, ¶¶ 91-129, Dkt. 84]

Nakamura admitted that he communicated with other Token Purchasers and that he

submitted complaints to the SEC and to the Nevada Securities Division on his own behalf.

[ASACC, Dkt. 87.[6]] The Counterclaim also alleges that Nakamura misrepresented "that he

---

[6] *Compare* SACC ¶¶ 56-57 ("56. On information and belief, Nakamura, his agents and/or co-conspirators provided instructions to Token Investors detailing how to file complaints with U.S. Securities regulators. 57. On information and belief, Nakamura, his agents and/or co-conspirators contacted Token Investors requesting that they participate in Nakamura's efforts to file complaints with U.S. securities regulators, and to make complaints directly to Sunday Group.") *with* Plaintiff's ASACC ¶¶ 56-57 ("Dr. Nakamura admits the allegation in Paragraph 56 of the SAC that he contacted certain investors regarding their investment in Sunday Group. Dr. Nakamura states that such communications with investors speak for themselves. Dr. Nakamura states that Ryu Imachi prepared a document containing instructions on submitting a tip to the SEC, that the document speaks for itself, and denies the remainder of the allegations. 57. Dr. Nakamura admits the allegation in Paragraph 57 of the SAC that he contacted certain investors regarding their investment in Sunday Group. Dr. Nakamura states that such communications with investors speak for themselves and denies the remainder of the allegations.") (emphasis added).

**DEFENDANTS' MOTION TO COMPEL DOCUMENTS FROM PLAINTIFF**

represented the interests of other allegedly disgruntled Token Investors." [SACC ¶ 58.] Nakamura

denied this allegation. [ASACC, ¶ 58.] And, Sunday Group alleged that Nakamura sought to imbue

his complaints to regulators with greater weight and importance, and to cause additional harm to

Sunday Group, Mitsuishi, and the Mobby Project, by purporting to also file the complaints on

behalf of other Token Investors he claimed to represent, but for which he did not actually have

permission. [*Id*.]

At the beginning of the case, Nakamura produced a single email communication between

he and the ███████████████████████. [Lebenta Decl, at Ex. 6.] That email – from the ████████

████████████ to Nakamura - confirms that ███████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████



**DEFENDANTS' MOTION TO COMPEL DOCUMENTS FROM PLAINTIFF**

[*Id.*] Also notable, the ████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████. [*Id.*]

Accordingly, Defendants sought documents and communications with the SEC, the Nevada Division of Securities, and/or any Token Purchasers related to the Mobby Project. [Lebenta Decl. at Ex. 1-2.] Defendants specifically requested communications to or from ████

████████████████████████████████████████████████. [*Id.*]  However, Nakamura produced virtually no communications with these individuals, including no text messages or emails purporting to authorize Nakamura to submit complaints with U.S. regulators on their behalf.

Recently, however, Defendants obtained text messages between Nakamura and one of the above-listed Token Purchasers, Kisenosato – aka Hagiwara, the famous sumo wrestler. [Lebenta Decl., at Ex. 7a (original Japanese text messages) and Ex. 7b (Google translations).] In the first exchange that occurred in September 2021, Nakamura informs Kisenosato that he has filed at least one complaint with the SEC on Kisenosato's behalf without his consent:

**DEFENDANTS' MOTION TO COMPEL DOCUMENTS FROM PLAINTIFF**

[*Id*. at DEF67605.] The text confirms that Nakamura submitted the SEC complaint on behalf of other Mobby investors as well, as he acknowledges that "[n]ormally, I should have gotten everyone's consent before reporting this, since the amount of investment is personal information. . . ." [*Id*.] Kisenosato politely responds, "I would like to remain silent if possible without revealing my name," and confirms that he "want[s] to be involved in this project until the very end, and see if it works out." [*Id*. at DEF67606.]

But Nakamura acted against Kisenosato's instructions, because he then filed a complaint with the ████████████████████ in November 2021, ████████████████ [Lebenta Decl., at Ex. 6.] Then, in December 2021, Nakamura texted Kisenosato to inform him that Nakamura had included his name in the Nevada complaint without his consent. [Lebenta Decl., at Ex. 8a (original Japanese text messages) and Ex. 8b (Google translations).] Nakamura actually

**DEFENDANTS' MOTION TO COMPEL DOCUMENTS FROM PLAINTIFF**

forwards to Kisenosato the email from the Nevada Division. [*Id.* at DEF46313-15.] Kisenosato then expresses confusion why Nakamura filed the complaint without his consent: "I have forwarded the email to everyone, but everyone is confused because their own name is included in the email. I think this is because the majority of people responded that they still wanted to participate in the Moby Project. I'm a little confused because my name is on it too." [*Id.* at DEF46317.][7]

