EXHIBIT 3

EXHIBIT 3

1  FELIX S. LEE (CSB No. 197084)
   flee@fenwick.com
2  CHRISTOPHER J. STESKAL (CSB No. 212297)
   csteskal@fenwick.com
3  CASEY O'NEILL (CSB No. 264406)
   coneill@fenwick.com
4  CLAIRE MENA (CSB No. 339324)
   cmena@fenwick.com
5  FENWICK & WEST LLP
   Silicon Valley Center
6  801 California Street
   Mountain View, CA  94041
7  Telephone:     650.988.8500
   Facsimile:     650.938.5200
8
   JOHN D. TENNERT III (Nevada Bar No. 11728)
9  jtennert@fennemorelaw.com
   WADE BEAVERS (Nevada Bar No. 13451)
10 wbeavers@fennemorelaw.com
   FENNEMORE CRAIG, P.C.
11 7800 Rancharrah Parkway
   Reno, NV 89511
12 Telephone: 775.788.2212
   Facsimile: 775.786.1172
13
   Attorneys for Plaintiff and Counterdefendant
14 TETSUYA NAKAMURA

15                    UNITED STATES DISTRICT COURT

16                        DISTRICT OF NEVADA

17 TETSUYA NAKAMURA,                         Case No.: 2:22-cv-01324-MMD-EJY

18                 Plaintiff,                PLAINTIFF AND
                                             COUNTERDEFENDANT TETSUYA
19        v.                                 NAKAMURA'S RESPONSES AND
                                             OBJECTIONS TO DEFENDANTS'
20 SUNDAY GROUP INCORPORATED, *et al.*,      FIRST SET OF INTERROGATORIES

21                 Defendants.

22
   SUNDAY GROUP INCORPORATED AND
23 TOSHIKI (TODD) MITSUISHI

24                 Counterclaimants,
          v.
25
   TETSUYA NAKAMURA,
26
                   Counterdefendant.
27

28
   PLAINTIFF'S RESPONSES AND
   OBJECTIONS TO DEFENDANTS' FIRST
   SET OF INTERROGATORIES                    Case No.: 2:22-cv-01324-MMD-EJY

FENWICK & WEST LLP
ATTORNEYS AT LAW

**PROPOUNDING PARTY:**      Defendants

**RESPONDING PARTY:**      Tetsuya Nakamura

**SET:**      One (Nos. 1-8)

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiff and Counterdefendant Tetsuya Nakamura ("Dr. Nakamura"), hereby objects and responds to Defendants and Counterclaimants Sunday Group Incorporated ("Sunday Group"), James Pack ("James"), Toshiki (Todd) Mitsuishi ("Todd"), and SGI Trust's (collectively, "Defendants"), First Set of Interrogatories (the "Interrogatories").

## GENERAL OBJECTIONS AND RESERVATION OF RIGHTS

Dr. Nakamura makes the following General Objections, which apply to each and every Interrogatory and are incorporated by reference in each and every response below as if fully set forth therein. Dr. Nakamura's responses to specific Interrogatories are subject to, and without waiving, these General Objections, even if not reiterated below.

1.      Dr. Nakamura objects to each Interrogatory on the grounds that, taken as a whole and as written, the Interrogatories are overbroad, unduly burdensome, vague, oppressive and beyond the scope of proper discovery. Such objection shall be made below in the short form as, "overbroad and unduly burdensome."

2.      Dr. Nakamura objects to the extent that the Interrogatories seek disclosure of materials or information which are protected by, and restricted from disclosure by, foreign privacy, confidentiality, secrecy, blocking or similar legal principles.

3.      Dr. Nakamura objects to the extent that the Interrogatories seek disclosure of materials or information protected by attorney-client privilege, the work product immunity or other such privileges or immunities.

4.      Dr. Nakamura objects to the extent that the Interrogatories purport to require Dr. Nakamura to create, generate, compile or develop materials which currently do not exist.

