EXHIBIT 5

EXHIBIT 5



**TIMOTHY R. PACK**
DIR 801.433.2447
trp@clydesnow.com

August 21, 2024

<u>**VIA EMAIL**</u>

Felix S. Lee
Casey O'Neill
Fenwick & West LLP
Silicon Valley Center
801 California St.
Mountain View, CA 94041

   Re: *Tetsuya Nakamura v. Sunday Group Incorporated, et al.*
      USDC District of Nevada, Case No. 2:22-cv-01324-MMD-EJY

Casey and Felix,

  The purpose of this letter is to follow-up on some of Plaintiff Tetsuya Nakamura's ("Dr. Nakamura") objections and responses to Defendants' Requests for Production ("RFPs") and Interrogatories (collectively, "Discovery Requests"). As detailed below, we are concerned that information and documents are being withheld based on invalid objections, and that responses to some of the Discovery Requests appear to be incomplete and/or lack clarity. We hope these issues can be resolved amicably and in a reasonable time frame. We are also willing to have a meet-and-confer call to discuss them further, if necessary.

  Additionally, please note that we are still working through Dr. Nakamura's production, many of which include documents in Japanese, and so this letter is not exhaustive of all potential issues. To the extent we discover additional issues, we reserve the right to raise them in due course. Similarly, nothing in this letter is intended to or has the effect of limiting the scope of the actual Discovery Requests served.

  **1. Global Deficiencies in Objections and Responses to Defendants' RFPs.**

  Defendants have served 13 RFPs on Dr. Nakamura, in two separate tranches. Each of Dr. Nakamura's responses to these RFPs are functionally identical: Dr. Nakamura lists a number boilerplate "general" objections, as well similarly boilerplate "specific" objections (such as to relevance or that the RFP seeks documents not in his possession or control), and then indicates that Dr. Nakamura is willing to "meet and confer with Defendants to discuss a reasonable scope of production of documents responsive to this request."



As an initial matter, "[f]ederal courts have routinely held that boilerplate objections are improper." *E.g., Kristensen v. Credit Payment Services, Inc.,* 2014 WL 6675748, *4 (D. Nev., November 25, 2014) (citation omitted); *accord Burlington N. & Santa Fe Ry. Co. v. U.S. District Court for Dist. of Montana,* 408 F.3d 1142, 1149 (9th Cir. 2005) (holding that "boilerplate objections or blanket refusals inserted into a response to a Rule 34 request for production of documents are insufficient to assert a privilege"). There is little question that Dr. Nakamura's responses to Defendants' RFPs meet the definition of "boilerplate" as they are "'[r]eady-made or all-purpose language that will fit in a variety of documents.'" *Kristensen,* 2014 WL 6675748 at *4 (quoting Black's Law Dictionary, 9th ed.). Indeed, Dr. Nakamura used identical or nearly identical language in each response. This is improper. *See id.* (characterizing similar objections to Dr. Nakamura's as "boilerplate objections" and striking them because they are "improper, fail to preserve any privilege" and do not justify withholding responsive documents).

Although the parties did meet and confer over these responses, and Dr. Nakamura has since produced approximately 1,500 pages of documents, given the framing of the responses, we are still unable to tell whether Dr. Nakamura has produced all responsive documents in his possession or control, or whether he continues to withhold any documents on the basis of his objections (and, if so, based on which objection). We therefore request that Dr. Nakamura amend his responses to Defendants' RFPs to remove the boilerplate objections and identify the specific objection being asserted for any responsive documents still being withheld, or confirm in writing that Dr. Nakamura has produced all documents (within the full scope of the definition in the RFPs and Rule 34) in his possession or control that are responsive to Defendants' RFPs 1-13, subject to more specific issues identified below.

### 2. Information/Documents Regarding Dr. Nakamura's Digital Asset Investments and Transactions.

Interrogatory No. 6 and RFP No. 10 each request information and documents, respectively, relating to other digital currency or cryptocurrency transactions/ investments by Dr. Nakamura.[1] Dr. Nakamura refused to respond to either Interrogatory No. 6 or RFP No. 10, relying instead on a host of boilerplate objections. During our prior meet-and-confer conference regarding these Discovery Requests, you stated that your primary objection was based on relevance, and continued to refuse to provide any information or documents responsive to these Requests.

However, Dr. Nakamura's investment history, particularly his experience in transactions or investments in existing or future digital assets or cryptocurrency, goes to his sophistication and is directly relevant to a number of his claims asserted under the

---

[1] Specifically:

-Interrogatory No. 6 states: "List all transactions in which YOU have been involved related to a future acquisition of any existing or proposed DIGITAL CURRENCY."

-RFP No. 10 requests production of: "All financial related DOCUMENTS summarizing any and all DIGITAL CURRENCY acquisitions and investments you have made within the last 10 years, including the nature of the investment and the consideration paid for the investment."



