EXHIBIT 10b

# EXHIBIT 10b

Machine Translated by Google

Chapter 1 General Provisions (Articles 1 to 3)

Article 1 (Purpose)

<div style="border:1px solid black; padding:10px;">

(the purpose)

Article 1 The purpose of this Act is to protect the interests of consumers, taking into consideration the difference in the quality and

quantity of information and negotiating power between consumers and business operators, by providing for the ability to rescind

an offer to enter into a contract or an expression of intention to accept such a contract in cases where a consumer is misled or

confused by a certain act of a business operator, invalidating all or part of clauses that exempt business operators from liability for

damages and other clauses that unduly harm the interests of consumers, and by providing for the ability of qualified consumer

organizations to file injunctive relief against business operators, etc. in order to prevent the occurrence or spread of consumer

damage, thereby contributing to the stability and improvement of people's lives and the sound development of the national

economy.

</div>

1. Purpose

This Act focuses on the structural "gap in the quality and quantity of information, as well as negotiating power" between consumers

and business operators regarding the conclusion of contracts and transactions, and is expected to contribute to the fair and smooth

resolution of disputes regarding consumer contracts (contracts concluded between consumers and business operators; explained in

detail in Article 2) by allowing consumers to invalidate all or part of a contract in relation to the contract conclusion process and contract

terms in cases where it is inappropriate to hold consumers responsible for their own actions. It is also expected to contribute to the

prevention of the occurrence or spread of consumer damage by allowing qualified consumer organizations to seek injunctions against

business operators, etc., in cases where business operators, etc., have actually engaged in or are likely to engage in unfair solicitation

practices or have expressed their intention to offer or accept consumer contracts that contain unfair contract terms as provided for in the

Consumer Contract Act, to a large and unspecified number of consumers.

2. Interpretation of Articles

(1) "Gaps in the quality and quantity of information and in bargaining power between consumers and businesses"

When we look into the causes of problems that have arisen with consumer contracts, we often find that even if the expressions of

intent (offer, acceptance) between the two parties in a consumer contract are formally consistent, the content of the intent that can be

objectively inferred from those expressions is not necessarily the same as the consumer's true intention. Specifically, the reasons are as

follows:

(i) In the process of entering into a contract, a business operator may exert inappropriate incentives or influence, leading to the

consumer making an offer to enter into or accepting a contract without having properly formed an intention to enter into the

contract.

ÿ Regarding the contract clauses, even if there is no defect in the consumer's expression of intent,

In this case, the consumer is forced to enter into a contract that is extremely disadvantageous to the consumer, and the consumer is

burdened with extremely heavy obligations or is deprived of his

or her inherent rights. The cause of the above problems is the structural "gap in the quality and quantity of information, as well as in negotiating

power" (note) regarding the conclusion of contracts and transactions between consumers and businesses, which can be said to be a characteristic

of consumer contracts.

A. Contract conclusion process

(a) Businesses have more information than consumers about the contents and terms of transactions related to the products, rights, and

services they handle (information gap). (b) Businesses have more negotiating know-how than consumers

regarding the business (negotiating power gap).

(disparity).

B. Contract terms

(a) Business operators generally have more detailed information than consumers about the laws and business practices related to their

industries (gaps in the quality and quantity of information). (b) In addition, because business

operators usually created the contract clauses themselves, they have knowledge of the meaning of each and every contract clause

(gaps in the quality and quantity of information). (c) In order to process a large number of similar transactions, it is virtually

impossible for consumers to change

contract clauses that have been preset by business operators (gaps in bargaining power).

(Note) Quality of information: The level of detail, accuracy, and organization of the information

obtained.

Amount of information: the amount of information available

Therefore, this Act focuses on the structural "gap in the quality and quantity of information, as well as negotiating power" (hereinafter, for

convenience, referred to as the "gap in information and negotiating power") that exists between consumers and business operators in relation to

the conclusion of contracts and transactions, and newly stipulates cases in which it is not appropriate to hold consumers responsible for their own

actions, in which consumers will be able to invalidate all or part of a contract with regard to the contract conclusion process and contract terms.

(2) "When a consumer is misled or confused by a certain act of a business operator, he or she may revoke the intention to offer a contract

or to accept the contract."

The meaning of this will be explained in more detail in the explanations following Article 2.

(3) "Provisions that exempt businesses from liability for damages or that unfairly infringe on the interests of consumers"

"Any provision that would harm the public or cause damage to the public or cause loss to the public shall be invalid in whole or in part."

The meaning of this will be explained in more detail in the explanations following Article 2.

(4) "Qualified consumer organizations may request injunctive relief against business operators, etc. to prevent the occurrence
or spread of consumer damage."

The meaning of this will be explained in more detail in the commentary on Articles 12 and following.

(5) "Protection of consumer interests"

As the environment surrounding consumers rapidly becomes more diverse and complex, both consumers and businesses are
It is essential to create an environment in which consumers can act on their own
responsibility. In other words, the direct purpose of this Act is to "protect the interests of consumers" by making it easier for
consumers to seek relief themselves when trouble arises in relation to a consumer contract.

In addition, in light of the characteristics and realities of consumer contracts,
In light of the fact that there are limitations to expecting active enforcement of rights to provide relief to consumers in the event
of a breach of contract, and that there are also limitations to effectively preventing the occurrence or spread of similar consumer
damage, the purpose of this Act is to "protect consumer interests" by enabling qualified consumer organizations to file injunctive
relief claims against business operators, etc.

(6) "Thereby, contributing to the improvement of stability in people's lives and the sound development of the national economy."

The direct purpose of this Act is to "protect the interests of consumers" by making it easier for consumers to seek relief
themselves when trouble arises in relation to consumer contracts, and by enabling qualified consumer organizations to seek
injunctive relief against business operators, etc. in order to prevent the occurrence or spread of consumer damage. The phrase
"therefore" and following "stabilizing and improving the lives of the people and promoting the healthy development of the national
economy" indicates the objective that is expected to be achieved by "protecting the interests of consumers."

In today's world, businesses have become more diverse, complex, and specialized, and society is highly information-based,
which has resulted in a structural "information and negotiating power gap" between consumers and businesses in the conclusion
of contracts and transactions. In light of this situation, in the field of consumer contracts, in cases where it is inappropriate to hold
consumers responsible for their own actions in light of the actual circumstances of the conclusion of contracts and transactions,
or the actual state of troubles, it is expected that by providing by law that consumers can deny the validity of all or part of a
contract, this will have an impact on trials, such as facilitating and speeding up post-facto relief for consumers, improving legal
stability, simplifying and clarifying issues, and preventing the spread of trials, by functioning as a judicial norm (specific guidelines
for dispute resolution). It is also expected to have effects such as facilitating, speeding up, and reducing the cost of out-of-court
dispute resolution, changing the awareness of both consumers and businesses regarding contracts, and improving healthy public
morals.

For business operators, the establishment of rules that are highly predictable regarding the effects that actions taken in
accordance with business activities will have will encourage both consumers and business operators to act in accordance with
their responsibilities as contracting parties, and will reduce disputes.

It is expected that this law will contribute to preventing disputes. Furthermore, it is expected that it will contribute to revitalizing economic

activity by fostering trust between consumers and businesses in transactions. In this way, the enactment of this law will contribute to

"improving the

stability of people's lives and the soundness of the national economy."

It is expected that this will contribute to "development."

A. Abuse of consumer rights

In each trial, taking into account the purpose provision, the quality and quantity of information and the difference in negotiating power

Therefore, if the consumer's claim constitutes an abuse of the rights provided for in Article 1, Paragraph 3 of the Civil Code, the

consumer's claim should be dismissed.

When a consumer enters into a contract with a business operator that is unfairly advantageous to the consumer.

Considering the principle behind the enactment of this Act, which is to "focus on the structural 'information and negotiating power gap'

that exists between consumers and business operators in relation to the conclusion of contracts and transactions, and to determine by

law cases in which it is inappropriate to hold consumers responsible for their own actions, taking into account the actual circumstances

of the conclusion of contracts and transactions and the actual state of troubles, other than those that can be remedied under the

provisions of the Civil Code, etc.", when a consumer concludes a contract with a business operator that is unfairly advantageous to them,

this falls outside the principle behind the enactment of this Act, and therefore it is not intended that this Act will provide relief.

3. Scope of application

This Act is a civil rule that is broadly applicable to consumer contracts in all fields of trade, and takes into account the fact that in

reality, it is common for there to be structural "disparities in information and negotiating power" regarding the conclusion of contracts

and transactions.

In addition, in consideration of this general trend, the scope of application of this Act was determined as follows:

The concept is based on the following ideas:

When determining the scope of application of consumer contracts (contracts between consumers and business operators) covered

by this Act, as mentioned above, it is necessary to determine the scope of consumers and business operators while keeping in mind

the "gap in information and negotiating power" regarding transactions.

The perspective that distinguishes between "consumers" and "businesses" in this law is the "gap in information and negotiating

power" regarding transactions, and the cause of this gap is basically "whether or not the same kind of actions (conclusion of contracts,

transactions) are repeated and continued," but it was thought that the cause is not limited to this, and that the perspective of "2. the

responsibility of business operators as required by society" is also necessary. For example, in addition to the things that business

operators

handle as the business itself in their business, business operators have more detailed information than consumers about the

contents of the products, rights, and services necessary to operate their business, the terms of transactions, and even laws and

business practices, but this cannot be explained solely by "repeated and continued similar actions (conclusion of contracts,

transactions)."

This is usually a business that is "the repetition and continuation of the same kind of actions (conclusion of contracts, transactions)."

Machine Translated by Google

In order to carry out the above, regardless of the number of repetitions, it is what an enterprise should be aware of at a minimum when conducting business, and can be said to be the "infrastructure (information network, legal knowledge, business practices, etc.)" required of an enterprise. In other words, it can be said to be a burden that society requires of those who conduct business in order to ensure the safety of transactions in the economic society (= "responsibility of enterprises required by society ") (note).

The presence or absence of "the infrastructure for businesses to conclude contracts and conduct transactions" that accompanies the above-mentioned "society-demanded responsibility of businesses" is another factor in the "information and negotiating power gap" that causes trouble in consumer contracts.

