EXHIBIT 11b

EXHIBIT 11b



Date of trial: March 30, 2021 Court name: Tokyo District Court      Trial classification Judgment

Case number: Heisei 30 (7) 28275

Case name: Claim for return of unjust enrichment

Court Result: Dismissal of the main claim and dismissal of the preliminary claim. Document Number: 2021WLJPCA03308012

Abstract

The plaintiff, who had entered into a rental housing support contract (the Contract) with the defendant company, filed a primary and alternative claim against the defendant company for the cancellation of the contract on the grounds of unjust solicitation (false representation, provision of a definitive judgment, or notification of unfavorable facts), or for the return of unjust enrichment equivalent to the amount already paid on the grounds of invalidity due to mistaken motive, or for damages for tort. As a preliminary claim, the defendant company failed to fulfill its obligation under the Contract to present a feasible plan in order to construct a rental housing that would be profitable while satisfying the conditions presented by the plaintiff. Based on this, the plaintiff sought payment of the amount already paid based on a right to claim restitution for default. In this case, the court denied the plaintiff's status as a consumer by continuously operating a rental business for profit, and did not acknowledge any misrepresentation or other actions by the defendant company, nor any indication of motive by the plaintiff, dismissing both the primary claim and the preliminary claim as the obligations asserted by the plaintiff under the Contract were not acknowledged in the first place.

source

westlaw japan

Reference article

Civil Code Article 95

Article 545 of the Civil Code

Article 703 of the Civil Code

Article 709 of the Civil Code

Consumer Contract Act, Article 2, Paragraph 1

Consumer Contract Act, Article 2, Paragraph 3

Consumer Contract Act, Article 4, Paragraph 1

Consumer Contract Act, Article 4, Paragraph 2

© 2025 Thomson Reuters KK all rights reserved

Date of trial: March 30, 2021 Court name: Tokyo District Court Judgment

Case number: Heisei 30 (7) 28275

Case name: Claim for return of unjust enrichment

Court Result: Dismissal of the main claim and dismissal of the preliminary claim. Document Number: 2021WLJPCA03308012


Nerima Ward, Tokyo (omitted)

| | |
|---|---|
| plaintiff | X |
| Lawyer representing the lawsuit | Gunjiri |
| Sendai City (omitted) | |
| defendant | Pie Co., Ltd.    口 |
| Representative Liquidator | A |
| Lawyer representing the lawsuit | Hitoshi Nakamura |


main sentence

1 Plaintiff's primary and secondary claims are both dismissed.

2 The plaintiff shall bear the costs of the proceeding.


facts and reasons

1st request

1. Primary claim

The defendant has paid the plaintiff 1.62 million yen and the amount of the payment that has been made since June 28, 2018.

pay interest at the rate of 5% per annum.

2 Preliminary request

The defendant shall pay the plaintiff 1.62 million yen plus interest at the rate of 5% per annum from June 14, 2019 until payment is made.

Summary of the second case

This case concerns the rental housing support contract (hereinafter referred to as "the Contract") that the Plaintiff concluded with the Defendant. The Plaintiff has alleged that 1) the Defendant made false representations, provided a definitive judgment, or notified the Plaintiff of unfavorable facts, and therefore the Contract was cancelled on June 27, 2018 based on Article 4, Paragraphs 1 or 2 of the Consumer Contract Act, which constitutes a tort against the Plaintiff and is invalid due to mistake. The Plaintiff has primarily and selectively filed a claim for return based on unjust enrichment or a claim for tort against the Defendant.

© 2025 Thomson Reuters KK all rights reserved

2) the defendant failed to fulfill its obligation under the contract to present a feasible plan for the construction of a rental and mixed-use housing complex that would be profitable while satisfying the conditions presented by the plaintiff, and therefore the contract was terminated for breach of contract. Based on the plaintiff's right to claim damages under the contract, the plaintiff is seeking 1.62 million yen, equivalent to the amount already paid, as well as late payment damages at the rate of 5% per annum as prescribed by the Civil Code (as amended by Law No. 44 of 2017; the same applies below), from the 28th of the same month, the day after the cancellation date, until payment is made; and, based on the plaintiff's right to claim damages under the contract, the plaintiff is seeking 1.62 million yen, equivalent to the amount already paid, as well as late payment damages at the rate of 5% per annum as prescribed by the Civil Code, from the 28th of the same month, the day after the cancellation date, until payment is made.

