EXHIBIT 12b

EXHIBIT 12b



Date of trial: June 24, 2022 Court name: Tokyo District Court    Trial classification Judgment

## Case number: Reiwa (Wa) 27723

Case name: Claim for return of unjust enrichment

Document number 2022WLJPCA06248002

source
westlaw japan

Setagaya Ward, Tokyo (omitted below)

plaintiff                                        X

Lawyer representing the lawsuit                  Kaoru Ono

Chiyoda Ward, Tokyo (omitted below)

defendant                                        Jewelry Aki Co., Ltd.

Representative Director                          A

Lawyer representing the lawsuit                  Keisuke Totsuka

main sentence

1. Plaintiff's claim is dismissed.

2 The plaintiff shall bear the costs of the proceeding.

facts and reasons

1st claim

   The defendant shall pay the plaintiff 50 million yen plus interest at the rate of 6% per annum from October 29, 2019 until payment is made.

Summary of the second case

   This case concerns the plaintiff's claim against the defendant for the return of capital contributions made in relation to a silent partnership agreement between the plaintiff and the defendant.

Based on this agreement (hereinafter referred to as "the Agreement"), the case seeks the payment of a capital contribution of 50 million yen, as well as late payment interest at the statutory commercial interest rate of 6% per annum before the deletion pursuant to Law No. 45 of 2017, from October 29, 2019, which is the day after the notice of payment (the day after the date of service of the complaint), until payment is actually made.

Under the agreement in question, instead of the return of the capital contribution in cash, an agreement was made to make a substitute payment through the transfer of unlisted crypto assets (hereinafter referred to as the "Substitute Payment Agreement in Question"). However, the plaintiff claims that (i) the portion of the agreement that constitutes the Substitute Payment Agreement in Question is invalid based on mistake and violation of public order and morals (excessive profiteering), is rescinded based on violation of the Consumer Contract Act, and is terminated based on liability for defects, and (ii) the agreement has lapsed due to the non-performance of the obligation to deliver the crypto assets under the Substitute Payment Agreement, and is seeking the return of the capital contribution in cash.

1 Prerequisite fact

### (1) Parties, etc.

The plaintiff established a company that operated an internet business in 1993 and became its representative director. However, after the company was dissolved in 2000, he has continued to make stock investments as an individual. (Exhibit 8, entire gist of argument)

The defendant is a company engaged in the import, export, manufacture and sale of jewels, watches and precious metals, as well as the issuance, sale and trading of cryptocurrencies.

(2) Regarding the anonymous partnership agreement between the plaintiff and the defendant

A. On November 30, 2017, the plaintiff and the defendant entered into an anonymous partnership agreement (hereinafter referred to as the "Anonymous Partnership Agreement") with the plaintiff as the partner and the defendant as the business operator, in which the members would contribute money, which the business operator would use to promote the purchase and sale of jewelry, and which would distribute a portion of the profits to the members. (Exhibit 1, the entire gist of the oral argument)

On December 15, 2017, the plaintiff invested 50 million yen in the defendant based on the anonymous partnership agreement in question (hereinafter, this 50 million yen will be referred to as the "investment in question"). (Exhibit 2, the entire gist of the argument)

### (3) About the Agreement

On July 18, 2018, the plaintiff and the defendant agreed to the following items regarding the return of the investment: (Agreement in this case)

On the same day, the Plaintiff and the Defendant mutually agreed to terminate the Anonymous Partnership Agreement.

The defendant has paid the plaintiff 5 million yen of the capital investment it received from the plaintiff under the anonymous partnership agreement. We acknowledge that we are obligated to return 100,000 yen (the capital investment in this case).

The Defendant will transfer to the Plaintiff the cryptocurrency listed below as substitute payment for the entire debt listed above by sending it to the Plaintiff's designated wallet (hereinafter referred to as the "Wallet") by the business day following the date of the Agreement (Substitute Payment Agreement).

In the event that the payment is not made, the defendant will return the 50 million yen investment in cash to the plaintiff by July 30, 2018.

