EXHIBIT 13a

EXHIBIT 13a

Westlaw Japan

**裁判年月日**　平成26年 1月20日　**裁判所名**　東京地裁　**裁判区分**　判決
**事件番号**　平２４（ワ）１５７４８号
**事件名**　代金返還等請求事件
**裁判結果**　請求棄却　**文献番号**　2014WLJPCA01208006

**要旨**
◆被告から訴外会社を発行会社とする額面１億円の無担保社債を購入した医師である原告が、同社債の勧誘における適合性原則違反、断定的判断の提供、不実告知、説明義務違反を理由に若しくは詐欺を理由に同売買契約を取り消したなどとして不当利得返還又は損害賠償を求めた事案において、被告の担当者Ｂの説明は当時の状況を踏まえた判断として虚偽や不実とはいえず、原告に誤解を生じさせるような説明であったともいえないから不実告知、断定的判断の提供はなく、また、Ｂが適合性原則から著しく逸脱した勧誘をしたとか虚偽や不実の内容を説明したとはいえないから、適合性原則違反や説明義務違反等も認められず、詐欺や公序良俗違反も認められないとして、請求を棄却した事例

**出典**
ウエストロー・ジャパン

**参照条文**
民法９０条
民法９６条１項
民法７０３条
民法７０９条
民法７１５条１項
消費者契約法４条１項
金融商品取引法５条
金融商品取引法３７条の２
金融商品取引法３８条
金融商品取引法４０条
金融商品の販売等に関する法律４条
金融商品の販売等に関する法律５条
金融商品の販売等に関する法律６条

**裁判年月日**　平成26年 1月20日　　**裁判所名**　東京地裁　　**裁判区分**　判決
**事件番号**　平２４（ワ）１５７４８号
**事件名**　代金返還等請求事件
**裁判結果**　請求棄却　　**文献番号**　2014WLJPCA01208006


北海道旭川市〈以下省略〉
原告　　　　　　　　　　　　　　　　　Ｘ
同訴訟代理人弁護士　　　　　　　　　　鷹巣久
同　　　　　　　　　　　　　　　　　　菊地滋
東京都千代田区〈以下省略〉
被告　　　　　　　　　　　　　　　　　大和証券株式会社
同代表者代表取締役　　　　　　　　　　Ａ
同訴訟代理人弁護士　　　　　　　　　　橋本潤


**主文**

　　１　原告の請求をいずれも棄却する。
　　２　訴訟費用は原告の負担とする。


**事実及び理由**

第１　請求
　　被告は，原告に対し，８２９９万８３２３円及びこれに対する平成２４年６月１５日から支払済みまで年５分の割合による金員を支払え。
第２　事案の概要
　　１　本件は，被告からエルピーダメモリ株式会社（以下「エルピーダ」という。）を発行会社とする額面１億円の無担保社債を購入した原告が，被告に対し，同社債の勧誘において適合性原則違反，断定的判断の提供，不実告知，説明義務違反があったことを理由に消費者契約法４条により若しくは詐欺を理由に民法９６条により上記売買契約を取り消したなどと主張して不当利得返還請求権に基づき，又は金融商品取引法５条若しくは民法７０９条・７１５条による損害賠償請求権に基づき，上記売買契約に従い原告が被告に支払った９９９９万８３２３円から売却処分により受領済みの１７００万円を控除した残金相当額８２９９万８３２３円及びこれに対する訴状送達の日の翌日（不法行為の日の後）である平成２４年６

© 2025 Thomson Reuters KK all rights reserved　　　　　　　　　　　　　　　　　　　　　　　　　　2

月１５日から支払済みまで民法所定の年５分の割合による遅延損害金の支払を求める事案である。
　２　前提事実（争いがない事実以外は，各項掲記の証拠等により認める。）
　　(1)　原告は，泌尿器科クリニックを経営する医師である。
　　(2)　原告は，平成２２年１２月２日，証券会社である被告の札幌支店に金融商品に係る取引口座を開設し，当初は，「お客様カード」（顧客カード）の「運用予定額」を「５００万円～１０００万円」として取引を開始したが，平成２３年１月２３日に「３０００万円～５０００万円」に変更した。原告と被告との取引履歴は，別紙「取引履歴」のとおりである。
　　(3)　原告は，平成２４年１月５日午後６時頃，被告札幌支店の従業員であるＢ（以下「Ｂ」という。）から，エルピーダを発行会社とし，発行日を平成１７年３月２２日，償還期限を平成２４年３月２２日とする第２回無担保社債額面１億円（以下「本件社債」という。）について，１億円弱を投入すれば，２か月余りで手取り約８０万円の利益が得られるとの内容で，購入の勧誘を受けた。
　なお，本件社債は，非上場債であり，流通市場は，店頭市場において，証券会社との相対取引で売買されるものであった。
　　(4)　原告は，同年１月１１日，被告に対し，本件社債の購入代金として９９９９万８３２３円（債券価格９９５０万円（１００円につき９９．５円），経過利子４９万８３２３円）を支払った。
　なお，被告作成の取引報告書（甲２０の１）には，「約定日」欄に「平成２４年１月６日」，「受渡日」欄に「１月１２日」と記載されている。
　　(5)　エルピーダは，資本金２３６１億円（平成２３年９月３０日当時）の世界第三位，国内唯一のＤＲＡＭ専業メーカーで，東京証券取引所一部上場会社であったが，同年２月２７日，東京地方裁判所に対して会社更生手続開始の申立てをし，同年３月２８日上場廃止となった。
　　(6)　エルピーダは，平成２０年秋のいわゆるリーマンショックの影響で業績が大きく悪化し，平成２１年６月に国から産業活力の再生及び産業活動の革新に関する特別措置法（以下「産活法」という。）の適用認定を受け，日本政策投資銀行を通じて３００億円の出資を受けていたが，同法の適用期限は平成２４年３月末であった。また，平成２１年９月に銀行団から１１００億円の協調融資を受けており，その残債務７７０億円の返済期限は同年４月２日であった。当時，銀行団は，国による産活法適用の再認定を上記融資についての借換えの条件としていた。
　　(7)　原告は，平成２４年３月１６日，本件社債を被告に１７００万円で売却し，購入代金との差額８３００万円の損失を被った。
　　(8)　原告は，被告に対し，本件訴状（平成２４年６月１４日送達）をもって，消費者契約法４条１項に基づき，本件社債の売買契約（以下「本件売買契約」という。）を取り消す旨の意思表示をした。（当裁判所に顕著）
　　(9)　原告は，被告に対し，平成２５年１月２１日の本件第５回口頭弁論期日において

