EXHIBIT 14a

EXHIBIT 14a

Westlaw Japan

裁判年月日　令和 4年 4月13日　　裁判所名　東京地裁　　裁判区分　判決
事件番号　令2（ワ）７２８７号
事件名　損害賠償請求事件
文献番号　2022WLJPCA04138005

出典
ウエストロー・ジャパン

---

さいたま市〈以下省略〉
原告　　　　　　　　　　　　　　　　　　Ｘ１
さいたま市〈以下省略〉
原告　　　　　　　　　　　　　　　　　　Ｘ２
原告ら訴訟代理人弁護士　　　　　　　　　本杉明義
同　　　　　　　　　　　　　　　　　　　手川裕貴
同訴訟復代理人弁護士　　　　　　　　　　千野峻佑
東京都中央区〈以下省略〉
被告　　　　　　　　　　　　　　　　　　野村證券株式会社
同代表者代表取締役　　　　　　　　　　　Ａ
同訴訟代理人弁護士　　　　　　　　　　　木村康則
同　　　　　　　　　　　　　　　　　　　森裕子
同　　　　　　　　　　　　　　　　　　　木村隆志
同訴訟復代理人弁護士　　　　　　　　　　木村康一郎

主文

　　1　原告らの請求をいずれも棄却する。
　　2　訴訟費用は原告らの負担とする。

© 2025 Thomson Reuters KK all rights reserved

## 事実及び理由

第1　請求
　（主位的請求）
　1　被告は，原告Ｘ1に対し，５３０万７２６４円及びこれに対する令和２年６月３０日から支払済まで年３分の割合による金員を支払え。
　2　被告は、原告Ｘ2に対し、４６３万２７７６円及びこれに対する令和２年６月３０日から支払済まで年３分の割合による金員を支払え。

　（予備的請求）
　1　被告は，原告Ｘ1に対し，５８３万７９９０円及びこれに対する平成２８年２月２６日から支払済まで年５分の割合による金員を支払え。
　2　被告は、原告Ｘ2に対し、５０９万６０５３円及びこれに対する平成２７年７月１７日から支払済まで年５分の割合による金員を支払え。

第2　事案の概要
　本件は，被告の支店に取引口座を開設していた原告らが、被告従業員から株式会社ＵＭＮファーマ（以下「訴外会社」という。）の株式買付の勧誘を受ける際に、①主位的に、重要事項について事実と異なることを告げられ、断定的判断を提供され、不利益事実を告げられなかったとして、消費者契約法4条1項1号及び2号、2項に基づきこれを取り消した上、被告に対し、不当利得の返還として取引によって生じた損失（原告Ｘ1につき５３０万７２６４円、原告Ｘ2につき４６３万２７７６円）及びこれに対する訴状送達の日の翌日から支払済みまで民法所定の年３分の割合による遅延損害金の支払を求め、②予備的に、被告従業員において、原告らに対する断定的判断の提供及び説明義務違反があり、その後も指導助言義務違反、損失拡大防止義務違反、手仕舞い義務違反があったとして、その使用者である被告に対し、民法715条の不法行為に基づき、取引によって生じた損失（上記損失と同額）及び弁護士費用（原告Ｘ1につき５３万０７２６円、原告Ｘ2につき４６万３２７７円）の支払並びにこれらに対する不法行為日（最後の買付日）から支払済みまで平成29年法律第44号による改正前の民法所定の年５分の割合による遅延損害金の支払を求める事案である

　1　前提事実
　以下の事実は、当事者間に争いがないか、後掲各証拠及び弁論の全趣旨により容易に認められる。
　　(1)　被告は、金融商品取引法の定める金融商品取引業を行う株式会社である。
　　(2)　原告Ｘ1（以下「原告Ｘ1」という。）は、昭和６３年５月、被告の大宮支店で口座を開設して（乙4）、被告との取引を開始した。原告Ｘ1の取引店は、平成２６年１月、大宮西口支店（平成３０年４月、さいたま支店に統合）に変更された（乙7）。
　　(3)　原告Ｘ2（以下「原告Ｘ2」という。）は、原告Ｘ1の妻であり、平成１３年１０月に被告の大宮支店で口座を開設して（乙23）、被告との取引を開始した。原告Ｘ2の取引店は、平成２６年３月、大宮西口支店（現さいたま支店）に変更された（争いなし）。

© 2025 Thomson Reuters KK all rights reserved　　　　　　　　　　　　　　　2

　（4）　訴外会社は、平成１６年４月２０日、秋田市を本店所在地とし、医薬品研究開発する創薬ベンチャーとして設立された会社であり、平成２４年１２月、東京証券取引所の「マザーズ」に上場した（乙２９）。

