FELIX S. LEE (CSB No. 197084)
flee@fenwick.com
CHRISTOPHER J. STESKAL (CSB No. 212297)
csteskal@fenwick.com
CASEY O'NEILL (CSB No. 264406)
coneill@fenwick.com
CLAIRE MENA (CSB No. 339324)
cmena@fenwick.com
FENWICK & WEST LLP
Silicon Valley Center
801 California Street
Mountain View, CA  94041
Telephone:     650.988.8500
Facsimile:      650.938.5200

JOHN D. TENNERT III (Nevada Bar No. 11728)
jtennert@fennemorelaw.com
WADE BEAVERS (Nevada Bar No. 13451)
wbeavers@fennemorelaw.com
FENNEMORE CRAIG, P.C.
7800 Rancharrah Parkway
Reno, NV 89511
Telephone: 775.788.2212
Facsimile: 775.786.1172

*Attorneys for Plaintiff and Counterdefendant
TETSUYA NAKAMURA*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| TETSUYA NAKAMURA,<br><br>Plaintiff,<br><br>v.<br><br>SUNDAY GROUP INCORPORATED, *et al.*,<br><br>Defendants. | Case No.: 2:22-cv-01324-MMD-EJY<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL DOCUMENTS FROM PLAINTIFF** |
| SUNDAY GROUP INCORPORATED AND TOSHIKI (TODD) MITSUISHI<br><br>Counterclaimants,<br>v.<br><br>TETSUYA NAKAMURA,<br><br>Counterdefendant. | |

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ................................................................................................................ 1

II. FACTS AND PROCEDURAL HISTORY..................................................................... 2

III. LEGAL STANDARD ......................................................................................................... 5

IV. ARGUMENT ....................................................................................................................... 5

    A. The Motion Is Moot as to Communications with Other Investors.......................... 5

    B. The Court Should Deny the Request for Investment History and Tax Returns ................................................................................................................... 6

        1. The Request for Investment History Disclosure is Overbroad .................. 7

        2. The Request for Production of Tax Returns Is Unsupported...................... 9

V. CONCLUSION ................................................................................................................. 11

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Adidas Am., Inc. v. Fashion Nova, Inc.*,
    341 F.R.D. 263 (D. Or. 2022) .................................................................................................. 6

*Aliotti v. The Vessel Sonora*,
    217 F.R.D. 496 (N.D. Cal. 2003) ............................................................................................ 10

*Bristol v. Braidwood*,
    28 Mich. 191 (1873) ................................................................................................................. 8

*Cassis v. Sun Life Assurance Co. of Canada*,
    2017 WL 8230040 (C.D. Cal. Nov. 8, 2017) .......................................................................... 10

*Collins v. Burns*,
    103 Nev. 394 (1987) ................................................................................................................. 8

*Exxon Corp. v. Crosby-Mississippi Resources, Ltd.*,
    40 F.3d 1474 (5th Cir. 1995) .................................................................................................... 5

*Flores v. Albertsons, Inc.*,
    2002 WL 1163623 (C.D. Cal. Apr. 9, 2002) .......................................................................... 11

*Kayner v. City of Seattle*,
    2006 WL 482072 (W.D. Wash. Feb. 27, 2006) ...................................................................... 10

*KeyBank Nat'l Ass'n v. Nielson*,
    2011 WL 2036975 (D. Nev. May 24, 2011) ........................................................................... 10

*Momot v. Mastro*,
    2011 WL 1833349 (D. Nev. May 13, 2011) ........................................................................... 11

*Nugget Hydroelectric, L.P. v. Pac. Gas & Elec. Co.*,
    981 F.2d 429 (9th Cir. 1992) ................................................................................................ 5, 9

*Pacquiao v. Mayweather*,
    2012 WL 4364074 (D. Nev. Sept. 21, 2012) .......................................................................... 10

