Mark L. Smith (NV Bar #14762)
msmith@sffirm.com
Jacob L. Fonnesbeck (NV Bar #11961)
jfonnesbeck@sffirm.com
**SF FIRM, LLP**
6345 South Pecos Road, Suite 202
Las Vegas, NV 89120
Telephone: (725) 666-8701

Aaron D. Lebenta (UT Bar # 10180)
adl@clydesnow.com
Timothy R. Pack (UT Bar # 12193)
trp@clydesnow.com
**CLYDE SNOW & SESSIONS PC**
201 South Main Street, Suite 2200
Salt Lake City, UT 84111
Telephone: (801) 322-2516

James E. Magleby (UT Bar # 7247)
magleby@mcpc.law
**MAGLEBY CATAXINOS PC**
141 W. Pierpont Avenue
Salt Lake City, Utah 84101-3605
Telephone: (801) 359-9000

*Attorneys for Defendants*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| TETSUYA NAKAMURA, an individual,<br><br>Plaintiff,<br><br>v.<br><br>SUNDAY GROUP INCORPORATED, a Delaware corporation, *et al.*,<br><br>Defendants. | Case No.: 2:22-cv-01324-MMD-EJY<br><br>**DEFENDANTS' REPLY MEMORANDUM SUPPORTING MOTION TO COMPEL DOCUMENTS FROM PLAINTIFF** |

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................... 1

ARGUMENT ..................................................................................................................... 2

    I.      The Motion is Not Moot Because Nakamura Failed to Provide the Court With Any Reliable Assurances That He Completed a Diligent and Thorough Search for Token Purchaser Communications.................................................................... 2

    II.    Nakamura Should be Ordered to Produce Crypto Related Investment Documents ........................................................................................................ 6

           A.    Nakamura's Financial Records are Relevant to Whether He is a "Consumer" Under the Consumer Contract Act of Japan ......................... 6

           B.    Nakamura's Salary and Income is Relevant to His Japanese Law Claims ................................................................................................. 10

CONCLUSION................................................................................................................. 11

**DEFENDANTS' REPLY MEMORANDUM SUPPORTING
MOTION TO COMPEL DOCUMENTS FROM PLAINTIFF**

1

**TABLE OF AUTHORITIES**

2

3

Page(s)

4

**<u>Cases</u>**

5

*Jones v. Russell*,
   No. 2:22-CV-00123-CDS-DJA, 2024 WL 3202431 (D. Nev. June 25, 2024)...................... 6, 8

6

7

*Maluf v. Bergelectric Corp.*,
   No. 2:23-CV-00115-CDS-MDC, 2024 WL 4707962 (D. Nev. Nov. 6, 2024) ......................... 7

8

*Tōkyō Chihō Saibansho* [Tokyo Dist. Ct.] April 13, 2022, Rei 2 (wa) no. 7287, Westlaw
   Japan, 2022 WLJPCA04138005 (Japan) ............................................................................. 8, 10

9

10

*Tōkyō Chihō Saibansho* [Tokyo Dist. Ct.] September 16, 2011, Hei 21 (wa) no. 37069, Westlaw
   Japan, 2011WLJPCA09169012 (Japan) .............................................................................. 8, 10

11

12

*Tōkyō Chihō Saibansho* [Tokyo Dist. Ct.] March 30, 2021, Hei (wa) no. 28275, Westlaw
   Japan, 2021 WLJPCA033008012 (Japan) ................................................................................ 10

13

**<u>Other Authorities</u>**

14

15

*Article-by-Article commentary*, Government of Japan Consumer Affairs Agency,
   (Sept. 2023).............................................................................................................................. 10

16

17

18

19

20

21

22

23

24

25

26

27

28

**DEFENDANTS' REPLY MEMORANDUM SUPPORTING**
**MOTION TO COMPEL DOCUMENTS FROM PLAINTIFF**

# INTRODUCTION

The court should grant Defendants' motion to compel.