The failure to produce these text messages with Kisenosato is further exacerbated by the fact that it is clear that Nakamura also had similar communications with *multiple* Token Purchasers that he has not produced.  In the text message depicted above, Nakamura confesses that he "listed the amounts of investments made by <u>everyone</u>. Normally, I should have gotten <u>everyone's</u> consent before reporting this, since the amount of investment is personal information."[*Id.* at DEF67605 (emphasis added).] Yet Nakamura has not produced any texts or other such communications with the other Token Purchasers (at least 17),[8] or any documents or communications indicating how, when or where he obtained their names and their "personal information" regarding the amount of their investment.

Despite their obvious relevance and responsiveness, Nakamura failed to produce these text messages with the Kisenosato. It is not likely that Nakamura simply forgot these critical communications with one of Japan's most notable celebrities, but even if he did, then the inadequacy of his self-collection is apparent. Even now, he still has not produced texts or other

---

[7] Nakamura has not produced the complaint to the SEC that he filed, claiming he does not have a copy, and that he has not requested one from the SEC. [Lebenta Decl., ¶ 18.] Defendants therefore assume he filed the SEC complaint on behalf of all of the same 17 Token Purchasers ███████████████████████

[8] Except maybe the mysterious chat log, with screen names instead of given names.

communications with Kisenosato, despite Defendants specifically inquiring about these texts in the January 29, 2025 meet and confer letter (after Defendants obtained and produced them).

There are likely three alternative reasons for his failure to produce: 1) Nakamura somehow forgot about his text messages with a famous person about important events and simultaneously failed to conduct any sort of reasonable search for responsive communications; 2) Nakamura failed to preserve them; or 3) Nakamura consciously withheld these important communications, in the hopes that Defendants would not learn of their existence.

In light of Nakamura's failure to produce relevant text communications, and a recent disclosure by Nakamura's counsel that Nakamura "self-collected" responsive communications, the Court should order Nakamura to image his mobile and other messaging-capable devices, and electronically gather his e-mail files for searching, in order to permit the use of search terms or other standard techniques to ensure a complete collection and production of relevant documents.

## II.    Nakamura Should be Ordered to Produce Crypto Related Investment Documents.

The Mobby MOU Contract has a Japanese choice of law provision, and Nakamura has asserted claims under certain Japanese statutes. [Complaint, pp. 13-16, Dkt. 1.] According to Japanese law, Nakamura's sophistication and experience as an investor in crypto-related assets is directly relevant to the elements of his claims. Accordingly, Defendants served Interrogatory No. 6 and Request for Production No. 10, seeking information and documents, respectively, relating to Nakamura's digital currency or cryptocurrency transactions/investments. [Lebenta Decl., at Ex. 1 and 3.] Defendants have also served Documents Requests Nos. 19 and 20 which request financial and accounts statements related to Nakamura's cryptocurrency transactions as well as his tax returns. Nakamura refused to provide any responsive information, claiming it is not relevant. [*Id.* at Ex. 2.] As detailed below, this information is clearly relevant.

### A.    Nakamura's Financial Records are Relevant to Whether He is a "Consumer" Under the Consumer Contract Act of Japan.

Nakamura's Seventh Claim alleges violations of the Consumer Contract Act (CCA) of Japan. The purpose of the CCA is to protect ordinary consumers in transactions with "traders" due to the disparity in the quality and quantity of information and negotiating power between consumers and traders. . . ."[9] [CCA, Art. 1, attached as Exhibit 9 to Lebenta Decl.] Under the CCA, Nakamura must establish that he is a "consumer." The CCA defines a "consumer" as any natural person but excludes those who enter into the contract "for business purposes." [*Id*. at Art. 2 and 4.] To determine whether a plaintiff is a "consumer," Japanese authorities consider, *inter alia,* (a) whether a plaintiff has <u>engaged in similar investments</u> or <u>business-related activities</u> in the past, (b) whether a plaintiff's <u>investment related revenue exceeds his revenues from salary</u> or other sources, and (c) whether plaintiff's investment-related activity was conducted <u>for a business purpose</u>. *See Article-by-Article commentary*, Government of Japan Consumer Affairs Agency, (Sept. 2023), page 15-16 (observing that "stock transactions are considered 'as a business' when the gains from the transactions constitute all or important part of the source of reinvestment or livelihood; accordingly, an individual investor in such case is a 'trader' under this Article.") [Lebenta Decl., at Ex. 10a (original Japanese text of the case) and Ex. 10b (English translation).] *see also, e.g.,* Tōkyō Chihō Saibansho [Tokyo Dist. Ct.] March 30, 2021, Hei (wa) no. 28275, Westlaw Japan, 2021WLJPCA03308012 (Japan) (looking at plaintiff's real estate investment income and salary income to determine plaintiff was not a consumer under the CCA). [Lebenta Decl., at Ex. 11a (original Japanese text of the case) and Ex. 11b (English translation).]