5.      Dr. Nakamura objects to the extent that the Interrogatories purport to require Dr. Nakamura to respond based on materials or information in the possession, custody or control of

PLAINTIFF'S RESPONSES AND
OBJECTIONS TO DEFENDANTS' FIRST
SET OF INTERROGATORIES              1              Case No.: 2:22-cv-01324-MMD-EJY

persons or entities other than Dr. Nakamura.

6.      Dr. Nakamura's responses are based on such information presently known to him and are not intended to, and should not be deemed to, waive any objection Dr. Nakamura may have to the Interrogatories.  Such responses are made without prejudice to Dr. Nakamura's right to alter, amend, or otherwise supplement his objections and responses as discovery proceeds.  Dr. Nakamura also reserves the right to use or rely on, at any time, subsequently discovered information or information omitted from these responses and objections as a result of error, oversight or inadvertence.

7.      Any response by Dr. Nakamura to an Interrogatory, notwithstanding any objection, is not a concession, and shall not be construed as an admission, that the Interrogatory or information provided in response thereto is relevant.  Further, in responding to any Interrogatory, Dr. Nakamura does not thereby waive, and intends to preserve, the following: all evidentiary objections; all objections to form; all objections based on burden; all objections Dr. Nakamura may have to the use of information at trial; the right to supplement Dr. Nakamura's objections and responses; the right to object on any applicable ground at any time to any demand for further responses to any Interrogatory or to any other discovery procedures involving or relating to the subject matter of any Interrogatory; or all other applicable objections, rights, privileges and protections afforded to Dr. Nakamura under the Federal Rules of Civil Procedure, the Federal Rules of Evidence, the United States District Court for the District of Nevada's Local Rules, said Court's or this Court's (Judge's) standing orders or rules, or any other applicable rules, statutes, or laws.

8.      Dr. Nakamura objects to the extent that the Interrogatories are not limited to a reasonable time period.

9.      Dr. Nakamura's failure to object to any Interrogatory on a particular ground or grounds shall not be construed as a waiver of Dr. Nakamura's right to object on any additional ground(s) consistent with further investigation and discovery.

## OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS

1.      Dr. Nakamura objects to each Definition and each Instruction to the extent that it is overly broad, unduly burdensome, or encompasses irrelevant information or materials.  Dr. Nakamura further objects to each Definition and Instruction to the extent that it seeks to impose burdens on Dr. Nakamura which are disproportionate to Defendants' need for the information and the needs of this case.  Dr. Nakamura also objects to each Definition and Instruction to the extent that it exceeds the requirements set forth in the Federal Rules of Civil Procedure, the Federal Rules or Evidence, the United States District Court for the District of Nevada's Local Rules, said Court's or this Court's (Judge's) standing orders or rules, or any other appliable rules, statutes, or laws.

2.      Dr. Nakamura objects to the definition of the terms "NAKAMURA" "PLAINTIFF," "YOU" and "YOUR" on the ground that the inclusion of the terms "present and former employees," "agents," "representatives," "attorneys," and "any other PERSONS acting on his behalf" renders the definition overly broad, unduly burdensome, vague, and ambiguous.  Dr. Nakamura further objects to the definition to the extent that it seeks to discover information that is protected by the attorney-client privilege, the work-product doctrine, the joint defense or common interest privilege, or any other applicable privilege, protection, or immunity, as provided by any applicable law.  Dr. Nakamura further objects to the definition to the extent that it purports to impute to him any knowledge of persons or entities falling within the scope of the terms as Defendants have defined them, or imposes duties to ascertain the identity, existence, or relationships of or among any of the persons or entities listed or defined.

3.      Dr. Nakamura objects to the terms "PERSON" and "PERSONS" as vague and ambiguous and seeking to impose obligations on Dr. Nakamura which are broader than or inconsistent with those set forth in the Federal Rules of Civil Procedure, the United States District Court for the District of Nevada's Local Rules, said Court's or this Court's (Judge's) standing orders or rules, or any other applicable rules, statutes, or laws.  To the extent possible, Dr. Nakamura will construe the terms in this definition in accordance with their ordinary and

FENWICK & WEST LLP
ATTORNEYS AT LAW

1    accepted meanings.