August 21, 2024
Page 3

Japanese law. For example, Dr. Nakamura's experience in cryptocurrency transactions and investments are relevant to at least:

- The inquiry as to whether Dr. Nakamura qualifies as a "consumer" to meet that element of his claim for Recission of Contract under the CCA of Japan (Count VII).[2] To analyze this issue, Japanese authorities consider, *inter alia,* (a) whether a plaintiff has engaged in similar investments or business-related activities in the past, (b) whether a plaintiff's investment related revenue exceeds his revenues from salary or other sources, and (c) whether plaintiff's investment-related activity was conducted for a business purpose. *See Article-by-Article commentary*, Government of Japan Consumer Affairs Agency, (Sept. 2023), page 15-16 (observing that "stock transactions are considered 'as a business' when the gains from the transactions constitute all or important part of the source of reinvestment or livelihood; accordingly, an individual investor in such case is a 'trader' under this Article."); *see also, e.g.,* Tōkyō Chihō Saibansho [Tokyo Dist. Ct.] March 30, 2021, Hei (wa) no. 28275, Westlaw Japan, 2021WLJPCA03308012 (Japan) (looking at plaintiff's other real estate investments and income to determine plaintiff was not a consumer under the CCA).[3]

- Whether Dr. Nakamura can establish the element that he "mistakenly believed" that what was conveyed was true, as well as the causation element, of his claim under the CCA of Japan in Count VII. To analyze these issues, Japanese courts have considered, *inter alia,* a plaintiff's relative sophistication and experience in various types of investments. *See* Tōkyō Chihō Saibansho [Tokyo Dist. Ct.] June 24, 2022, Rei 1 (wa) no. 27723, Westlaw Japan, 2022WLJPCA06248002 (Japan); *see also* Tōkyō Chihō Saibansho [Tokyo Dist. Ct.] April 13, 2022, Rei 2 (wa) no. 7287, Westlaw Japan, 2022WLJPCA04138005 (Japan); Tōkyō Chihō Saibansho [Tokyo Dist. Ct.] Jan. 20, 2014, Hei 24 (wa) no. 15748, Westlaw Japan, 2014WLJPCA01208006 (Japan). Dr. Nakamura's experience in other types of digital asset and cryptocurrency investments and transactions are highly relevant to these factors.

- Whether there was an intentional unlawful deceptive act and whether Dr. Nakamura was led to misunderstand facts for Count VIII-- Rescission of Contract under the Civil Code of Japan. In analyzing

---

[2] The CCA defines a "consumer" as any natural person but excludes those who becomes a party to a contract "as a business" or "for business purposes." Consumer Contract Act, at art. 4, para. 1, item 1; *see also* Consumer Contract Act, at art. 2, para. 1.

[3] Note that the inquiry here goes beyond Dr. Nakamura's investments or transactions in digital assets or cryptocurrency, to other investment activity. Defendants reserve the right to seek additional discovery on Dr. Nakamura's broader investment-related activity to the extent relevant to his claims.



- these issues, Japanese courts have considered, *inter alia,* whether a plaintiff is familiar with the type of investment and the risks and complications therein. *See* Tōkyō Chihō Saibansho [Tokyo Dist. Ct.] September 16, 2011, Hei 21 (wa) no. 37069, Westlaw Japan, 2011WLJPCA09169012 (Japan); *see also* Tōkyō Chihō Saibansho [Tokyo Dist. Ct.] September 5, 2016 Hei 26 (wa) no.28224, Westlaw Japan, 2016WLJPCA09058006 (Japan). Dr. Nakamura's history of investments and transactions in other digital assets/cryptocurrency, including any investments in the future cryptocurrency or blockchain projects, is highly relevant to his ability and opportunity to understand the risks of the investment and, thus, to whether there was an unlawful deceptive act and whether he was misled under Japanese law.

- Japanese courts have similarly considered a plaintiff's experience and sophistication in a particular type of investment in analyzing claims for Breach of the Duty to Explain (Count XI). *See* Tōkyō Chihō Saibansho [Tokyo Dist. Ct.] November 5, 2018, Hei 28 (wa) no. 41464, Westlaw Japan, 2018WLJPCA11058007 (Japan); *see also* Tōkyō Chihō Saibansho [Tokyo Dist. Ct.] February 21, 1996, Hei 6 (wa) no. 11053, 1587 HANREI JIHŌ [HANJI] 82 (Japan); Tōkyō Chihō Saibansho [Tokyo Dist. Ct.] February 18, 2022, Rei Gan (wa) no. 34619, Westlaw Japan, 2022WLJPCA02188009 (Japan); Tōkyō Chihō Saibansho [Tokyo Dist. Ct.] January 26, 2018, Hei 28 (wa) no. 15371, Westlaw Japan, 2018WLJPCA01268025 (Japan).

Because Dr. Nakamura's sophistication and investment/transaction experience – particularly in existing and to-be-developed cryptocurrencies and digital assets – are material factors to each of his claims under Japanese law, the information and documents requested by Interrogatory No. 6 and RFP 10 are certainly relevant and highly probative. We again request that Dr. Nakamura withdraw his objections and fully respond to these Discovery Requests as soon as possible.