(Note) Regarding the burden that society requires of business operators, there are examples that adopt a similar approach. One example is the concept of "product liability" stipulated in the Product Liability Act.

The Product Liability Act may impose liability on manufacturers for damages due to defects in their products, i.e., lack of normal safety, on the following theoretical grounds: Liability of trust: Manufacturers should be held liable for damages on the grounds that they manufactured and delivered defective products in violation of consumers' trust in their products.

Liability for compensation: Manufacturers are engaged in profit-seeking activities, and should be held liable for damages on the grounds that they caused damage to others in the process of making profits.

(Risk liability: A manufacturer of a product that contains inherent danger should be liable for compensation if that danger materializes.)

Article 2 (Definitions)

---

(Definition)

Article 2 In this Act, "consumer" means an individual (whether as a business or for the purposes of a business)

(Except in cases where a party becomes a party to a contract.)

2. In this Act (excluding Article 43, Paragraph 2, Item 2), the term "business operator" refers to a corporation or other

organization, as well as an individual who becomes a party to a contract as a business or for the purpose of a business.


3 In this Act, a "consumer contract" is a contract concluded between a consumer and a business operator.

It means a contract.

4. In this Act, the term "qualified consumer organization" refers to an entity that has been certified by the Prime Minister pursuant

to Article 13 as a consumer organization (meaning a consumer organization under Article 8 of the Consumer Basic Act (Act

No. 78 of 1968); the same applies hereinafter) that is a legal entity that has the necessary qualifications to exercise the right

to seek an injunction under the provisions of this Act for the benefit of a large and unspecified number of consumers.

---

I. Paragraphs 1 to 3

1. Purpose

Consumer contracts covered by this Act (contracts concluded between "consumers" and "businesses")
When determining the scope of application, it is necessary to determine the scope of "consumers" and "businesses" while keeping
in mind the "gap in information and negotiating power" regarding the conclusion of contracts and transactions.

The distinction between "consumers" and "business operators" in this Act is based on the "difference in information and

negotiating power" regarding the conclusion of contracts and transactions. This difference is derived from "business" (the repeated

and continuous performance of the same kind of acts with a certain purpose), so this concept is used in the definition.


2. Interpretation of Articles

(1) "Becoming a party to a contract as a business or for the purposes of a business"

As used in this Article, "consumer" means an entity that enters into a contract "not as a business or on behalf of a business",

and "business" means an entity that enters into a contract "as a business or on behalf of a business".


Of these, for "corporations" and "other organizations" described below in (4) and (5), contracts concluded by these organizations

are considered to be made as "business operators." However, as described in (2) below, individual business operators may be

parties to

contracts as "business operators" "as a business or for a business," or as "consumers" "as a business operator or for a business

purpose."

Machine Translated by Google

In some cases, a sole proprietor may become a party to a contract "neither as a business nor for the sake of a business." Therefore, under this Act, it is appropriate to treat a sole proprietor as a "businessman" when he becomes a party to a contract "as a business or for the sake of a business." Note that "as a business or for the

sake of a business" in this case does not mean "a person who becomes a party to a contract"

It means "as an entity's own business or for its own business."

A. "Business"

"Business" means "the repeated and continuous performance of the same kind of activities with a certain purpose." However, the element of profit is not necessary, and it does not matter whether it is done for profit or not. It also includes the same kind of acts that are repeatedly and continuously performed regardless of whether they are for the public interest or not, and further includes the concept of "professional occupations" such as lawyers and tax accountants.

Furthermore, work based on a labor contract (a contract in which an employee promises to provide labor to an employer) is done under the direction and command of others and not at one's own risk and expense, and is therefore not considered to fall under the concept of a "business," which is carried out independently at one's own risk and expense (see Article 48).

"As a business" and "for the business"

"As a business" means to repeatedly and continuously carry out the same kind of activities. According to the Dictionary of Legal Terms (10th Revised Edition) (Gakuyo Shobo, 2016), co-edited by Hiroshige and Iwasaki, "constitute a profession" means "it is often difficult to determine whether the repeated and continuous performance of a certain act has been carried out as a 'profession,' but ultimately, the only way to determine this is whether it has created a social status that is considered to be the performance of a business according to accepted social standards."

Regarding "as a business," if it is done with the intention of continuing it for a certain period of time, the initial act is also considered to have been done as a business, regardless of the scale or form of the business. "For business purposes" refers to something done for the purpose of business.

(2) "Individual (in the case of becoming a party to a contract as a business or for the purposes of a business)"

(Except for the above.)

While an individual who does not carry on a business is automatically considered to be a "consumer" who enters into a contract "neither as a business nor for the benefit of a business" under the Act, an individual business person may enter into a contract either as a "business person" or as a "consumer."

For example, if an individual business owner purchases a computer for the business but at the same time uses the computer for personal use, it may not be possible to determine whether the individual is a party to a contract "for business purposes" or "for purposes other than business purposes." In such cases, it is necessary to objectively determine whether the individual is a party to a contract "for business purposes" based on each specific contract.

Machine Translated by Google

The way of thinking for making such a judgment can be as follows:

ÿ First, at the stage of concluding the contract, judge whether there is an objective, external standard (e.g., nominal, etc.) that the relevant item was done to achieve a purpose; ÿ If it is practically difficult to make a judgment based only on ÿ, judge according to physical, substantial (e.g., time, etc.) standards whether the relevant item was done primarily to achieve a purpose (e.g., in the case of the above example of purchasing a computer, whether more than half of the time it was used was for business purposes).

There is a court case that is considered to be based on the premise that a person is a consumer, in which an individual was encouraged to invest in real estate by a business operator and purchased two properties, but the court ruled that the disadvantageous circumstances surrounding the real estate investment had not been fully explained to the individual, and therefore the cancellation was allowed under Article 4, Paragraph 2 (Tokyo District Court Judgment, March 27, 2012).

A. When it is unclear whether an individual is a "consumer" or a "business operator"

When a business wishes to enter into a contract with an individual, it may find it difficult to determine whether the other party is a "party to a contract as a business or for the business purposes."

In other words, at the time of the contract, it is impossible to determine whether the contracting party is entering into the contract "as a business or for business" from the name at the time of the contract or the words and actions of the contracting party. In addition, if there is no information about the contracting party's business, it is likely to be difficult for the business operator to determine this. However, since this law is a civil rule that directly serves as a judicial norm, it is ultimately up to the court to decide.

The court will make a judgment taking into consideration all objective facts, and the burden of proof that the individual entered into the contract as a "consumer" will be borne by the individual who asserts that the Consumer Contract Act applies in the dispute, in accordance with the Civil Procedure Code. In addition, for example, if a business operator, intending to avoid the application of this Act, creates a contract with an individual in the name of a corporation or other organization, the judgment will not be based solely on the description in the contract document, but rather on the individual being considered to be a "consumer" if the contract was not actually entered into "as a business or for business purposes." However, the final judgment will be made in the judicial arena based on each individual case.

B. Change of use

Whether or not this Act applies when the contents of a contract that was initially made for personal use are used for business purposes after a certain period of time has passed will be determined based on the purpose of use at the time the contract was first made, provided there is continuity in the contents of the contract.

Therefore, taking the specific example as an example, if an individual initially enters into an internet contract with an internet business operator for personal use and then starts a mail order sales business six months later, if there is no cancellation or modification of the initial contract at the time the mail order sales business is started and the initial contract is still in force, then the contract will be a consumer contract.

(3) "Except for Article 43, Paragraph 2, Item 2"

Article 43, Paragraph 2, Item 2 (Jurisdiction) stipulates the place where an unfair act under the Act on Premiums and Representations occurred.

However, in order to distinguish a "business operator" under the Act against Unjustifiable Premiums and Misleading Representations from a "business

operator" under this Act, the word "this Act" in Paragraph 2 of this Article is followed by "(excluding Article 43, Paragraph 2, Item 2)."

(4) "Corporation"

A corporation is an entity other than a natural person that is recognized as the subject of legal rights and obligations. Corporations are classified into

public corporations such as the nation, prefectures, cities, towns, and villages, special corporations established by special laws, general incorporated

associations or general incorporated foundations, profit-making corporations such as joint-stock companies, corporations based on individual laws such as

cooperatives, and corporations promoting specified non-profit activities. Religious corporations and labor unions based on Article 11 of the Labor Union

Law are also included in this category.

In addition, in administrative law, when an administrative body is one of the parties, the following types of actions are considered:

In politics, it is believed that legal relationships based on "contracts" exist.

A. Procurement Administration

Sometimes it is by administrative disposition (taxation, land acquisition, etc.), but sometimes it is by voluntary acquisition of land, ordinary property

In the case of a sale, etc., it is interpreted as a "contract" under the Civil Code.

B. Benefit Administration

1) When a government entity provides services in response to a request from an individual (water utility)

(such as employment relationships) are interpreted as "contracts" under the Civil Code.

ÿ When an administrative entity provides goods or services to a private individual who meets certain requirements (such as permission to enter a

public nursery school), the certification of eligibility is made through an administrative disposition, but the actual exchange of goods or

services is based on a contract, and unless there are special provisions, it can also be interpreted as a "contract" under the Civil Code

(Note).

(Note) The idea that a contract is concluded between the administrative body and the recipient following or at the same time

as the administrative disposition (two-stage theory).

Regulatory administration (issuance of driver's licenses, passports, etc.) and notarial administration (registration, family registers, entry of resident

registration cards, issuance of copies, etc.) are considered to be the exercise of public power by administrative agencies, in other words, "administrative

dispositions." These fields should be regulated by the Administrative Procedure Act, and are not considered to be legal relationships based on "contracts."

In addition, cases where an administrative body makes something available to everyone (start of public

use) and everyone uses this thing (public property) (general use of public property), or where a private person is obligated to receive a service from

an administrative body based on this obligation from the perspective of public interest (enrollment in public elementary and junior high schools, use of

sewerage, etc.), are also usually considered to be legal relationships based on "contracts."