1 Premise facts (whether there is no dispute between the parties or facts that can be easily established based on the evidence and overall gist of the oral argument)

### (1) Parties, etc.

The plaintiff has been residing at the plaintiff's address since 2012. The plaintiff has a wife and two children, all of whom live with him.

(a) The defendant is a corporation whose purpose is to engage in real estate management, investment, and construction consulting services, etc.

(i) On July 17, 1990, the defendant changed its trade name from "NS Asset Management Co., Ltd." to its current trade name and moved its head office from Minato-ku, Tokyo (omitted) to the defendant's location. On November 5 of the same year, the defendant was dissolved by resolution of the general shareholders' meeting.

(2) Background to the conclusion of the Agreement

The plaintiff was present at the Defendant's "

"Land Search Rental Housing Construction Program" Pre-seminar (hereinafter referred to as "this seminar"). ) and requested an individual interview with the defendant after the session ended. [Exhibits 1 and 24]

On March 25, 2018, the plaintiff consulted with the defendant's representative by telephone (hereinafter referred to as "the individual consultation in this case"). The individual consultation in this case proceeded roughly as follows: (1) 15 minutes for a hearing on personal attributes and asset background, (2) 5 minutes for an explanation of the estimated credit amount and purchase feasibility, etc., (3) 5 minutes for questions and answers, and (4) 5 minutes for confirmation of final intention to apply. [Exhibit 2]

During the individual consultation in this case, the Plaintiff informed the Defendant's representative that ① the area in which the Plaintiff wishes to build the mixed-use rental property is ○○ 1-chome, △△ 2-chome and 4-chome, Nerima Ward, Tokyo (hereinafter, only the name of the ward will be stated), and □□, Nerima Ward, ② the residential portion of the mixed-use rental property will be 120 square meters or larger, and ③ in order to realize these wishes, the loan amount desired is 200 million yen (hereinafter, items ① to ③ will be collectively referred to as the "Conditions for the House in Question").

On March 26, 2018, the plaintiff entered into a rental housing support contract (the Contract) with the defendant and transferred 1.62 million yen (including 8% consumption tax; hereinafter referred to as the "Fee") to the defendant as the fee for the Contract.

It wasn't done.

(3) Background to and progress of this lawsuit

On June 27, 2018, the plaintiff sent an invoice dated June 25, 2018 to the defendant through the plaintiff's attorney, and filed a claim for the contract pursuant to Article 4, Paragraph 1, Item 1 or Paragraph 2 of the Consumer Contract Act.

© 2025 Thomson Reuters KK all rights reserved

The plaintiff requested that the plaintiff cancel the intention to include the fee and return the fee within seven days. [Exhibit 8, Nos. 1 and 2]

The plaintiff filed this lawsuit on September 3, 2018, and the complaint was served on the defendant on the 28th of the same month.

At the first preparatory hearing on June 14, 2019, the Plaintiff submitted a preparatory brief (3) dated June 11. Page 2 of the preparatory brief states, "In that case, the Plaintiff will newly assert termination of the contract based on breach of contract."

2 Points of contention

The issues in this case are: 1) whether there are grounds for rescission under Article 4 of the Consumer Contract Act, 2) whether a tort was committed, 3) whether the contract was invalid due to mistake, 4) whether the defendant was in breach of contract, and 5) whether there was an agreement not to refund and its validity.

3. Arguments of the parties regarding point 1 (whether there is a reason for cancellation under Article 4 of the Consumer Contract Act)

### (1) Plaintiff's allegations

(a) The plaintiff is an individual and the defendant is a corporation and a business operator, therefore the contract in question constitutes a consumer contract.

(i) The combined rental property that the plaintiff attempted to build was primarily intended to be a residential area for the plaintiff and his family, and the rental portion was intended to be used to cover the cost of building the property, and the reason for attempting to build the combined rental property in the first place was that it was necessary to take out a mortgage. The fact that the plaintiff attempted to build a combined rental property does not diminish the plaintiff's status as a consumer.

(c) Owning investment real estate, like stock investments and savings, is merely one aspect of asset management and administration, and the Plaintiff's ownership of investment real estate does not constitute a business. In addition, the Plaintiff's real estate has not generated any profits for three consecutive years, and the Plaintiff has outsourced all of its real estate management work to a contractor. In these respects, too, the Plaintiff does not constitute a business operator.