Note

Cryptocurrency AKI COIN 57,500 units
Wallet <omitted>

© 2025 Thomson Reuters KK all rights reserved

### About "AKI COIN" (4)

"AKI COIN" (the unit is "AKI"; hereinafter referred to as "the Coin") is a cryptocurrency issued by Orion Way HK. Ltd. for the purpose of fundraising for the defendant. The total number of the Coin is a maximum of 2.3 million AKI, and it is to be purchased by exchanging it for other cryptocurrencies (Bitcoin or Ethereum). Purchases began to be accepted on June 1, 2018, but as of that day it was not listed on any cryptocurrency exchange.

The purchase price at the time of the start of the above-mentioned acceptance period is set to be approximately 1,000 yen per AKI. (The above is the entire gist of each sub-number of Otsu 12 and the oral argument.)

(5) Intention to revoke and terminate the substitute performance agreement

On July 10, 2019, the plaintiff expressed its intention to cancel the substitute performance agreement to the defendant on the grounds that there had been a false notification of important matters under Article 4, Paragraph 1, Item 1 of the Consumer Contract Act, and to terminate the agreement based on the liability for warranty defects under Article 570 of the Civil Code prior to the amendment by Law No. 4-4 of 2017. (Exhibits 4 and 5)

2 Points of contention

(1) Whether the substitute performance agreement in this case was invalid due to mistake

(2) Whether the substitute payment agreement in this case violated public order and morals (profiteering)

(3) Whether there were any false disclosures of important matters regarding the substitute performance agreement

(4) Whether there were any hidden defects in the substitute payment agreement

(5) Whether or not the Coins will be delivered based on the Substitute Payment Agreement

3. Arguments of the parties regarding the issues at issue

(1) Regarding point of dispute (1) (whether or not the patent was invalid due to mistake)

### (Plaintiff's claim)

Prior to the preparation of the Memorandum of Understanding (Exhibit 3; hereinafter referred to as "The Memorandum of Understanding") relating to the Agreement in Question, the Plaintiff met with B (hereinafter referred to as "B"), the Defendant's chairman's secretary, at a cafe in Shinjuku on July 17, 2018 (hereinafter referred to as "The Interview in Question").

During the interview, B stated that the coins in question were funded, so if they were listed, their value would definitely and inevitably rise, and that they would be listed on the exchange in late July or August at the latest, and would be available for trading and redemption, etc., and explained that the coins in question would be listed and redeemable in the same month, and that the 50 million yen invested in the case would definitely be recovered. However, in reality, the coins in question were not listed on the exchange by the end of August 2018, and redemption was virtually impossible.

The Plaintiff entered into the substitute performance agreement in this case based on the above explanation by B, and therefore there is a mistake regarding the important parts of the agreement, and therefore the portion of the agreement in this case that is the substitute performance agreement is invalid according to Article 95 of the Civil Code before its amendment by Law No. 44 of 2017.

### (Defendant's claim)

Plaintiff's allegations are denied and disputed. During the interview, B only had Plaintiff sign and seal the Agreement, but did not provide any explanation regarding the Coins as Plaintiff claims. Rather, Plaintiff proposed the use of the Coins as a substitute payment through C (hereinafter referred to as "C"), who was the Plaintiff's intermediary in the negotiations between the Plaintiff and the Defendant, prior to the interview, and the Substitute Payment Agreement was concluded.

© 2025 Thomson Reuters KK all rights reserved

The parties reached the agreement in question, including the above, and were aware that the coins in question were not listed and that there was a risk of loss associated with them, so it cannot be said that there was any mistake as asserted by the plaintiff.

(2) Regarding point of dispute (2) (whether or not there was a violation of public order and morals)

### (Plaintiff's claim)

The substitute payment agreement in this case extinguishes the obligation to repay the large investment of 50 million yen with 57,500 coins, which are virtually worthless. This creates a gross imbalance in the compensation relationship and constitutes usurious profiteering.

### (Defendant's claim)

The plaintiff disputes the allegations. The plaintiff was aware that the coins in question were not listed and that there was a risk of loss, but still sought payment in kind with the coins in question. Therefore, the agreement to make payment in kind does not constitute an act of usurious profiteering.