，詐欺を理由として，本件売買契約を取り消す旨の意思表示をした。（当裁判所に顕著）
　　３　争点及びこれに関する当事者の主張
　　(1)　本件売買契約の成立時期
　（原告の主張）
　　　　ア　一般に，証券会社との間の有価証券取引において，買付資金を事前預託していない場合は，買付資金の支払をした時に，勧誘時の取引条件で売買契約が成立する。
　本件においては，原告は，平成２４年１月１１日に本件社債の買付資金を被告に支払ったから，この時点で，売買契約が成立した。
　　　　イ　原告は，平成２４年１月１０日の時点では，本件社債の購入金額の振込をしておらず，本件社債を購入するかどうか逡巡していたところ，Ｂは，原告に対し，同日２回目の電話で，断定的判断の提供，不実告知をし，原告は，これによって本件社債のリスクが低いものと誤信をして購入を決意し，同月１１日に取引口座に売買代金相当額を入金した。
　　　　ウ　原告は，買付資金を支払うまでは何らの契約的拘束を受けず，買付資金を支払うかどうかは原告の自由であり，原告が買付資金を支払えば，その時に買付契約が成立し，同時に売買契約も成立すると理解しており，Ｂも，同年１月６日の勧誘時に，社債発行会社の信用リスクに関する重要事項である日経新聞の記事について，原告に「後で読んでいただきたい」と告げており，Ｂ自身，同月６日に売買契約の効力が発生していないと理解していたというべきである。
　　　　エ　Ｂは，原告に対し，本件社債の購入の勧誘に際し，金融商品取引法３７条の２に定める「自己がその相手方となって当該売買若しくは取引を成立させるか，又は媒介し，取次ぎし，若しくは代理して当該売買若しくは取引を成立させるかの別」を明らかにしておらず，原告としては，売買契約か買付契約のいずれが成立するのか分からないのであるから，そのような段階で売買契約が成立したと解すべきではない。
　（被告の主張）
　本件社債の売買契約は，平成２４年１月６日午後１時２分過ぎのＢと原告との電話でのやり取りにおいて成立した。原告が１月１１日に代金を支払ったのは，売買合意に基づく履行にすぎない。
　　(2)　本件売買契約に係る勧誘の違法性（不実告知，断定的判断の提供の有無）
　（原告の主張）
　　　　ア　不実告知
　（ア）　平成２４年１月６日
　Ｂは，平成２４年１月６日，原告に対し，焦点は，その再認定が認められるかどうかであり，今購入を勧めている債券は全く関係ない，怖いのは４月以降の資金繰りである旨の不実，虚偽事実を告知した。
　また，同月５日の本件社債の店頭売買参考統計値の平均値は，９９．９７であった（甲２１の１）のに，Ｂは，原告に対し，「逆にそういった危険があるんであれば，９９．５ってことは絶対なりえない・・・ご安心いただければ」と述べて，虚偽の事実を告知した。
　（イ）　平成２４年１月１０日

© 2025 Thomson Reuters KK all rights reserved

　Bは，同月１０日，電話で，原告に対し，「結局は，懸念されているのはあくまでも４月以降，４月５月というところです。」と虚偽の事実を告げた。
　（ウ）　平成２４年１月１０日（２回目の電話）
　Bは，同月１０日，その日２回目の電話で，原告に対し，次のとおり，虚偽の事実を告げた。
　①　この２９０億円も，もしなんだったらば売れますよ。
　②　例えばディーラムの価格，商品の原価が割れて，半年に２倍分，例えば２３０億，赤が出てしまった場合でも約１０００億のキャッシュが残る理論なんです。
　③　仮に，これで例えば，バツであったとしても，来月のが支払えないから，お手上げしますということはできない・・・手元にキャッシュがある分は当然返済をすべきですし，返済した状況で，例えば再度金融機関に，もしバツであったらば，再度交渉するというのが普通，通常のスケジュールです。
　④　これがバツになるのかどうかという可能性も，これも限りなくゼロに近い，結論を出すのは政治家ではなく，経産省の役人であり，OKを出した役人が出した資金を回収できない類のチョイスを取ることは，現実的にあり得ない。
　　イ　断定的判断の提供
　Bは，平成２４年１月６日，原告に対し，エルピーダについて，現在問題となっているのは産活法の再認定が認められるかどうかであり，同年３月２２日満期の本件社債の償還は，この問題とは関係ない旨の不実を断言し，原告は，これを信用して本件社債の購入を承諾し，その受渡日を同年１月１２日とした。Bの具体的な説明内容は次のとおりである。
　（ア）　Bは，原告に対し，再三，「社債・借入金の償還・返済について問題があるのは平成２４年４月以降に期限が到来する分であり，３月末までに到来する分は９９．９％支払われる」旨断言し，その理由として，「平成２３年９月末現在で保有する約１０００億円の現預金で，平成２４年１月２４日償還期限が到来する３００億円の社債と３月２２日に償還期限が到来する１５０億円は支払可能である」旨，「仮に産活用適用の再認定が拒否されたとしても，来月のが支払えないからお手上げしますということはできない。手元にキャッシュがある分は当然返済をすべきだし，返済した後に再交渉するのが普通，通常のスケジュールである」旨を述べた。
　上記発言は，本件社債について３月２２日の償還期限に償還がされるかどうかという不確実な事項につき断定的判断を提供するものであり，原告は，これにより，本件社債の償還が確実であると誤認をした。
　（イ）　Bは，産活法適用の再認定が認められるかどうかについて，原告に対し，「これがバツになるのかどうかという可能性も，これも限りなくゼロに近い」旨，「結論を出すのは政治家ではなく，経産省の役人であり，OKを出した役人が出した資金を回収できない類のチョイスを取ることは，現実的にあり得ない」旨述べて断定的判断の提供をした。
　上記発言により，原告は，産活法適用の再認定を確実であると誤認した。
　　ウ　被告の本件社債の購入勧誘には，消費者契約法４条１項１号の不実告知の禁止，同項２号の断定的判断の提供禁止に反する違法があるので，同条１項に基づき，本件社債購