　（5）　原告Ｘ１は、訴外会社の株式を、平成２７年７月１５日１０００株を２８３万１９８８円で、同月１７日１０００株を２８６万４８５６円で、平成２８年２月２６日５００株を９６万０４２０円でそれぞれ買い付け、原告Ｘ２は、訴外会社の株式を、平成２７年７月１５日１０００株を２８４万６３０６円で、同月１７日１０００株を２８６万６４７０円でそれぞれ買い付けた（これらの取引を「本件取引」という。）。

　（6）　平成２７年７月当時、大宮西口支店における原告らの口座の担当者はＢ（以下「Ｂ」という。）であり、同月１５日及び同月１７日の訴外会社の株式の買付に際しての原告らへの説明はＢが行った。

　平成２８年２月当時、大宮西口支店における原告らの口座の事実上の担当者はＣ（以下「Ｃ」という。）であり、同月２６日の訴外会社の株式の買付に際しての原告Ｘ１への説明はＣが行った。

　（7）　原告らは、令和元年１２月１２日、塩野義製薬株式会社がした訴外会社の株式を１株５４０円で買い受けるとの公開買い付けに応じ、原告Ｘ１は訴外会社の株式２５００株を１３５万円で、原告Ｘ２は２０００株を１０８万円で、それぞれ塩野義製薬株式会社に売却した（甲８，９、乙１、３）。

　（8）　原告らは、本件取引には、消費者契約法第４条１項１号、２号及び２項に定める取消事由があるとして、本件訴訟の訴状により本件取引を取り消すとの意思表示をした（当裁判所に顕著）。

２　争点及びこれに対する当事者の主張

　（1）　本件取引について、消費者契約法第４条１項１号、２号及び２項に定める取消事由があったか。

　（原告らの主張）

　Ｂ及びＣは、訴外会社が開発したインフルエンザワクチン（以下「ワクチン」という。）が日本で認可され、短期間で訴外会社の株価が上昇することは不確実な事実であるにもかかわらず、原告らに対し、これが確実であると事実と異なる事実を告げ、将来における変動が不確実な事実について断定的判断を提供し、訴外会社のワクチンが日本で認可されず、株価が下落する恐れがあるという不利益な事実を告げなかった。このため、原告らは、訴外会社のワクチンが日本で認可され、短期間で訴外会社の株価が上昇すると誤認して、本件取引を行った。

　これらは、消費者契約法第４条１項１号、２号及び２項に定める取消事由に該当する。

　（被告の主張）

　Ｂ及びＣが、原告らに対し、客観的な事実と異なる事実を告げたり、断定的判断を提供したり、不利益な事実を告げなかったりしたことはない。

　原告らは、本件取引における商品の内容、リスク等を理解するに十二分な年齢、社会経験、投資経験、投資知識等を有していたのであるから、それらについて誤認したこともない。

© 2025 Thomson Reuters KK all rights reserved

　(2)　被告従業員には、本件取引の勧誘に際し、原告らに対する不法行為を構成するような断定的判断の提供又は説明義務違反があったか。
　（原告らの主張）
　訴外会社の株式は、価格が変動する可能性が大きい東証マザーズに上場している株式であった上、訴外会社の業績や財務状況に照らせば、株価下落リスクの高い投機的な銘柄であったのに、Ｂは、原告らに対し、訴外会社が開発したワクチンが日本でも近く認可され、短期間で訴外会社の株価が上昇することが確実であるかのように述べて訴外会社の株式を購入するよう勧誘した。
　このようなＢによる勧誘行為は、原告らに対する断定的判断の提供に当たると共に、説明義務違反として、Ｂの原告らに対する不法行為を構成する。
　（被告の主張）
　株式取引における対象銘柄の選定、売買の時期、売買の別、単価、数量等々は、投資家が自己判断と自己責任において決定すべき事項であるから、被告従業員の原告らに対する断定的判断の提供があったとしても、それが直ちに私法上の違法性を根拠づけるものではないし、違法性を根拠づけることがあったとしても、違法性の有無の判断に当たっては、当該証券取引を行う投資家の投資経験、投資知識、投資目的、財産状況等が考慮されるべきである。
　原告らの年齢、社会経験、投資経験、投資知識、投資意向、財産等に照らせば、被告従業員による本件取引への勧誘に当たって、不法行為における違法性が認められるような断定的判断の提供や説明義務違反があったとは認められないから、被告従業員の原告らに対する勧誘行為は不法行為を構成しない。
　(3)　被告従業員には、本件取引について、原告らに対する不法行為を構成するような指導助言義務違反、損失拡大防止義務違反、手仕舞い義務違反があったか。
　（原告らの主張）
　Ｂ及びＣは、原告らに対し、訴外会社が開発したワクチンが日本でも近く認可され、短期間で訴外会社の株価上昇が確実であるとの誤解をさせながら、その後も誤った判断を提供し続けて訴外会社の株式を継続保有するように勧め、原告らにおいて、訴外会社の株式を売却する機会を失わせた。
　このようなＢ及びＣの誤った情報提供等は、原告らに対する指導助言義務違反、損失拡大防止義務違反、手仕舞い義務違反として不法行為を構成する。
　（被告の主張）
　株式取引における対象銘柄の選定、売買の時期、売買の別、単価、数量等々は、投資家が自己判断と自己責任において決定すべき事項であって、被告従業員は、原告らに対し、指導助言義務等を負うものではないし、原告らは、それらの義務違反について、何らの具体的な事実の主張もしないから、被告従業員の行為が原告らに対する何らかの不法行為を構成することはない。
　(4)　不当利得額又は損害額
　（原告らの主張）
　被告は、原告らに対し、本件取引が取り消された場合の不当利得額は下記のア記載の金額