*Premium Serv. Corp. v. Sperry & Hutchinson Co.*,
    511 F.2d 225 (9th Cir. 1975) .................................................................................................. 10

*Reinsdorf v. Skechers U.S.A., Inc.*,
    296 F.R.D. 604 (C.D. Cal. 2013) .............................................................................................. 6

*Rivera v. NIBCO, Inc.*,
    364 F.3d 1057 (9th Cir. 2004) .................................................................................................. 5

*Smith v. Life Investors Ins. Co. of Am.*,
  2009 WL 2045197 (W.D. Pa. July 9, 2009) .................................................................. 6

*Sorosky v. Burroughs Corp.*,
  826 F.2d 794 (9th Cir. 1987) ....................................................................................... 5

*V5 Techs. v. Switch, Ltd.*,
  334 F.R.D. 306 (D. Nev. 2019), *aff'd sub nom. V5 Techs., LLC v. Switch,
  LTD.*, 2020 WL 1042515 (D. Nev. Mar. 3, 2020) ...................................................... 7

*Victory Processing, LLC v. Fox*,
  937 F.3d 1218 (9th Cir. 2019) ..................................................................................... 6

*Vieste, LLC v. Hill Redwood Dev.*,
  2011 WL 855831 (N.D. Cal. Mar. 9, 2011) .............................................................. 10

*Williams v. Garrett*,
  2024 WL 1675445 (D. Nev. Apr. 18, 2024) ............................................................... 9

**OTHER AUTHORITIES**

*Article-by-Article Commentary*, Government of Japan Consumer Affairs Agency
  (Sept. 2023) ................................................................................................................ 8

Fed. R. Civ. P. 26(b)(1) ........................................................................................... 5, 7, 9

Plaintiff Tetsuya Nakamura ("Dr. Nakamura"), by and through counsel of record, submits this Memorandum in Opposition to Defendants' Sunday Group Incorporated, James Pack, Toshiki (Todd) Mitsuishi, and SGI Trust (collectively, "Defendants") Motion to Compel Documents from Plaintiffs (ECF No. 110) (the "Motion" or "Mot.").

## I.   INTRODUCTION

Dr. Nakamura is the president and chairman of a prominent hospital group in Japan. Within his personal investment portfolio, he has invested in certain startup enterprises, including the cryptocurrency projects at issue in this case. These ventures are unrelated to Dr. Nakamura's medical profession. They are strictly personal investments. Dr. Nakamura was defrauded with respect to the investments and seeks recourse through this litigation.

Defendants' motion to compel comes immediately on the heels of Dr. Nakamura bringing to the Court's attention that Defendants have failed to take appropriate steps to preserve documents, repeatedly delayed discovery, and refused to produce highly relevant evidence in their custody and control, all in violation of their obligations under the Federal Rules of Civil Procedure and this Court's rules. For example, Defendants (a) concede that they did not issue preservation notices to key custodians who work for them and are under their control, (b) only belatedly produced any emails from such persons, and (c) concede that responsive Signal messages exist but have failed to produce those from all but one person. These issues are the subject of a separate motion to compel filed by Dr. Nakamura. *See* ECF Nos. 99, 100.

In a transparent attempt to deflect attention from these breaches of their discovery obligations, Defendants' motion attempts to manufacture discovery failures on Dr. Nakamura's part. Defendants say they received from a non-party a handful of text messages Dr. Nakamura did not produce, which they now claim requires this Court to order a full imaging of Dr. Nakamura's personal cell phone and an export of all of his personal emails. Separately, Defendants seek disclosure of Dr. Nakamura's cryptocurrency-related investment history, and his personal tax returns, ***for a nine year period***, on the theory that the information is relevant because cryptocurrency investments may have been Dr. Nakamura's "business" (*i.e.*, that he was not a "consumer" as is required for one of his claims) and that he was sophisticated enough that he was

FENWICK & WEST LLP

1  not misled by Defendants' false statements about the ventures in question.