First, Nakamura does not dispute that his efforts to search for his communications with Token Investors has been woefully deficient. His response fails to provide any evidence or declarations explaining the details or scope of his renewed search efforts or how these new efforts will cure the now-uncontested facts that relevant documents were not produced. In sum, Nakamura has not given the court any reasonable assurances that he has complied, will comply, or can comply on his own -- without delivery of his devices to his counsel for imaging and data searching – to meet his obligations to search for and provide responsive information. Therefore, the court should order Nakamura to image his mobile device(s) in order to permit the use of search terms or other standard techniques to ensure a complete collection and production of relevant communications.

Second, Nakamura does not dispute or contest the Japanese cases and authorities cited by Defendants. He thus decisively concedes that his records related to crypto ventures and start-up investments are relevant to the Japanese law claims he chose to bring in this venue, yet still refuses to produce the relevant records. Because the now-uncontested Japanese authorities cited in Defendants' motion establish that Nakamura's cryptocurrency and start-up investment experience (along with other information related to his experience and sophistication as an investor in general), are highly relevant, the requested information should be ordered produced.

Third, the Japanese cases discussed by Defendants also highlight the relevancy of Nakamura's wealth and annual income. Again, Nakamura does not attempt to rebut or distinguish these cases. The best evidence of his wealth and income is his tax returns. Any concerns Nakamura has regarding the confidentiality or privacy of this information can be routinely handled by the existing protective order, just as it has for Defendants' productions.

**DEFENDANTS' REPLY MEMORANDUM SUPPORTING**
**MOTION TO COMPEL DOCUMENTS FROM PLAINTIFF**

**ARGUMENT**

I.   **The Motion is Not Moot Because Nakamura Failed to Provide the Court With Any Reliable Assurances That He Completed a Diligent and Thorough Search for Token Purchaser Communications.**

Nakamura assured Defendants that he had produced all relevant communications with Token Purchasers. Those assurances were wrong, as Defendants caught Nakamura withholding important communications with Token Purchasers. Nakamura does not deny it. Rather, he now claims court involvement is unnecessary because he has purportedly, recently produced all responsive communications.  He apparently suggests the court should believe him this time.

To support his claim, his counsel tells the court that "Dr. Nakamura has re-reviewed his personal cell phone and email data for responsive communications, including communications with other investors in the Mobby Project." [Nakamura's Opp., p. 5 (emphasis added), Dkt. 121.] In making this statement, Nakamura tacitly admits his first attempts to search (self-collect) for responsive records were deficient. But more importantly, Nakamura submitted no evidence to corroborate this naked statement. There is no evidence before the Court that Nakamura actually searched any of his devices, or his messenger or email accounts for responsive communications. But, there is evidence that his counsel was <u>not</u> given access to his electronic data, to perform the types of searches that are routine in civil cases (and which Defendants have performed at great time and expense). There is no declaration in the record signed under oath by Nakamura himself describing exactly: (1) what devices he searched; (2) what email and messenger accounts he searched; (3) the search terms he employed, if any; or (4) the time limits or other parameters of his search. Rather than explain how he undertook a diligent and thorough search for records, Nakamura simply claims through is counsel that the motion should be denied because  a "premier"

**DEFENDANTS' REPLY MEMORANDUM SUPPORTING
MOTION TO COMPEL DOCUMENTS FROM PLAINTIFF**

Japanese law firm has assisted him. But, there is not even a declaration from this "premier" law firm describing anything about the document gathering efforts.

In the beginning, Defendants relied upon Nakamura's representations that he had conducted a diligent and thorough search for communications with Token Investors. Defendants trust was obviously misplaced, and they would have been none the wiser if they hadn't independently discovered text messages between Nakamura and the sumo wrestler and Token Purchaser Kisenosato. It is inconceivable how Nakamura could have overlooked the production of these critical text messages, not only because of the obvious relevance but also because of the national prestige of Kisenosato, a revered figure in Japanese society. Surprisingly, and tellingly, the opposition does not address Nakamura's glaring failure to produce clearly relevant messages with a famous Token Purchaser. It also fails to explain how this could have happened, if the prior efforts were indeed diligent. There are only two possible explanations – that Nakamura chose not to produce an incredibly relevant communication (not knowing that Defendants would find it independently), or he utterly failed to conduct even the most basic search. And Nakamura fails to explain how his renewed efforts to search for responsive communications were somehow better designed to capture and collect highly relevant information. Nakamura's refusal to confront and explain his discovery failures is highly concerning in and of itself.