---

[9] *See* full translation of the CCA provided by the Japanese Ministry of Justice: https://www.japaneselawtranslation.go.jp/en/laws/view/3578/en (last visited March 19, 2025).

**DEFENDANTS' MOTION TO COMPEL DOCUMENTS FROM PLAINTIFF**

Defendants maintain that Nakamura is not an ordinary consumer entering into an ordinary consumer transaction, but a sophisticated and wealthy (billionaire) businessman investing in a start-up company operating in a cutting-edge industry. Defendants are entitled to information about whether Nakamura invested in the Mobby Project for business purposes or as a consumer. Specifically, Defendants are entitled to: (1) a list of all of Nakamura's investment crypto/digital asset investment history from 2010-2018; (2) account records and statements related to that crypto/digital asset investment history from that time period; and (3) Nakamura's tax returns (2010-2018) to determine what part of Nakamura's income is derived from crypto/digital assets.

**B.    Nakamura's Crypto-Related Investment Experience is Directly Relevant to Whether He Mistakenly Believed the Alleged Representations.**

The CCA also requires Nakamura to show there was causal relationship between both the misrepresentation causing a "mistaken belief", and also that this "mistaken belief" caused the consumer to enter into the consumer contract. Government of Japan Consumer Affairs Agency, supra at page 47. However, if the plaintiff is a sophisticated and experienced business person, that may demonstrate that he is not an innocent consumer, was not under a mistaken belief, and understood the particular risks of the transaction.

For instance, in one recent case out of the Tokyo District Court, the plaintiff and defendant entered into a contract where the defendant would repay a debt to plaintiff not in Yen, but in a cryptocurrency token (the "token"). Tōkyō Chihō Saibansho [Tokyo Dist. Ct.] June 24, 2022, Rei 1 (wa) no. 27723, Westlaw Japan, 2022WLJPCA06248002 (Japan), [Lebenta Decl., at Ex. 12a (original Japanese) and Ex. 12b (English translation).] The token was not actively traded and 96% of the total issued coin was owned by one individual. *Id*. at 7. The contract did not make any statements about the liquidity of the token or about the listing of the token on an exchange where it could be publicly traded. *Id*. Before plaintiff signed the contract, defendant's agent informed the

**DEFENDANTS' MOTION TO COMPEL DOCUMENTS FROM PLAINTIFF**

plaintiff that the token was not listed on an exchange, but that the token could be listed soon and could appreciate in value. *Id*. at 6.

The Court ruled in the defendant's favor, reasoning that the defendant's agent's statements to plaintiff about listing and appreciation were not "definitive judgments on these matters," and that plaintiff did not mistakenly believe the agent's representations given the terms of the agreement and the plaintiff's investment experience. *Id*.; *see also* Tōkyō Chihō Saibansho [Tokyo Dist. Ct.] Jan. 20, 2014, Hei 24 (wa) no. 15748, Westlaw Japan, 2014WLJPCA01208006 (Japan) (In a suit alleging misrepresentations regarding whether defendant's vaccine would be approved by the government, defendant's statements merely "expressed the prospect" that the vaccine would be approved, and that Plaintiff was not misled or mistaken give his investment experience.) [Lebenta Decl., at Ex. 13a (original Japanese) and Ex. 13b (English translation).]