2         In addition to the General Objections and Objection to Definitions and Instructions set

3    forth above, Dr. Nakamura makes the following objections to specific Interrogatories:

4                              **RESPONSES AND OBJECTIONS**

5    **INTERROGATORY NO. 1:**

6         Describe in detail the specific false or misleading statements YOU claim were made as

7    alleged in paragraphs 26, 28, 29, 65-66, and 78 of the Complaint (Dkt. 1), including the person

8    making the statement, the date the statement was made, and the individuals present when the

9    statement was made.

10   **RESPONSE TO INTERROGATORY NO. 1:**

11        **Objections**: Dr. Nakamura incorporates by reference each of the general objections set

12   forth above as if fully set forth herein.  Dr. Nakamura objects to this Interrogatory as vague and

13   ambiguous through use of the defined term "YOU," which Defendants define to include any of

14   Dr. Nakamura's "present and former employees, agents, representatives, attorneys, and any other

15   PERSONS acting on his behalf."  Dr. Nakamura objects to this Interrogatory as vague and

16   ambiguous through use of the term "person making the statement" as applied to statements made

17   by or on behalf of a legal entity (*i.e.*, not a natural person).  Dr. Nakamura objects to this

18   Interrogatory as vague and ambiguous through use of the phrase "present when the statement was

19   made" as applied to written statements and statements made via telephonic or electronic means.

20   Dr. Nakamura objects to this Interrogatory as compound and involving multiple subparts.  Dr.

21   Nakamura further objects to this Interrogatory to the extent it seeks information that is equally

22   accessible to Defendants.  Dr. Nakamura objects to this Interrogatory to the extent that it seeks

23   information not within Dr. Nakamura's custody or control.  Dr. Nakamura further objects that this

24   Interrogatory calls for disclosure of legal conclusions and seeks information that falls under the

25   attorney-client privilege, work-product doctrine, or other applicable privileges or protections.

26        **Answer**: Subject to and without waiving the foregoing objections, Dr. Nakamura responds

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW

as follows:

Paragraph 26:

With respect to the specific false or misleading statements referenced in paragraph 26 of the Complaint (Dkt. 1), Dr. Nakamura responds:

Mr. Mitsuishi visited Japan several times in 2017 to meet regarding investment in the Mobby Project. Dr. Nakamura attended several in-person meetings in 2017 with Mr. Mitsuishi and Ryu Imachi. One such meeting occurred on or about November 21, 2017. Dr. Nakamura does not recall the exact dates of other such meetings. Ms. Tomoko Takahashi was present for each of the meetings. In addition, Dr. Nakamura believes that Mr. Masaaki Ito was also present for some portion of some of the meetings.

During these meetings in 2017, Mr. Mitsuishi and Mr. Imachi represented that Professor Leonard Kleinrock of the University of California, Los Angeles was a member of Sunday Group's board of directors and would have a central role in product development. Mr. Mitsuishi and Mr. Imachi told Dr. Nakamura orally that they had gone to Professor Kleinrock's home and asked him to become a member of Sunday Group's board of directors and help develop M-Tokens and that Professor Kleinrock had accepted. In addition, on November 20, 2017, Mr. Imachi sent Dr. Nakamura a text message attaching photos showing Mr. Mitsuishi shaking hands with Professor Kleinrock and stating that Professor Kleinrock had agreed to become an advisor and board member of Sunday Group.

During the meetings in 2017, Mr. Mitsuishi and Mr. Imachi orally represented that M-Tokens would be listed on a cryptocurrency exchange in the summer of 2018. Sunday Group also represented that M-Tokens would be listed on a cryptocurrency exchange in later written updates to investors. For example, in a written communication dated July 15, 2019, from Mr. Mitsuishi addressed to Sunday Group investors, Mr. Mitsuishi represented that M-Tokens would be listed at cryptocurrency exchanges sometime between January 2020 and March 2020. In a written communication dated December 31, 2019, from Mr. Mitsuishi addressed to Sunday Group investors, Mr. Mitsuishi represented that Sunday Group had decided to list M-Tokens on

FENWICK & WEST LLP
ATTORNEYS AT LAW

exchanges "in the latter part of the 1st quarter" citing recent volatility in cryptocurrency trading.