### 3. Dr. Nakamura's Response to Interrogatory No. 8.

Interrogatory No. 8 asked Dr. Nakamura to "state the amount of capital gifted, loaned or invested and the ownership percentage acquired, in any" entity identified in response to Interrogatory No. 7. In his response to Interrogatory No. 7 – which asked for information regarding Dr. Nakamura's investments in any entity owned, operated or controlled by Ryu Imachi – Dr. Nakamura generally stated that he "invested funds" in UPUB," and that his stake was bought out in "early 2018" for a return of his initial investment principal. However, Dr. Nakamura did not provide the amount of any investment/return of capital, or the amount of any ownership interest acquired in response to Interrogatory No. 8. No valid objection to Interrogatory No. 8 has been raised (as indicated, the generalized, boilerplate objections are improper), and therefore we request that Dr. Nakamura fully respond to Interrogatory No. 8.



### 4. Dr. Nakamura's Fourth Supplemental Production (June 7, 2024).

On June 7, 2024, Dr. Nakamura produced a number of documents (Nakamura_00532 – Nakamura_001549) as images.  We have a couple of issues with this production that we would like to resolve.

First, a number of these documents have embedded media (pictures, videos, links) that are not accessible because the documents were produced as images.  For example, Nakamura_00587 contains a text message chain with movies and pictures that we cannot access.  Similar issues appear repeatedly in the chat which begins at Nakamura_00636 – *see e.g.,* Nakamura_00717-720. There are other examples as well.  We ask that you provide these in a format that allows us to access all embedded media and links.

Second, it is unclear who the parties are in the text message chain at Nakamura_00547-00598.  From the screenshot near the top, it appears that one of the parties is Ryu Imachi, whose text messages appear in grey.  However, it is not as clear who he is communicating with on the chain (the responses in blue and green). We assume these images were taken from Dr. Nakamura's phone and that is Dr. Nakamura, but can you please confirm.

Third, a similar issue exists with respect to the screenshot of a text chain appearing at Nakamura_635.  There is no indication as to the identity of the parties to the communications, or even whose phone is represented in the screenshot.

Fourth, beginning at Nakamura_00636 is a chat that appears to include multiple parties, in which the participants appear to frequently use screen names rather than actual names.  We assume that Dr. Nakamura is a participant on this chat, and believe that his screen name for the chat is "Imusu King" or "Imus King."  Can you please confirm that, or provide his screen name so we can identify his statements within the chat? Also, to the extent Dr. Nakamura can identify the other participants who are using screen names in the chat, that would be appreciated.

### 5. Dr. Nakamura's Response to RFP No. 13.

RFP No. 13 seeks all communications to or from any of the individuals listed in Plaintiff's Initial Disclosures "related to the DEFENDANTS, the SUBSCRIPTION AGREEMENT, MOBBY, the MOBBY MOU, BCN, UPUB Co., Ltd., and/or any entity that contains the word 'Sundale' in its name." As detailed in Point 1 above, Dr. Nakamura's response to this RFP includes generalized boilerplate objections, and does not indicate that he has, or will produce, any documents in response.  In reviewing Dr. Nakamura's productions, it appears that no communications have been produced for the great majority of the individuals listed in Dr. Nakamura's initial disclosures.

We find it to be very unlikely that Dr. Nakamura had no email, text or other written or electronic communications with any of these individuals regarding at least Defendants or Mobby.  For instance, in the aforementioned text chain, at Nakamura_00591, Mr. Imachi and who we assume is Dr. Nakamura discuss additional individuals who may be interested in purchasing the to-be-developed M-Tokens, including a "Chairman Ito" and other



acquaintances, with Dr. Nakamura stating (as translated): "I don't think anyone can understand what MobyCoin is, so I'll explain it myself." We believe "Chairman Ito" refers Masaaki Ito, who is listed on Dr. Nakamura's Initial Disclosures. Given that Dr. Nakamura apparently was describing "MobyCoin" to other potential M-Token purchasers, including Mr. Ito, it is extremely doubtful that all of those conversations were conducted orally.

Beyond this, Dr. Nakamura stated in the securities complaints that he represented and was filing the complaint on behalf of numerous Japanese M-Token purchasers. If this is true, there must be some written or electronic communications between Dr. Nakamura and those he identified in his securities complaints regarding Defendants or Mobby, at least.

To the extent you maintain that Dr. Nakamura has searched for and provided every communication that is responsive to RFP No. 13, we request that you identify the process and terms used by Dr. Nakamura to search for responsive communications with each individual listed on his Initial Disclosures. Additionally, we request that Dr. Nakamura conduct a further search for responsive communications with these individuals, potentially with broader search terms, as we believe it likely that there are additional responsive documents in his possession and control.

We appreciate your careful consideration of the issues raised in this letter, and await your response. Additionally, we acknowledge receipt of your letter dated August 20, 2024, and will separately respond in due course. We can confirm now, however, that our clients are interested in your request to engage in mediation, subject to the parameters we raised during our July 31, 2024 call.

Cordially,

CLYDE SNOW & SESSIONS

Timothy R. Pack

{02317828-1 }