It is not thought to be based on

(5) "Other organizations"

"Other organizations" includes associations under the Civil Code (Articles 667 to 688 of the Civil Code) and corporations. This includes associations or foundations that do not have legal personality. This includes various groups that can become legal persons but do not go through the procedure to become legal persons, such as groups with the purpose of goodwill or socializing, PTAs, academic societies, and alumni associations. This also includes condominium management associations that

do not have legal personality. Regarding the issue of whether a university rugby club team, which is considered to be a goodwill group, is a "consumer" in a contract between a business operator and the team, there is a court precedent that has determined that even if the team is an organization composed of a certain number of members, such as an association without legal capacity, it is a "consumer" if it cannot be evaluated as having an advantage in terms of the quality and quantity of information and negotiating power in relation to consumers (Tokyo District Court Judgment, November 17, 2011, Case Law Times No. 2150, p. 49).

(6) "Consumer contract"

Among "contracts" under the Civil Code, this refers to contracts concluded between a "consumer" and a "business operator" as defined in this Article.

3. Examples of individual contract types

[Case 2-1] Transactions conducted by public interest incorporated associations and public interest incorporated foundations for their main or side businesses

Public interest incorporated associations and public interest incorporated foundations are business operators, and transactions that business operators conduct for their main business or side business are deemed to be conducted as business operators.

[Case 2-2] Religious activities

Religious corporations are considered to be business operators because they are legal entities. In addition, religious activities conducted by religious leaders and followers are considered to be businesses if they fit the concept of "business = repeated and continuous performance of the same kind of acts with a certain purpose." Furthermore, religious activities conducted by religious corporations, etc. are not considered to be "consumer contracts" if they do not fall under the concept of "contract" under the Civil Code.

Therefore, whether charity or donations associated with religious activities constitute a "gift" (i.e., a contract) to a religious corporation is determined by the interpretation of the Civil Code, not by the interpretation of "consumer contracts" in this article, and does not particularly change the relationship between religious activities and court cases.

Machine Translated by Google

[Case 2-3] Homework Business Law

The so-called home-work business law is a business in which a business advertises home-work with favorable conditions, such as simple work that can earn a high income, through direct mail, etc., to attract applicants, and then has them purchase materials and machines for the home-work at high prices. The purchaser, even if he or she uses the materials and machines to work, is refused by the business that had no intention of buying the products in the first place, citing reasons such as a lack of skill, and is thus unable to earn any income and ultimately ends up at a loss. First, when considering the system of "home-work" itself in the home-work

business law and other laws, the relationship between the person ordering the home-work and the home-work contractor (the individual who is requested to do the home-work by the client) is generally not a labor contract under the Labor Law, but a contract of employment under the Civil Code, and the home-work business law does not constitute a labor contract (see Article 48).

In addition, the question of whether the homework business law applies to this law is whether the contractor of the homework is a "business operator" or a "consumer" as defined in this article. Since this law is a civil rule, it is ultimately

decided in the judicial arena based on each individual case. However, there are so-called homework business laws whose main purpose is to have the contractor purchase materials and machinery necessary for the homework, and the homework is objectively insubstantial and cannot be recognized as a business. In this case, the contract to purchase materials and machinery for the homework at a high price is not a contract "for

business," so it is considered to be a "consumer" as defined in this article and falls within the scope of application of this law.

The standard for making this judgment is whether or not there is "business nature," and "business" here refers to "the repeated and continuous performance of the same type of act with a definite purpose." However, "business nature" is not judged simply based on the number of times the work is done at home or whether there is a profit; rather, it is judged based on whether it is appropriate to regard the activity as a business as a whole, taking into account various factors such as the business operator's intention at the contract stage (whether they really intended to have the employee do home work, or whether they merely intended to have the employee purchase materials and machinery for the home work at high prices under the pretext of having the employee do home work. If it is found to be the former, it becomes a matter of breach of contract rather than an issue under this Act).

[Case 2-4] Multilevel marketing

So-called multilevel marketing is a type of sales scheme in which a person in charge of a sales organization recruits other people to join the organization, and then has those people recruit other people to join the organization, in turn expanding the organization in a pyramid shape.

If a person who intends to join does not intend to resell or otherwise engage in the resale of goods or services and enters into a contract to purchase or provide such goods or services solely for his or her own consumption, the contract to purchase or provide such goods or services will be a contract made "neither as a business nor for business purposes", and therefore the subscriber will not be considered a "consumer" under this Article.

Therefore, transactions with the head of a sales organization, etc. are considered to be subject to this Act.

However, in this transaction, it is normal for a person who wishes to join a sales organization with the intention of reselling, etc., and to enter into a purchase contract or supply contract for the relevant product or service. There are also other arrangements and consignment forms, but in this case, the purchase contract or supply contract for the relevant product or service is considered to be a contract made "as a business." Therefore, a subscriber corresponds to a "business operator" in this article, and the person in charge of the sales organization, etc.

Transactions with foreign companies will not be subject to this Act, but ultimately, it is expected that decisions will be made in the courts on a case-by-case basis.

[Case 2-5] Franchise Business Law

The franchise contract in the so-called franchise business law is a contract between the headquarters and a number of In a business model consisting of a chain of franchisees, the headquarters provides the franchisees with the permission to use trademarks, management know-how, and management guidance for the operation of the stores during the contract period, and the franchisees pay royalties in return. The headquarters is considered to be a "business operator" under this article, and the chain franchisees are also considered to be contracts for "business purposes," so they are also "business operators" under this article, and franchise agreements are not subject to this law. However, some cases, such as unfair solicitation disguised as franchise agreements, may be subject to this law, but ultimately, it is thought that the decision will be made in the courts based on each individual case.

[Case 2-6] Monitor sales method

The so-called monitor sales method is generally considered to be a sales method that makes people believe that they are receiving a special offer of a product or service on the condition that they become a monitor (a person who, in exchange for purchasing a product or service from a trader under special conditions, reports information obtained after actually using the product or service to the trader).

In this case, businesses that engage in monitor sales are generally considered to fall under the category of "business operators" under this article. However, in the case of monitors, if the monitoring that the monitors themselves conduct is objectively considered to have no "business" nature, the contract to purchase goods or services for the purpose of said monitoring is not considered to be a "business-oriented" contract. Therefore, monitors in such cases are considered to fall under the category of

"consumers" under this article and fall within the scope of application of this law, but in any case, since this law is a civil rule, it is considered that the final decision will be made in the courts based on each individual case.

Machine Translated by Google

[Case 2-7] Guarantee contracts, etc.

In principle, guarantee contracts with individuals are subject to this Act. However, in the case of guarantee contracts related to

lease contracts between businesses, if the individual who is the guarantor is deemed to have concluded the guarantee contract "as

or for his/her own business",

It is considered that this Act does not apply.

Based on the above considerations, the applicability of the Act to the attributes of the individuals who are guarantors, etc. in the

above transaction examples can be generally judged as follows:

(1) The manager (representative director, director) or employees of a corporation, as individuals,

Guarantee contracts, etc. in which you act as a guarantor for debts owed

The managers and employees of a corporation are not themselves the business owners.

In principle, such a person is considered to fall under the term "consumer" in this article.

Therefore, in this case, the guarantee contract etc. will be a consumer contract.

(2) Guarantee contracts, etc. in which an individual business owner, a joint business owner, an employee, etc., acts as a

guarantor for the debts of an individual business owner

The same is basically true for (1), except that in the case of joint venturers, the guarantee agreement etc. is generally not

applicable since it is generally considered that such agreement is concluded "as or for the benefit of their own business".

(3) Where the main contract (lease contract) for business-to-business transactions contains contract clauses invalidated by

Articles 8 to 10, and the guarantee contract, etc. becomes a consumer contract

Lease contracts (main contracts that are transactions between businesses) and guarantee contracts, etc. (transactions between

businesses and individuals) are separate contracts, and when guarantee contracts, etc. are consumer contracts, it is necessary to

determine whether the contract clauses of the guarantee contract, etc. are invalid under Articles 8 to 10 (consider them separately).

In other words, for a guarantee contract, etc. related to a lease contract (main contract)

that contains a contract clause that is invalid under Articles 8 to 10, as long as the contract clause is part of the lease contract

(main contract), even if this Act applies to the guarantee contract, etc., a claim based on the contract clause will not be deemed

invalid. However, if the contract clause that constitutes the guarantee contract, etc. (the agreement between the business and the

individual guarantor regarding the content of the guarantee contract, etc.) falls under the contract clauses that are invalid under

Articles 8 to 10, the contract clause will be invalid.

[Case 2-8] Nursing care service contract

Since this Act is a civil rule, among contracts under the Civil Code, any contract concluded between a "consumer" and a

"business operator" under this Article is covered by this Act, regardless of the form of transaction. Therefore, a nursing care service

contract

concluded between a "user of nursing care services who has been certified as requiring nursing care" and a "nursing care

service business operator (note)" is also covered by this Act.

The contract is between a "consumer" and a "business operator" and is therefore subject to this Act.

(Note) Nursing care service providers

Designated home service providers and nursing care insurance facilities providing nursing care services

Furthermore, with regard to the relationship between a user of nursing care services and a care plan preparation business (designated home nursing care support business), when a user of nursing care services who has been certified as needing nursing care enters into a contract with a care plan preparation business to create a care plan (nursing care service plan), this is also subject to this Act, since it is a contract entered into between a "consumer" and a "business" as defined in this Article.

[Case 2-9] Medical

This Act does not apply in relationships where no contract exists between a medical institution and a patient (note), such as administrative measures that force a patient into hospitalization, but it does apply when a contract is deemed to have been established.

(Note) A relationship in which no contract exists between a medical institution and a patient.

A. When a patient is legally obligated to visit the hospital

1) In cases where an administrative disposition forces a patient to be hospitalized, etc.

Legal basis: Act on Mental Health and Welfare of the Mentally Disabled (hospitalization measures)

Narcotics and Psychotropic Substances Control Act (Hospitalization

Measures) Act on Prevention of Infectious Diseases and Medical Care for Patients with Infectious Diseases (Hospitalization Measures)

etc.

2) When a medical examination is required by law

Legal basis: Industrial Safety and Health Act (health examination)

B. Cases considered as administrative management such as emergency medical care

[Case 2-10] Qualification sales scam

So-called qualification sales scams are generally thought of as sales scams that aggressively solicit people to take courses to obtain public or private qualifications, generally by saying things like, "Just take the course and you'll get the qualification."