B(A) Plaintiff communicated the housing conditions to the defendant's representative during the individual consultation, and again to the defendant's representative after the contract was concluded. Plaintiff repeatedly communicated the housing conditions because they were essential to Plaintiff from the perspective of maintaining the school district for his children and securing living space. Furthermore, when setting the desired loan amount at 200 million yen, Plaintiff also informed the defendant's representative that he would provide a guarantor, make a down payment of 1 million yen, and sell real estate owned by Plaintiff.

(a) The Defendant's representative, who was informed of the housing conditions in question, told the Plaintiff that unlike major manufacturers, if the Defendant asked them, they could build a rental-combined house for 700,000 to 800,000 yen per tsubo, and that because Japan Post Bank has a strong track record with Suruga Bank's affiliated loans, the Plaintiff could obtain a loan on favorable terms, etc., and explained that it was possible for the Plaintiff to obtain a loan of 200 million yen, and that the other conditions of the housing conditions in question could be met depending on how they were handled. The Defendant also explained to the Plaintiff via email that it was not possible for the Plaintiff to not be able to purchase the house within six months under normal circumstances.

(c) The plaintiff believed that the defendant would make a proposal that would satisfy the housing conditions in question, and therefore entered into the contract in question with the defendant and paid a large amount of 1.62 million yen (including consumption tax, etc.) in one lump sum.

© 2025 Thomson Reuters KK all rights reserved

4

Case 2:22-cv-01324-MMD-EJY   Document 110-16   Filed 03/31/25   Page 6 of 13
Page 5 of 12

I paid in advance.

(a) However, after the conclusion of the contract, the defendant informed the plaintiff that the loan amount that the plaintiff could receive was less than 140 million yen, and that the area of the residential portion of the rental property would be approximately 70 square meters. The realization of the housing conditions in question was dependent on the amount of loan the plaintiff could receive and the land market, and was therefore impossible to achieve.

(i) The defendant informed the plaintiff that the housing conditions in question were possible, even though this was impossible, and therefore committed a false representation as set forth in Article 4, Paragraph 1, Item 1 of the Consumer Contract Act, or a failure to disclose an adverse fact as set forth in Paragraph 2 of the same Article.

(c) Furthermore, the defendant determined that the housing conditions in question were possible to be realized and failed to explain the possibility that they might not be realized, and therefore provided a definitive judgment as provided for in Article 4, Paragraph 1, Item 2 of the Consumer Contract Act.

In view of the above, the intention to offer in respect of the contract in question should be revoked pursuant to Article 4, Paragraphs 1 or 2 of the Consumer Contract Act.

(2) Defendant's arguments

A. Even if an individual is a party to a contract as a business or for the purpose of a business, he or she is not a "consumer" to which the Consumer Contract Act applies. At the time of the conclusion of the contract, the plaintiff owned three apartment buildings for investment purposes and earned rental income, and the plaintiff's rental income in 2017 exceeded his or her salary income. In this way, the plaintiff was engaged in the real estate rental business, with rental income being all or a significant part of the source of funds for reinvestment and livelihood. In this context, the plaintiff concluded the contract for his or her own business of earning additional rental income from a mixed-use rental property, and therefore is not a "consumer" to which the Consumer Contract Act applies.

(a) The defendant's representative and the defendant's staff were not informed by the plaintiff that the housing conditions in question were essential, and the defendant's representative never promised or categorically informed the plaintiff that a rental and housing combination could be constructed in the area of the plaintiff's choice, with the residential portion being as large as the plaintiff desired, or that the plaintiff would be able to obtain a loan of 200 million yen.

(a) The defendant's representative told the plaintiff that the possible loan amount was 130 to 150 million yen, which was a safe target, and that there was a possibility of receiving a loan of 200 million yen, but anything above that was a challenge. Prior to the contract, the defendant also told the plaintiff by email, "We will do our best to support you in finding land, but the basic stance is that you will also need to take action yourself," and "Since the lending market conditions of financial institutions change from time to time, we cannot promise whether or not you will be able to lend money or what the terms of the loan will be." In this regard, the defendant told the plaintiff that the support period was limited to six months, so that normally you would be able to purchase a property of your desired condition within six months, but in this case, the defendant also told the plaintiff that the period could be extended.