(3) Regarding point of dispute (3) (whether or not there was a false statement)

### (Plaintiff's claim)

As described in (1) (Plaintiff's allegations) above, during the interview, Defendant's representative B explained to Plaintiff that since the coins had a fund attached to them, their value would definitely rise if they were listed, that they would be listed on the exchange in late July 2018 or by August at the latest, and that they would be able to be bought, sold, and converted into cash. However, in reality, the coins in question were not listed on the exchange by the end of August 2018, and were in fact impossible to convert into cash.

The above explanation by B is a false disclosure regarding important matters under Article 4, Paragraph 1, Item 1 of the Consumer Contract Act, and the portion of the agreement in question that concerns the agreement to make substitute payment is rescindable.

### (Defendant's claim)

The plaintiff denies and disputes the allegations. As stated in (1) (Defendant's allegations) above, B did not explain the coins to the plaintiff during the interview, and the plaintiff was aware that the coins were not listed and that there was a risk of loss. B did not misrepresent any important matters to the plaintiff.

(4) Regarding point of dispute (4) (whether there is a hidden defect)

### (Plaintiff's claim)

The Plaintiff was informed by B that the Coin in question would be listed on the exchange within August 2018, and thus entered into the Substitute Performance Agreement. However, the Coin in question was not ultimately listed on the exchange, and even if it had been listed, it would not have been able to be traded on the market, and it would have been virtually impossible to convert it into cash, etc. Therefore, it can be said that there was a hidden defect in the Coin in question, which is the subject of the Substitute Performance Agreement, and the portion of the Agreement which constitutes the Substitute Performance Agreement can be terminated.

### (Defendant's claim)

The plaintiff denies and disputes the allegations. The plaintiff was aware that the coins in question were not listed on the exchange and that there was a risk of loss at the time of the substitute payment agreement, and that the coins in question had no hidden defects.

(5) Regarding point of dispute (5) (whether or not the coins in question were delivered)

### (Defendant's claim)

© 2025 Thomson Reuters KK all rights reserved

The defendant sent 57,500 Coins to the Wallet specified by the Plaintiff on July 18, 2018, the date of the agreement. The Wallet was created by C, an intermediary for the Plaintiff, and was specified by the Defendant as the destination for the Coins, and the Defendant did not know the password.

Therefore, the defendant fulfilled its obligation to deliver the coins to the plaintiff within the agreed upon deadline based on the substitute performance agreement.

(Plaintiff's claim)

The defendant's allegations are denied and disputed. The plaintiff did not specify the wallet in question when creating the agreement, nor was the password for the wallet conveyed to him. Even if C specified the wallet in question, C is an assistant to the defendant, and since C did not convey the password, even if the coins in question were sent to the wallet in question, the plaintiff would not be able to convert them into cash.

Therefore, it cannot be said that the defendant fulfilled its obligation to deliver the coins to the plaintiff under the substitute performance agreement.

Third, the Court's decision

1 Found facts

In addition to the above premise facts, based on the overall gist of the evidence and arguments set out in the determination section, the following facts are established.

(1) In 2000, the Plaintiff dissolved Co., Ltd. A, of which he was the representative director, and with the remaining assets of approximately 1 billion yen, he established an asset management company and invested in real estate. He also continued to make personal stock investments, including margin trading. As of 2018, he had assets of approximately 500 million yen, and his investment profits amounted to approximately 100 million yen per year. (Exhibit 8, Plaintiff himself, entire gist of oral argument)

(2) The Plaintiff became acquainted with C, an employee of AKI INTENASIONAL Co., Ltd. (hereinafter referred to as "AKI"), which oversees the group companies including the Defendant, and was advised to invest 5.5 billion yen to acquire unlisted shares of Recruit Co., Ltd. in around November 2017. At that time, C advised the Plaintiff to obtain a loan of 5.5 billion yen from D (hereinafter referred to as "D"), the chairman of AKI, if he concluded the anonymous partnership agreement in question. After that, when the Plaintiff met with D and the Defendant's representative B, he was not guaranteed to receive the 5.5 billion yen loan, but was told that he would need to conclude the anonymous partnership agreement in question in order to obtain further loans from C. He concluded the agreement on the 30th of the same month and invested the capital in question. In addition, E (hereinafter referred to as "E"), who was in charge of general affairs and legal affairs at AKI, received a deposit of 15 million yen from the Plaintiff in January 2018 as the acquisition cost of the above-mentioned unlisted shares. (Exhibits 11 to 14, 16, Exhibit 1, Exhibit 13, Plaintiff himself, Witness B, Witness C)