入に係る契約を取り消し，被告に対し，原告の被った損害について不当利得返還を請求する。

　また，被告の上記勧誘には，金融商品の販売等に関する法律（金融商品販売法）４条の断定的判断の提供等の禁止に違反するから，同法５条（６条）に基づき，損害賠償を求める。
　（被告の主張）
　　　ア　原告が主張する不実告知や断定的判断の提供のうち平成２４年１月６日午後１時２分過ぎの本件売買契約成立以降のものについては，Ｂによる本件社債購入に係る勧誘の違法を構成するものではない。
　　　イ　Ｂは，平成２４年１月５日から同月６日にかけての一連の会話において，本件社債に信用リスクがあり，投資金額が償還されないリスクがあることを前提に話しをしており，原告もこれを認識していた。
　Ｂが原告に説明した内容は，次のとおりである。
　（ア）　３月２２日が満期であり，約２か月で満期を迎えること
　（イ）　実質利回りが４．６２３％であること
　（ウ）　銘柄はエルピーダであること
　（エ）　格付けがＢＢＢであること
　（オ）　表面利回りが２．０３％であること
　（カ）　単価が９９円５０銭であること
　（キ）　課税前の受取利息が１００万円前後で，課税後の受取利息が８０万円位であること
　（ク）　実質利回りが４．６２３％であるので，課税後だと４．２１５％位であること
　Ｂは，同日，原告に対し，エルピーダが公的資金を受けた会社であり，支援に成功した会社として理解されていたこと，政府からも応援を受けていたこと等の事情を踏まえ，「えー実質中身としても２か月で潰れるような会社というわけではないです」と意見を述べているのであって，断定的判断，不実又は虚偽の告知に該当するものではない。
　また，Ｂは，同日，原告に対し，「その一，レアーケースなんですけれども，要するに１００％で，保証はできないですという。例えば，明日つぶれますというようなですね，というような状況になったならば，ちょっと変わってきますと，レアーケースを除いてほぼ１００で売れます，ということでございます」と述べ，エルピーダの破綻により本件社債が償還されなくなる可能性を説明しており，原告もこれを理解していた。
　　　ウ　Ｂが，同月６日，原告に対して，「焦点は，その再認定が認められるかどうかであり，今購入を勧めている債券は全く関係ない，怖いのは４月以降の資金繰りである。」旨述べたことについては，エルピーダの産業活用再生法の適用期限を３月末日に迎えるので，エルピーダが同法の再認定を受けるかどうかが３月末に問題となること，及び本件社債の償還期限が３月２２日であることは，いずれも正しいものであり，これを前提として，本件社債とは関係がないとの意見を述べたものであり，不実告知に該当しない。原告も，上記発言について，Ｂらの見方が示されたものであると理解している。
　なお，上記意見は，被告（大和証券キャピタル・マーケッツ株式会社金融証券研究所）が

© 2025 Thomson Reuters KK all rights reserved                                                              6