© 2025 Thomson Reuters KK all rights reserved

であり、本件取引について不法行為が成立する場合の損害賠償額は下記のア及びイ記載の合計額である。
　　　　ア　訴外会社の株式の買付価格と売却価格の差額
　原告Ｘ１につき５３０万７２６４円、原告Ｘ２につき４６３万２７７６円である。
　　　　イ　弁護士費用
　原告Ｘ１につき５３万０７２６円、原告Ｘ２につき４６万３２７７円である。
　（被告の主張）
　いずれも争う。
　　（5）　過失相殺
　（被告の主張）
　仮に、被告従業員の行為が原告らに対する不法行為に当たるとしても、原告らの投資経験等に照らせば、本件取引をしたことについて原告らにも重大な過失があるから、賠償額の算定に当たっては、原告らの過失を斟酌すべきである。
　（原告らの主張）
　原告らは、Ｂ及びＣの説明を信じて、訴外会社のワクチンが日本でも認可されて、訴外会社の株価が上昇すると信じ続けていたのであるから、原告らに過失はない。
**第３**　当裁判所の判断
　１　認定事実
　　（1）　原告Ｘ１の投資経験等について
　　　　ア　原告Ｘ１は、昭和２６年〇月〇日生まれであり、高校卒業後、ａ県警察に勤務し、平成２３年に定年退職後は、一般社団法人ｂ協会、ｃ銀行、ｄ信用金庫に勤務していた（甲１１、乙６，７、１３，１４）。
　　　　イ　原告Ｘ１は、昭和６３年５月、被告との取引口座を開設した後、平成１６年７月１４日、被告に対し、証券総合サービス申込書を差し入れてホームトレードサービスの利用を申し込んだ際、自らの投資方針として、安全性と収益性のバランスに配慮しつつも収益性をより重視したい、投資目的として、将来のための資産形成、余裕資金の運用、株式の投資経験あり、年収１０００万円〜２０００万円、被告からの情報やアドバイスを参考にしたい、国内株式についての金融商品の販売等に関する法律（以下「金融商品販売法」という。）に係る重要事項について改めての説明は不要などと申告した（乙４、５，６）。
　原告Ｘ１は、平成２６年１月１０日、被告に対し、自らの投資方針として、投資対象・投資手法は限定せず、積極運用を考える、ＭＭＦ・公社債投信、上記以外の投資信託、外国債券（含む外国為替取引）、株式について投資経験あり、年収５００〜１０００万円、金融資産５０００万円〜１億円、国内外の株式・債券・ＣＢ（転換社債もしくは転換社債型新株予約権付社債）と個人向け国債の７商品すべてについて金融商品販売法に係る重要事項の説明は不要である旨申し出て、同年５月２日ころには、被告に対し、通貨選択型投資信託の取引について、価格変動リスクや為替変動リスクがあることを理解した旨の確認書を差し入れた（乙８、１２）。
　原告Ｘ１は、平成２８年１０月６日ころ、被告に対し、外国証券取引口座の開設を申し込

© 2025 Thomson Reuters KK all rights reserved

んだ（乙１５）。

　原告Ｘ１は、被告との取引口座開設以降、令和元年１２月１２日までの間に、少なくとも、東証一部、東証２部、名証１部で取り扱いのある国内株式について買付４６回、売付３６回の取引をしたほか、上場投資信託（ＥＴＦ）、ＲＥＩＴ（不動産投資信託）、新株予約権付社債（転換社債）、外国債券の取引を行っており、平成２７年３月ころには、その投資金額は約２０００万円であった（乙１，２）。

　また、原告Ｘ１は、平成２３年１２月１日以降、武蔵野銀行大宮北支店において、１３回にわたって、外国債券、国内及び外国ＲＥＩＴ、国内及び外国株式を投資対象とする投資信託に合計で４２３０万円投資した（甲１０の１）。