2  The Motion should be denied. ***First***, the request for additional communications with co-
3  investors in the "Mobby Project" is moot. After the Motion was filed, Dr. Nakamura
4  supplemented his prior document productions with the communications sought. Dr. Nakamura is
5  aware of his discovery obligations and has provided his counsel with all responsive
6  communications after a diligent search. Those communications have been produced. There is no
7  basis to order the collection of a full image of his personal data stored on his cell phone and a full
8  export of all data in his email account. Dr. Nakamura's collection and production of the
9  responsive communications in his possession fully meet his discovery obligations. Nothing more
10  is required.

11  ***Second***, the investment history and tax return requests are facially overbroad. Dr.
12  Nakamura is willing to provide a limited-scope supplemental interrogatory response summarizing
13  any *venture* investments in the cryptocurrency space he made *before* making the investments at
14  issue in this case. He should not, however, be required to disclose or produce records for *every*
15  cryptocurrency transaction he executed over the requested nine-year period, much less for
16  transactions *post*-dating the investments in this case. A summary of Dr. Nakamura's prior
17  cryptocurrency venture investments is more than sufficient to confirm that Dr. Nakamura was a
18  consumer (*i.e.*, that cryptocurrency venture investing was not his profession in 2017) and to
19  permit Defendants to develop whatever sophistication-based defense they see fit. Separately,
20  there is no basis to compel production of Dr. Nakamura's personal tax returns—which is
21  disfavored under governing law—where less intrusive discovery avenues exist and provide access
22  to information regarding Dr. Nakamura's net worth and income sources, which Defendants argue
23  are somehow relevant to the case. As discussed below, courts in the Ninth Circuit have repeatedly
24  rejected requests like Defendants' seeking the production of personal tax returns given the
25  sensitive nature of such information and the public policy concerns implicated by such requests.

26  **II.  FACTS AND PROCEDURAL HISTORY**

27  Dr. Nakamura commenced this action on August 16, 2022 to recover certain investments
28  he made in and through Defendants. ECF No. 1. Dr. Nakamura is a Japanese citizen residing in

1    Japan. Sunday Group is a purported blockchain industry startup formed and operating in Nevada.
2    Dr. Nakamura alleges that Defendants induced his investments with false representations and
3    breached fiduciary, contractual and other legal duties. Defendants solicited three investments
4    from Dr. Nakamura over several years, which are worth millions of dollars: (1) an initial equity
5    investment in Sunday Group; (2) a digital currency-based investment whereby Dr. Nakamura
6    purchased the right to receive "M-Tokens" from a Mobby Project Sunday Group claimed to be
7    developing; and (3) another digital currency-based investment in which defendants Todd
8    Mitsuishi and SGI Trust promised to place funds with a third-party digital currency "mining"
9    operation, BitClub Network ("BCN"), that turned out to be a Ponzi scheme. *Id.* ¶¶ 3-5, 20-33.

10        After initial motion practice, discovery commenced in earnest in 2023. From the fall of
11   2023 through 2024, Dr. Nakamura and Defendants served requests for production ("RFPs") and
12   interrogatories and responded and objected to the same. *See* Decl. of Casey O'Neill ("O'Neill's
13   Decl.") at ¶ 3. Certain of Defendants' RFPs and interrogatories sought (1) communications with
14   other individuals concerning the claims asserted, encompassing communications regarding the
15   Mobby Project with other investors in that project,[1] and (2) documents and information regarding
16   Dr. Nakamura's investment history. *Id.* ¶¶ 4-5; *see also* Mot. at 6-8. For the latter category of
17   discovery, Defendants' RFPs and interrogatories are scattered, and many are redundant. In
18   general, however, Defendants have sought documents and information dating back either ten
19   years from the date of discovery service or to January 1, 2015, and continuing to the present,
20   relating to Dr. Nakamura's history, if any (a) investing in start-up businesses or ventures, without
21   limitation as to industry, and (b) transacting in cryptocurrency.[2] Defendants also have sought