Further, Nakamura will not confirm whether additional productions are coming, even though Defendants' review of Nakamura's productions has – like the prior production after discovery of the Kisenosato communication from a third party – demonstrated that Nakamura has continued to withhold numerous documents. For example, while Nakamura did make a supplemental production on April 28, 2025, it included only some additional text messages with Nakamura and a few other individuals. No additional emails or other messaging application

DEFENDANTS' REPLY MEMORANDUM SUPPORTING
MOTION TO COMPEL DOCUMENTS FROM PLAINTIFF

communications were included in this production.  Overall, Nakamura has produced a shockingly low number of emails to or from himself in general; and the vast majority of emails he has produced contain no substantive message or discussion, but are simply bare forwards of emails from other people to Nakamura of documents that Nakamura should already have in his possession, such as Mobby updates from the Sunday Group.  There is no indication why Nakamura did not produce the original email containing the Mobby update of other information that was sent to him personally at the time, and it extremely doubtful he had virtually no substantive email communication with anyone regarding any of the issues in this case.

Indeed, it is a fact that there are emails that Nakamura has not produced because there are references to emails that Nakamura has not produced in text messages or other communications he has produced. For example, in a LINE messaging application communication between Nakamura and Ryu Imachi between January 31, 2022 and February 24, 2022, the parties reference several emails that were sent regarding the case – including a narrative summary prepared by Mr. Imachi, documents being sent to the SEC, and the preparation of and edits to a demand letter to Sunday Group [Nakamura_ 810-811, 815-816] – which have not been produced.  Defendants have brought these and numerous other examples to Nakamura's attention in meet and confer letters, including most recently on April 28, 2025.  Nonetheless, Nakamura has still not even confirmed he intends to provide a supplemental production with the omitted documents.[1]

---

[1] Defendants' April 28, 2025 letter addressed the omitted materials in great detail, including by identifying the document control numbers where the email or other non-produced communications were referenced, and requested that Nakamura state whether he intended to provide a further supplemental production by May 5, 2025.  Nakamura has not responded to this request to even confirm whether a further production is forthcoming, leaving Defendants no choice but to assume that Nakamura plans to continue to withhold obviously relevant communications.

Moreover, there is nothing to confirm that Nakamura has now produced even all relevant SMS text messages, notwithstanding this latest production, or how he searched his text messages for relevant communications.  At best, it appears from some of the texts in the recent production that he searched by only the term "Mobby," but that singular term is very unlikely to capture all relevant communications, as it would only capture those communications specifically referencing the term "Mobby." Text messages chains between Nakamura and other individuals are likewise so sporadic that it is certain that there are additional relevant communications that have not been produced.  For example,  it is clear based on the date range and contents of the text messages between Nakamura and an individual named Kon Mahito that there are relevant communications both before and after what was produced.  The produced text chain begins on November 28, 2017 in the middle of a question and ends on December 23, 2021 with a request from Nakamura for Mr. Mahito's help in gathering information.    Additionally, Nakamura has produced no communications with an individual named Noritaka Kobayashi, who Nakamura apparently had other business dealings related to digital assets and who Nakamura asked to sit in on meeting with Todd Mitsuishi in June of 2019. It strains credulity that Nakamura did not have a single electronic communication with Mr. Kobayashi regarding the relevant issues in this case.

Nakamura's "self collection" has failed not once, but twice.  Nakamura chose to file this case (including the bringing of Japanese law claims), in this venue, and subject to this Court's discovery rules.    These combined failures confirm, without question, the unreliability of Nakamura's representations to this court. His past conduct and lack of explanation also demonstrate he is not capable of searching for and collecting responsive information. There is no evidence that would give a reasonable person any assurance that Nakamura has complied, or will comply, with his obligation to search for and obtain relevant information.  That is why imaging of

Nakamura's mobile device is required under these facts. Accordingly, the court should order that Nakamura follow the same procedures as other litigants (including Defendants) and image his mobile and other messaging-capable devices in order to permit the use of search terms or other standard techniques to ensure a complete collection and production of relevant communications.

**II.    Nakamura Should be Ordered to Produce Crypto Related Investment Documents.**

Plaintiff Nakamura has conceded by failing to contest the Japanese law provided in the opening motion that is cryptocurrency and start-up investment documents are highly relevant to the claims he chose to bring under Japanese law.  These documents should therefore be produced.