Similarly, in *Tōkyō Chihō Saibansho* [Tokyo Dist. Ct.] April 13, 2022, Rei 2 (wa) no. 7287, Westlaw Japan, 2022WLJPCA04138005 (Japan), the plaintiffs alleged that their investment advisor pitched a pharmaceutical stock that was awaiting government approval of its flu vaccine. [Lebenta Decl., at Ex. 14a (original Japanese) and Ex. 14b (English translation).] The advisor stated that the stock price would increase if the vaccine was approved and that it was likely to be approved in the near future. *Id*. When the vaccine was not approved and the stock price sharply declined, the plaintiffs asserted a claim under the CCA. *Id*. The Court, however, held that the plaintiffs were not misled and that they understood the risks given their investment experience, including that the plaintiffs

> had been <u>investing with a focus on profitability using surplus funds for many years before the start of this transaction,</u> and had <u>extensive investment experience,</u> having <u>conducted numerous transactions</u> not only <u>in domestic stocks but also in investment trusts targeting foreign stocks and real estate, foreign bonds, etc.</u> Therefore, they were fully aware that even financial products predicted to be profitable at the time of purchase could result in losses contrary to predictions, and that the price

**DEFENDANTS' MOTION TO COMPEL DOCUMENTS FROM PLAINTIFF**

movements of financial products are influenced by various factors depending on the type of product. In fact, Plaintiff X2 stated in their testimony that they fully understood that in stock transactions, price movements contrary to predictions could result in losses.

*Id.* (emphasis added). The Court also found relevant that the plaintiffs had "annual income of 10 million to 20 million yen." *Id.* (emphasis added). Nakamura's investment experience – in general and with cryptocurrency – and his income derived from investments – are likewise directly relevant to the Japanese law CCA claim that Nakamura chose to assert.

### C. Documents and Information Related to Nakamura's Investment Experience and Wealth Are Relevant to his Eighth Claim Under the Civil Code of Japan.

Nakamura has also asserted a claim pursuant to Article 96 of the Civil Code of Japan, which is akin to a common law fraud claim. [Complaint, pp. 14-15, Dkt. 1.] Article 96 requires a plaintiff to prove seven elements, including that (i) the defendant committed a fraudulent act, (ii) the defendant intended to cause a mistake through fraud, and (iii) the plaintiff was misled by the fraudulent act. [Minpō, at art. 96, para. 1. Tadashi Ōe, 要件事実民法1 [*Requirement important Matter Civil Code1*, *336* (July 30, 2016) (Japan) [Lebenta Decl., at Ex. 15a (original Japanese) and Ex. 15b (English translation).]

In analyzing these elements, Japanese courts have considered, *inter alia,* whether a plaintiff is familiar with the type of investment and the risks and complications therein. *See* Tōkyō Chihō Saibansho [Tokyo Dist. Ct.] September 16, 2011, Hei 21 (wa) no. 37069, Westlaw Japan, 2011WLJPCA09169012 (Japan) (Plaintiff purchased stock in defendant company based on defendant's representations that its stock would go public soon; the Court held plaintiff was not misled because he had experience in serving in executive positions such as president, had a high net worth, 20 years' experience in equity investments, and experience in dealing unlisted stock.) [Lebenta Decl., at Ex. 16a (original Japanese) and Ex. 16b (English translation).]

**DEFENDANTS' MOTION TO COMPEL DOCUMENTS FROM PLAINTIFF**

Thus, Nakamura's history of investments and transactions in other digital assets/cryptocurrency, as well as his net worth and wealth, are highly relevant to his Article 96 claim that he chose to bring.  Thus, the Court should order Nakamura to immediately produce all documents and information to fully respond to Interrogatory Nos. 6 and 12 and Document Requests Nos. 10, 19 and 20.

### D.    Documents and Information Related to Nakamura's Investment Experience Are Relevant to Nakamura's Common Law Fraud Claims.

Nakamura has asserted common law fraud claims against Mr. Mitsuishi and SGI Trust related to the BitClub Network transaction. Nakamura alleges that Mitsuishi and the SGI Trust fraudulently induced Nakamura to invest in a bitcoin mining company named BitClub Network [Complaint, Counts 11-13, Dkt. 1.] Nakamura alleges that pursuant to their agreement, Nakamura would transfer bitcoin to Mitsuishi, and Mitsuishi was obligated to forward that bitcoin to Bitclub Network on Nakamura's behalf.[10] [*Id.* at ¶¶ 29-31.] However, it turned out that BitClub Network was operating a Ponzi scheme and Nakamura lost the majority of his investment. [*Id.*] Mr. Mitsuishi had no knowledge that BitClub was a Ponzi scheme. [SACC, p. 2, ¶ 6, Dkt. 84.] Nevertheless, Nakamura has accused Mr. Mitsuishi of 1) never transferring his bitcoin to the Ponzi scheme and 2) concealing from Nakamura that BitClub Network was in fact a Ponzi scheme. [*Id.*][11]

Because Nakamura filed this case in Nevada, Nevada law controls. *Ins. Co. of N. Am. v. Hilton Hotels U.S.A., Inc.*, 908 F. Supp. 809, 814 (D. Nev. 1995).  Here, fraud claims require Nakamura to prove justifiable reliance by clear and convincing evidence. *Collins v. Burns*, 103 Nev. 394, 741 P.2d 819, 821 (1987); *Albert H. Wohlers & Co. v. Bartgis*, 114 Nev. 1249, 1260–

---

[10] Which is exactly what happened – Mitsuishi did a favor for Nakamura for no compensation, and now Nakamura wants to blame Mitsuishi for his own decision to try to profit from crypto-mining.