During the meetings in 2017, and in the presence of Mr. Mitsuishi, Mr. Imachi orally represented that the value of the Mobby token would increase several hundred to several thousand times if things went well.  At the same meeting, Mr. Mitsuishi also stated that the value of Mobby tokens would increase at least tenfold once listed.

On or about June 27, 2019 and June 28, 2019, Mr. Mitsuishi visited Japan and met twice with Dr. Nakamura in person at his office in Tokyo.  At one of these meetings, Mr. Mitsuishi orally represented that M-Tokens were ready to use.

Paragraph 28:

With respect to the specific false or misleading statements referenced in paragraph 28 of the Complaint (Dkt. 1), Dr. Nakamura responds:

Since Dr. Nakamura first invested in the Mobby Project in November 2017, he received numerous written and oral communications from Mr. Imachi that Mobby Project Development was going well.  On or about March 10, 2018, Mr. Mitsuishi visited Japan.  Mr. Mitsuishi, Dr. Nakamura, and others traveled to Kyoto.  Mr. Yuji Kuramochi and Mr. Kyoichi Hariu, both of whom were Sunday Group investors, were also present.  Mr. Imachi was also present.  In addition, an individual who was introduced by Mr. Mitsuishi as a Sunday Group engineer, was present.  During this time, Mr. Mitsuishi represented that Mobby Project development had been going well.  In addition, Sunday Group sent investors periodic updates regarding the progress of the Mobby Project representing that development was going well.

On or about June 27, 2019 and June 28, 2019, Mr. Mitsuishi visited Dr. Nakamura at his office in Tokyo.  During those meetings, Mr. Mitsuishi represented that the M-Tokens and wallet were ready.  In addition, Mr. Mitsuishi represented that Sunday Group had entered into a non-disclosure agreement with the U.S. Securities and Exchange Commission prohibiting Sunday Group from sharing information about the Mobby Project.

In a written communication dated July 20, 2020, from Mr. Mitsuishi addressed to Sunday Group investors, Mr. Mitsuishi represented that a "preview" of the Mobby wallet app had been

FENWICK & WEST LLP
ATTORNEYS AT LAW

completed.  Dr. Nakamura subsequently asked Mr. Kon Mahito of Sundale Corporation to contact Mr. Mitsuishi regarding the "preview."  On or about August 22, 2020, Mr. Mitsuishi visited Japan in person and showed Dr. Nakamura images of the wallet app "preview."

In a written communication dated March 10, 2020, from Mr. Mitsuishi addressed to Sunday Group investors, Mr. Mitsuishi represented that the launch and listing of Mobby tokens would not be completed by the end of March 2020 as previously represented.

In a written communication dated March 27, 2020, from Mr. Mitsuishi and James Pack addressed to Sunday Group investors, Mr. Mitsuishi and Mr. Pack represented that Sunday Group had "officially decided to postpone the listing of the Mobby token on an exchange until further notice."

Paragraph 29:

With respect to the specific false or misleading statements referenced in paragraph 29 of the Complaint (Dkt. 1), Dr. Nakamura responds:

On or about December 22, 2017, Dr. Nakamura met with Mr. Mitsuishi and Mr. Imachi in person in Japan.  Ms. Tomoko Takahashi was also present at the meeting.  At that meeting, Mr. Mitsuishi represented that Dr. Nakamura's capital investment would be used to acquire computers which would validate cryptocurrency transactions and receive cryptocurrency in return, from which Dr. Nakamura would be paid his pro rata share.  At that meeting, Mr. Mitsuishi also promised Dr. Nakamura that his investment principal was guaranteed and that Dr. Nakamura would receive high returns derived from his mining investment.  At that meeting, Mr. Mitsuishi also showed Dr. Nakamura a simulation table showing profits of at least several hundred million Japanese yen a month, or, well over $1 million USD per month, as a result of a potential investment.  At that meeting, Mt. Mitsuishi told Dr. Nakamura to transfer him funds and that he would subsequently transfer the capital Dr. Nakamura invested to a third-party mining company, BitClub Network, with whom Mr. Mitsuishi had a relationship, and that BCN would operate the mining center.