Business operators who engage in sales based on qualifications are considered to be "business operators" under this article. On the other hand, if the person receiving the solicitation objectively has qualifications that are for the "purpose of their business", then they are considered to be "business operators" under this article and are not subject to this law. However, if the qualifications are not for the "purpose of their business", then they are considered to be "consumers" under this article and are subject to this law.

In any case, since this law is a civil rule, ultimately it will depend on each individual case.
It is believed that this will be decided in the judicial system .

The contracting party will be the business operator. In addition, this is merely an abstract attempt at classification, and the final

This is something that will be judged in the judicial system on a case-by-case basis.

| | Motivation for concluding the contract | Treatment of subjects | Consumer contract? |
|---|---|---|---|
| ÿ | A business owner who runs his own business applied to take the course to obtain a qualification necessary for his business. ÿ Contract for business purposes | Business operator × | |
| ÿ | An employee is required by his/her employer to obtain a qualification to perform a job. I applied for the course because I was requested to do so. ÿ Contract for labor (ÿ Because the labor under a labor contract is not a "business," a contract for labor does not qualify as a contract for "business") (see Article 48) | Consumer • | |
| ÿ | Employees may feel that they need to obtain a qualification to carry out their work. I applied for the course myself because I made the primary decision. ÿ Contract for labor (ÿ Because the labor in a labor contract is not a "business," a contract for labor does not qualify as a contract for "business") (see Article 48) | Consumer • | |
| ÿ | The applicant applied for the course with the intention of using the qualification to start an independent practice in the future (e.g., when a person who plans to become a lawyer in the future takes a course on lawyer qualifications). ÿ Since the applicant is not yet in the stage of conducting business, this does not constitute a contract for "business purposes." | Consumer • | |
| ÿ | I have no intention of using that qualification to start my own business in the future, nor have I been required by my employer to obtain a qualification to carry out my duties, nor have I independently determined that I need to obtain a qualification to carry out my duties, but I applied to take the course on my own accord as part of my hobby. ÿ This does not constitute a contract for "business purposes." | Consumer • | |

[Case 2-11] Individual stock investors

For individual investors in stocks, first, the nature and purpose of the source of funds for stock trading must be objectively judged, and whether the individual investor is a "business person" or a "consumer" under this Article must be determined based on whether the transaction is conducted "as a business or for the purpose of a business."

In other words, if the profits from stock trading are the whole or a significant part of the source of funds for reinvestment or livelihood, the transaction is considered to be conducted by the individual investor "as a business," and therefore the individual investor in this case is a "business person" under this Article.

In addition, when an individual trades stocks as a means of managing business funds for his/her own business, this is a transaction conducted "for business purposes," and the individual becomes a "business operator" under this article. In any case, since this law is a civil rule, ultimately, it will depend on the individual specific example.

Machine Translated by Google

> Therefore, it is believed that this will be decided in the judicial system.

II. Section 4

1. Purpose

In this Act, qualified consumer organizations may file injunctive relief against business operators, etc., in order to prevent the occurrence or expansion of consumer damage and to protect the interests of consumers, but the entity filing the injunctive relief must be one who can be expected to file the injunctive relief sincerely from the perspective of protecting the interests of a large and unspecified number of consumers. From this perspective, Article 13 provides that the Prime Minister will certify an entity that meets all of the following requirements: that it is a specified non-profit corporation, a general incorporated association, or a general incorporated foundation, that it has the main purpose of collecting and providing information on consumer life, and of carrying out activities to prevent and provide relief to consumer damage and other activities to protect the interests of a large and unspecified number of consumers, that it is recognized that it has been carrying out such activities properly and continuously for a considerable period of time, and that it has properly established a system and business regulations for properly carrying out the business related to injunctive relief. Furthermore, it is expected that such entity will endeavor to engage in activities as a consumer organization as provided for in Article 8 of the Consumer Basic Act.

In light of the above, a definition has been established to define a "qualified consumer organization" as an entity that has been certified by the Prime Minister pursuant to Article 13 as a consumer organization that is a legal entity that has the necessary qualifications to exercise the right to claim injunctions under this Act for the benefit of a large and unspecified number of consumers.

Machine Translated by Google

Article 3 (Efforts of businesses and consumers)

---

(Efforts of businesses and
consumers) Article 3 Businesses must endeavor to take the following measures.

(i) When determining the terms of a consumer contract, consideration should be given to making the rights
and obligations of consumers and other contents of the consumer contract clear and easy for consumers
to understand, and (ii) When soliciting the conclusion of a consumer

contract, in order to deepen the consumer's understanding, business operators should provide necessary
information on the rights and obligations of consumers and other contents of the consumer contract,
taking into consideration the age, mental and physical condition, knowledge and experience of each
individual consumer that the business operator has come to know, depending on the nature of the goods,
rights, services and other objects of the consumer contract.

(iii) When soliciting the conclusion of a consumer contract that constitutes a standard transaction agreement as provided for in
Article 548-2, Paragraph 1 of the Civil Code (Law No. 89 of 1896), except in cases where measures have been taken to
make the contents of the standard terms and conditions as provided for in the same paragraph readily accessible to
consumers, the consumer shall be provided with the information necessary for the consumer to make a claim as provided
for in Article 548-3, Paragraph 1 of the same Code.

The consumer contract is a contract that a business operator must provide to the consumer in order to
obtain a proper understanding of the consumer's rights and
obligations.

---

I. Paragraph 1

1. Purpose

(1) Purpose

This section stipulates the obligation of business operators to make efforts in accordance with the purpose of
Article 1. The disparity in information and negotiating power between business operators and consumers is often
the background to disputes that arise in contracts concluded between business operators and consumers.
Therefore, business operators are required to take care to ensure that the contents of consumer contracts,
including the rights and obligations of consumers, are clear and easy for consumers to understand (clarification of
contract terms), and when soliciting the conclusion of consumer contracts, they are required to provide necessary
information about the rights and obligations of consumers and other contents of consumer contracts in order to
deepen consumers' understanding (provision of information). In addition, the 2018 amendment stipulated the
clarification of contract terms and the provision of information separately in items 1 and 2, and each of these was
amended. In addition, the ordinary Diet session of 2022 amended the obligation to make efforts to provide
information at the time of solicitation in item 2 by adding age and physical and mental condition as factors to be considered.

In addition, amendments were made to add an obligation to make efforts to provide information regarding the right to request the disclosure of standard terms and conditions and the information necessary for exercising the right to cancel.

(2) The significance of providing for the obligation of business operators to make efforts in this Act

Laws that stipulate the obligation of businesses to provide information to consumers, including the provision of written information, include Article 217 of the Commodity Futures Trading Act, Article 3 of the Installment Sales Act, Article 4 of the Specified Commercial Transactions Act, Article 37-3 of the Financial Instruments and Exchange Act, Article 12-4 of the Travel Agency Act, and Article 35-1 and 2 of the Real Estate Transactions Business Act. The reason why this section stipulates the obligation of businesses

to make efforts, even though similar provisions exist in these laws, is that these laws are aimed at individual industries, while the Consumer Contract Act stipulates provisions for consumer contracts as a whole. On the other hand, it is also possible that the obligation of businesses to make efforts as stipulated in this section should be stipulated in the Consumer Basic Act. However, while the Consumer Basic Act stipulates abstract

obligations, the Consumer Contract Act stipulates specific obligations in the context of consumer contracts, even if they are obligations of efforts, and so it is significant that this section is stipulated together with the substantive provisions.

(3) Reasons for adopting the form of an obligation to make efforts

Considering that the cases where the effect of rescission is recognized due to defects in the expression of intention is limited to fraud and duress, and that the Consumer Contract Law allows special rules only in cases where it is inappropriate to hold consumers responsible for their own actions, it is necessary to carefully consider whether to allow rescission for mere "failure to provide information" and to limit it to truly necessary cases. At the 17th National Life Council Consumer Policy Subcommittee on the Consumer Contract Law Review Committee, the view was also expressed that it is not appropriate to grant the effect of rescission, etc., for the mere failure to provide "important matters". Therefore, it is considered that the types of cases that are appropriate for granting the effect of rescission are limited to cases where a certain fact is actively notified while another closely related fact is not notified, leading to a misunderstanding by the consumer about important matters. It is considered appropriate to limit the non-provision of information to a duty of best efforts for other types of non-provision of information. Since this paragraph is a duty of best efforts, it is not appropriate to cancel a contract for the reason of a breach of the obligations stipulated in this paragraph.

It does not immediately give rise to private law effects such as liability for damages or damages.

However, as there is a court case in which a business operator was found liable for damages for breaching the obligation to provide explanation based on the principle of good faith, taking into consideration the obligation to make efforts under the provisions of this paragraph before the amendment of 2018, and the breach constituted a tort (Nagoya District Court Judgment of January 21, 2016, Case Law Times No. 2304, p. 83), it is possible that a breach of the obligation under this provision may affect the interpretation and application of other provisions.

In addition, if a qualified consumer organization finds that the contract clauses used by a business operator are in violation of Article 8, Paragraph 1, Item 1 and

In a case where a consumer contract provision was filed against a consumer and the consumer's rights and obligations were not covered by the consumer contract provision, the consumer claimed that the contract provision was merely a declaratory provision for cases in which the consumer was not liable for damages, and was not a disclaimer provision, the court ruled that "when determining the provisions of a consumer contract, the consumer is obligated to make efforts to ensure that the rights and obligations of consumers and other contents of the consumer contract are clear and easy to understand for consumers, and that, in light of the purpose of the same paragraph, it is appropriate to refrain as much as possible from adding wording to the provisions of the consumer contract and applying a limited interpretation in order to provide relief to the consumer (negating the unreasonableness of the provisions)" and granted an injunction against the use of the problematic provision (Tokyo High Court Judgment of November 5, 2020 (see the court's website). The first instance was the Saitama District Court Judgment of February 5, 2020, Hanrei Jiho No. 2458, p. 84).

In addition, the Supreme Court ruling of December 12, 2022 (page 179 of this book, Supreme Court decision [5]) denied the application of a limited interpretation to the clause due to the nature of the injunctive relief rights of qualified consumer groups.