The housing conditions in question were not completely impossible to realize from the beginning, nor did the defendant enter into the contract knowing that they were impossible to realize.

As stated above, Article 4 of the Consumer Contract Act does not apply to the application for this contract.

4. Arguments of the parties regarding point of issue 2 (whether or not there was a tort)

**(1) Plaintiff's allegations**

As stated in paragraph 3(1) above, the defendant committed a tort against the plaintiff, as it made false representations, provided a definitive judgment, and failed to disclose adverse facts. As a result, the plaintiff suffered damages equivalent to the fees in question.

**(2) Defendant's arguments**

The Plaintiff's allegations are denied and contested for the reasons stated in 3(2) above.

5. Arguments of the parties regarding point 3 (whether the patent was invalid due to mistake)

**(1) Plaintiff's allegations**

As argued in paragraph 3(1) above, the housing condition in question was essential to the plaintiff, and if it had been impossible to realize, the plaintiff would not have entered into the contract in question. The contract in question is void for mistake.

**(2) Defendant's arguments**

Plaintiff's argument is disputed. Plaintiff is merely stating its motives, which were not apparent at the time the contract was concluded.

6 Arguments of the parties regarding issue 4 (whether or not the defendant has defaulted on its debt)

**(1) Plaintiff's allegations**

From the beginning, the plaintiff had told the defendant that he hoped to make a profit of about 50,000 yen from the rent earned from the rental property when paying off the monthly mortgage. The defendant's obligation under the contract was to present a feasible construction plan to build a rental property that would meet the housing conditions in question and ensure profitability.

However, the defendant has not been able to present such plans even at the time of this lawsuit, and when the plaintiff requested the defendant to provide an idea of the size and price of the proposed land and building, the defendant merely provided information that was of no value to the plaintiff. The defendant has not performed its obligations in accordance with the essence of the contract.

Even if the cancellation of the offer for the contract or the invalidity of the contract due to mistake is not recognized, the plaintiff will terminate the contract due to the defendant's breach of contract.

**(2) Defendant's arguments**

The services provided by the defendant under the contract were as follows: 1) Real estate consulting services, namely, accepting, in principle, an unlimited number of email inquiries regarding the construction of rental housing and land searches, consultations regarding owned real estate, and other general real estate investment consultations. 2) Accepting, in principle, an unlimited number of similar inquiries via the social networking service LINE. 3) Introducing affiliated companies to architects, construction companies, land and house surveyors, etc., necessary for building rental housing after purchasing land. 4) Providing advice on the management of real estate rentals. 5) Providing priority introductions when information on land suitable for rental housing becomes available. 6) Providing advice on general real estate investment strategies. 7) Providing support for finding land and introducing Japan Post Bank.

In addition, it is quite possible for a rental property to have a deficit.

© 2025 Thomson Reuters KK all rights reserved

There are many examples of this, as it allows people to live in a newly built house in a good location while reducing their living expenses. There is no reason for the defendant to be obligated to present a plan that would turn the income and expenditure of the rental property into a profit.

In view of the above, the defendant is not liable for the obligations asserted by the plaintiff.

7. Arguments of the parties regarding point 5 (existence and validity of the non-refund agreement)

#### (1) Defendant's arguments

The contract in question contained a special clause (hereinafter referred to as the "Special Clause") stating that there would be no refund even if the purchase of the property was not made for any reason after the application for the contract, and therefore the defendant is not obligated to refund the fee already paid to the plaintiff.

(2) Plaintiff's allegations

The existence of the special provision in question is denied. Even if it was established, the special provision in question is invalid under Article 10 of the Consumer Contract Act because it unilaterally harms the interests of consumers.

Third, the Court's decision

#### 1 Found facts

Based on the above-mentioned premise facts, relevant evidence (Exhibits 1-7, 10, 11-1 and 2, Exhibits 12, 18-22, 24, 25, Exhibits 1-5 and 15, the Plaintiff himself, the Defendant's representative himself) and the overall gist of argument, the following facts are established.

(1)A The plaintiff (born XX/XX/1977) built a new detached house on the plaintiff's land in 2012 and began living there with his family. The plaintiff used a mortgage to build this residential building (total floor area 121.02 square meters), and a mortgage was established with the bank on the building. As of March 2018, the remaining balance of the mortgage was approximately 37 million yen.