(3) Plaintiff became distrustful of Defendant because, even after the conclusion of the Anonymous Partnership Agreement, the 5.5 billion yen loan was not executed and the transfer destination of the investment was specified as an account other than the investor's account. Plaintiff appointed Attorney Kaoru Ono (hereinafter referred to as "Attorney Ono"), who is the attorney representing Plaintiff in the lawsuit, and sent a notice in the name of Attorney Ono on April 19, 2018, demanding the return of the investment. In response to this, Defendant appointed Attorney Keisuke Totsuka (hereinafter referred to as "Attorney Keisuke"), who is the attorney representing Defendant in the lawsuit,

© 2025 Thomson Reuters KK all rights reserved

The company entrusted the negotiations to "Attorney Totsuka." (Exhibit 14, Exhibit 1)

(4) In July 2018, E recommended to Plaintiff that the Coins be allocated in lieu of the return of the Capital Contribution, and Plaintiff also expressed a desire to do so. E, through C, a former employee of AKI, informed B, who was in charge of the affairs related to the Coins at AKI, that Plaintiff wished to receive an allocation of the Coins in lieu of the return of the Capital Contribution. In response, B prepared a draft agreement to transfer 57,500 Coins as a substitute payment for the return of the Capital Contribution, and delivered it to C by email, which then delivered it to Plaintiff via E. On the 5th of the same month, C sent B an email stating the ID of the Wallet as the address to which the Coins should be sent. (See Exhibit 9-1 and 13, Witnesses B and C for the above.)

(5) Bは、On July 6, 2018, after confirmation by D and Attorney Totsuka, a draft agreement was prepared stating that the Anonymous Partnership Agreement in question was valid, that the Anonymous Partnership Agreement in question was to be terminated by mutual consent, that the Defendant was obligated to return the 50 million yen investment in question to the Plaintiff, and that 57,500 Coins in question would be transferred as substitute payment for this obligation, and was delivered to C by email, and then delivered to the Plaintiff by C via E. (Sub-item 13 of Exhibit 9, Witness B)

(6) On July 10, 2018, C sent an email to B stating his opinion on amending the draft agreement to include a clause providing that if the Coins were not repaid, the Coins would be repaid in cash.

The Plaintiff also prepared a revised draft agreement that included the deletion of the clause stating that the Anonymous Partnership Agreement was valid, the acknowledgement of the obligation to return interest in addition to the investment, the deadline for the substitute payment with the coins in question being the 20th of the same month, and if the payment with the coins in question cannot be fulfilled by that date, a lump sum repayment in cash by the 31st of the same month, etc., and sent it to C by email on the 11th of the same month. The email includes the text, "If you read it carefully, you will see that it is quite different from what B made." (Regarding the above, see Exhibit A-13, Exhibit B-10, the Plaintiff himself, and Witness B)

(7) Plaintiff and B had an interview (the Interview) at a coffee shop in Shinjuku on July 17, 2018. B presented Plaintiff with two copies of the Agreement (the Agreement) which, in addition to the provisions of the draft Agreement in (5) above, contained a clause stating that if the Agreement was not delivered, Defendant would return Plaintiff's capital investment of 50 million yen in cash by July 30, 2018, and had Plaintiff stamp the documents on the spot.

At that time, B was asked by the plaintiff about the possibility of listing the coin, and B replied that based on the information he had received from an external outsourcing company, he thought it would be possible to list within two weeks at the earliest, and within two or three months at the latest. B was also asked by the plaintiff about the increase in the value of the coin, and B replied that he thought it would increase in value based on the market conditions at the time.

After that, B took home two copies of the agreement, and after going through the internal approval process, he wrote the date of the 18th of the same month, stamped it with the defendant's representative seal, and sent one of them to the plaintiff. (See Exhibits A-3, 1-3, Exhibit B-11-1-2, 13, Witness B, and the plaintiff himself.)