作成した「エルピーダメモリ　ネガティブ・キャッシュフロー継続」と題する報告書（甲３７。以下「本件報告書」という。）を参考にして述べたものである。
　　（3）　本件売買契約に係る勧誘の違法性（適合性の原則違反，説明義務違反等の有無）
　（原告の主張）
　　　ア　適合性原則違反
　本件社債は，店頭市場において証券会社との相対取引によって売買されるものであり，また，額面金額が１億円以上であるため会社法７０２条ただし書により社債管理者の設置強制の除外を受けるのであるから，主として適格機関投資家向けのものであって，一般個人投資家である原告に勧誘すること自体，違法である。
　また，本件社債は，原告の「お客様カード」に記載した「運用予定額」をはるかに越える額面１億円の非上場債である上，公社債については満期保有しか念頭にない原告の過去の投資歴や，原告の知識，経験に照らし，具体的信用リスクや危急時の対応において困難を伴う取引の経験に乏しい一般個人投資家である原告に対して本件社債の購入を勧誘したことは，適合性の原則に違反する。
　　　イ　説明義務違反
　Ｂは，原告に対し，平成２４年１月６日付け日本経済新聞（日経新聞）の記事と同年３月期第２四半期連結決算短信（甲１８）を交付したのみで，同日の電話では，「今日日経新聞の記事に出てたので，・・・今回お持ちになるのは３月の２２日で満期がくるんですよ。・・・焦点となっているのは３月末に来ている，その政府から援助を受けている，その再認定，・・・が認められるか，られないかというところなので，今回持っていただく債券は全く関係ない」と述べ，また，第２四半期連結決算短信には，エルピーダの資産について，投資有価証券１０００億円などという記載はないのに，同月１０日の電話（１回目）で，現預金１０００億円の外に投資有価証券１０００億円がある旨，虚偽の事実を述べ，本件社債の具体的信用リスクに関わる事項についてほとんど説明をしなかった。
　　　　ウ　被告の本件社債の購入勧誘には，上記(2)の行為を含め，金融商品取引法３８条１項２号の断定的判断の提供禁止，同項１号の不実告知禁止，同法４０条の適合性の原則に反する違法があり，また，説明義務違反（民法７０９条，７１５条）がある。
　　（ア）　上記勧誘は，被告の従業員であるＢが「事業の執行」につき行ったものであるから，原告は，被告に対し，民法７１５条（使用者責任）に基づき，原告の被った損害の賠償を求める。
　　（イ）　また，被告は，平成２３年１１月初めには，エルピーダが平成２４年３月末までに倒産に至る蓋然性を予測し，被告の保有するエルピーダ社債を原告ら一般投資家の顧客に売り付けて大口法人顧客が被るべき損失を一般投資家の原告等に転嫁するとともに自らも不正に儲けることを企図し，消費者契約法４条，金融商品販売法４条，金融商品取引法３８条１号の「断定的判断の提供」，「不実告知」，「虚偽告知」に加え，後記のとおり「二股取引」の詐欺を会社ぐるみで行う等の違法行為を行ったから，原告は，被告に対し，民法７０９条又は７１５条に基づき，原告の被った損害の賠償を求める。
　（被告の主張）

© 2025 Thomson Reuters KK all rights reserved　　　　　　　　　　　　　　　　　　　　　　　　　　7

　　　ア　適合性の原則

　本件社債は，売買契約締結当時，格付けがＢＢＢであり投資適格を有する普通社債であった。原告は，医師であり，その理解力や判断力が高く，多額の資産を保有し，金融商品の投資を行ってきた経験があることから，勧誘について適合性があったというべきである。

　　　イ　説明義務

　本件社債の売買契約に関し，Ｂの原告に対する説明に不実はなく，十分な説明をしている

　　(4)　本件社債の売買契約の無効・詐欺取消事由

（原告の主張）

　　　ア　二股取引

　被告は，原告に対し，本件社債の売買契約成立時期を明言せず，本件社債の価格が下落したときは，勧誘時である平成２４年１月６日に売買契約が成立したものとし，見込みが外れて価格が上昇したときは，「事前預託方式」を選択し，予め原告に郵送しておいた「仮計算書」（甲４５）を援用して，本件取引は当初から既発社債の取得取引であったと主張して，入金時以降の「取引時」に，そのときの取引条件で原告と売買契約を締結するつもりであった。このような「二股取引」は，原告が入金した以降の社債の値動きを見た上で取引方式（売買契約の成立時期）を選択するものであり，被告が会社ぐるみで行った詐欺取引である。

　　　イ　売買契約の不存在

　上記取引においては，本件社債の取得契約の外形すらないから，売買契約は不存在である

　　　ウ　売買契約の無効（公序良俗違反）

　平成２４年１月６日に本件社債の売買契約が成立していたとしても，公序良俗に違反するものであるから，同契約は無効である。

　　　エ　詐欺

　(ｱ)　原告は，被告（Ｂ）により上記「二股取引」を知っていたら，本件社債の売買契約を締結しなかった。

　(ｲ)　平成２４年１月６日の信用リスクに関する詐欺

　　a　Ｂは，原告に対し，「焦点は，その再認定が認められるかどうかであり，今購入を勧めている債券は全く関係ない，怖いのは４月以降の資金繰りである。１３面を見ると非常にわかりやすい。」と虚偽の事実を告げた。

　　b　Ｂは，原告に対し，「逆にそういった危険があるんであれば，９９．５ってことは絶対なりえない・・・ご安心いただければ」と虚偽の事実を告げた。

　(ｳ)　同月１０日の信用リスクに関する詐欺

　　a　Ｂは，原告に対し，「１１２８億あった現金が，１０００億になってます。キャッシュフローで言えば，６か月で１３０億程度キャッシュが減ってます。例えばディーラムの価格，商品の原価が割れて，半年に２倍分，例えば２３０億，赤が出てしまった場合でも約１０００億のキャッシュが残る理論なんです」と虚偽の事実を告げた。

　　b　Ｂは，原告に対し「無形のもう一個下の投資その他有価証券・・２９０億でござい

© 2025 Thomson Reuters KK all rights reserved

ますね・・この手元の現金１０００億プラスこの２９０億も，もしなんだったらば売れますよというキャッシュ，有価証券ですね・・約１３００億ございます」と虚偽の事実を告げた