　　(2)　原告Ｘ２の投資経験等について
　　　ア　原告Ｘ２は、昭和２７年〇月〇日生まれであり、高校卒業後、実家の手伝いや事務の仕事をし、原告Ｘ１と結婚した後は、パートタイムで稼働しながら家事や育児に従事し、現在は、専業主婦である（甲１３）。
　　　イ　原告Ｘ２は、平成１３年１０月、被告との取引口座を開設した際、被告に対し、顧客カード登録・変更連絡票を差し入れ、自らの投資方針　　として、安全性と収益性のバランスに配慮しつつも収益性をより重視したい、投資目的は余裕資金の運用、ＭＭＦ・中期国債ファンド・公社債投資信託、株式の投資経験あり、金融資産５００万円〜１０００万円、被告からの情報やアドバイスも参考にしたいと申告すると共に、金融商品販売法にかかる重要事項の説明に関し、国内外の株式・債券・転換社債（ＣＢ）の６商品すべてについて説明は不要である旨申し出た（乙２４，２５）。

　原告Ｘ２は、平成２４年４月４日ころ、被告に対し、通貨選択型投資信託の取引について、価格変動リスクや為替変動リスクがあることを理解した旨の確認書を差し入れた（乙２６）。

　原告Ｘ２は、被告との取引口座開設以降、令和元年１２月１２日までの間に、東証１部、東証２部で取り扱いがある株式のほか東証マザーズの新規公開株を含む国内株式について買付３３回、売付３４回の取引をしたほか、上場投資信託（ＥＴＦ）、ＲＥＩＴ（不動産投資信託）、国内株式投資信託、外国株式投資信託の取引を行っており、平成２７年４月ころには、その投資金額は１０００万円を超えていた（乙３）。

　また、原告Ｘ２は、平成２７年２月以降、武蔵野銀行大宮北支店において、１２回にわたって、外国債券、外国ＲＥＩＴ、国内及び外国株式を投資対象とする投資信託に合計で４０００万円投資した（甲１０の２）。

　　(3)　訴外会社は、平成１８年８月、ＢＥＶＳ（人体に影響がないとされているウイルスに標的遺伝子情報を組み込んだ後、昆虫細胞に感染させて目的タンパクを大量に製造する技術）を開発したアメリカのProtein Sciences Corporation（以下「ＰＳＣ社」という）との間で、同技術を使用したインフルエンザワクチンに関する日本における独占的なライセンス契約を締結し、平成２２年８月１６日、アステラス製薬株式会社（以下「アステラス製薬」という。）との間で、ＢＥＶＳによる細胞培養で製造されるワクチンの日本での共同開発、独占的販売に関する基本的条件について合意した（乙２９）。

© 2025 Thomson Reuters KK all rights reserved

　　アステラス製薬及び訴外会社は、平成２３年１２月、共同で開発中のワクチンにつき、第Ⅰ／Ⅱ相臨床試験が行われた結果、免疫原性（病原体や毒素に反応して病原性をなくす抗体をもたらす性質）と良好な忍容性（副作用が被験者にとってどれだけ耐え得るかの程度）を確認したとプレスリリースをした（乙３０）。
　　訴外会社は、平成２４年１２月、東証マザーズに上場した（乙３１）。
　　ＰＳＣ社は、平成２５年１月１６日、ＢＥＶＳを用いて製造する世界初の季節性組み換えインフルエンザＨＡワクチンについて、米国ＦＤＡ（食品医薬品局）から承認を取得した（乙３２）。
　　アステラス製薬及び訴外会社は、同年３月１１日、６５歳以上を対象とした第Ⅲ相臨床試験において主要評価項目において非劣性基準を満たしたとのプレスリリースを行い、平成２６年１月１５日、更に２試験についても基準を満たすと共に、安全性に大きな問題がないことが確認されたとのプレスリリースを行い、同年５月３０日、インフルエンザの予防の効能・効果で厚生労働省に製造販売承認申請をしたとのプレスリリースをした（乙３３ないし３５）。
　　(4)　Ｃは、平成２７年７月ころ、被告秋田支店から被告大宮西口支店に転勤した。Ｃは、同月１５日、大宮西口支店の朝礼において、秋田支店勤務時から注目していた訴外会社について、将来有望な銘柄であると紹介をした。
　　Ｂは、朝礼終了後、Ｃに対し、顧客に訴外会社の株式を提案したいので、もう一度、訴外会社について話を聞かせて欲しいと依頼した。Ｃは、Ｂに対し、訴外会社に関する被告会社作成の銘柄レポート等を用いて説明をし、その際、岐阜に工場が建設されたこと、ワクチンの承認が下りれば訴外会社の株価が上昇する可能性があること、米国で承認がされて日本で承認が下りないことは少ないと思われるが、必ずしも日本での承認が保証されているわけではないことなどを話した。（乙５５、７０、証人Ｃ）
　　(5)　Ｂは、平成２７年７月１５日午前、原告Ｘ１に対して電話をかけて、訴外会社の株式買付を勧誘した。
　　その際、Ｂは、訴外会社について、平成２４年に上場した医薬品メーカーであること、従来の製造方法よりも短期間でインフルエンザワクチンを製造できる技術を用いてワクチンの開発を進めていること、「なので、日本ではまだ認可されていないんですが、アメリカではインフルエンザのワクチンっていうのがもう審査されて。で、アメリカで認可されて日本の厚生労働省で認可されないっていうのはないので、これ、もう後々認可されてくる。」、「もうそろそろ認可されてくると思うので。」、「２０１２年に上場した時に、２０１６年に黒字化を目指しますっていうのをきちんと打ち出していて、それどおりになってくると思っている銘柄なんですよ。」、株価が３０００円を超えて推移していたが、現在は２８００円台であること、出来高が多い銘柄ではないので、１０００株、２０００株ぐらいまでの保有にした方がよいと思われること、原告Ｘ２にも買付を案内したいことなどを話したところ、原告Ｘ１は、２０００株を買い付ける意向を示した。これに対し、Ｂは、「もう１段下がったときにもう１回買いの連絡しますので。」と今回は１０００株に留めて、状況を見て１０００株を買い増しすることを勧め、「比較的短期的、そんな３カ月、４カ月持っていただく