---

[1] At issue for this portion of the Motion are RFP Nos. 2 and 15. As quoted in the Motion, RFP 2 sought "COMMUNICATIONS and DOCUMENTS to or from any individual related to any of the DEFENDANTS, MOBBY, the SUBSCRIPTION AGREEMENT, Dr. Leonard Kleinrock, and/or the MOBBY MOU." RFP 15 sought "COMMUNICATIONS to or from any person (including without limitation any MOBBY PURCHASER . . . regarding any statement, allegation, assertion or claim that DEFENDANTS engaged in any of the conduct described in [certain paragraphs of Dr. Nakamura's complaint]."

[2] As detailed in the accompanying O'Neill Declaration, Defendants' discovery requests on investment history topics (and tax information, which Defendants characterize as relevant to Dr. Nakamura's investment history) include those Defendants place at issue in the Motion (RFP Nos.

PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION TO COMPEL                                    3                    Case No.: 2:22-cv-01324-MMD-EJY

FENWICK & WEST LLP

production of *all* documents relating to Dr. Nakamura's taxes or tax returns within the last ten years showing his total assets and investments. *See* RFP No. 20.

Dr. Nakamura timely objected to the RFPs and interrogatories on these topics, on relevance, overbreadth, undue burden, and other grounds. Mot. at 5-8; O'Neill Decl. ¶ 4-5. The Parties have since met and conferred on the at-issue requests and on Dr. Nakamura's objections thereto. O'Neill Decl. ¶ 6. Most recently, on February 28, 2025, the Parties discussed Defendants' prior discovery letters, which flagged concerns regarding the thoroughness of Dr. Nakamura's collection of communications from other investors in the Mobby Project and sought discovery of Dr. Nakamura's investment history. *Id.*

In the February 28 meet-and-confer discussion, counsel for Dr. Nakamura represented that, subject to evaluation of privilege and similar issues, Dr. Nakamura will endeavor to collect and produce all responsive communications with other investors in the Mobby Project. *Id.* Counsel promised to revisit collection issues to assess any gaps or deficiencies and to supplement Dr. Nakamura's production as appropriate. *Id.* Although Defendants filed their motion to compel before Dr. Nakamura had an opportunity to respond further on these issues, he has since made a supplemental document production consisting of responsive communications with other persons known to have invested in the Mobby Project. *Id.* ¶ 7. This production encompassed the messages identified by Defendants in their discovery letters and Motion *and* included additional communications beyond what Defendants' counsel apparently received from one investor directly. *Id.* ¶ 7. Both the earlier and the more recent efforts to collect and produce responsive documents in Dr. Nakamura's possession, custody or control were handled in collaboration with Dr. Nakamura's local Japanese counsel, a team which includes the premier law firm Nagashima Ohno & Tsunematsu ("NO&T"). *Id.* ¶ 8.

---

10, 19, and 20 and Interrogatory Nos. 6 and 12) *and* others (RFP Nos. 21 and 30 and Interrogatory Nos. 17 and 21). Dr. Nakamura requests that a Court order on the Motion conclusively resolve all outstanding points of contention regarding all discovery requests on investment history topics, including those not expressly placed at issue in the Motion.

### III. LEGAL STANDARD

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). When a party moves to compel disputed discovery, the moving party must make an initial showing of relevance. *See Nugget Hydroelectric, L.P. v. Pac. Gas & Elec. Co.*, 981 F.2d 429, 438-39 (9th Cir. 1992) (noting moving party's failure to show that burden of production would be minimal and requested documents would lead to relevant evidence) (citing *Sorosky v. Burroughs Corp.*, 826 F.2d 794, 805 (9th Cir. 1987)). Although relevance is broadly defined, it does have boundaries, including the proportionality analysis that Rule 26(b)(1) expressly requires. *See Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1072 (9th Cir. 2004) ("[d]istrict courts need not condone the use of discovery to engage in 'fishing expedition[s]'") (quoting *Exxon Corp. v. Crosby-Mississippi Resources, Ltd.*, 40 F.3d 1474, 1487 (5th Cir. 1995)).