**A.    Nakamura's Financial Records are Relevant to Whether He is a "Consumer" Under the CCA.**

Under the CCA, Nakamura must establish that he is a "consumer." To determine whether he is a "consumer," Japanese authorities consider, *inter alia,* (a) whether a plaintiff has engaged in similar investments or business-related activities in the past, (b) whether a plaintiff's investment related revenue exceeds his revenues from salary or other sources, and (c) whether plaintiff's investment-related activity was conducted for a business purpose. *See Article-by-Article commentary*, Government of Japan Consumer Affairs Agency, (Sept. 2023), page 15-16. Therefore, it is undisputed that Defendants are entitled to discover: (1) information related to Nakamura's crypto investment transaction history and his experience and sophistication as a crypto investor; and (2) documents showing whether his investment related revenue exceeded his revenues from salary.

First, Nakamura concedes his crypto investment experience is relevant to his CCA claim, but contends that "the burden of locating and producing information and account records for all cryptocurrency investments and trading would be substantial." [Opp. at 9, Dkt. 121]. This claim is unsupported, and therefore Nakamura has failed to carry his burden. *Jones v. Russell*, No. 2:22-

CV-00123-CDS-DJA, 2024 WL 3202431, at *1 (D. Nev. June 25, 2024) ("The party resisting discovery bears the burden of showing why that discovery should not be permitted because it is irrelevant, overly broad, or unduly burdensome.").

Again, there is no declaration from Nakamura himself, nor his counsel. Nakamura does not explain how pulling his crypto trading and investing transaction history would be burdensome in terms of time or cost. Surely, a sophisticated billionaire business executive such as Nakamura has the means to locate his own transaction records, or pay someone to do so for him. Indeed, Nakamura has the means to employ Japan's premier law firm to assist him. Defendants – who are not billionaires – have had to pay attorney and other costs to locate the documents Nakamura has strenuously demanded from them. And, it was Nakamura who *chose* to bring this case, and he should not be heard to complain about a burden created as a result of his filings. *See, e.g.*, *Maluf v. Bergelectric Corp.*, No. 2:23-CV-00115-CDS-MDC, 2024 WL 4707962, at *4 (D. Nev. Nov. 6, 2024) ("Considering that [plaintiff] chose to initiate this lawsuit, he is obligated to participate in the discovery process."). Finally, Nakamura is seeking substantial relief, and the burden (even if it was articulated, which it is not) is justified by the seriousness of the claims.

Second, Nakamura contends that Defendants are not entitled to his crypto transaction records post 2018. [Opp. at 8-9, Dkt. 121]. This argument is confusing, given that Defendants' motion already makes clear they are only seeking documents during an eight-year period from 2010-2018. [MTC at 18.] And it is important to obtain Nakamura's crypto transaction history through 2018 in order to capture any investments that were contemplated prior to March 2018, but consummated thereafter.

Third, a complete production of Nakamura's crypto investment and transaction history during this time period is critical. There are indications in the discovery suggesting that part of

**DEFENDANTS' REPLY MEMORANDUM SUPPORTING**
**MOTION TO COMPEL DOCUMENTS FROM PLAINTIFF**

Nakamura's investment in the Mobby Project may not have been Nakamura's own funds, but involved funds from other investors. This would further indicate that Nakamura has a history of not just investing in a personal and consumer capacity, but also for business purposes – including by making investments on behalf of others or making crypto-related investment recommendations to others. Defendants are entitled to review and understand the scope of his crypto investments and whether those investments were made in a consumer or business-related capacity. *Jones*, 2024 WL 3202431, at *1 (D. Nev. June 25, 2024) ("Relevance is a low threshold and merely requires the possibility of a nexus between the information sought and the claims or defenses of a party.").