[11] At the time Nakamura filed his complaint his assumption was that Mitsuishi / SGI trust simply kept the bitcoin, but Defendants have provided proof directly to Plaintiff showing that assumption to be incorrect. Notably, Plaintiff has stopped asserting that Mitsuishi/SGI kept the bitcoin.

**DEFENDANTS' MOTION TO COMPEL DOCUMENTS FROM PLAINTIFF**

61, 969 P.2d 949, 957–58 (1998), *as amended* (Feb. 19, 1999) ("fraud must be proven by clear and convincing evidence").  Relevant to the justifiable reliance inquiry is whether the plaintiff knows of "facts to alert [him] his reliance is unreasonable." *Collins*, 741 P.2d at 821. "The test is whether the recipient has information which would serve as a danger signal and a red light to any normal person of his intelligence and experience." *Id.* (emphasis added).  And, the analysis is "plaintiff-specific as required by Nevada law." *Guinn v. CDR Invs., LLC*, No. 23-16220, 2024 WL 1477394, at *2 (9th Cir. Apr. 5, 2024) ("the court weighed the objective materiality of the omissions against unique aspects of the Ruthes' investment strategy, including their tendency to make very risky investments based on only a few pieces of basic information. Thus, its analysis was plaintiff-specific as required by Nevada law.").

Pursuant to Nevada law, Nakamura's unique, "plaintiff-specific" "intelligence and experience," which includes his crypto investment transactional history, as well his tolerance for risk, is directly relevant to the justifiable reliance element of his fraud claims. Accordingly, Nakamura should be compelled to immediately produce this information.

## CONCLUSION

For the foregoing reasons, Defendants request that the Court grant the Motion to Compel and Order Nakamura to:

1.    Comply with Defendants' Requests for Production Nos. 2 and 15 related to documents and communications with other Token Purchasers;

2.    Comply with Defendants' Interrogatory Nos. 6 and 12 and Request for Production Nos. 10, 19 and 20 related to tax returns and his Nakamura's digital/crypto currency investment history and experience; and

3.    Image his mobile telephone(s) and other messaging-capable devices, and electronically gather his e-mail files for searching, in order to permit the use of search terms or other standard techniques to ensure a complete collection and production of relevant documents.

DATED: March 31, 2025                    **MAGLEBY CATAXINOS PC**

By: */s/James Magleby*
    James Magleby (UT Bar 7247)

Attorneys for Defendants
SUNDAY GROUP INCORPORATED,
SGI TRUST, TOSHIKI (TODD) MITSUISHI
AND JAMES PACK

**DEFENDANTS' MOTION TO COMPEL DOCUMENTS FROM PLAINTIFF**

1

2

## CERTIFICATE OF SERVICE

3      I hereby certify that on this 31st day of March, 2025, the foregoing DEFENDANTS'

4  MOTION TO COMPEL DOCUMENTS FROM PLAINTIFF was served on the person(s) named

5  below via electronic mail.

6

7                                          */s/ Kari J. Peck*
                                         Kari J. Peck
                                         Legal Assistant

8

9  Felix S. Lee (CA Bar 197084)
   flee@fenwick.com
10
   Christopher J. Steskal (CA Bar 212297)
11  csteskal@fenwick.com
   Casey O'Neill (CA Bar 264406)
12  coneill@fenwick.com
   Claire Mena (CA Bar 339324)
13  cmena@fenwick.com
14  **FENWICK & WEST LLP**
15  Silicon Valley Center
   801 California Street
16  Mountain View, CA 94041
17
   John D. Tennert III (NV Bar 11728)
18  jtennert@Fennemorelaw.com
   Wade Beavers (NV Bar 13451)
19  wbeavers@fennemorelaw.com
20  **FENNEMORE CRAIG, P.C**
   7800 Rancharrah Parkway
21  Reno, NV 89511

22

23

24

25

26

27

28

**DEFENDANTS' MOTION TO COMPEL DOCUMENTS FROM PLAINTIFF**