FENWICK & WEST LLP
ATTORNEYS AT LAW

Paragraph 65-66:

With respect to the specific false or misleading statements referenced in paragraphs 65 and 66 of the Complaint (Dkt. 1), Dr. Nakamura incorporates by references and reiterates in full the portion of his response to this Interrogatory concerning paragraphs 26 and 28 of the Complaint.

Paragraph 78:

With respect to the specific false or misleading statements referenced in paragraphs 65 and 66 of the Complaint (Dkt. 1), Dr. Nakamura incorporates by references and reiterates in full the portion of his response to this Interrogatory concerning paragraph 29 of the Complaint.

Discovery has just commenced, and Dr. Nakamura's fact investigation is ongoing. Dr. Nakamura reserves the right to amend or supplement his response to this Interrogatory in light of any newly discovered information, although Dr. Nakamura does not concede that any amendment or supplement is required.

**INTERROGATORY NO. 2:**

Describe in detail each fact that forms the basis for your allegation in paragraph 31 of the Complaint (Dkt. 1) that "Sunday Group, Mr. Mitsuishi, and SGI Trust never transferred Dr. Nakamura's investment to BCN, and (b) Mr. Mitsuishi, and SGI Trust knew of and concealed that BCN was a fraudulent scheme that solicited money from investors in exchange for shares of purported cryptocurrency mining pools and rewarded existing investors for recruiting new investors into the scheme."

**RESPONSE TO INTERROGATORY NO. 2:**

**Objections**: Dr. Nakamura incorporates by reference each of the general objections set forth above as if fully set forth herein. Dr. Nakamura objects to this Interrogatory as compound and involving multiple subparts. Dr. Nakamura further objects to this Interrogatory as overly broad, unduly burdensome, vague and ambiguous through the use of the term "forms the basis of your allegation." Dr. Nakamura further objects to the extent that this Interrogatory calls for a legal conclusion and is premature, inasmuch as discovery has just begun, and impermissibly seeks

Fenwick & West LLP
Attorneys at Law

to invade the attorney work product privilege at this early stage.

**Answer**: Subject to and without waiving the foregoing objections, Dr. Nakamura responds as follows: On or about December 22, 2017, prior to execution of the Cloud Mining Agreement, Todd Mitsuishi met with Dr. Nakamura in person in Japan.  At that meeting, Mr. Mitsuishi encouraged Dr. Nakamura to invest in a purported cryptocurrency mining center and represented to Dr. Nakamura that he would receive high returns from his investment in part because Mr. Mitsuishi was friends with the CEO of BCN.  Specifically, Mr. Mitsuishi provided Dr. Nakamura a simulation table showing profits of at least several hundred million Japanese yen a month, or, well over $1 million USD per month.  Relying on those representations, Dr. Nakamura entered into a March 1, 2018 Cloud Mining Agreement with SGI Trust, which was executed by Mr. Mitsuishi on behalf of SGI Trust.  In accordance with that agreement and instructions received from Mr. Mitsuishi, Dr. Nakamura transferred approximately 545.455 bitcoin to one or more designated digital wallet addresses.