2. Interpretation of Provisions

(1) Clarification of contract terms

A. Purpose of the 2018 amendment

Before the amendment in 2018, this section stipulated that business operators were obligated to make an effort to ensure that the contents of consumer contracts were clear and easy to understand when determining the terms of the contracts.

However, among the clauses of consumer contracts actually used, there are clauses that appear to be clear at first glance, but are not truly clear, and as a result, there are clauses that give rise to doubts about their interpretation. For example, if a clause in a contract is simply written as "A, B," it may seem clear at first glance, but it can be interpreted as either "A and B" or "A or B," which may give rise to doubts about its interpretation. Therefore, the amendment of the Act in 2018 made it clear that "no doubts about the interpretation will arise" in the text, encouraging businesses to set clear clauses in a more understandable way.

In addition, making it clear in the text that consideration should be given to making the contents of consumer contracts clear so that no doubts arise regarding their interpretation is also considered to have the effect of making it clearer in the text that the principle of clauses being disadvantageous to the user is one of the ideas derived from the intent of this clause.

B. Interpretation of Provisions

ÿ "Rights and Obligations" and "Other Contract Contents"

Item 1 of this section requires business operators to ensure that the contents of consumer contracts are clear and fair for consumers. We ask that efforts be made to make this as easy as possible.

The "contents of the contract" include the quality and use of goods, rights, services, etc., the price of the subject matter of the contract, etc.

These include transaction terms, product names, and business name. Of these, the price of the subject matter of the contract and transaction terms fall under the "rights and obligations" of consumers. In addition, some, but not all, of the quality and use of goods, rights, services, etc. may fall under the "rights and obligations" of consumers. The parts that fall under the "rights and obligations" of consumers are listed here as examples because they are the main parts of the "contents of the contract," and are therefore included in the "contents of the contract."

ÿ "There is no doubt about the interpretation."

Regarding "no doubt as to interpretation," it is possible for the contents of a contract to be determined by interpretation, and the fact that the contents of a contract require interpretation does not mean that "doubts as to interpretation arise."

• Principle of disadvantage to the user of the clause

The principle that when multiple possible interpretations remain for a contract provision even after exhaustive interpretations, the interpretation that is most unfavorable to the user of the provision should be adopted is called the principle of least favorable to the user of the provision.

The basis of this principle is that, in light of the disparity in information and negotiating power between consumers and businesses, if a clause is unclear and multiple interpretations are possible, consumers may be forced to accept an unfavorable interpretation by businesses when a dispute arises, so it is necessary to protect the interests of consumers. In addition, the principle of clauses being less favorable to the user gives businesses an incentive to create clear clauses, which is expected to prevent disputes between consumers and businesses over the interpretation of clauses. Although the Act does not have an explicit provision that stipulates the principle of clauses being less favorable to the user, it can be said that this is one of the ideas derived from the intent of paragraph 1 of this article, which states

that businesses must strive to "make the content of consumer contracts clear so that there is no doubt about their interpretation and easy for consumers to understand" (note).

(Note) A specific example where the principle of clauses less favorable to the user may be applied is when a clause in a consumer contract specifies "A, B" as the conditions for a consumer to be obligated to make a monetary payment to a business operator, but the words A and B are not used in other clauses, and there is no provision that defines A or B, so that it is impossible to determine whether "A, B" is A and B or A or B even after extensive interpretation. In this case, interpreting it as A and B is more disadvantageous to the business operator than interpreting it as A or B, since the scope of the consumer's monetary payment obligation is narrower. Therefore, if the principle of clauses less favorable to the user is applied, it is likely to be interpreted as A and B.

3) "It must be clear and easy for consumers to understand."

The 17th report of the Consumer Contract Law Review Committee of the Consumer Policy Division of the National Lifestyle Council uses the expression "...must be made clear and easy to understand" with reference to Article 7, Paragraph 3 (note) of the Postal Life Insurance Act (as of that time). This was codified into the expression "clear and simple" before the amendment of 2018. With the amendment of 2018, it was changed to "clear and simple without leaving any doubt about its interpretation, and

It was expressed as "something that is easy for consumers to understand."

(Note) The Postal Life Insurance Act was abolished on October 1, 2007. The provisions of the Consumer Contract Act at the time of its drafting were as follows: As shown below.

Article 7, Paragraph 3

When formulating insurance policy provisions, the Minister of Posts and Telecommunications must bear in mind that postal life insurance is a system provided to the public as easily accessible life insurance, and must give due consideration to clarifying the scope of postal life insurance and the rights and obligations under the insurance contract, while making them easy to understand.

(2) Provision of information regarding the contents of the contract

A. Purpose of the 2018 amendment

Because there is a structural disparity between consumers and businesses in terms of the quality and quantity of information, the previous article stipulated that businesses were obligated to make an effort to provide consumers with general information regarding the contents of contracts.

However, the extent to which the information provided can be understood varies depending on the knowledge and experience of each individual consumer and the nature of the subject matter of the consumer contract, and in light of the purpose of the provision to provide information "to deepen the consumer's understanding," it is considered desirable for business operators to provide necessary information when soliciting consumers, taking into consideration the knowledge and experience of each individual consumer, according to the nature of the subject matter of the consumer contract. Therefore, the amendment of 2018 added the phrase "taking into consideration the knowledge and experience of each individual consumer, according to the nature of the subject matter of the consumer contract, such as goods, rights, services, etc." as the way in which information should be provided.

B. Purpose of the Reiwa 4 Ordinary Diet Amendments

In light of the fact that consumer transactions have become increasingly diverse and complex in recent years, businesses are being asked to more proactively provide detailed information tailored to the understanding of each individual consumer. However, businesses often do not know the knowledge and experience of consumers, and there are limitations to the use of item 2 of this Act. Therefore, it was decided to add age and mental and physical condition as consumer circumstances to be considered, and to stipulate that information shall be provided after comprehensively considering the consumer's age, mental and physical condition, knowledge and experience.

C. Interpretation of Provisions

ÿ "Depending on the nature of the goods, rights, services or other subject matter of a consumer contract"

Regarding "goods, rights, services and other objects of consumer contracts" in this section,

See Article 4, paragraph 4.

The extent to which consideration of the knowledge and experience of individual consumers is required is based on the objectives of consumer contracts.

It is thought that the nature of the item will vary.

For example, if the subject of a consumer contract is a daily necessities product that is not complicated to use, the degree to which the seller should take into account the knowledge and experience of the buyer is not necessarily high. On the other hand, if the subject of a consumer contract is a product or service with a complex mechanism, the degree to which the seller

should take into account the knowledge and experience of the buyer is relatively high, given the nature of the product or service, such as the risk that the consumer may not be able to fully understand it.

ÿ "The age, physical and mental condition, knowledge and experience of each consumer that the business operator has come to know"

"After taking into consideration the overall experience of the

The circumstances of individual consumers that should be taken into consideration when providing information include "age," "physical and mental condition," and "knowledge and experience," as these are clues that may indicate a consumer's insufficient understanding.

For example, in face-to-face transactions, if a business operator is able to know the "age" of a consumer in the sense that the consumer is young or elderly, the business operator is required to take the consumer's "age" into consideration when providing explanations, and even if the consumer is not young or elderly, if the business operator is able to know that the consumer's judgment ability has declined, the business operator is required to take the consumer's "mental and physical condition" into consideration when providing explanations. In addition, when a consumer is young or elderly and does not have sufficient knowledge or experience, the business operator is required to take this into consideration and begin explanations with more basic content than when the consumer is a general or average consumer. Furthermore, a uniform response based only on specific considerations (for example, based only on the consumer's "age") should be avoided. In order to clarify these points, it was decided to stipulate that the circumstances of each consumer that the business operator was able to know should be "comprehensively" considered.

However, what is expected of business operators is that, if they become aware of the circumstances of these consumers, they will provide information taking those circumstances into consideration, but business operators are not required to actively investigate those circumstances.

ÿ "Regarding the contents of consumer contracts"

The information that item 2 of this section requires business operators to provide to consumers is information "about the rights and obligations of consumers and other contents of the consumer contract," and does not include peripheral information other than the contents of the contract. Specifically, comparative information about products other than the target product and information about model changes do not fall under "the rights and obligations of consumers and other contents of the consumer contract," and are not information that business operators must endeavor to provide.

Machine Translated by Google

ÿ "Necessary information"

Even if business operators have the obligation to make efforts to provide information as described above, this Act does not require business operators to provide all information on the contents of a consumer contract. It is sufficient for business operators to provide information on the contents of a consumer contract that is necessary for consumers to enter into the contract. The scope of information is a broader concept than the important information "that should normally affect the consumer's decision on whether or not to enter into the consumer contract" as stated in Article 4, Paragraph 5, Items 1 and 2, but there is no obligation to make efforts to provide information that consumers naturally know.

(3) Provision of information regarding the right to request the display of standard terms and conditions

A. Purpose

A transaction conducted by a specific person with an unspecified number of counterparties, in which it is reasonable for both parties that the contents of the transaction be uniform in whole or in part, is defined as a "standardized transaction" under the Civil Code, and the totality of clauses prepared by the specific person for the purpose of making them the contents of the contract in such a transaction is called "standardized terms and conditions." The person who prepared the standardized terms and conditions must disclose the contents of the standardized terms and conditions without delay and with a reasonable reason if requested by the other party before or within a reasonable period after the agreement to enter into the standardized transaction (Article 548-3, Paragraph 1 of the Civil Code; hereinafter referred to as the "right to request disclosure of standardized terms and conditions"). The right to request disclosure of standardized terms and conditions granted to the other party to a standardized transaction guarantees the right to know the contents of the standardized terms

and conditions before and after the conclusion of the contract, and is an important right. However, when the other party to the standardized terms and conditions preparer is a consumer, it is likely that the consumer is not aware of the right to request disclosure of standardized terms and conditions. Therefore, the Ordinary Diet Amendment of 2022 stipulated in Item 3 of this section that, in order to enable consumers to actually exercise their right to request the display of standard terms and conditions, businesses that prepare standard terms and conditions must make an effort to provide necessary information about the right to request the display of standard terms and conditions. However, it is considered that there are cases where businesses have taken measures to make the contents of standard terms and conditions easily accessible to consumers, and in such cases, it is considered that there is no need for businesses to separately provide information about the right to request the display of standard terms and conditions. Therefore, it was decided that businesses will not be obligated to make an effort to provide such information (Note).