In March 2016, the plaintiff acquired ownership of a newly constructed two-story apartment building in Jonan Ward, Fukuoka City, and in September of the same year, he purchased an existing two-story apartment building in Higashi Ward, Fukuoka City, and in December of the same year, he purchased an existing three-story apartment building in Hirakata City, Osaka Prefecture, becoming the owner of three apartment buildings. The plaintiff entrusts the management of these apartment buildings to different management companies and rents them out as apartments, earning rental income.

The plaintiff's income in fiscal year 2017 was 11,907,987 yen in real estate income and 9,790,129 yen in salary income.

As of the end of December 2018, the plaintiff had borrowed 55,358,033 yen from Suruga Bank and 112,117,829 yen from Orix Bank.

(2) a. Around the end of 2015, the Defendant's Representative started the Defendant's subsequent business as a sole proprietorship, and on June 6, 2016, he established the Defendant and became its President and Representative Director.

The defendant offered lower prices than its competitors, but required customers to pay in advance, and in order to reduce costs, concluded contracts with customers via email without creating written contracts. As of March 2018, the defendant had fewer than 10 employees.

The defendant's website, "Searching for Land for Rental Housing Construction Program/Pre-Seminar" On the page introducing "One" (as of September 2, 2019), the following was written: "For those who want to steadily earn tens of millions in a short period of time and aim to expand their scale with business loans," "Real estate investment is not passive income.

It is a respectable business, known as leasing."

(3)A The Plaintiff was dissatisfied with the residential building described in (1)A above and considered rebuilding it. However, since he already had loans, he thought that he might not be able to pass the mortgage screening. So he planned to build a mixed-use residential building and use the rental income to repay the loan.

The plaintiff sought advice from Asahi Kasei Homes Corporation (hereinafter referred to as "Asahi Kasei Homes") on the construction of a mixed-use rental property that would satisfy both conditions ① and ② of the above-mentioned premise (2) C and would be able to cover the majority of the monthly loan repayment amount through rental income from the rental portion.

○

On or around February 17, 2018, Asahi Kasei Homes submitted a document to the plaintiff entitled "(Tentative) X Management Plan." The document included a construction plan, a rough estimate, rent setting conditions, a financial plan, and an income statement, among others. The rough estimate stated that the total project cost would be 221,219,160 yen, and the income statement stated that the rental income would be in the red by several tens of thousands of yen per month.

(4) After seeing the plans of Asahi Kasei Homes, the plaintiff learned that it would cost a lot of money to build a mixed-use rental house, and began to look for a cheaper way to build it. Then, the plaintiff learned on the Internet that the defendant was hosting the seminar in question.

(5) On March 24, 2018, the Plaintiff participated in the approximately three and a half hour seminar (the participation fee was 1,000 yen if one did not attend the social gathering), and requested a one-on-one interview with the Defendant after the seminar. During the seminar, the Defendant explained to the Plaintiff and other participants that Japan Post Bank has a good track record with Suruga Bank affiliated loans, and that by using a house manufacturer affiliated with the Defendant, the price per tsubo could be reduced.

(6) On March 25, 2018, the Plaintiff had a 30-minute individual consultation with the Defendant's representative, during which the Plaintiff informed the Defendant's representative of the terms of the house in question.

(7) On or around March 25, 2018, the Defendant sent the Plaintiff a notice of "formal application" via email. We sent an email (hereinafter referred to as "the Email") which stated, "Please reply (please include the text in the body of the email)."

The email in question contains the following statement under the heading "Real estate investment consulting services":

"Land search for rental and residential construction: Advice on land search, financing support (over-loan), and backup support from start of construction to completion of building"

The email in question contains the following in the "Fees" section:

"1.5 million yen (excluding tax) at the time of registration + total construction amount (amount of construction contract) x 1.5% (excluding tax) (payment at the time of land settlement) = total amount (excluding tax)"

The email in question contains the following statement in the "Support expiration date" section:

"The support period will be six months. A strong will and strong action from the individual is essential to purchase. Once payment is made, we will support you until completion." "Normally, it is not possible to purchase within six months, so the period will be six months. However, if there are unavoidable circumstances,

Please feel free to contact us and we will take this into consideration." and "*Please note that this time we are restricted by the school district area, so if you are still interested in continuing to search for land after six months, we will be flexible in extending the period."