(8) On July 18, 2018, the defendant sent 57,500 Coins to the Wallet. (Plaintiff's Exhibit No. 13 and Defendant's Exhibit No. 11)

(9) Around September 2018, the Defendant was making arrangements to list the Coin on the cryptocurrency exchange HIT BTC, but was ultimately unable to list the Coin on the exchange.

© 2025 Thomson Reuters KK all rights reserved

The coin in question was listed on the UK-based cryptocurrency exchange "P2PB2B" on August 4, 2019. However, as of January 15, 2021, there are only 12 owners of the coin in question, one of whom owns approximately 96.75% of the total number of coins issued, and trading is not active. (See Exhibit A 9, Exhibit B 10, Exhibit B 5 to 7, Exhibit B 12, Witness B, and the gist of the oral argument.)

2. Regarding point (1) (whether or not the design was invalid due to mistake)

(1) The Plaintiff alleges that during the interview on July 17, 2018, B gave false explanations to the Plaintiff, such as that the value of the Coin in question would definitely increase and that it would be listed on the exchange by August of the same year at the latest, and that the Plaintiff believed such explanations and entered into the Substitute Payment Agreement in question, and that there was a mistake regarding important parts of the said agreement. The Plaintiff's statements (Exhibit 14, Plaintiff himself) are in line with this. もある。

(2) However, although B discussed the price increase and the timing of the listing of the Coin during the interview (Found Fact (7)), it cannot be said that B expressed a definitive judgment on these matters (In addition, the Plaintiff's statement [Exhibit 14] also includes a section stating that F, a person related to the Defendant, visited B on or around July 9, 2018 and told him about the listing and price increase of the Coin, but there is no evidence to adequately support this).

Rather, according to the above-mentioned facts, the plaintiff has been continuously investing in stocks, including margin trading, for many years, and has investment income of about 100 million yen in 2018 (facts (1)), and is recognized to have a considerable investment experience. Although the plaintiff was solicited by E, an employee of AKI, to make a substitute payment with the coins in question (facts (4)), on the other hand, it is natural to assume that the plaintiff recognized that the coins in question were unlisted crypto assets at the time of the interview (the plaintiff himself), and in light of the above-mentioned investment experience, he recognized that the price of the coins in question could rise and fall after listing. Since the plaintiff had distrust for the anonymous partnership in question from the defendant and had strongly requested the return of the 50 million yen investment in question after delegating the matter to a lawyer (facts (2) and (3)), it is difficult to imagine that he did not consider the possibility of converting the coins in question, which are the subject of the substitute payment, into cash. Furthermore, the Plaintiff prepared a revised draft of the Agreement and sent it to C by email, and further pointed out that the clauses in the email were significantly different from the previous draft of the Agreement (Finding (6)). It can be said that the Plaintiff carefully considered the draft of the Agreement, and it is difficult to imagine that such a Plaintiff did not recognize the risk of loss if the Coin in question was not listed or if the value of the Coin in question declined even if it was listed. In addition, according to the evidence (Plaintiff himself), the Plaintiff states that after the end of August 2018, when B supposedly explained to him that the Coin in question would be listed, he confirmed with F, a related party of the Defendant, whether the Coin in question would be listed or not. However, after receiving a response from F that the Coin had not yet been listed, the Plaintiff merely indicated that he would continue to wait for the Coin to be listed, and there is no evidence that he clearly complained about the fact that the Coin in question could not be immediately converted into cash.

(3) In light of the above circumstances, there remains doubt as to whether B gave Plaintiff false explanations about the price increase and the timing of the listing of the Coin during the interview in question, which led Plaintiff to fall into a misunderstanding of the matter. Therefore, there is no basis for Plaintiff's claim that the substitute payment agreement in question was invalid due to a mistake.

Regarding point 3 (2) (whether or not the case violated public order and morals)

(1) The plaintiff alleges that the substitute payment agreement in this case amounts to an act of usurious profiteering, as it extinguishes the obligation to return the 50 million yen investment in this case by using the coins in this case, which are effectively worthless, and therefore the compensation relationship is extremely disproportionate.