　（被告の主張）
　　ア　本件社債の売買契約は，諾成契約たる売買合意であり，原告が主張するような「方式」を選択する余地はなく，詐欺に該当するものではないし，公序良俗に違反するものでもない。本件売買契約は，平成２４年１月６日午後１時２分過ぎに成立している。
　　イ　Ｂが原告に対して虚偽の事実を告知したとの点は否認する。
　(5)　原告の損害
　（原告の主張）
　Ｂは，原告が平成２４年１月１０日時点では本件社債の購入を決定していなかったところ，同日の電話（第２回）において，原告に対し，断定的判断の提供と不実告知をしたことにより，原告は，本件社債の購入を決意して，その代金９９９９万８３２３円を支払ったのであり，これにより，後に本件社債の売却により支払を受けた１７００万円を控除した８２９９万８３２３円の損害を被った。
　なお，金融商品販売法５条に基づく損害賠償については，同法６条により，その損害額は，上記額が「当該顧客に生じた損害の額」と推定される。
第３　当裁判所の判断
１　前記前提事実，証拠（甲１５，１７の１～４，甲３７，４０の１～５，乙１～乙９の２０，乙１３の１～４，乙１７，１９，２０）及び弁論の全趣旨によれば，次の事実が認められる。
　(1)　原告の投資経験等について
　原告は，病院を経営する医師であって，相応の資産を有しており，被告との取引においても，平成２２年１２月以降，約１年の間に，上場株式，社債，外貨建債権，ユーロ円債，劣後特約付き社債等の金融商品の取引を行っており，しかも，個人名義口座のほかに「ａクリニック」名義口座においても取引をしているなど，相応の経験を有しており，また，被告以外の証券会社との間でも種々の金融商品の取引をしており，金融商品の課税関係にも相応の知識を有し，さらに，エルピーダの経営状況等についても一応の知識を有しているなど，金融商品の知識にも相当のものがあったことが認められる（原告は，自身の取引経験や知識等が少ないことについて何ら立証活動をしない。）。
　(2)　本件社債の取引の経緯
　　ア　Ｂは，平成２４年１月５日午後６時７分頃，本件社債の購入を勧誘するため，原告に電話をかけ，本件社債について，額面１億円，同年３月２２日満期で，表面利回りが２．０３，実質利回りが４．６２３，格付けがＢＢＢであること，経過利子が約４６万円で，約１億円で，２か月後には８０万円の利益が得られるものであることを伝えた。原告は，この取引に興味を示し，課税関係について尋ねたところ，Ｂは，確認した上で再度連絡をする旨述べた。
　　イ　同年１月５日午後６時１４分頃，Ｂは，原告に電話をかけ，個人が取引当事者と

なった場合には，売却益は非課税であり，満期で５０万円の売却益が出ること，利子に対して２０％の課税がされ，表面利率が約２％であることから，満期には半分の１％，すなわち１００万円となり，課税分を引いても８０万円となること，ただし，経過利子が約４６万円であることから，結局は約９０万円の利益となることを説明したが，更に正確な数字を確認した上で原告に電話をすることとした。なお，この会話においては，原告の方が上記数字に関する計算について主導的に話を進めていた。

　　ウ　同日午後６時２３分，Ｂは，原告に電話をかけ，本件社債を満期直前で売却すれば，約８１万円の利益が出ること，満期まで持つと償還差益が生じて課税されることを伝え，その際，「例えばですね，そのー，レアーケースなんですけれども，要するに１００％で，保証はできないですという。例えば，明日つぶれますというようなですね，というような状況になったならば，ちょっと変わってきますと」と伝えた。

　その後の電話における両者の主な会話は次のとおりである。

　原告「エルピーダって言ったら，えーと産業再生機構かなんかで，えーと，なんか支援を受けて」

　Ｂ「・・・日本では，ほぼ寡占に近い状態ですね，半導体の製造販売では。ということもあって，金融機関からの資金援助も早かったと。で，政府からも支援を受けたのは唯一の企業です。」

　原告「うん，うん，で，これ株価は今どれぐらいなの」

　Ｂ「今の株価が，えー３５０円でございます」

　原告「あー大丈夫だね，そしたらね」

　Ｂ「え，先生も言ってらっしゃった１００円切るということではないです。」

　原告「まあ，１００，株価もその１００切っているわけでもないし，この２か月で倒産するっていう何か噂はないの」

　Ｂ「ないですね」

　原告「噂は」

　Ｂ「例えばその再生機能の借金の，ニュースとして最近入っていたのが，えー各取引先企業に，４００億程度のですね，あのー資金援助を頼んでいるっていう噂があったんですよ。」

　Ｂ「要するに，それが，まだ資金繰りのところで，まだ厳しいんじゃないか，ですとか，そういう噂になってるんです。それで，今回たまたま玉が出たらしいんです。実態で言えば，元々資金の返済延期，返済の延期ですね，も話をしてますし，あと噂では，東芝ですね，とのマッチングっていうのを政府絡みで，やってると。要するに，結局は今の，経済状況で，こういった有名な会社っていうのを潰す余裕はないということですね，政府としても。・・・」

　原告「じゃあ２か月で潰れないな，これな。」

　Ｂ「もちろんです。これ，保証はできないですけど。・・・」

　　エ　同月６日午後１時２分，Ｂは，原告に電話をして，本件社債の購入についての原告の意思を確認するとともに，エルピーダの産活法の適用期限を同年３月末日に迎えるので

© 2025 Thomson Reuters KK all rights reserved

，エルピーダが産活法の再認定を受けるかどうかが３月末に問題となるが，本件社債の償還期限は同年３月２２日であるので，本件社債とは関係がないとの見方を伝えた。主な会話は次のとおりである。

　Ｂ「あ，すいません，えっと一応ご注文の方だったんですけれども，えっと今ここで承っても大丈夫ですか」

　原告「大丈夫ですよ」

　Ｂ「承る前にちょっと一番わかりやすいのが今日日経新聞の記事に出てたので，後で読んでいただきたいんですけれども，要するに１３面で，資金の返済なるかどうかっていうところですね，詳しい特集やってまして，で，ただ先生今回お持ち頂くのは３月の２２日で満期がくるんですよ。結局焦点となっているのは３月末に切れる，政府から援助を受けている，再認定，もう一回認定が認められるか，られないかというところなので，今回持っていただく債券は全く関係ないということですね，要するに」