© 2025 Thomson Reuters KK all rights reserved                                                                                         7

ものではないので、売り時もまたご連絡差し上げます。」と述べた。（甲６の１、６の２）
　（６）　Ｂは、平成２７年７月１５日、原告Ｘ１が訴外会社の株式１０００株を購入後、原告Ｘ２に対して電話をかけて、訴外会社について、原告Ｘ１にしたのと同様、訴外会社のワクチンについて、「アメリカで認可されたものが日本の厚生労働省で認可を受けないというのはまずないので、これも後々日本で認可されてくる。後々って言っても、もう多分間もなくなんですけど。」との説明をした。原告Ｘ２は、Ｂに対し、ワクチンの承認は半年くらい先になりそうか尋ねたところ、Ｂは、原告Ｘ２に対し、「半年も先ではないですね。多分もう。」、「もうちょっと早いと思います。」と回答し、平成２８年には黒字化を目指すと公言していた会社であり、そのとおりになりそうであると述べた。原告Ｘ２は、Ｂの勧めに従って、指値で１０００株を購入することとした。（甲６の３）
　（７）　原告Ｘ１は、平成２７年７月１５日、１株当たり２８０５円で３００株、１株当たり２８０６円で６００株、１株当たり２８０７円で１００株を買い付け、原告Ｘ２は、同日、１株当たり２８２０円で１０００株を買い付けた（乙１、３）。
　Ｂは、同日、Ｃに対し、原告Ｘ１と原告Ｘ２がＵＭＮファーマを１０００株ずつ買付したことを伝えた（乙７０、証人Ｃ）。
　（８）　Ｂは、平成２７年７月１７日、原告らに対して電話をかけて、訴外会社の株式の買増しを案内し、原告らから指値で注文を受けた。
　原告Ｘ１は、同日、１株当たり２８３６円で２００株、１株当たり２８３７円で２００株、１株当たり２８３９円で２００株、１株当たり２８４０円で４００株を買い付け、原告Ｘ２は、同日、１株当たり２８４０円で１０００株を買い付けた。
　Ｂは、同日夕方、原告らに対して電話をかけて、買増の約定が成立したことを伝えると共に、「また来週ですとか売り時が来ましたらご連絡差し上げますので」と売り時が来たら案内する旨述べた。（甲６の４、１１、１３、乙１、３）
　（９）　Ｃは、中国の経済状況等から株式相場の雲行きが怪しくなってきたと感じる一方、平成２７年８月１８日には、訴外会社の株価が３０００円前後まで上昇してきたことから、同日、Ｂに対し、訴外会社の株式について、原告らに売却を勧めて、その意向を確認して対応するよう話をした。
　これを受けて、Ｂは、同日、原告Ｘ１に対して電話をかけて、「一応３０００円抜けてきて、今利益としては３５万円ぐらいなので、どうかなと思ってご連絡はしたんですが、今急いで売っても、Ｘ１様がこの利益確定されたいっていうようであれば、もうこのぐらい利益出てまして。」と訴外会社の売却について案内したところ、原告Ｘ１は、「まだまだ、いいでしょう。」と回答した。さらに、Ｂは、原告Ｘ１に対し、同年９月４日に承認についての話し合いがあること、遅かれ早かれ承認は下りると思うので、それを待ったほうが多分もう少し利益が取れると思うこと、承認が下りなければ、また株価は２８００円程度に下落すると思われること、一番高いところで売却できるよう連絡するなどと述べた。（甲６の５、１１、乙７０）
　なお、訴外会社の株価は、原告らが訴外会社の株式を買い付けて売却するまでの期間中、同年８月１８日の取引時間中につけた３０３５円が最高値となった（甲７の２）。