### IV. ARGUMENT

#### A. The Motion Is Moot as to Communications with Other Investors

The Motion first seeks to compel production of communications between Dr. Nakamura and other investors in the Mobby Project. Mot. at 1, 11-16. Defendants apparently received a handful of text messages between Dr. Nakamura and a non-party Mobby Project investor, which they did not receive in discovery from Dr. Nakamura. *Id.* at 11-16. As noted, Dr. Nakamura has re-reviewed his personal cell phone and email data for responsive communications, including communications with other investors in the Mobby Project. Dr. Nakamura collected documents in consultation with both lead counsel of record here, Fenwick & West LLP, and the premier Japanese law firm NO&T. On April 28, 2025, Dr. Nakamura supplemented his document production with an additional set of communications, which encompassed (1) all communications identified by Defendants in prior discovery letters and in their Motion, and (2) additional responsive non-privileged communications with known Mobby Project investors. Accordingly,

this aspect of Defendants' motion is moot and should be denied on that basis. *Adidas Am., Inc. v. Fashion Nova, Inc.*, 341 F.R.D. 263, 265 (D. Or. 2022) (motion to compel deemed moot where party had already furnished the requested documents and committed to providing any additional responsive documents when received).[3]

For the same reason, the Court should deny Defendants' request for an order requiring Dr. Nakamura to create a full image of all personal data on his cell phone and a full export of all personal emails in his email account. Such a collection is overly broad, unduly burdensome, and unnecessary. Dr. Nakamura has conducted a diligent search for documents relating to the personal investments at issue here. That search was conducted with the guidance and assistance of his counsel in the United States and Japan. Nothing more is required by the Federal Rules of Civil Procedure. And nothing more is necessary in this case where Plaintiff has produced the responsive communications to the Defendants. *See Reinsdorf v. Skechers U.S.A., Inc.*, 296 F.R.D. 604, 615 (C.D. Cal. 2013) ("the discovery process relies upon the good faith and professional obligations of counsel to reasonably and diligently search for and produce responsive documents" (citing *Smith v. Life Investors Ins. Co. of Am.*, 2009 WL 2045197, at *5 (W.D. Pa. July 9, 2009)). Moreover, Defendants have cited no authority supporting the remedy they seek – an order compelling a full imaging of all personal data on his cell phone and a full export of all personal emails – which is unduly burdensome and would encroach on the privacy interests of Dr. Nakamura. *See Victory Processing, LLC v. Fox*, 937 F.3d 1218, 1227 (9th Cir. 2019) (recognizing strong privacy interests in the content of mobile phones).

**B.      The Court Should Deny the Request for Investment History and Tax Returns**

The Motion also seeks to compel (1) disclosure of information and production of documents related to Dr. Nakamura's "crypto related investment history and experience"; and (2)

---

[3] Separately, the Motion notes that Dr. Nakamura produced screenshots of a chat log for which Defendants' counsel has had difficulty identifying the speakers. Mot. at 10 n.5, 15 n.8. The Parties have met and conferred on that issue, and on March 31, 2025, Dr. Nakamura served responses to supplemental interrogatories from Defendants, which responses identified to the best of Dr. Nakamura's knowledge the speakers in certain chat communications, which Dr. Nakamura believes has resolved this issue to Defendants' satisfaction. O'Neill Decl. ¶ 9.

production of Dr. Nakamura's tax returns. Mot. at 3. More specifically, Defendants seek: (a) "a list of all of [Dr.] Nakamura's [] crypto/digital asset investment history from 2010-2018"; (b) "account records and statements related to that crypto/digital asset investment history from that time period"; and (c) "[Dr.] Nakamura's tax returns (2010-2018) to determine what part of [his] income is derived from crypto/digital assets." Mot. at 18.[4] Notably, the requested relief is broader—reaching farther back in time—than the discovery requests placed at issue in the Motion, most of which either apply a ten-year look back from the date served in either 2023 or 2025 or call for a response from January 1, 2015 through the present.[5]

Defendants' Motion is baseless and should be denied for the reasons set forth below.