        <u>Fourth</u>, while Nakamura concedes records related to his investments in crypto ventures and start-ups are relevant, he claims records related to his trading of various cryptocurrencies should be protected from disclosure. [Opp. at 10, Dkt. 121]. Again, "[r]elevance is a low threshold" (*id.*) and Nakamura's overall experience and knowledge regarding the crypto-currency market, including trading cryptocurrencies on secondary markets, is highly relevant to his Japanese law claims. The unrebutted Japanese case law makes clear that a plaintiff's overall investment and business experience is an important factor considered under the CCA and Article 96 of the Civil Code of Japan. *See, e.g.*, *Tōkyō Chihō Saibansho* [Tokyo Dist. Ct.] April 13, 2022, Rei 2 (wa) no. 7287, Westlaw Japan, 2022WLJPCA04138005 (Japan) (holding plaintiffs were not misled and understood investment risks because they "had been investing with a focus on profitability using surplus funds for many years before the start of this transaction, and had extensive investment experience, having conducted numerous transactions not only in domestic stocks but also in investment trusts targeting foreign stocks and real estate, foreign bonds, etc."*)*; *Tōkyō Chihō Saibansho* [Tokyo Dist. Ct.] September 16, 2011, Hei 21 (wa) no. 37069, Westlaw Japan, 2011WLJPCA09169012 (Japan) ('where plaintiff purchased stock in defendant company based

**DEFENDANTS' REPLY MEMORANDUM SUPPORTING**
**MOTION TO COMPEL DOCUMENTS FROM PLAINTIFF**

on defendant's representations stock would go public, court held plaintiff was not misled because he had experience in serving in executive positions (like president), had a high net worth and 20 years' experience in equity investments, and experience with unlisted stocks).

Thus, Defendants are entitled to understand the scope and degree of Nakamura's investment experience and sophistication, including his specific experience with crypto ventures as well as in trading cryptocurrency. Under both the CCA and Civil Code of Japan claims, this information is relevant to whether he is a "consumer," whether he was misled, and whether he understood the risks of purchasing Mobby Tokens. Nakamura claims the requested information is not relevant because "this is not a case about a sophisticated investor who 'understood the particular risks of the transaction[s].'" [Opp. at 8, Dkt. 121]. Nakamura is wrong. This is precisely what this case is about and is precisely what Defendants intend to prove at trial *if* they are able to obtain the information Nakamura so desperately seeks to withhold. Nakamura cites to no Japanese (or other) case law to support his argument and it should be disregarded.

Finally, Nakamura's proposal that he be permitted to simply "provide a supplemental interrogatory response summarizing any venture investments in the crypto currency space" is absurdly insufficient. Nakamura has proven he cannot be trusted, and documents do not (typically) lie. Defendants are not obligated to take Nakamura's word for it, just as Nakamura's counsel would object if Defendants offered to provide only an interrogatory answer instead of relevant documents. A mere supplemental interrogatory response standing alone will not permit Defendants to prepare an adequate defense; nor will Nakamura have the same incentive for accuracy and completeness as he will in the face of a document production. While Nakamura should be ordered to provide a supplemental interrogatory response, Defendants are also still entitled to the underlying documents that will corroborate or disprove that interrogatory response.

**DEFENDANTS' REPLY MEMORANDUM SUPPORTING**
**MOTION TO COMPEL DOCUMENTS FROM PLAINTIFF**

Accordingly, Nakamura should be ordered to produce: (1) a list of all of Nakamura's investment crypto/digital asset investment history from 2010-2018; and (2) account records and statements related to that crypto/digital asset investment history for that same time period.

**B.    Nakamura's Salary and Income is Relevant to His Japanese Law Claims.**

Perhaps tellingly, Nakamura cites to only U.S. cases in an effort to argue what information is relevant under the Consumer Contract Act of Japan. [Opp. at 9-11, Dkt. 121].   Notably, Nakamura does not critique or even attempt to distinguish any of the Japanese cases cited by Defendants, which cases expressly hold that his wealth and income are relevant to whether he is a "consumer" under the CCA and whether he has been misled under that Act. *See Article-by-Article commentary*, Government of Japan Consumer Affairs Agency, (Sept. 2023), p. 15-16 (courts must analyze whether a plaintiff's investment related revenue exceeds his revenues from salary or other sources; *Tōkyō Chihō Saibansho* [Tokyo Dist. Ct.] March 30, 2021, Hei (wa) no. 28275, Westlaw Japan, 2021 WLJPCA033008012 (Japan) (looking at plaintiff's real estate investment income and salary income to determine plaintiff was not a consumer under the CCA); *Tōkyō Chihō Saibansho* [Tokyo Dist. Ct.] April 13, 2022, Rei 2 (wa) no. 7287 (court considered plaintiff's investment experience and "annual income" in determining whether plaintiff was misled); *see also Tōkyō Chihō Saibansho* [Tokyo Dist. Ct.] September 16, 2011, Hei 21 (wa) no. 37069, Westlaw Japan, 2011WLJPCA09169012 (Japan) (under Article 96 of the Civil Code of Japan, plaintiff's business and investment experience, combined with his high net worth, were relevant to whether plaintiff was misled.)