After the Cloud Mining Agreement was executed, Dr. Nakamura did not receive any return on his investment initially.  Consequently, approximately six months after execution of the Cloud Mining Agreement, Dr. Nakamura reached out to Kon Mahito, a representative of Sundale Corporation.  Dr. Nakamura understood Sundale Corporation to be a business partner of Sunday Group in Japan founded by Mr. Imachi and which had facilitated communications between Sunday Group and some of its Japanese investors.  Following this outreach, Mr. Mitsuishi told Dr. Nakamura that Dr. Nakamura would not be paid monthly returns for the first six months on his investment because Sunday Group had instead pooled the returns and used them to purchase re-mining machines.  Mr. Mitsuishi told Dr. Nakamura that he would be paid returns for subsequent months, certain of which returns Dr. Nakamura received.  However, Dr. Nakamura received far less than Mr. Mitsuishi's original representations.  In June 2019, Mr. Mitsuishi visited Japan and set up a meeting for Dr. Nakamura and others that invested money or digital assets with him or his companies.  Mr. Mitsuishi was asked directly by Kon Mahito, an employee of Sundale, about the status of the investment in BCN.  Specifically, Mr. Mitsuishi was asked to

FENWICK & WEST LLP
ATTORNEYS AT LAW

provide proof that he or SGI Trust actually transmitted bitcoin to BCN.  Mr. Mitsuishi refused to provide any such proof that he and/or SGI Trust communicated with BCN or transferred any funds whatsoever to BCN or any cryptocurrency wallet.  Because Mr. Mitsuishi and SGI Trust failed to provide the simplest proof that they transferred any amounts to BCN, Dr. Nakamura believes that they did not transfer the bitcoin and instead kept it for themselves.

Since the execution of the Cloud Mining Agreement, BCN has been exposed as a Ponzi scheme.  After the scam was revealed, Mr. Mitsuishi told Dr. Nakamura that he too was deceived by Joseph Frank Abel and the other perpetrators of the BCN scam.  However, to date, Dr. Nakamura is not aware of any claim made by Mr. Mitsuishi, SGI Trust, Karl Roller (an associate of Mr. Mitsuishi's) or any other associate of Mr. Mitsuishi or SGI Trust to recover any amounts of money or digital currency from BCN or its operators.  If Mr. Mitsuishi and SGI Trust were indeed defrauded in connection with the BCN scam, Dr. Nakamura expects that they would have made some claim.

Discovery has just commenced, and Dr. Nakamura's fact investigation is ongoing.  Dr. Nakamura reserves the right to amend or supplement his response to this Interrogatory in light of any newly discovered information, although Dr. Nakamura does not concede that any response or amendment or supplement is required.

**INTERROGATORY NO. 3:**

Describe in detail each fact that forms the basis of your allegation in paragraph 30 of the Complaint (Dkt. 1) that SGI Trust or Mr. Mitsuishi knew that BCN was a Ponzi scheme at any time prior to the transfer of the 545.455 bitcoin.

**RESPONSE TO INTERROGATORY NO. 3:**

**Objections**: Dr. Nakamura incorporates by reference each of the general objections set forth above as if fully set forth herein.  Dr. Nakamura objects to this Interrogatory to the extent it mischaracterizes the allegations contained in paragraph 30 of the Complaint.  Dr. Nakamura further objects to this Interrogatory as duplicative of Interrogatory No. 2.  Dr. Nakamura further objects to this interrogatory as overly broad, unduly burdensome, vague and ambiguous through

FENWICK & WEST LLP
ATTORNEYS AT LAW

the use of the term "forms the basis of your allegation." Dr. Nakamura further objects to the extent that this Interrogatory calls for a legal conclusion and is premature, inasmuch as discovery has just begun, and impermissibly seeks to invade the attorney work product privilege at this early stage.

**Answer**: Subject to and without waiving the foregoing objections, Dr. Nakamura responds as follows: Dr. Nakamura incorporates by reference and reiterates in full his response to Interrogatory No. 2.

**INTERROGATORY NO. 4:**

Describe in detail each fact that that forms the basis of your allegation in paragraph 30 of the Complaint (Dkt. 1) that SGI Trust or Mr. Mitsuishi kept for themselves any portion of the 545.455 bitcoin.