(Note) When standard terms and conditions are used in consumer contracts, it is necessary to ensure that consumers who are structurally at a disadvantage in terms of information and negotiating power can carry out transactions using standard terms and conditions with peace of mind. From this perspective, it is considered desirable that consumers who wish to confirm the contents of standard terms and conditions should be able to find out about them easily without having to make a request to the person who prepared the terms and conditions.

B. Interpretation of Provisions

ÿ "Measures to make the contents of standard terms and conditions easily accessible to consumers"

Measures to ensure that consumers can easily learn the contents of standard terms and conditions include providing written documents containing the terms and conditions or providing electromagnetic records such as CDs or DVDs on which the terms and conditions are recorded (see the proviso of Article 548-3, Paragraph 1 of the Civil Code). In addition, in order for standard terms and conditions to be included in a contract, the preparer of the terms and conditions (business operator) must agree that the terms and conditions will be included in the contract or must indicate to the other party (consumer) in advance that the terms and conditions will be included in the contract (items of Article 548-2, Paragraph 1 of the Civil Code). In conjunction with this agreement or indication, making it possible for consumers who are about to enter into a contract to easily find (access) the contents of the terms and conditions when they wish to check them is also considered to be a measure to ensure that consumers can easily learn the contents of the terms and conditions.

For example, (i) for transactions in-store, a note stating "Our store uses XX terms and conditions (standard terms and conditions). Please visit our website for details" could be posted in a location that is visible to consumers before they enter into a contract, and the standard terms and conditions could be posted in an easily visible location on the store's website; (ii) for contracts to use parking lots or coin lockers, a sign listing the contents of the standard terms and conditions could be posted in a location that is visible to consumers when they enter into a contract; and (iii) for online transactions, a link to the standard terms and conditions could be displayed in a recognizable form on the screen before the contract is concluded, so that the contents of the standard terms and conditions can be displayed when the link is clicked.

ÿ "Information necessary to make a claim"

The "information necessary to make a request" in relation to the right to request the display of standard terms and conditions includes not only the existence of the right to request the display of standard terms and conditions, but also the business's contact information (address and email address) when the consumer makes a request, and if the business has prepared a form for requesting display, the form, etc.

(4) Providing information regarding the exercise of consumers' right of cancellation

A. Purpose

Even if a consumer contract includes a right to voluntarily terminate a contract, there are cases in which it is difficult for consumers to voluntarily terminate the contract because the existence of the right and the method of exercising it are difficult for consumers to understand. Although matters related to the right to voluntarily terminate a contract are subject to the obligation to make efforts to provide information at the time of solicitation under item 2 of this paragraph, it is considered that consumers often become interested in voluntarily terminating a contract only when they are considering terminating the contract, so providing information only at the time of solicitation is not very effective.

In addition, there are also cases where consumers are unable to cancel voluntary contracts because they do not know how to do so. This is consumer damage caused by the disparity in information and negotiating power between consumers and businesses.

Therefore, the amendment to the ordinary Diet in 2022 has been amended to deepen consumer understanding in item 4 of this section.

Machine Translated by Google

Therefore, in order to prevent the occurrence of consumer damage, an obligation to make efforts to provide necessary information regarding the exercise of

the consumer's right to cancel, upon request, has been established.

It should be noted that item 4 of this section applies to all consumer contracts, regardless of whether they are online or non-online consumer contracts,

and also includes so-called subscription contracts.

The obligation of businesses to make efforts under this Act previously only applied at the time of concluding a contract, but the amendments made

during the ordinary Diet session of 2022 expanded the scope of the obligation to make efforts to include situations in which businesses withdraw from a

contract after it has been concluded.

B. Interpretation of Provisions

ÿ "At the request of consumers"

The obligation to make efforts under item 4 of this paragraph is based on the purpose of deepening consumers' understanding when they are considering

exercising their right to cancel, and is therefore imposed on business operators when consumers request the provision of information regarding the exercise

of the right to cancel.

ÿ "The consumer's right of cancellation as stipulated in the consumer contract"

"The right of termination held by the consumer contract" refers to the right of termination arising from an agreement between the consumer and the

business operator on termination (contractual right of termination). (Note) Therefore , it does not include cases where a right of termination with the same

content as the statutory right of termination under legal provisions such as Article 541 of the Civil Code is agreed upon in the consumer contract, but it does

include cases where an agreement is made to change the conditions of the statutory right of termination in the consumer contract, for example, to increase

the requirements for the consumer to terminate the consumer contract due to the business operator's default on the obligation.

(Note) Article 540, paragraph 1 of the Civil Code provides that "when one of the parties has the right to terminate a contract..."

This is the right of termination.

ÿ "Information necessary for exercising the right of cancellation"

"Information necessary for exercising the right to cancel" refers to the information required when a consumer cancels a consumer contract.

This refers to information such as specific steps required.

For example, in cases where consumers try to cancel a contract on a business operator's website after the conclusion of the consumer contract but find

it difficult to understand which screen to access or the procedure is complicated and cumbersome, information on the specific steps to exercise the right to

cancel is applicable. If the cancellation procedure is displayed on a website but the specific steps are difficult for consumers to understand, a business

operator may not be considered to have provided necessary

information to consumers by simply informing them of the existence of the website. On the other hand, if the cancellation procedure is displayed on a

website in an easy-to-understand manner for consumers and the specific steps are easy to understand, a business operator may be considered to have

provided necessary information to consumers by simply informing them of the existence of the website, without providing them with detailed information on

the specific steps.

II. Paragraph 2

   1. Purpose

    This section stipulates the obligation of consumers to make an effort in accordance with the purpose of Article 1.
In a civil society based on personal responsibility after deregulation and abolition, consumers must be aware of
their responsibilities as a party to a contract and fulfill those responsibilities, and therefore, when entering into a
consumer contract, consumers will be required to use the information provided by business operators and
understand their rights, obligations, and other contents of the consumer contract.

    Laws that stipulate the obligation of consumers to understand the contents include Article 12 of the Basic Act on
Food, Agriculture and Rural Areas and Article 7 of the Basic Act on Consumers. Although these laws contain
provisions to the same effect, this article stipulates the obligation of businesses and consumers to make an effort
because, while these laws, except for the Basic Act on Consumers, are targeted at individual business sectors, the
Consumer Contract Act stipulates provisions for consumer contracts as a whole.

    On the other hand, it can be said that the consumer's obligation to make efforts as provided for in this section
should be provided for in the Consumer Basic Act. However, while the Consumer Basic Act provides for abstract
obligations, the Consumer Contract Act provides for specific obligations in the context of consumer contracts, even
if they are obligations of best efforts. Therefore, it is significant that this section is provided for in conjunction with
the substantive provisions.

    2. Interpretation of Articles

   1. "Utilize the information provided"

    This section requests consumers to utilize information provided by businesses, but behind this lies the natural
expectation that consumers will also utilize information they have collected themselves. However, because there is
a disparity in information and negotiating power between businesses and consumers, consumers are not expected
to make an effort to collect information themselves. Instead, consumers are expected to utilize at least the
information provided to them, on the premise that information will be provided by businesses.

   2. "Try to understand."

    Even if consumers are required to understand the contents of a contract using the information provided by
businesses, it is virtually impossible for them to fully understand the contents of the contract. What is required of
consumers is not to fully understand the contents of the contract, but to understand the contents of the contract to
a level where they can hold themselves responsible and avoid trouble that would be rescinded under this Act.

3. The difference between "shall strive to" (Clause 1) and "shall strive to" (Clause 2)

difference

According to the "Revised Workbook for Legal Affairs, 2nd Edition" edited by the Legal Affairs Research Group (Gyosei, 2018), "While 'shall' implies a certain obligation, 'shall' usually has a slightly weaker nuance and is used as a predicate of a provision indicating a general principle or policy." Based on the premise that consumers are aware of their responsibilities as parties to a contract and must fulfill those responsibilities, this slightly weakens the nuance of the effort required of consumers in light of the disparity in information and negotiating power between consumers and businesses.

• Salvage clause

A salvage clause is a clause that, when a provision would otherwise be completely invalid due to violation of mandatory laws, limits the effect of the provision to a scope that is not invalid under mandatory laws. For example, a salvage clause would be one that adds the words "to the extent permitted by law" to a provision that would otherwise be invalid.

When a salvage clause is used, the scope of the clause that is valid is not clearly stated. This raises the issue of the risk that consumers may be disadvantaged.

Businesses are obligated to make efforts to create clauses that are "clear enough that there is no doubt about the interpretation of the content of the consumer contract and are easy for consumers to understand" (Article 3, Paragraph 1, Item 1), so they should make efforts to create specific clauses without using salvage clauses. The Ordinary Diet Amendment in 2022

established a provision that invalidates salvage clauses that do not clearly state that they apply only in cases of slight negligence on the part of businesses, among which salvage clauses exempt businesses from partial liability for damages (Article 8, Paragraph 3). Among the salvage clauses, there is one that partially exempts the operator from liability for damages, for example, stating that "the amount of compensation shall be limited to 100,000 yen, within the limits permitted by law." However, since the law invalidates clauses that partially exempt the operator from compensation for damages caused by the operator's willful misconduct or gross negligence (Article 8, Paragraph 1, Items 2 and 4), Article 8, Paragraph 3, added by the ordinary Diet amendment in 2022, makes the clause invalid unless it is specifically written as "The amount of compensation shall be limited to 100,000 yen, except in cases caused by the operator's willful misconduct or gross negligence." See the commentary on Article 8, Paragraph 3.