The email in question contains the following in the "What is included" section:

1. Email consultation (no restrictions, but within the bounds of common sense)", 2. LINE consultation (no restrictions, we will respond as soon as possible during awake hours)", 3. Introduction to various companies (real estate agents, banks, renovations, management companies, gas companies, insurance, *depending on the property area)", 4. Rental management consultation (advice related to real estate investment)", 5. If a non-public property comes up, we will introduce you to a property that suits your needs (you will basically be required to search on your own)", 6. General real estate investment advice (goal setting, clarification of investment stance, financing information, property market information, everything related)", 7. Support for finding land, introduction to architects and real estate agents, introduction to banks, support for purchasing over-loans (in the case of a property used for rental purposes)".

The email in question contains the following statement in the "Agreement" section:

"You are solely responsible for any investments you make.", "We will do our best to support you in finding land, but the basic stance is that you will also need to take action yourself.", "We will make every effort, but please note that we cannot provide refunds if for any reason the purchase does not come to fruition after application.", "Please be aware that consulting support will end upon completion of the building.", "Please understand that the lending market conditions of financial institutions change from time to time, so we cannot guarantee whether or not you will be able to obtain a loan or what the terms will be."

(8) On March 26, 2018, the Plaintiff transferred the fee to the Defendant, and in the form of a reply to the email in question, notified the Defendant that he would formally apply, and the Defendant, upon receiving the reply email, sent the Plaintiff an email stating that the payment had been confirmed and that the application was complete. Thus, the Contract in question was established.

(9) After April 19, 2018, the Plaintiff began exchanging messages with the Defendant's staff via LINE.

(10) On April 23, 2018, the plaintiff conveyed the details of the property he desired to the defendant's representative via LINE message. The message included, in summary, the "target purchase size (total amount)" of about 200 million yen, the "desired area" of Nerima Ward XX 1-chome, △△ 2-chome, △△ 4-chome (preferred Nerima Ward A elementary school district), the "target income and expenditure if living in" of about 50,000 yen in the black, and the "area of current home" of about 122 square meters. It also stated that the plaintiff would prefer a home area of about 120 square meters, but that if the layout was good, a size of 100 square meters or more might meet his desire.

(11) On May 17, 2018, the Defendant's representative sent the Plaintiff a LINE message. The message included statements such as, "Loan amount estimate: 140 million yen or less," and "Property image: A property in a location consistent with the current home and with a floor area of 70 m2 or more, 3 bedrooms and 3 kitchens."

(12) On May 31, 2018, the plaintiff sent a LINE message to the defendant's representative. In the message, the plaintiff said, "I knew in advance that I would not be able to purchase the product in my current situation.

"Despite the fact that I had already purchased the product, I was falsely suggested to purchase it," "I would like a full refund of the amount I paid," "Please express your intention to receive a refund by 6:00 PM on May 31, 2018," and "Please request a refund by 6:00 PM on June 1, 2018."

(13) On June 21, 2018, in response to the defendant's request, the plaintiff met with two of the defendant's officials. をした。 However, during the meeting, the plaintiff asked the defendant to make a proposal that would satisfy all of the conditions for the house in question, while the two defendant's officials stated that it would be possible to construct a house for both rent and use by changing some of the conditions for the house in question, and the discussion went nowhere.

(14) On June 27, 2018, the plaintiff filed a claim under the above-mentioned premise (3) (a) by means of a demand dated June 25, 2018.

2. Regarding point 1 (whether there is a reason for cancellation under Article 4 of the Consumer Contract Act)

(1) Article 4, paragraphs 1 and 2 of the Consumer Contract Act provide that a person may rescind an expression of intention to apply for a consumer contract if the respective requirements are met. Article 2, paragraph 3 of the same Act provides that a "consumer contract" is a contract concluded between a consumer and a business operator, and paragraph 1 of the same Article excludes from the term "consumer" in the Act individuals who become parties to a contract as or for the purposes of a business.