(2) However, while the investment in this case was 50 million yen, the value of the coins in question that the plaintiff acquired through the substitute payment agreement was approximately 57.5 million yen at the time (see premise (4)), and it can be interpreted that the substitute payment amount was determined in anticipation of a certain risk of loss, and there is no significant disparity in the consideration. Furthermore, as explained in 2 above, the defendant should be said to have fully recognized the risk of loss of the coins in question when making the substitute payment agreement. In light of these circumstances, the substitute payment agreement in this case cannot be found to be an act of excessive profiteering or contrary to public order and morals.

4. Regarding point of dispute (3) (whether or not there was false information)

(1) Plaintiff alleges that the Substitute Payment Agreement contained misrepresentations regarding the increase in value and timing of the listing of the Coins.

(2) However, as explained in paragraph 2 above, it cannot be found that B gave false explanations to the Plaintiff regarding the price increase or the timing of the listing of the Coin during the interview in question.

Therefore, the plaintiff's above contention is without merit.

5. Regarding point of dispute (4) (whether there is a hidden defect)

(1) The plaintiff alleges that the coins in question, which are the subject of the substitute performance agreement, had a hidden defect because they were not listed on the exchange, and even if they had been listed, they could not have been traded on the market and would have been virtually impossible to convert into cash.

(2) However, the Plaintiff was aware that the Coins were not listed at the time of the Substitute Performance Agreement, and whether or not they would be listed on the exchange thereafter was a matter decided after the agreement was reached. This does not allow the Plaintiff to argue whether or not there were any hidden defects in the Coins at the time of the Substitute Performance Agreement.

In addition, it is true that the Coin was listed on the exchange about one year after the Substitute Performance Agreement, and furthermore, trading of the Coin was not active and it was practically difficult to convert it into cash (Finding (9)). However, as explained in 2 above, it is recognized that the Plaintiff recognized the risk of loss of the Coin and entered into the Substitute Performance Agreement. Therefore, the delay in listing the Coin and the practical difficulty in converting it into cash are within the scope of the risk of loss that was anticipated at the time of the Substitute Performance Agreement.

Therefore, it cannot be said that the coin in question had any hidden defects.

Regarding 6. Issue (5) (Whether or not the coins in question were delivered)

(1) According to the findings in 1(8) above, the Defendant is deemed to have sent 57,500 Coins to the Wallet on July 18, 2018, the day the Agreement was concluded, and is deemed to have fulfilled its obligation to deliver the Coins under the Substitute Performance Agreement.

(2) In response, the defendant asserted that the wallet in question was designated by the defendant's assistant, C, and that the ID and password were not provided by C, and that the plaintiff was not able to convert the coins into cash.

© 2025 Thomson Reuters KK all rights reserved

They claim that because the obligation to deliver the coins has not been fulfilled, the obligation cannot be deemed to have been fulfilled.

However, since the agreement in question specified the Wallet in question as the wallet designated by the Plaintiff, the Defendant's obligation to deliver the Coins in question to the Plaintiff was limited to sending 57,500 Coins in question to the Wallet in question.

Moreover, C denies having opened the Wallet in question (Witness C), and based on all the evidence in this case, it is unclear how the Wallet in question was opened (both the plaintiff and the defendant have stated that it is difficult to investigate the circumstances surrounding the opening of the Wallet in question at this point in time [Full gist of argument]). Assuming that a related party of the defendant opened the Wallet in question, it is not recognized that the defendant had an obligation to inform the Plaintiff of the ID and password of the Wallet in question. According to the facts found in 1 above, the Plaintiff has reviewed the draft agreement in which the address of the Wallet in question is clearly stated, and has prepared an amendment to it (Facts found in (6)). Even if the Plaintiff is currently unable to log in to the Wallet in question, this must be considered the result of the Plaintiff's failure to confirm the ID and password of the Wallet in question before the agreement, and does not overturn the determination in (1) above.

(3) Therefore, assuming that the defendant failed to fulfill its obligation to deliver the coins to the plaintiff within the deadline set out in the substitute performance agreement, it cannot be recognized that the defendant is obligated to return the capital contribution in cash.

Fourth conclusion

Based on the above, the plaintiff's claim is without merit and is therefore dismissed. Judgment is entered as set forth in the judgment.

Tokyo District Court, Civil Division 17

(Judge Ken Katayama)

*******

© 2025 Thomson Reuters KK all rights reserved