　原告「関係ないということですね」

　Ｂ「関係ないですね，要するに４月からの資金繰りが怖いよっていうところなので。そこだけ，ちょっと１３面見ていただくと非常にわかりやすいと思いますし，あとあとで決算報告書もお送りしておきますので，そちらだけ，ご覧下さい。」

　原告「ま，一応あれだね，そうすると，あなたたちが見る分には，そういう形でいいんだね。そうしたらね。」

　Ｂ「はい，逆にそういった危険があるんであれば，単価が９９．５ってことには絶対なりえないので，それもふまえてですね，３月末で３月２２日満期のものであれば，このバリューだろうと，いうところで出しておりますので」

　原告「なるほどね」

　Ｂ「ご安心いただければと。」

　原告「１１日かい」

　Ｂ「えーと，今日の注文ですと，４営業日後ですから１２日までに」

　原告「あ，そう」

　Ｂ「え，１２日まででございますので」

　原告「はい，わかりました」

　Ｂ「え，ではあのＸ様の，ご個人様の口座でですね」

　原告「はい」

　Ｂ「あの，第２回のエルピーダメモリの社債を，額面で１億ですね，こちら，ご注文をださせていただきます。利率が，２．０３％で，満期日が３月の２２日でございます。で，今回は単価が額面１００円につき，９９円５０銭，で，こちらお渡しできますので，経過利子も含めた約定代金が，９９９９万８３２３円でございます。こちらで，あのお買い付けの方出させていただきます」

　原告「９９９９万８３２３円ですね」

　Ｂ「９９万８３２３円です（原告と声を合わせながら），こちらでご注文ださせていただきます。」

© 2025 Thomson Reuters KK all rights reserved                                                                11

原告「これを振り込んでおけばいいんですね。」,「分かりました,はい」

　　オ　なお,Bが指摘した平成24年1月6日の日経新聞13面の記事には,エルピーダの再建計画策定が大詰めを迎えているとして,「事業戦略に加えて財務面でも山場を迎える。3月末までに450億円の社債を償還する必要がある。11年度下期に返済しなければならない借入金も500億円ある。手元資金や製品納入先などに打診している資金支援でまかなう計画だ。」,「さらに産活法認定時に,政投銀と主力行から借り入れた計1100億円のうち,まだ返済していない770億円の期限が4月2日に迫る。銀行団はエルピーダが産活法適用期限の3月末に再認定を受けることを,借り換えに応じる条件に挙げている。」などと報じられている。

　　(3)　本件報告書について

　平成23年11月7日付けで,大和証券キャピタル・マーケッツ株式会社金融証券研究所が作成した本件報告書(甲37)には,「改正産活法に基づく事業再生構築期間(2009年7月〜2012年3月)に償還を迎える第2・5回債については,引き続き極めて限定的なクレジット・リスクとの見方を変える必要はなかろう。理由は以下の通り。」,「②当該社債の償還時期は,年度末近辺に返済期限が訪れる借入金よりも概ね手前に位置し,現有のキャッシュ等で対応可能とみられること。③事業再構築計画に基づきエルピーダに投入された優先株式300億円(DBJ)や前述ローンが残存する中,こうした当事者がエルピーダの信用悪化を誘発する類のチョイスを取ることはあまり現実的とはいえない」などと記載されている。

　　(4)　エルピーダをめぐる報道等

　　ア　エルピーダについては,平成23年12月下旬頃から,台湾企業等との資本提携交渉が進められていることが報じられ,その中で,同社が業績不振であることが報じられていた。

　　イ　平成24年2月2日の日経新聞の記事(乙9の2)では,産活法の期限が3月末で切れ,政策投資銀行の優先株300億円について同年4月以降エルピーダに対して買取請求をする権利が発生することから,エルピーダが,同銀行から買取請求をされる事態に備え,資本準備金を取り崩して買戻資金を確保する旨が報じられている。

　　ウ　同年2月3日の日経新聞の記事(乙9の3)では,エルピーダのC社長が記者会見で,上記の買戻資金の確保のため,「資本金を取り崩すための臨時株主総会を同年3月下旬に開催することを表明した」,「「3月までの資金繰りは問題ない。銀行団とは借り換えを含め協議している」と語った」ことが報じられている。

　　エ　エルピーダの株価は,平成23年12月16日以降は300円台を推移し,平成24年1月5日350円,6日331円,10日309円,11日313円,12日308円となり,同年2月9日には377円となったが,同月15日に急反落(54円値安)して320円となり,その後,会社更生手続開始の申立てがされた同年2月27日まで307円〜349円の間を推移した(いずれも終値)。

　2　争点(1)(本件売買契約の成立時期)について

　　(1)　前記前提事実及び上記認定事実のとおり,被告作成の取引報告書(甲20の1)

© 2025 Thomson Reuters KK all rights reserved

に，「約定日」欄に「平成２４年１月６日」，「受渡日」欄に「１月１２日」と記載されている上，平成２４年１月６日午後１時２分の原告とＢとの電話によるやり取りにおいて，Ｂが「ご注文の方だったんですけれども，えっと今ここで承っても大丈夫ですか」，「今日の注文ですと，（以下略）」，「お買い付けの方出させていただきます」，「こちらでご注文出させていただきますので」などと述べており，これに対し，原告は，「これを振り込んでおけばいいんですね。」，「分かりました，はい」などと述べていること，さらに，平成２４年１月１２日までに本件社債の購入代金の支払をすることが確認されていることに加え，証拠（甲１７の５）によれば，同年１月１０日午後３時３分の原告とＢとの電話によるやり取りにおいても，Ｂが，本件社債について，「まあもう持っていただいているやつですよ。」と言うのに対し「はい」と応答していることが認められる。