© 2025 Thomson Reuters KK all rights reserved                                    8

　（10）　Bは、平成２７年９月７日、原告Ｘ１に電話をかけて、同年９月４日に行われた会議について情報が出たら連絡する旨述べ、同年１０月１４日、原告Ｘ２に電話をかけて、訴外会社のワクチンについて動きがない旨伝えると共に、日経平均が低迷していること、手数料込みで利益が取れそうなときに連絡をすることなどを伝えた。（甲６の６、６の７）
　なお、Ｂは、同月下旬頃から体調を崩し、その後、Ｃが原告らの担当をすることとなった（証人Ｃ、原告Ｘ２）。
　（11）　Ｃは、平成２７年１１月２日、原告Ｘ１に電話をかけて、訴外会社の決算が下方修正となったこと、ワクチンの承認が今期中に下りる見通しは厳しいこと、中長期的には保有をすることがよいのではないかと思うこと、３か月ぐらい予定がずれているが、承認が下りて株価が上昇する可能性が高いことなどを伝えた（甲６の８）。
　Ｃは、平成２８年２月２６日、原告Ｘ１に対し電話で、訴外会社のワクチンが同年３月に承認されることはなくなったが、米国の承認分が正式に確定して輸出が始まるので、１９００円という値段は底値ではないか、承認期待が上がって株価が２７００円程度になれば損失は出ない旨述べて、ナンピン買い（当初買い付けた証券の価格が下がったときに、平均買付コストを下げるために、さらに買付すること）により取得コストを下げることを勧め、原告Ｘ１は、訴外会社の株式５００株を１株当たり１８９９円で買い付けた（甲６の９、乙１）
　（12）　Ｃは、平成２８年３月１７日、原告Ｘ１に対し電話で、ＵＭＮファーマのインフルエンザワクチンの承認の状況などについて話をした。その際、原告Ｘ１は、Ｃに対し、「だけど、ＵＭＮファーマが結構上がってますよねえ。」などと述べていた。（甲６の１０）
　訴外会社の１株の株価は、同年３月中の最高値は２３７５円、最安値は１９１８円であり、同年４月中の最高値は２７５５円、最安値は２０５８円であったが、同年５月以降は、徐々に下落していき、同年１１月には、最安値が１０００円を割って８８１円となった（甲７の２）。
　（13）　Ｃは、その後も、原告らに対し、電話などで訴外会社のワクチンの承認の状況などについて情報を伝えていたところ、原告Ｘ１は、Ｃに対し、状況を見守る、訴外会社が海外で提携先を探すという話を、新聞で読んだなどと述べ、原告Ｘ２も、Ｃの話を聞いて、売らないで承認を待ちたい、インターネットに、アステラス製薬が厚生労働省からの天下りを受け入れていないので、ワクチンが承認されないとか書かれていた、夫婦で訴外会社の株主総会に行ったなどと述べていた（乙７０、証人Ｃ）
　（14）　アステラス製薬は、平成２９年１月、ワクチンの販売承認申請を取り下げた。アナリストによる訴外会社についての調査レポートでも、米国では、ＰＳＣ社が開発した同一成分のワクチンが承認されていたことから、日本国内でも承認される可能性が高いと見られていたため、申請取下げの発表は、株式市場でも驚きをもって受け止められた、治験データを見ても既存品との比較において高い有効性を示していたため、疑問の残る結果となったなどと記載されていた。（乙４１、６３）
　２　争点(1)（本件取引について、消費者契約法第４条１項１号、２号及び２項に定める取消事由があったか。）について

© 2025 Thomson Reuters KK all rights reserved　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　9

　ア　原告らは、訴外会社が開発中のワクチンが日本で認可され、短期間で訴外会社の株価上昇することは不確実な事実であるにもかかわらず、B及びCは、原告らに対し、①これが確実であると事実と異なる事実を告げ、②将来における変動が不確実な事実について断定的判断を提供し、③訴外会社のワクチンが日本で認可されず、株価が下落する恐れがあるという不利益な事実を告げなかったなどと主張する。

　イ　確かに、認定事実(5)、(6)のとおり、Bは、平成２７年７月１５日、原告らに対し、訴外会社の株式の取得を勧めた際に、訴外会社のワクチンが認可される可能性について、「アメリカで認可されて日本の厚生労働省で認可されないっていうのはない」などと述べ、訴外会社のワクチンが日本において認可されない可能性については指摘をしていないことが認められる（なお、Cについては、認定事実(11)のとおり、原告Ｘ１による平成２８年２月２６日の５００株買付に当たって、Cが、原告Ｘ１に対し、訴外会社の株式が底値であるとしてナンピン買いを勧めた事実は認められるものの、訴外会社のワクチンが短期間で認可されるなどのアドバイスを行っていないから、Cが、原告らに対し、訴外会社が開発中のワクチンが日本で認可され、短期間で訴外会社の株価上昇する旨述べて、訴外会社の株式の購入を勧めた事実があったとは認められない。）。