### 1. The Request for Investment History Disclosure is Overbroad

Discovery must be relevant *and* proportional. Fed. R. Civ. P. 26(b)(1). To be relevant, the requested discovery must relate to the claims and defenses asserted. *Id.*; *see also V5 Techs. v. Switch, Ltd.*, 334 F.R.D. 306, 311 (D. Nev. 2019) (denying motion to compel because documents sought had no bearing on the claims or defenses), *aff'd sub nom. V5 Techs., LLC v. Switch, LTD.*, 2020 WL 1042515 (D. Nev. Mar. 3, 2020). To be proportional, discovery must be reasonably tailored to the case and appropriately limited in time and scope. *See* Fed. R. Civ. P. 26(b)(1). The Court must weigh the discovery's potential benefit against the burden and expense placed on the producing party. *See id.* Here, relevance is questionable, while burden is great.

*First*, Defendants' request is far broader than necessary and not proportional to the issues in the case. Defendants argue that under the CCA's "consumer" element, Japanese authorities consider whether a plaintiff has engaged in similar investments or business-related activities in

---

[4] Elsewhere in the Motion, Defendants seek an order that Dr. Nakamura "fully respond to" or "[c]omply with" the at-issue discovery requests (Mot. at 21-22), making the scope of what Defendants are seeking somewhat unclear. For example, RFP No. 20 sought production of *all* documents relating to Dr. Nakamura's taxes or tax returns within the last ten years showing his total assets and investments, whereas the Motion appears to narrow this request to tax returns only.

[5] The Motion appears to concede that any investment history disclosure must be constrained to *cryptocurrency*-related investments, which some of Defendants' discovery requests did not. *Compare* Mot. at 1-3, 18 *with* O'Neill Decl. ¶ 5.

the past. Mot. at 17. Here, Plaintiff will provide a supplemental interrogatory response summarizing any *venture* investments in the cryptocurrency space Dr. Nakamura made *before* making the investments at issue in this case. That information is targeted to the issue raised by Defendants. In contrast, Defendants seek far too much when asking for both Dr. Nakamura's cryptocurrency venture investment history *and his* secondary market cryptocurrency trading history. The latter, cryptocurrency trading, is commonplace. It typically is exchange-based and is available to retail investors like Dr. Nakamura in the same way stock and bond trading is available. Cryptocurrency trading is not *similar* to the venture investments in this case. Further, even venture investment history cannot establish that a medical industry executive such as Dr. Nakamura somehow made cryptocurrency startups his "livelihood" such that he invested in the Mobby Project "for a business purpose." *Id.* (citing *Article-by-Article Commentary*, Government of Japan Consumer Affairs Agency (Sept. 2023) at 15-16).

Likewise, neither a history of cryptocurrency-related venture investment nor a history of cryptocurrency trading sheds meaningful light on the extent to which Dr. Nakamura "mistakenly believed," was misled by, or justifiably relied on, the factual misrepresentations alleged in this case. This is not a case about a sophisticated investor who "understood the particular risks of the transaction[s]." Mot. at 18. Caveat emptor is not a legal defense to fraud here. *Collins v. Burns*, 103 Nev. 394, 397-398 (1987) (explaining that a party cannot say, "It is true that I lied to you, and for the purpose of defrauding you, but you were guilty of negligence, of want of ordinary care, in believing that I told you the truth…") (quoting *Bristol v. Braidwood,* 28 Mich. 191, 196 (1873)). Even if Dr. Nakamura understood the risks of investing in frontier technologies, that is a far cry from knowing the underlying facts which are alleged to have been misstated: (1) for the Mobby Project, facts concerning (a) the nature and extent of Dr. Leonard Kleinrock's involvement, and (b) the extent to which project technology had reached a prototype stage and token exchange-listing was imminent; and (2) for the BCN investment, the extent to which BCN was a known scam. *See* ECF No. 1 at 6-8. Put simply, no level of investing or trading sophistication would have placed Dr. Nakamura on notice of outright deceit, as is alleged.