Given the foregoing now-uncontested authorities, Nakamura cannot seriously dispute that his wealth and income are relevant to his claims. Despite their entitlement to more, and in an effort to narrow and streamline the issues, Defendants have requested only Nakamura's tax returns, and

**DEFENDANTS' REPLY MEMORANDUM SUPPORTING
MOTION TO COMPEL DOCUMENTS FROM PLAINTIFF**

not other documents that must exist and summarize his wealth and income. Defendants have asked for such documents for the same relevant time period as with the other requests, from 2010-2018. Nakamura refuses to produce any tax or income records, and fails to identify a reasonable alternative source where Defendants could obtain this information. And, Nakamura does not claim it will be burdensome to produce these records. His only argument is that production will intrude on his privacy. [Opp. at 10-11, Dkt. 121]. But Nakamura conveniently forgets that he opened this door by, choosing to bring his Japanese law claims against Defendants. He also forgets that his financial records can be submitted under an appropriate "Confidential" designation under the protective order in place in this case. [Dkt. 67.]

Given who he is, Nakamura's assertion that he is just a regular, run-of-the-mill consumer prone to misunderstanding is not a credible argument. But, Nakamura chose to bring claims on this premise, and has thus put his wealth and experience at-issue. And, Nakamura is not an ordinary consumer entering into an ordinary consumer transaction, but a sophisticated and wealthy (billionaire) businessman investing in a start-up company operating in a cutting-edge industry. Defendants are entitled to information about whether he invested in the Mobby Project for business purposes or as a consumer, and whether his wealth and experience tend to show that he understood the particular risks of his investment. Accordingly, the Court should order Nakamura to produce his tax returns from 2010-2018.

## CONCLUSION

For the foregoing reasons, Defendants request that the Court grant the Motion to Compel and Order Nakamura to:

1.      Comply with Defendants' Requests for Production Nos. 2 and 15 related to documents and communications with other Token Purchasers;

1

2        2.      Comply with Defendants' Interrogatory Nos. 6 and 12 and Request for Production

3 Nos. 10, 19 and 20 related to tax returns and his Nakamura's digital/crypto currency investment

4 history and experience; and

5        3.      Image his mobile telephone(s) and other messaging-capable devices, and

6 electronically gather his e-mail files for searching, in order to permit the use of search terms or

7 other standard techniques to ensure a complete collection and production of relevant documents.

8 DATED: May 7, 2025               **MAGLEBY CATAXINOS PC**

9

10 By:  */s/James Magleby*
             James Magleby (UT Bar 7247)

11

12 Attorneys for Defendants
      SUNDAY GROUP INCORPORATED,
      SGI TRUST, TOSHIKI (TODD) MITSUISHI
      AND JAMES PACK

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DEFENDANTS' REPLY MEMORANDUM SUPPORTING
MOTION TO COMPEL DOCUMENTS FROM PLAINTIFF**

1

2

**CERTIFICATE OF SERVICE**

3        I hereby certify that on this 7th day of May 2025, I caused a true and correct copy of the

4   foregoing DEFENDANTS' REPLY MEMORANDUM SUPPORTING MOTION TO COMPEL

5   DOCUMENTS FROM PLAINTIFF was served to the parties by the Court's electronic filing

6   system, via CM/ECF.

7

8                              _/s/ Sabrina Afridi_____
                              Legal Assistant

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                        Case No: 2:22-cv-01324-MMD-EJY
                    **DEFENDANTS' REPLY MEMORANDUM SUPPORTING
                    MOTION TO COMPEL DOCUMENTS FROM PLAINTIFF**