**RESPONSE TO INTERROGATORY NO. 4:**

**Objections**: Dr. Nakamura incorporates by reference each of the general objections set forth above as if fully set forth herein. Dr. Nakamura objects to this Interrogatory to the extent it mischaracterizes the allegations contained in paragraph 30 of the Complaint. Dr. Nakamura further objects to this Interrogatory as duplicative of Interrogatory No. 2. Dr. Nakamura further objects to this Interrogatory as overly broad, unduly burdensome, vague and ambiguous through the use of the term "forms the basis of your allegation." Dr. Nakamura further objects to the extent that this Interrogatory calls for a legal conclusion and is premature, inasmuch as discovery has just begun, and impermissibly seeks to invade the attorney work product privilege at this early stage.

**Answer**: Subject to and without waiving the foregoing objections, Dr. Nakamura responds as follows: Dr. Nakamura incorporates by reference and reiterates in full his response to Interrogatory No. 2.

**INTERROGATORY NO. 5:**

Identify the DITIGAL CURRENCY wallet(s) from which any portion of the 545.455 bitcoin, as alleged in paragraph 30 of the Complaint (Dkt. 1), originated, including the owner or

Fenwick & West LLP
Attorneys at Law

holder of such wallets.

**RESPONSE TO INTERROGATORY NO. 5:**

**Objections**: Dr. Nakamura incorporates by reference each of the general objections set forth above as if fully set forth herein.  Dr. Nakamura objects to this Interrogatory as overly broad, unduly burdensome, vague and ambiguous through the use of the terms "DIGITAL CURRENCY wallet(s)" and "owner or holder."  Dr. Nakamura objects to this Interrogatory as compound and involving multiple subparts.  Dr. Nakamura further objects to this Interrogatory to the extent it seeks information that is equally accessible to Defendants.

**Answer**: Subject to and without waiving the foregoing objections, Dr. Nakamura responds as follows: The wallet used by Dr. Nakamura to transfer 545.455 bitcoin pursuant to the Cloud Mining Agreement has the following bitcoin wallet address: 16eTqXadYXqWimC4YPsphvgKsDLnaE8rwG.  This wallet is owned by Dr. Nakamura.

**INTERROGATORY NO. 6:**

List all transactions in which YOU have been involved related to a future acquisition of any existing or proposed DIGITAL CURRENCY.

**RESPONSE TO INTERROGATORY NO. 6:**

**Objections**: Dr. Nakamura incorporates by reference each of the general objections set forth above as if fully set forth herein.  Dr. Nakamura objects that this Interrogatory is vague and ambiguous in its use of the terms "YOU," "involved," and "related to a future acquisition of any existing or proposed DIGITAL CURRENCY."  Dr. Nakamura objects that this Interrogatory is overly broad and unduly burdensome in that it seeks irrelevant information, it is not limited to a reasonable time period, it seeks a description of "all transactions" related to a future acquisition of any existing or proposed "DIGITAL CURRENCY," and it seeks information about transactions involving persons other than Dr. Nakamura or Defendants, including "present and former employees, agents, representatives, attorneys, and any other PERSONS acting on Dr. Nakamura's behalf."  Dr. Nakamura further objects that this Interrogatory seeks to impose obligations beyond and/or different than those in the Federal Rules of Civil Procedure, the Federal Rules of Evidence,

FENWICK & WEST LLP
ATTORNEYS AT LAW

1   the United States District Court for the District of Nevada's Local Rules, said Court's or this

2   Court's (Judge's) standing orders or rules, or any other applicable rules, statutes, or laws.

3   **INTERROGATORY NO. 7:**

4       Identify each entity owned (in whole or in part), operated, or controlled by Ryu Imachi in

5   which you have gifted, loaned or invested capital of any type, including entities containing any

6   part of the name Upub or Sundale.

7   **RESPONSE TO INTERROGATORY NO. 7:**

8       **Objections**: Dr. Nakamura incorporates by reference each of the general objections set

9   forth above as if fully set forth herein.  Dr. Nakamura objects that this Interrogatory is vague and

10  ambiguous in its use of the terms "capital of any type" and "entities containing any part of the

11  name Upub or Sundale."  Dr. Nakamura objects that this Interrogatory is overly broad and unduly

12  burdensome in that it seeks irrelevant information and is not limited to a reasonable time period.