• Examples of legislation regarding businesses' obligation to provide information and consumers' obligation to understand the content

Commodity Futures Trading Act (Act No. 239 of 1950) (Delivery of

document prior to conclusion of commodity trading contract)

Article 217 When a commodity futures trading business operator intends to conclude a commodity trading contract, he/she must, pursuant to the provisions of an

ordinance of the competent ministry, deliver to the customer in advance a document stating the following particulars: (i) the amount of a transaction based on

that

Commodity Contract (in the case of a transaction set forth in Article 2, Paragraph 3, Item 4, this means the transaction set forth in sub-items (a) to (e) of that

Item that is established by exercising the right set forth in that Item, in the case of a transaction set forth in Article 2, Paragraph 3, Item 4, this means the

transaction set forth in sub-item (a) to (d) of that Item that is established by exercising the right set forth in that Item, and in the case of a transaction set

forth in Item 5 of that Paragraph, this means the transaction in which money as set forth in that Item is paid or received that is established by exercising

the right set forth in that Item) is greater than or equal to the amount of the trading margin, brokerage margin, clearing brokerage margin or other security

deposit to be deposited by the customer in relation to that transaction, or any other security deposit specified by ordinance of the competent ministry

(hereinafter referred to as "trading margin, etc." in this Paragraph and Article 220-2, Paragraph 1); (hereinafter referred to as "the amount of the Margin,

etc."), if there is a risk that the amount of the transaction will exceed the amount of the Margin, etc., then the following matters shall be stated: (a) That

the amount of the transaction is likely to exceed the amount of the Margin, etc. (b) The ratio of the amount of the

transaction to the amount of the Margin, etc. (if such ratio cannot be calculated, a statement to that effect and

the reasons therefor); (ii) If there is a risk that the customer will incur losses in relation to a transaction based on said Commodity Contract due to

fluctuations in quotations on the Commodity Market or other

commodity prices or commodity indexes and that the amount of such losses will exceed the amount of the Margin, etc., then a statement to that effect.

(iii) matters relating to the said commodity trading contract other than those listed in the preceding two paragraphs that may affect the customer's judgment

(iv) In addition to what is set forth in the preceding three items, an outline of the Commodity

Transaction Contract and other particulars specified by ordinance of the competent ministry.2 In lieu of delivering the document pursuant to the

provisions of the preceding paragraph, a Commodity Futures Business Operator may, with the customer's consent, provide the particulars to be included in

the document by a method that uses an electronic data processing system or other information and communications technology that is specified by ordinance

of the competent ministry, pursuant to the provisions of a Cabinet Order. In this case, a Commodity Futures Business Operator that has provided the

particulars to be included in the document by that method is deemed to have delivered the document.

Installment Sales Act (Act No. 159 of 1961)

(Display of Installment Sales Terms)

Article 3 When a person engaged in the business of installment sales (hereinafter referred to as an "Installment Seller") seeks to sell Designated Goods or

Designated Rights or provide Designated Services by way of an installment sale as prescribed in Paragraph 1, Item 1 of the preceding Article (excluding one

in which a Card, etc. is issued or granted to a User and goods or rights are sold or services are provided to the User upon the presentation or notification of,

or exchange of, that Card, etc.), the Installment Seller must disclose to the other party the following particulars about those Designated Goods, Designated

Rights, or Designated Services, pursuant to the provisions of Ordinance of the Ministry of Economy, Trade and Industry and Cabinet Office Ordinance: (i)

the cash selling price of the goods or rights (the price at which the full amount of the price is received simultaneously with the delivery of the goods or

the transfer of the rights; the same applies hereinafter) or the cash price of the services (the price at which the full amount of consideration is received

simultaneously with the conclusion of a contract to provide the services; the same applies hereinafter);

(ii) The installment sales price of goods or rights (meaning the price when goods or rights are sold through installment sales; the same applies hereinafter)

or the installment price of services (meaning the price when services are provided through installment sales; the same applies hereinafter); (iii) The

payment of the price of goods or rights or the

consideration for services involved in an installment sale (the amount of money to be allocated to that payment).

The period and number of deposits (including deposits of deposits. The same applies below, except in the next paragraph)

In the case of installment sales other than prepaid installment sales as provided for in Article 11, the provisions of the Ministry of Economy, Trade and Industry Ordinance and the Cabinet Office Ordinance

(5) In the case of prepaid installment sales as provided for in Article 11, the time of

delivery of the goods.

2. When an Installment Seller issues or grants a Card, etc. to a User in order to sell Designated Goods or Designated Rights or provide Designated Services by way of

an installment sale as prescribed in Paragraph 1, Item 1 of the preceding Article (limited to one in which an Installment Seller issues or grants a Card, etc. to a User

and sells goods or rights or provides services to the User upon the presentation or notification of, or exchange of, the Card, etc.), the Installment Seller must deliver

to the User a document that states the following particulars about the terms of the sale of the goods or rights or the terms of the provision of the services in the

installment sale, pursuant to the provisions of Ordinance of the Ministry of Economy, Trade and Industry and Cabinet Office Ordinance: (i) the period and number of

payments for the price of the goods or rights or the consideration for the services involved in the installment sale; (ii) the rate of commission for installment sales

calculated using the method specified

by Ordinance of the Ministry of Economy, Trade and Industry and Cabinet Office Ordinance; and (iii) any other particulars specified by Ordinance

of the Ministry of Economy, Trade and Industry and Cabinet Office Ordinance in addition to those set forth in the preceding two items.

3 When an Installment Seller issues or grants a Card, etc. to a User in order to sell Designated Goods or Designated Rights or provide Designated Services in a way

that involves an Installment Sale as prescribed in Paragraph 1, Item 2 of the preceding Article, it must deliver to the User a document that states the following

particulars about the terms and conditions of the sale of the goods or rights or the terms and conditions of the provision of the services in the case of that Installment

Sale, pursuant to the provisions of Ordinance of the Ministry of Economy, Trade and Industry and Cabinet Office Ordinance: (i) The method of calculating the times

when the User must make payment and the

amount of payment for each of those times; (ii) The rate of commission for installment sales calculated using the method specified

by Ordinance of the Ministry of Economy, Trade and Industry and Cabinet Office Ordinance; and (iii) Any other particulars specified by Ordinance

of the Ministry of Economy, Trade and Industry and Cabinet Office Ordinance in addition to what is set forth in the preceding two items.

4 When an Installment Seller advertises the terms and conditions under which it sells Designated Goods or Designated Rights, or provides Designated Services, in a

way that involves an Installment Sale as referred to in paragraph 1, paragraph 2, or the preceding paragraph, it must indicate in its advertisement the particulars set

forth in the items of paragraph 1, paragraph 2, or the preceding paragraph, respectively, pursuant to the provisions of Ordinance of the Ministry of Economy, Trade

and Industry and Cabinet Office Ordinance.

Specified Commercial Transactions Act (Act No. 57 of 1976)

(Delivery of written documents in door-to-door sales)

Article 4 When a seller or Service Provider receives an offer for a sales contract for goods or Designated Rights or an offer for a Service Contract for services at a place

other than a Business Office, etc., or when he or she receives an offer for a sales contract for goods or Designated Rights or an offer for a Service Contract for

services from a Specified Customer at a Business Office, etc., he or she shall immediately deliver a document containing the details of the offer with regard to the

following information, pursuant to the provisions of ordinance of the competent ministry; provided, however, that this shall not apply when a sales contract or

Service Contract is concluded when the seller or Service Provider receives the offer: (i) the type of goods or rights or services; (ii) the selling price of the goods or

rights, or the consideration for the services; (iii) the timing and method of payment of the price of the goods or rights, or the consideration for the services; (iv) the

timing of the delivery of the goods, the

transfer of the rights, or the timing of the provision of the services;

and (v) information about the withdrawal of an offer for a sales contract or Service

contract or cancellation of a sales contract or Service contract under the provisions of Article 9, paragraph 1 (including

information about the provisions of Article 9, paragraphs 2 to 7 (in cases where the provisions of Article 26,

paragraphs 2, 4, or 5 apply, including information about the provisions of those paragraphs)).

(vi) In addition to what is set forth in the preceding items, any other matters specified by ordinance of the competent ministry.

Financial Instruments and Exchange Act (Act No. 25 of 1948) (Delivery

of Document Prior to Conclusion of Contract)

Article 37-3 When a financial instruments business operator intends to conclude a financial instruments transaction contract, he/she must deliver to the customer in

advance a document stating the following items, pursuant to the provisions of a Cabinet Office Ordinance; provided, however, that this does not apply to cases

specified by a Cabinet Office Ordinance as not impeding the protection of investors.

Machine Translated by Google

(i) The trade name, name or name and address of the Financial Instruments Business Operator, etc.; (ii) The fact that

the person is a Financial Instruments Business Operator, etc. and the registration number of the Financial Instruments Business Operator, etc.;

(iii) An outline of the Financial Instruments Transaction Contract;

and (iv) Details of the fees, remuneration and other consideration to be paid by the customer in relation to the Financial Instruments Transaction Contract.

as specified by Cabinet Office Ordinance.

(v) When there is a risk of loss arising from fluctuations in interest rates, currency values, quotations in the financial instruments market or other indexes in relation to the financial

instruments transactions conducted by the customer, a notice to that effect; and (vi) When the amount of the loss referred to in the preceding paragraph is to

be reduced by the customer's deposit of margin or other security or other security as specified by a Cabinet Office Ordinance.

If there is a possibility that the amount will exceed the amount of the item,

(vii) In addition to the matters set forth in the preceding paragraphs, any matters concerning the content of the Financial Instruments Business that are at the discretion of the customer.

Matters specified by a Cabinet Office Ordinance as important matters that will have an impact on the protection of investors. 2

The provisions of Article 34-2, Paragraph 4 shall apply mutatis mutandis to the delivery of the document pursuant to the provisions of the preceding paragraph.

3 When a Financial Instruments Business Operator, etc. solicits the conclusion of a Financial Instruments Transaction Contract relating to the rights set forth in each item of Article 2,

Paragraph 2 that are deemed to be securities pursuant to the provisions of that Paragraph (limited to public offering or secondary distribution, or the handling of public offering or

secondary distribution as specified by a Cabinet Order), it shall notify the Prime Minister in advance of the contents of the document set forth in Paragraph 1 pertaining to said Financial

Instruments Transaction Contract. However, this shall not apply to cases specified by a Cabinet Office Ordinance as cases where the protection of investors will not be impeded.

Travel Agency Act (Act No. 239 of 1952) (Explanation of transaction

terms)

Article 12-4 When a travel agent, etc. intends to enter into a packaged tour contract, an arranged tour contract, or any other contract relating to travel services with a traveler, he/she must

first confirm the content of the travel services that the traveler wishes to request and then explain to the traveler the terms and conditions of the transaction in accordance with the

provisions of the Ministry of Land, Infrastructure, Transport and Tourism Ordinance and the Cabinet Office Ordinance.