(2) In this case, as stated in the facts found in 1 above, at the time of the conclusion of the contract, the plaintiff owned three apartment buildings and earned rental income by renting them out, and the amount of the rental income exceeded the plaintiff's salary income. Even considering that the plaintiff outsourced the work to a management company and that the income and expenditure related to the rentals was in the red, it is recognized that the plaintiff was engaged in the real estate rental business. Furthermore, the plaintiff had a mortgage of about 37 million yen, as well as borrowings that easily exceeded のため、 150 million yen as an initial investment for the real estate rental business, and therefore thought it would be difficult to rebuild his home using a new mortgage, so he attempted to build a house for both use and rental by obtaining a loan from a financial institution.

Since the plaintiff intended to make profits from the rental portion of the combined rental property to use towards repaying long-term loans, if the rental portion is considered alone, it can be said to be a rental business run continuously for profit (in this regard, Asahi Kasei Homes submitted a business plan to the plaintiff). The fact that the plaintiff's home was attached to this rental portion is difficult to consider as losing the business viability of the rental portion in the socially accepted sense, and the plaintiff attempted to solve the fundraising problem by linking the reconstruction of his home to this in the course of running his real estate rental business. The construction of the combined rental property can be recognized as the plaintiff's business.

In view of the fact that the plaintiff was planning to build a mixed-use rental property as a business, it must be said that the plaintiff became a party to the contract in question for the purposes of its business, with regard to the support for the property.

(3) Therefore, there is no need to make any judgment on the remaining points, and since the Plaintiff is not a consumer to whom Article 4, Paragraphs 1 or 2 of the Consumer Contract Act apply, he has no room to revoke his intention to enter into the contract.

3. Regarding point 2 (whether or not there was a tort)

© 2025 Thomson Reuters KK all rights reserved

The plaintiff alleges that the defendant made false statements to the plaintiff, provided definitive judgments, or failed
, to disclose adverse facts, which constituted tort.

However, there is no sufficient evidence to prove that the Plaintiff indicated to the Defendant prior to
the conclusion of the Contract that the Housing Conditions in question were conditions that must be met in full and
that it was impossible to compromise even in part. Rather, as stated in the facts found in 1 above, even after the 下件
Plaintiff paid the rental fee and concluded the Contract in question, the Plaintiff conveyed the Housing Conditions
in question to the Defendant's staff as his own desire, and this appears to have been the case before the Contract
in question was concluded. Furthermore, there is no sufficient evidence to prove that the Defendant promised to the
Plaintiff a proposal that would meet all of the Housing Conditions in question. Given that the Housing Conditions
in question were conveyed to the Defendant solely as the Plaintiff's desired conditions, the Defendant's
statement that it was possible to meet the conditions in question does not constitute a misrepresentation of
important matters, does not constitute a definitive judgment, and does not constitute an intentional or gross negligent
failure to disclose important matters that would be disadvantageous to the Plaintiff.

Therefore, the plaintiff's claim regarding the above tort cannot be accepted on that premise.

4. Point of contention 3 (whether or not the patent was invalid due to mistake)

As explained in paragraph 3 above, prior to entering into the Contract, the Plaintiff did not express to the
Defendant its motivation that the Housing Conditions in question were conditions that must be met in full and
which could not be compromised even in part, and therefore the Contract in question cannot be found to be
invalid due to mistake.

5 Regarding point 4 (whether or not the defendant defaulted on its debt)

The plaintiff alleges that the defendant's obligation under the contract was to present a feasible construction plan
for the construction of a rental/commercial housing unit that would meet the housing conditions in question and ensure
profitability, but that the defendant failed to fulfill that obligation.

However, as already found and explained, prior to the conclusion of the Contract in question, the Plaintiff did not express
to the Defendant its motivation that the Housing Conditions in question were conditions that must be met in full and
that it was impossible to compromise even in part.In addition, the email in question does not contain the obligations
asserted by the Plaintiff, nor can it be found that the Defendant promised to make a proposal to the Plaintiff that
would meet all of the Housing Conditions in question.

Therefore, the plaintiff's argument regarding the termination of the default cannot be accepted on that
premise.

6 Conclusion

Therefore, without any need to make a ruling on point of issue 5, the plaintiff's primary and auxiliary claims are both dismissed as being
without merit, and Article 61 of the Civil Procedure Act is applied to the burden of litigation costs, and the judgment is entered as set forth
in the judgment.

Tokyo District Court, Civil Division 32

(Judge Kazuhiro Shimo)

© 2025 Thomson Reuters KK all rights reserved

\*\*\*\*\*\*\*

© 2025 Thomson Reuters KK all rights reserved