　そして，前記認定のとおり，原告の職業や，金融商品の取引について相応の経験を有しており，金融商品の知識にも相当のものがあったことをも踏まえると，上記のような本件社債の取引に関する経緯に照らし，原告は，本件社債の購入について十分な認識を有した上で購入（買付け）の承諾をしているというべきであるから，本件売買契約は，１月６日午後１時２分過ぎの電話での上記やり取りにおいて成立したと認めるのが相当である。

　　(2)　これに対し，原告は，証拠を挙げて縷々主張するが，いずれも上記認定を左右するに足りるものではない。

　なお，「債券仮計算」と題する書面（甲４５）は，被告内部において，従業員が顧客に交付することが認められている資料の一つであり，Ｂは，取引条件が一覧になってわかりやすい資料であることから，既に確定的に行われた取引条件の事後的な参考資料として原告に提供したものということができるのであって，上記認定を左右するに足りない。

　３　争点(2)（本件売買契約に係る勧誘の違法性（不実告知，断定的判断の提供の有無））について

　　(1)　前記認定事実によれば，Ｂは，平成２４年１月５日から６日にかけての一連の会話において，本件社債に信用リスクがあり，投資金額が償還されないリスクがあることを前提に話を進めており，原告もこれを十分認識していたことが認められる。

　　(2)　また，前記認定事実のとおり，本件報告書は，平成２４年１月２４日償還の社債３００億円（第５回債）と３月２２日償還の社債１５０億円（第２回債）については，同年３月末以降の返済分と切り離し，「概ね手前に位置し」と述べて，３月２２日償還の社債１５０億円は支払われると結論付け，また，出資金３００億円や貸付金１００億円が返済されていない状態で，政府が再認定しなければ，エルピーダの信用悪化を誘発して前回の出資金等が回収困難になるから再認定しないとみるのが現実的ではないとしている。

　そして，前記認定事実のとおり，エルピーダについて，平成２３年１２月下旬頃から業績不振であることが報じられていたものの，具体的に倒産を見込んだ記事があることはうかがわれない上，平成２４年１月６日の日経新聞記事を始め，本件売買契約締結後に報じられた新聞記事においても，なお具体的な資金繰りの手当が行われる見込みであることが報じられており，また，会社更生手続開始の申立てがされた平成２４年２月２７日まで，同社の株価は３００円台を推移していたことなどを併せ考えると，本件報告書における見解や同年１月

© 2025 Thomson Reuters KK all rights reserved

６日の上記日経新聞の記事は，報じられた当時においては相応の根拠に基づいた見解であったというべきであって，虚偽であるとか，社債を処分するための作為的なものであるということはできない。

そして，Ｂは，本件報告書や上記日経新聞記事の内容を受けて，平成２４年１月６日，原告に対し，電話で，「焦点は，その再認定が認められるかどうかであり，今購入を勧めている債券は全く関係ない，怖いのは４月以降の資金繰りである」旨の見解を述べているところ，上記のとおり，エルピーダの産業活用再生法の適用期限を３月末日に迎えるので，エルピーダが同法の再認定を受けるかどうかが３月末に問題となるが，本件社債の償還期限は３月２２日であるということ自体は虚偽の事実というべきものではなく，Ｂは，かかる事実を前提として，本件社債とは関係がないとの意見を述べたということができる。そして，原告も，上記発言について，Ｂらの見方が示されたものであると理解しているものと認められる。

　(3)　さらに，Ｂが，平成２４年１月６日，原告に対し，「逆にそういった危険があるんであれば，９９．５ってことは絶対なりえない・・・ご安心いただければ」と述べた点については，エルピーダの信用リスクが現実化する危険が大きくなっていれば，単価がもっと大幅に下落しているはずであるという趣旨を述べたものとみることができ，虚偽ないし不実であるとはいえない（なお，平成２４年１月６日当時の本件社債の格付は，ＢＢＢであり，投資適格とされていた。）。

　(4)　以上の点を総合すると，Ｂの原告に対する上記説明は，当時の状況を踏まえた判断としては，虚偽ないし不実ということはできないし，Ｂの説明に対し，金融商品の取引に関する相当の知識，経験を有していた原告が，「あなたたちが見る分には，そういう形でいいんだね」などと言って，被告側の意見として聞いていることをも踏まえれば，原告に対して誤解を生じさせるような説明であったということもできないから，不実告知，断定的判断の提供等として違法であると評価することはできない（なお，原告は，本件売買契約の締結時を平成２４年１月１２日であるとして，同月６日以降のＢの説明についての違法性をも主張するが，本件売買契約の成立時期については前記２のとおりであって，売買契約締結後の事情を考慮することはできない。）。

４　争点(3)（本件売買契約に係る勧誘の違法性（適合性の原則違反，説明義務違反等の有無））について

　(1)　適合性の原則について

　一般に，証券会社の担当者が，顧客の意向と実情に反して，明らかに過大な危険を伴う取引を積極的に勧誘するなど，適合性の原則から著しく逸脱した証券取引の勧誘をしてこれを行わせたときは，当該行為は不法行為法上違法となると解するのが相当である。そして，顧客の適合性を判断するに当たっては，当該商品の特性を踏まえて，これとの相関関係において，顧客の投資経験，証券取引の知識，投資意向，財産状態等の諸要素を総合的に考慮すべきである。