　ウ　ところで、金融商品販売業者の顧客に対する説明義務については、平成２７年７月当時、金融商品販売法（令和２年６月１２日法律第５０号による改正前のもの）において、金融商品販売業者等は，金融商品の販売等を業として行おうとするときは，当該金融商品の販売等に係る金融商品の販売が行われるまでの間に，顧客に対し，金融商品市場における相場その他の指標に係る変動を直接の原因として当初欠損が生ずるおそれがあること，当該指標，取引の仕組みのうちの重要な部分を説明しなければならず，この説明は，顧客の知識，経験，財産の状況及び当該金融商品の販売に係る契約を締結する目的に照らして，当該顧客に理解されるために必要な方法及び程度によるものでなければならないこと（同法３条），当該金融商品の販売に係る事項について，不確実な事項について断定的判断を提供し，又は確実であると誤認させるおそれのあることを告げる行為をしてはならないこと（同法４条），重要事項についての説明をしなかったり、断定的判断の提供等をしたりした場合には、当該業者は不法行為に基づく損害賠償責任を負うこと（同法７条）が定められていた。そうすると、Bの原告らに対する訴外会社の株式買付の勧誘が、原告らの知識，経験，財産の状況及び当該金融商品の販売に係る契約を締結する目的に照らして，原告らに理解されるために必要な方法及び程度によるものでなかった場合には、Bの勧誘行為が原告らに対する不法行為を構成する場合がありえるというべきである。

　エ　原告らは、認定事実(1)、(2)のとおり、本件取引開始前から、長年にわたって余裕資金を使った収益性を重視した投資を行っており、国内株式だけでなく、外国株式や不動産等を対象とする投資信託、外国債券等の取引を多数回行うなど豊富な投資経験を有していたから、購入時には利益が出ると予測した金融商品であっても、予測に反して損失が出る可能性があること、金融商品の値動きは、その商品の種類に応じて様々な要因によって左右されることは十分理解していたと認められる。現に、原告Ｘ２は、本人尋問において、株式の取引においては、予測と異なる値動きをして、損失が出ることも十分理解していた旨述べてい

る。そして、原告らは、株価が様々な要因により変動することを理解した上で、自己の責任において投資判断をできると考えていたからこそ、被告に対し、国内株式について、金融商品販売法に係る重要事項の説明は不要であると申告したものと推認され、被告から提供される情報やアドバイスは、自らが投資をするか否かを判断するための参考情報に過ぎないことを十分認識していたと考えられる。

　このような原告らの投資の知識及び経験によれば、Bが、原告らに対し、買付をすることを推奨できる銘柄として訴外会社の株式を紹介した際に、訴外会社のワクチンが日本で認可されない可能性があり、認可されなかった場合には株価が下落することを明示的に伝えなかったとしても、原告らは、Bが被告の営業担当の従業員に過ぎず、現にワクチンの許認可に関わる者でないことを知っていたのであるから、Bが原告らに提供する情報は、アメリカで訴外会社のワクチンと同様の技術を使ったワクチンが認可されたという既に公表されている事実（認定事実(3)）を前提に、日本でも認可される可能性が非常に高いという担当者としての見通しを述べたに過ぎないことを理解しつつ、このようなBの説明を聞いて、アメリカで認可された技術を用いた訴外会社のワクチンは優れたものであり、日本でも認可される可能性が極めて高いと自ら投資判断をして、訴外会社の株式を購入したと認めるのが相当である。

　したがって、原告らが、Bの説明により、訴外会社が開発した早期にワクチンが日本で認可され、そのころにより、短期間で訴外会社の株価の上昇が見込めると期待して本件取引を行ったことは認められるとしても、Bによってワクチンが日本で確実に認可されるとの断定的判断が提供された結果、それらが確実であると誤認して本件取引をしたとは未だ認められないから、本件取引について、消費者契約法第4条1項1号、2号及び2項に定める取消事由があったとは認められない。

　3　争点(2)（被告従業員には、本件取引の勧誘に際し、原告らに対する不法行為を構成するような断定的判断の提供又は説明義務違反があったか。）について
　(1)　前記2説示のとおり、Bが原告らに対してした訴外会社のワクチンの日本での認可の見通しについての説明は、原告らの投資の知識及び経験等に照らせば、原告らに対して断定的判断を提供したものとは認められないし、重要事項に関して説明義務違反があったとも認められない。

　また、認定事実(3)、(14)のとおり、PSC社は、BEVSを用いて製造するワクチンについて、米国FDA（食品医薬品局）から承認を取得しており、訴外会社がアステラス製薬と共同で行っていた日本における臨床試験においても基準をクリアして製造販売承認申請をし、株式市場においても同申請は認可される可能性が高いと考えられていたのであるから、Bが、原告らにした訴外会社のワクチンに関する説明が事実に基づかないものであるなどの問題があったとも認められない。