Finally, the Motion seeks disclosure of investment history *post*-dating the March 1, 2018

FENWICK & WEST LLP

BCN investment, by seeking information and records for the entirety of 2018. Investment history from periods *after* the last investment at issue in this case cannot possibly be relevant to the claims asserted because that data does not inform the question of consumer status at the time of the 2017 investment or Dr. Nakamura's level of sophistication in relying on the misstatements alleged to have induced the 2017 and 2018 investments. Nor do Defendants ever explain, much less adequately substantiate, why these post 2018 investments should be discoverable. Mot. at 16-22.

***Second***, even assuming *arguendo* that Dr. Nakamura's cryptocurrency investment history bears on this case in some way, the burden of locating and producing information and account records for all cryptocurrency investments and trading would be substantial. Dr. Nakamura would have to comb through nearly a decade's worth of historical records to identify and pull data and documents pertaining to every cryptocurrency-related transaction into which he entered during that time. That is excessive and inconsistent with the requirement that burden be weighed against benefit. Fed. R. Civ. P. 26(b)(1); *see Williams v. Garrett*, 2024 WL 1675445, at *2 (D. Nev. Apr. 18, 2024) ("Courts are not required to compel disclosure that is 'unnecessarily burdensome and overly broad' with minimal chance of leading to relevant evidence.") (quoting *Nugget Hydroelectric*, 981 F.2d at 439)). At most, a limited scope disclosure of investment history is appropriate here. As noted, Dr. Nakamura is willing to provide a supplemental interrogatory response detailing any investments in cryptocurrency-related *ventures* from January 1, 2010 to March 1, 2018 when he made the BCN investment. That disclosure would allow Defendants to compare Dr. Nakamura's cryptocurrency venture investments to his profession as a hospital group executive and to assess his level of sophistication at the time he invested with Defendants. The Court should deny the Motion insofar as it seeks information or records beyond such a disclosure. At a minimum, the Court should book-end any disclosure at March 1, 2018, the date of the BCN investment.

**2.     The Request for Production of Tax Returns Is Unsupported**

Defendants also seek disclosure of Dr. Nakamura's "tax returns (2010-2018) to determine what part of [his] income is derived from crypto/digital assets." Mot. at 18, 22. Tax returns are

strictly protected under applicable discovery principles. There is a strong public policy against unnecessary public disclosure. *Premium Serv. Corp. v. Sperry & Hutchinson Co.*, 511 F.2d 225, 229 (9th Cir. 1975); *see also Kayner v. City of Seattle*, 2006 WL 482072, at *1 (W.D. Wash. Feb. 27, 2006) ("the greater weight of authority concludes that tax returns are subject to at least some level of heightened protection from disclosure"). A Court may only order the production of an individual's tax returns if they are relevant and there is a compelling need for them because the information sought is not otherwise available. *Pacquiao v. Mayweather*, 2012 WL 4364074, at *2 (D. Nev. Sept. 21, 2012) (denying motion to compel production of tax returns given ability of defendants to obtain relevant financial information via alternative means); *KeyBank Nat'l Ass'n v. Nielson*, 2011 WL 2036975, at *3 (D. Nev. May 24, 2011) (refusing to order production of tax returns where relevance not demonstrated). Defendants cannot meet this standard.