13  Dr. Nakamura further objects that this Interrogatory seeks to impose obligations beyond and/or

14  different than those in the Federal Rules of Civil Procedure, the Federal Rules of Evidence, the

15  United States District Court for the District of Nevada's Local Rules, said Court's or this Court's

16  (Judge's) standing orders or rules, or any other applicable rules, statutes, or laws.

17      **Answer:** Subject to and without waiving the foregoing objections, Dr. Nakamura

18  responds as follows: Dr. Nakamura invested funds with Upub Corporation, which Dr. Nakamura

19  understands is managed by Mr. Imachi.  In early 2018, Upub Corporation conducted a buy-out

20  and Dr. Nakamura sold his stake in return for his initial investment principal.

21  **INTERROGATORY NO. 8:**

22      For each entity identified in response to Interrogatory No. 7, state the amount of capital

23  gifted, loaned or invested and the ownership interest percentage acquired, in any.

24  **RESPONSE TO INTERROGATORY NO. 8:**

25      **Objections**: Dr. Nakamura incorporates by reference each of the general objections set

26  forth above as if fully set forth herein.  Dr. Nakamura objects that this Interrogatory is vague and

27  ambiguous in its simultaneous use of the terms "gifted, loaned or invested" and "ownership

28

FENWICK & WEST LLP
ATTORNEYS AT LAW

interest percentage acquired, in any." Dr. Nakamura objects that this Interrogatory is overly broad and unduly burdensome in that it seeks irrelevant information and it is not limited to a reasonable time period. Dr. Nakamura further objects that this Interrogatory seeks to impose obligations beyond and/or different than those in the Federal Rules of Civil Procedure, the Federal Rules of Evidence, the United States District Court for the District of Nevada's Local Rules, said Court's or this Court's (Judge's) standing orders or rules, or any other applicable rules, statutes, or laws.

**Answer:** Subject to and without waiving the foregoing objections, Dr. Nakamura incorporates by references and reiterates in full his response to Interrogatory No. 7.

Dated:   November 6, 2023

**FENWICK & WEST LLP**

By:   _/s/ Felix S. Lee_
Felix S. Lee

Attorneys for Plaintiff and Counterdefendant
TETSUYA NAKAMURA

[*Verification to follow*]

## CERTIFICATE OF SERVICE

The undersigned declares as follows:

I am a citizen of the United States and employed in San Francisco County, State of California. I am over the age of eighteen years and not a party to the within-entitled action. My business address is Fenwick & West LLP, 555 California Street, 12th Floor, San Francisco, CA 94104. On the date set forth below, I served a copy of the following document(s):

**PLAINTIFF AND COUNTERDEFENDANT TETSUYA NAKAMURA'S RESPONSES AND OBJECTIONS TO DEFENDANTS' FIRST SET OF INTERROGATORIES**

on the interested parties in the subject action by placing a true copy thereof as indicated below, addressed as follows:

| | |
|---|---|
| Mark L. Smith | Thomas A. Brady |
| msmith@sffirm.com | tab@clydesnow.com |
| Jacob L. Fonnesbeck | Timothy R. Pack |
| jfonnesbeck@sffirm.com | trp@clydesnow.com |
| **SF FIRM, LLP** | Aaron D. Lebenta |
| 6345South Pecos Road, Suite 202 | adl@clydesnow.com |
| Las Vegas, NV 89120 | Keith M. Woodwell |
| Telephone: (725) 666-8701 | kmw@clydesnow.com |
| Facsimile: (725) 666-8710 | **CLYDE SNOW & SESSIONS PC** |
| | 201 South Main Street, Suite 2200 |
| | Salt Lake City, UT 84111 |
| | Telephone: (801) 322-2516 |

☑ **BY E-MAIL:** by causing to be transmitted via e-mail the document(s) listed above to the addressee(s) at the e-mail address(es) listed above.

I declare under penalty of perjury under the laws of the State of California and the United States that the above is true and correct.

Date: November 6, 2023        /s/ Joshua Parr
                                        Joshua Parr

FENWICK & WEST LLP
ATTORNEYS AT LAW