2. When providing the explanation pursuant to the provisions of the preceding paragraph, the travel agent, etc. shall, except as specified by the Ordinance of the Ministry of Land,

Infrastructure, Transport and Tourism and the Cabinet Office Ordinance, deliver to the traveler a document stating the content of the travel-related services which the traveler is entitled

to receive, particulars concerning the compensation to be paid by the traveler to the travel agent, etc., the name of the Travel Agency Supervisor, whether or not the traveler will be

accompanied by a national licensed guide-interpreter as provided for in Article 2, Paragraph 1 of the Licensed Guide-Interpreter Act (Act No. 210 of 1949) (hereinafter simply referred

to as "National Licensed Guide-Interpreter") or a regional licensed guide-interpreter as provided for in Paragraph 2 of the same Article (hereinafter simply referred to as "Regional

Licensed Guide-Interpreter"), and other particulars as specified by the Ordinance of the Ministry of Land, Infrastructure, Transport and Tourism and the Cabinet Office Ordinance.

3. In lieu of providing the document prescribed in the preceding paragraph, a travel agent, etc. may, with the traveler's consent, provide the particulars to be stated in said document by a

method using an electronic data processing system or other information and communication technology as specified by the Ordinance of the Ministry of Land, Infrastructure, Transport

and Tourism and the Cabinet Office Ordinance, as provided for by a Cabinet Order. In this case, the travel agent, etc. shall be deemed to have provided the document.

Real Estate Brokerage Business Law (Law No. 176 of 1952) (Explanation of important

matters, etc.) Article 35 A real estate

broker must have a real estate agent provide an explanation to the other party or person who has requested an agent to purchase, sell, exchange or lease a real estate lot or building, or to

each party to a purchase, exchange or lease related to the intermediation of the real estate broker (hereinafter referred to as the "other party of the real estate broker") with respect to

the real estate lot or building that such person intends to acquire or lease, by delivering a document containing such matters (or drawings, if drawings are required under item 5)

explaining at least the following matters: (1) The type and content of the registered right existing on the said real estate lot or building, and the registered owner or registered

The name of the owner as recorded in the title section of the register (or, in the case of a corporation, its name)

(ii) Restrictions based on the City Planning Act, the Building Standards Act, or other laws and regulations, with regard to the content of the contract (whether the subject matter of the

contract is a residential land or a building, and whether the contract is a contract of sale or exchange, or

Machine Translated by Google

The same applies hereinafter in this Article.)

(iii) In cases where the said contract is other than a building lease contract, matters concerning the burden regarding private roads; (iv) The state of

provision of facilities for the supply of drinking water, electricity and gas, as well as for drainage (in cases where these facilities have not been provided,

the outlook for their provision and matters concerning special burdens for their provision).

(v) If the land or building in question is before the completion of construction work related to the land development or construction,

Shape, structure and other matters stipulated by the Ministry of Land, Infrastructure, Transport and Tourism and Cabinet Office Ordinances upon completion

(vi) In cases where the building in question is the subject of a condominium ownership as provided for in Article 2, Paragraph 1 of the Building

Condominium Ownership Act (Act No. 69 of 1962), the type and content of the rights to the site of the building for the ownership of the building in

question, the provisions of the regulations for the common areas as provided for in Paragraph 4 of the same Article, and other rights to the building or

its site (including the land in cases where there are several buildings in a housing complex and the land in the housing complex or the rights thereto

are jointly owned by the owners of those buildings), as well as matters concerning the management or use of these rights, as specified by the Ministry

of Land, Infrastructure, Transport and Tourism Ordinance and the Cabinet Office Ordinance according to the type of contract.

6-2 If the building is an existing building, the following matters:

A. A building condition survey (limited to those within the period specified by the Ministry of Land, Infrastructure, Transport and Tourism Ordinance) has been carried out.

Whether or not it is being implemented and, if so, a summary of the results

(b) The status of preservation of design drawings, inspection records, and other documents related to the construction and maintenance of buildings as specified by the Ministry

of Land, Infrastructure, Transport and Tourism Ordinance.

(vii) The amount of money to be exchanged other than the purchase price, exchange difference and rent, and the purpose of the exchange of

said money; (viii) Matters concerning the

cancellation of the contract; (ix) Matters concerning the amount of damages or

penalty; and (x) Matters concerning the provisions of Article 41 Paragraph 1 or Article 41 Paragraph 2 in the case of receiving a deposit, etc., as provided for in said Article.

Summary of measures pursuant to the provisions

11) In the case where a payment or deposit (meaning the price, exchange difference, rent, or other monies (excluding deposits, etc. for which preservation

measures have been taken pursuant to the provisions of Article 41 Paragraph 1 or Article 41-2 Paragraph 1) received from a counterparty of a real estate

broker in relation to the land or building that is the subject of the transaction and which are specified by the Ordinance of the Ministry of Land, Infrastructure,

Transport and Tourism and the Cabinet Office Ordinance; the same applies hereinafter in Article 64-3 Paragraph 2 Item 1) is to be received, whether or not

a guarantee measure pursuant to the provisions of the same item or other preservation measures specified by the Ordinance of the Ministry of Land,

Infrastructure, Transport and Tourism and the Cabinet Office Ordinance will be taken, and if such measures are taken, the outline of such measures;

(xii) The details of the mediation of the loan of money related to the purchase price or exchange difference and the money related to said mediation

Measures to be taken when a loan is not concluded

(13) Whether or not to take measures such as the conclusion of a guarantee insurance contract or other measures specified by the Ordinance of the

Ministry of Land, Infrastructure, Transport and Tourism and Cabinet Office Ordinance regarding the fulfillment of the responsibility to guarantee non-

conformity in the case where the land or building in question does not conform to the contents of the contract in terms of type or quality, and if such

measures are taken, the outline of such measures. (14) Other matters specified by the order specified in the following (a) or (b), taking into consideration

the need to protect the interests of the counterparty, etc. of the real estate broker and the type of contract contents: (a) In cases where matters

contributing to the protection of the interests of the counterparty, etc. of a real estate broker who is an individual who intends to purchase or rent a

land or building in cases other than those for business purposes are specified: Ordinance of the Ministry of Land, Infrastructure, Transport and

Tourism and Cabinet Office Ordinance

(b) In cases where matters other than those prescribed in (a) are prescribed, the Ministry of Land, Infrastructure, Transport and Tourism Ordinance

2. A real estate broker must have a real estate agent provide a counterparty in an installment sale of a real estate lot or building (a sale on the condition that

all or part of the purchase price will be received over a period of one year or more after the delivery of the object and in two or more installments; the same

applies hereinafter) with a written explanation of the matters set out in the items of the preceding paragraph, as well as the following matters, with respect

to the real estate lot or building that the counterparty wishes to acquire, before the installment sale contract is concluded:

1. Cash sales

price (the price when the full amount of the land or building is received before the delivery of the land or building)

cormorant )

(ii) The installment sales price (meaning the price when sold by installment sales method); (iii) The amount of

money to be paid up until the delivery of the land or building, and the amount of installments (meaning the amount of the payment for each

installment based on the installment sales contract that is made after the delivery of the subject matter; the same applies in Article 42,

Paragraph 1), as well as the timing and method of payment.

3. When a real estate broker becomes a seller of a beneficial interest in a trust (limited to one in which the real estate broker is the trustor) related to

a real estate lot or building, he/she must have a real estate agent provide an explanation to the other party to the sale and purchase with at least

the following matters by delivering a document stating those matters (or drawings, if required under item 5) to the other party to the sale and

purchase, before the conclusion of the sale and purchase contract, with regard to the real estate lot or building that is the trust property related to

the beneficial interest of the trust that the seller is about to acquire; provided, however, that this shall not apply in cases specified by an Ordinance

of the Ministry of Land, Infrastructure, Transport and Tourism as cases in which there will be no hindrance to the protection of the interests of the

other party to the sale and purchase: (i) The type and details of the

registered rights existing on the land or building that is the trust property, and the name of the registered owner or the owner recorded in the title

section of the registry (in the case of a corporation, its name); (ii) A summary of the matters related to the restrictions on the land or

building that is the trust property based on the City Planning Act, the Building Standards Act and other laws and regulations as specified by

government ordinance.

(iii) matters concerning the burden of private roads relating to the residential land or building that is the trust property;

(iv) the status of the provision of drinking water, electricity, gas, and drainage facilities relating to the residential land or building that is the trust

property (in cases where such facilities have not been provided, the outlook for their provision and matters concerning special burdens for

their provision).

(v) The land or building that is the trust property is one for which construction work on the land or construction has not yet been completed.

In some cases, the shape, structure and other matters specified by the Ministry of Land, Infrastructure, Transport and Tourism Ordinance at the time of completion

(vi) Where the building which is the trust property is the subject of a condominium ownership as provided for in Article 2, Paragraph 1 of the

Building Condominium Ownership Act, the type and content of the rights to the site of a single building for the ownership of said building, the

provisions of the regulations for the common areas as provided for in Paragraph 4 of the same Article, and other rights to a single building or

its site (including the land in a housing complex where there are several buildings and the land within the housing complex or the rights thereto

are jointly owned by the owners of those buildings), and matters relating to the management or use of these as provided for by Ordinance of

the Ministry of Land, Infrastructure, Transport and Tourism.

(vii) Any other matter prescribed by a Ministry of Land, Infrastructure, Transport and Tourism Ordinance, taking into consideration the need to protect the interests of the other party to the sale and purchase of the beneficial interest of the trust.

Matters set out in


Basic Act on Food, Agriculture and Rural Areas (Act No. 106 of 1999) (Role of

the Consumer)

Article 12 Consumers shall deepen their understanding of food, agriculture and rural areas and take an active role in improving their food consumption lifestyle.

It shall fulfill its role.


Consumer Basic Act (Act No. 78 of 1968)

Article 7 Consumers shall endeavor to act independently and rationally in relation to their consumer lives, including acquiring the necessary knowledge

and gathering the necessary information. 2 Consumers shall endeavor to give due consideration to the

conservation of the environment and the proper protection of intellectual property rights, etc., in relation to their consumer lives.

Must be.