　これを本件についてみると，前記認定のとおり，本件社債は，普通社債であって仕組みは単純なものである上，本件売買契約締結当時，格付けがＢＢＢであり投資適格を有する普通社債であり，また，原告は，医師であって，理解力や判断力が高く，多額の資産を保有し，

© 2025 Thomson Reuters KK all rights reserved                                                       14

相応の金融商品に対する投資を行ってきた経験がある。そして，前記認定事実によれば，原告は，本件社債について，エルピーダの倒産によるリスク等を十分に理解していたとみることができる。

　そうすると，原告は，その投資経験や知識からみて，本件社債の内容やリスクについて十分に理解していたということができ，また，本件社債が原告の資産状況に照らし不相当のものと認めるに足りないから，被告（B）による本件社債の勧誘行為が適合性の原則に違反するとはいえない。

　なお，原告は，一般投資家に対し，額面金額１億円以上の社債などの「社債管理者不設置債」（会社法７０２条ただし書）の売却を勧誘することは適合性の原則に違反し不法行為を構成するなどと主張するが，会社法７０２条ただし書により社債管理者の設置強制が除外される社債について，これを一般投資家に売却することを禁ずる法令はなく，上記社債を一般投資家に売却することが直ちに適合性の原則に違反するということはできないところ，前記のとおり，本件社債の商品特性や，顧客の投資経験，証券取引の知識，投資意向，財産状態等の諸要素に照らし，Bが，原告に対して本件社債の購入を勧誘するに当たり，適合性の原則から著しく逸脱した勧誘をして本件社債を購入させたということはできない。

　(2)　説明義務違反，金融商品取引法３８条１項２号の断定的判断の提供禁止，同項１号の不実告知禁止，同法４０条の適合性の原則違反等について

　上記説示のとおり，Bは，原告に対し，本件社債の勧誘に当たり，十分な情報を提供していたというべきであって，虚偽ないし不実の内容を説明したということはできないから，説明義務違反や金融商品取引法違反等をいう被告〈編注　原文ママ〉の主張も採用することができない。

　５　争点(4)（本件社債の売買契約の無効・詐欺取消事由）について

　(1)　原告は，被告が，平成２４年１月６日以降，本件社債の価格が下落した場合には同日に売買契約が成立したものとし，価格が上昇した場合には，代金の入金時以降の「取引時」に，その時の価格で売買契約を締結するつもりであったなどと主張するが，Bにおいて，原告が入金した以降の社債の値動きを見た上で取引方式（売買契約の成立時期）を選択する旨の意図があったことを認めるに足りる証拠はなく，被告が会社ぐるみでこれを意図的に行ったとも認められない。

　なお，本件売買契約に係る代金額は，平成２４年１月６日の時点で９９５０万円（経過利子を除く。）と合意されており，その後価格が上昇した場合において，上昇した価格で改めて売買契約が締結されることを推認し得るような客観的状況もうかがわれない。

　また，原告は，「債券仮計算」と題する書面（甲４５）の記載をその主張の根拠として挙げるが，Bが，取引条件が一覧になってわかりやすい資料であることから，既に確定的に行われた取引条件の事後的な参考資料として原告に提供したものということができることは，前記説示のとおりであり，したがって，上記認定を左右するに足りない。

　(2)　以上のとおりであって，詐欺をいう被告〈編注　原文ママ〉の主張も採用できないことが明らかである（本件売買契約締結後の事情については，主張自体失当である。）し，前記１ないし４で説示した事情をも併せ考慮すれば，売買契約が不存在であるとか，公序

© 2025 Thomson Reuters KK all rights reserved

良俗に違反して無効であるということもできない。

　６　なお，原告は，被告の情報提供義務・指導助言義務違反に関する主張を撤回するものの，同時に，本件社債購入後，Ｂが，エルピーダの継続企業の前提に関して重要な疑義を生じさせる情報を原告に伝えることなく，原告に対して「良い情報」のみを伝えたとし，本件社債について適切な助言，指導を行わなかった不作為により損害を被ったとも主張するので念のため検討する。

　一般に，証券会社は，一般投資家に対し，勧誘によって社債を売却した後は，特段の事情がない限り，当該買主に対して購入した社債の売却時期について指導助言をすべき義務を負うということはできない。

　これを本件についてみると，本件売買契約締結後のエルピーダの資金繰りに関する報道や，同社の株価の推移等は，前記認定事実のとおりであって，エルピーダの一般的な倒産リスクについては，本件社債の購入前から相当程度の情報が出回っていたこと，原告は，相当程度の社債取引歴を有しており，エルピーダの株価や本件社債の価格の推移については，原告において日々入手可能な状態にあったこと，したがって，本件社債の売却時機については，原告としても十分に検討が可能な状況にあったことに照らすと，Ｂにおいて，原告に対し，本件社債の適時の売却によって損害の拡大を回避する機会を奪うような情報を提供したこともうかがわれないから，上記特段の事情があったと認めることはできない。

　また，原告は，平成２４年２月１４日，エルピーダが「継続企業の前提に関する事項の注記についてのお知らせ」（甲２２の１）を公表した時点において，同社が倒産する蓋然性を知らせる義務があったとも主張するが，上記説示のとおり，被告において，かかる義務が生ずるような特段の事情があるともいえない。

　７　以上によれば，原告の本件請求はいずれも理由がない。
　よって主文のとおり判決する。
　（裁判官　舘内比佐志）


〈以下省略〉


＊＊＊＊＊＊＊

© 2025 Thomson Reuters KK all rights reserved