　(2)　原告らは、訴外会社の株式は、価格が変動する可能性が大きい東証マザーズに上場している株式であった上、訴外会社の業績や財務状況に照らせば、株価下落リスクの高い投機的な銘柄であったなどとも主張する。

　しかし、認定事実(2)、(3)のとおり、原告X1は、被告に対し、投資手法は限定せず、積

© 2025 Thomson Reuters KK all rights reserved

極運用を考えると、原告Ｘ２は、被告に対し、安全性と収益性のバランスに配慮しつつも収益性をより重視したいと申告し、東証１部以外の株式も取得するなどしていたのであるから、Ｂが、東証マザーズの上場株式を紹介したことは、原告らが被告に申告した投資方針に反するものとは認められないし、東証マザーズに上場している株式が投機的な銘柄であるとの立証もない。

　また、Ｂは、訴外会社は平成２８年に黒字化を目指していると述べていたのであるから、原告らにおいても、平成２７年７月当時、訴外会社が赤字であることは十分認識可能であったというべきであり、Ｂに、原告らに対する何らかの説明義務違反があったとは認められない。

　　(3)　以上によれば、Ｂには、本件取引の勧誘に際し、原告らに対する不法行為を構成するような断定的判断の提供又は説明義務違反があったとは認められず、原告の主張は採用できない。

　４　争点(3)（被告従業員には、本件取引について、原告らに対する不法行為を構成するような指導助言義務違反、損失拡大防止義務違反、手仕舞い義務違反があったか。）について

　　(1)　原告らは、Ｂ及びＣが、原告らに対し、訴外会社が開発したワクチンが日本でも近く認可され、短期間で訴外会社の株価上昇が確実であるとの誤解をさせながら、誤った判断を提供し続け、訴外会社の株式を継続保有するように勧め、原告らが本件取引によって取得した訴外会社の株式を売却する機会を失わせたと抽象的に主張するが、原告らにおいて、Ｂ及びＣが、どの時点において、どのような指導・助言や情報提供をすべきであったのかについて、事実に基づく何らの具体的な主張もしていない。

　　(2)　この点を措くとしても、前記２説示のとおり、Ｂは、原告らに対し、訴外会社が開発したワクチンが日本でも近く認可され、短期間で訴外会社の株価上昇が確実であるとの誤解をさせたものとは認められないし、認定事実(14)のとおり、アステラス製薬が平成２９年１月に販売承認申請の取下げをするまでの間、株式市場においても、訴外会社のワクチンは承認される可能性が高いと受け止められていたことからすれば、原告らが、平成２７年７月以降、訴外会社の株式を保有し続けたことは、訴外会社の置かれた客観的状況に照らして特段不合理であったとはいえず、Ｂ及びＣが、原告らに対して、どのような指導助言をしなかったことが不法行為に該当するのか不明である。

　これに加えて、Ｂは、平成２７年８月１８日、原告Ｘ１に対し、訴外会社の株式を売却すれば３５万円程度の利益が見込めるとの案内をすると共に、同年９月４日のワクチン承認の協議の結果次第で株価が上昇し、又は下落する可能性があることを伝え（認定事実(9)）、Ｃは、同年１１月２日、原告Ｘ１に対し、ワクチンの承認が今期中に下りる可能性は低いこと、見込みから３か月くらい遅れているが承認が下りて株価が上昇する可能性が高いことなどと伝え、平成２８年２月２６日、訴外会社の株式をナンピン買いすることにより取得コストを下げることを勧める（認定事実(11)）など、株価が上昇した時点や株価が下落して底値と思われる時点には適時に連絡をして、その時点において合理的に考え得るアドバイスをしているものであり、原告らは、Ｂ及びＣからのアドバイスを参考にしつつも、自らでも訴外

© 2025 Thomson Reuters KK all rights reserved

会社の株価を確認したり、訴外会社に関する情報を収集したりして（認定事実(12)、(13)）、売却時期についても判断していた（認定事実(9)）との事実経過に照らせば、Ｂ及びＣの対応について、特段の問題があったとは認められない。
　　(3)　以上によれば、Ｂ及びＣには、本件取引について、原告らに対する不法行為を構成するような指導助言義務違反、損失拡大防止義務違反、手仕舞い義務違反があったとは認められず、原告らの主張は採用できない。
　５　小括
　前記２ないし４説示のとおり、原告らと被告の間には本件取引について取消事由はなく、被告に原告らに対する不法行為も成立しないから、その余の争点について判断する間でもなく、原告らの請求は理由がない。
　６　よって，主文のとおり判決する。
　東京地方裁判所民事第７部
　（裁判官　小川理津子）

*******

© 2025 Thomson Reuters KK all rights reserved