None of the authorities cited by Defendants, not even the Japanese law authorities, involves compelled disclosure of tax returns. And, even if Japanese courts consider a plaintiff's gross income or comparative income sources under the CCA (Mot. at 17-20), or a plaintiff's net worth and financial savvy under the Japanese Civil Code (*id.* at 20-21), there are other avenues to get at such information which do not involve the extreme privacy intrusion that compelled production of personal tax returns would entail. Specifically, if Defendants want to know what part of Dr. Nakamura's income, if any, was derived from venture investments akin to the Mobby Project and BCN investments at or about the time those investments were made, they are free to use any remaining interrogatories to ask him that. They also could question him about that at a deposition. District courts within the Ninth Circuit – including this one – routinely reject discovery requests seeking disclosure of individual tax returns where alternative, less intrusive means are available to get at the information sought. *See, e.g.*, *Pacquiao*, 2012 WL 4364074, at *2 (motion to compel tax returns denied where alternative means of discovery were available); *Cassis v. Sun Life Assurance Co. of Canada*, 2017 WL 8230040, at *4 (C.D. Cal. Nov. 8, 2017) (deferring ruling on request for production of tax returns until defendant obtained financial information from other sources and through other forms of discovery); *Vieste, LLC v. Hill Redwood Dev.*, 2011 WL 855831, at *4 (N.D. Cal. Mar. 9, 2011) (denying request for production

of tax returns and noting that plaintiffs would likely obtain the financial information they were seeking from "other document requests and interrogatories"); *Aliotti v. The Vessel Sonora*, 217 F.R.D. 496, 497-498 (N.D. Cal. 2003) (finding that, although plaintiff's tax returns were relevant, defendant failed to establish a compelling need for them given alternative methods available); *Flores v. Albertsons, Inc.*, 2002 WL 1163623, at *4 (C.D. Cal. Apr. 9, 2002) (explaining that the relevant information sought from plaintiff's tax returns could be obtained from other available documents).

This Court should reject the tax returns request in its entirety. If the Court is somehow inclined to order production of tax returns, the Court should dramatically narrow Defendants' request. RFP No. 20 sought tax documents for the last ten years (*i.e.*, from January 6, 2015 to the date of discovery service on January 6, 2025). The Motion inexplicably seeks to broaden RFP No. 20 to encompass the years 2010 through 2014, which is not permitted. Additionally, Defendants rely on authorities suggesting Japanese courts may consider income sources and net worth in connection with certain claims asserted (Mot. at 17-21), but even if true, that would support, at most, disclosure of tax returns for the years 2017 and 2018 when Dr. Nakamura invested with Defendants. *See Momot v. Mastro*, 2011 WL 1833349, at *5 (D. Nev. May 13, 2011) (narrowing overly broad tax return request to tax information sufficient to reflect party's financial condition at relevant time).

## V.  CONCLUSION

The Motion should be (1) denied as moot with respect to communications with other Mobby Project investors (RFP Nos. 2, 15); (2) denied with respect to all RFPs or interrogatories relating to Dr. Nakamura's investment history (including RFP Nos. 10, 19, 21, and 30 and Interrogatory Nos. 6, 12, 17 and 21), provided that within thirty (30) days of the Court's order on the Motion, Dr. Nakamura supplements his interrogatory responses with a chart describing any cryptocurrency-related venture investments he made from January 1, 2010 to March 1, 2018; (3) denied with respect to production of Dr. Nakamura's tax returns (RFP No. 20); and (4) denied as to the request to image Dr. Nakamura's mobile phone(s) or other messaging-capable devices and the request to export and apply search terms to Dr. Nakamura's email files.

FENWICK & WEST LLP

Dated: April 28, 2025

**FENWICK & WEST LLP**

By: /s/ *Felix S. Lee*
Felix S. Lee

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the April 28, 2025, he caused a copy of the foregoing Plaintiff's Opposition to Motion to Compel Documents from Plaintiff to be served electronically to counsel of record for all parties who have appeared in this action through the Court's CM/ECF system (as all such counsel appear to be registered CM/ECF users).

By: /s/ *Felix S. Lee*
Felix S. Lee