Felix S. Lee (CA Bar No. 197084)
flee@fenwick.com
Christopher J. Steskal (CA Bar No. 212297)
csteskal@fenwick.com
Casey O'Neill (CA Bar No. 264406)
coneill@fenwick.com
Claire Mena (CA Bar No. 339324)
cmena@fenwick.com
FENWICK & WEST LLP
Silicon Valley Center
801 California Street
Mountain View, CA  94041
Telephone:    650.988.8500
Facsimile:    650.938.5200

*Attorneys for Plaintiff and Counterdefendant*

Aaron D. Lebenta (UT Bar No. 10180)
adl@clydesnow.com
Timothy R. Pack (UT Bar No. 12193)
trp@clydesnow.com
CLYDE SNOW & SESSIONS PC
201 South Main Street, Suite 2200
Salt Lake City, UT 84111
Telephone: 801.322.2516

James E. Magleby (UT Bar No. 7247)
magleby@mcpc.law
MAGLEBY CATAXINOS PC
141 W. Pierpont Avenue
Salt Lake City, Utah 84101-3605
Telephone: 801.359.9000

*Attorneys for Defendants and Counter-Complainants*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| TETSUYA NAKAMURA, an individual,<br><br>Plaintiff,<br><br>v.<br><br>SUNDAY GROUP INCORPORATED, a Delaware corporation, *et al.*,<br><br>Defendants. | Case No.: 2:22-cv-01324-MMD-EJY<br><br>**JOINT SUBMISSION OF DISCOVERY DISPUTES** |

Pursuant to the Court's direction at the hearing that occurred on May 23, 2025, ECF 129, Plaintiff Tetsuya Nakamura ("Dr. Nakamura") and Defendants Sunday Group, Inc. ("Sunday Group"), SGI Trust, Toshiki (Todd) Mitsuishi ("Mr. Mitsuishi") and James Pack ("Mr. Pack") (collectively, "Defendants," and together with Dr. Nakamura, the "Parties"), by and through counsel, file this Joint Submission regarding discovery disputes that the Parties have been unable to resolve.

**INTRODUCTION**

At the May 23, 2025 hearing, the Court directed the parties to submit a joint document of discovery disputes that the parties were unable to resolve. ECF No. 129 at 121:11-122:7. Despite good faith efforts to meet and confer, the Parties have been unable to resolve the following discovery disputes, and submit them for resolution by the Court:

I.  The interrogatory limits applicable to this case

II. The applicable date range for collection and production of communications, as well as interrogatory responses

III. Dr. Nakamura's Supplemental Response to Defendants' Interrogatories 6 and 12.

**I.  The Applicable Interrogatory Limits**

**A.  Dr. Nakamura's Position**

Under Rule 33(a)(1), "a party may serve on any other *party* no more than 25 written interrogatories." (emphasis added).  Thus, by rule Dr. Nakamura can serve 25 interrogatories on each of the four Defendants. Defendants have taken, however, the untenable position that "Defendants are treated as a single party for the purposes of the interrogatory limits," and have refused to answer various interrogatories on that basis.[1] *See* **Exhibits A-D**.

---

[1] For example, in response to Interrogatory No. 5 served on Mr. Pack ("Describe in detail the nature of the relationship between SUNDAY GROUP and Defendant SGI Trust."), Mr. Pack objects as follows:

*Defendant objects to this Request on the grounds that Plaintiff has exceeded the number of allowable interrogatories. First, at the May 23, 2025 hearing, the Court ruled that the number of interrogatories would be limited to twenty-five (25), which limitations Defendants understand to apply per-side, in accordance with the Court's rulings on the other per-side discovery limits addressed at the hearing. See Hearing Trans., at 126-128. Prior to the May 23, 2025 hearing, Plaintiff served a total of fifty-seven (57) interrogatories on the Defendants, including twenty-six (26) to Todd Mitsuishi and nineteen (19) to Sunday Group, and twelve (12) on SGI Trust, and thus have already exceeded the allowed limits on interrogatories. Second, based on the complaint, James Pack is only nominally separate from the other Defendants in this matter – particularly Sunday Group and Mr. Mitsuishi upon whom Plaintiff has already served forty-five (45) interrogatories – who are all represented by the same counsel and have been acting in unison throughout this litigation. The claims against Mr. Pack are all also asserted collectively against Sunday Group and Mr. Mitsuishi as well, and Mr. Pack has been included as a defendant on these claims solely on the basis of his alleged status as an officer of Sunday Group. Accordingly,*

1    Defendants' position has no grounding in law or fact, and has effectively been rejected by

2    the Court already. In the parties' last Joint Motion for an Extension of Discovery Deadlines and/or

3    for a Status Conference (ECF No. 114), Defendants asked the Court to impose a limit of "no more

4    than six (6) additional interrogatories per side" – a request that would have been ***entirely***

5    ***superfluous*** if all four defendants had to be treated as one for purposes of Rule 33, as more than

6    25 interrogatories had already been collectively served on defendants. *See* ECF No. 114 at 9. The

7    Court denied this request in its May 23, 2025 oral ruling, and confirmed that Dr. Nakamura could

8    serve his remaining interrogatories per party as permitted under the Federal Rules. ECF No. 129

9    at 128: 14-25.[2] This by itself is sufficient to reject Defendants' position.

10    Following that order, Dr. Nakamura served additional interrogatories on James Pack on

11    July 25, 2025 and August 13, 2025; on Sunday Group on August 13, 2025; and on SGI Trust on

12    August 13, 2025. *See* **Exhibits A-D**. Defendants objected on the grounds that Dr. Nakamura

13    exceeded the allowable limit, asserting that Defendants should be treated as a single party for the

14    purposes of the Rule 33 limit. *See id.*

15    This position openly contradicts the Court's May 23, 2025 ruling and the factual record.

16    Defendants cited only one authority in course of meeting and conferring, *Gaby's Bags, LLC v.*

17    *Mercari, Inc.*, 2021 WL 857695, at *1 (N.D. Cal. Mar. 8, 2021), which does not remotely support

18    Defendants' position, and indeed, decisively rejects it. In *Gaby Bags* six counter-defendants argued

19    that they should be treated as one for purposes of the interrogatory limit, and the Court ***rejected***

20    that argument for five of the six parties. *Id.* And the Court only found that two of the parties were

21

22    *Defendants are treated as a single party for the purposes of the interrogatory limits under Fed. R.*
      *Civ. P. 33(a)(1).*

23

24    [2] "*THE COURT:* And there is a limit under the Federal Rules. *MR. LEE:* -- we weren't asking for
      any sort of expanded number. It's just we have not -- we have not used up the -- *THE COURT:*

25    Twenty-five.  *MR. LEE:* -- number that we get under the statute. And we are just simply saying

26    that I think what opposing counsel was saying was we're not going to agree to extend the discovery
      cutoff unless you agree to propound no more written discovery. And we were just saying, look,

27    you know, ***if we haven't used up our ROGs, we should be -- at least have that.*** And then if we
      can show good cause for more, we'll do that. That's all we were saying. THE COURT: ***And that***

28    ***will be the order of the Court.***  MR. LEE: Okay."  (emphasis added)

"nominally separate parties" because they were "alter egos" who did not have distinct information or documents available to them. *Id.*[3] Here, Defendants have not argued that any of them are "alter egos" of each other (nor is there any evidence to support such claim) and thus "nominally separate." To the contrary, Defendants have vehemently argued that the parties should ***not*** be considered synonymous.

For instance, Defendants have stated that "there is no relationship between Sunday Group and the SGI Trust except that [Mr. Mitsuishi] is a representative of both Sunday Group and the SGI Trust" (*see* **Exhibit E**); and that "Defendant SGI Trust is not affiliated with Sunday Group, the Mobby Project, or James Pack" (*see* Defendants' First Amended Answer and Counterclaim, ECF No. 59, ¶ 6.). Nor can individuals Mr. Pack and Mr. Mitsuishi be deemed the same for purposes of Rule 33. *Gaby's Bags*, 2021 WL 857695, at *2 (rejecting claim that two individuals can be deemed nominally separate because "[a]s a matter of common sense, they are different people…so each of them may know different things."). Mr. Mitsuishi has brought counterclaims on his own behalf based on facts unique to him that render him entirely separate from the other Defendants. And Mr. Pack never claimed he is the "sole member and principle" of Sunday Group (or any other defendant), such that he can be deemed its "alter ego". *Id*. And under bedrock principles of corporate law, in their capacities as officers and directors Messrs. Mr. Mitsuishi and Mr. Pack owe individual fiduciary duties to shareholders—which Dr. Nakamura alleges they breached—that are distinct from entities that they serve. *See, e.g.*, NRS 78.138(7) (providing for individual liability separate from the corporation for breach of fiduciary duty for officers and directors).

Thus, there is no legal or factual basis for arguing that the four Defendants should be

---

[3] In their below position Defendants also cite to *Stiles v. Walmart, Inc.*, 2020 WL 264420, at *4 (E.D. Cal. Jan. 17, 2020), which is entirely inapposite as it dealt with the different question of whether two plaintiffs could serve 50 interrogatories on one defendant, which is not the question presented here. *Freedom Foundation v Sacks*, 2020 WL 1914902 (W.D. Wash. Apr. 20, 2020) is also not on point because in that matter plaintiff sought to serve the same interrogatories on multiple defendants and the Court saw no need to have them repeat the same information—again, not the case here, and Defendants make no such argument.

"treated as a single, unified entity" (*Gaby's Bags*, 2021 WL 857695, at *1 (citation omitted)), and Defendants should be ordered to respond to Dr. Nakamura's additional interrogatories.

### B. Defendants' Position

Prior to the May 23, 2025 Hearing, Dr. Nakamura had already served a total of fifty-seven (57) interrogatories on the Defendants, including (a) twenty-six (26) to Mr. Mitsuishi (b) nineteen (19) to Sunday Group and (c) twelve (12) to SGI Trust. Following the May 23 Hearing, Dr. Nakamura served an additional twenty-seven (27) interrogatories on Defendants, including (a) twenty-two (22) to Mr. Pack, (b) three (3) to Sunday Group; and (c) two (2) to SGI Trust (the "**New Interrogatories**"). Thus, all told, Dr. Nakamura has now served a total of eighty-four (84) interrogatories on Defendants. By contrast, Defendants have <u>collectively</u> served a total of twenty-one (21) interrogatories on Dr. Nakamura during this case – all of which were served prior to the May 23 Hearing.

Defendants objected to Dr. Nakamura's New Interrogatories on several grounds, only one of which Dr. Nakamura addresses here: that the Additional Interrogatories exceed the allowable limits under the circumstances of this case, and in accordance with the limitations on additional written discovery imposed by the Court at the May 23 Hearing. The Court should sustain Defendants' objections to the New Interrogatories on two primary bases.

<u>First,</u> near the end of the May 23 Hearing, the parties and the Court addressed "whether and how much additional written discovery would be allowed." ECF 129 at 124:6-8. In accordance with its discretion under Rule 26(b) of the Federal Rules of Civil Procedure, the Court limited additional written discovery to fifty (50) requests for admission ("RFAs"), twenty (20) requests for production ("RFPs") of documents and twenty-five (25) interrogatories – the "limit under the federal rules" – in the event the parties had not met that limit. ECF 129, at 125:5-128:24. Notably, counsel for Nakamura did not identify the number of interrogatories Nakamura had already served at the May 23 Hearing. *Id.*, at 127:19-128:25.

Although not expressly stated in the Court's oral ruling, Defendants understood that the Court was applying these limitations on additional discovery on a *per-side* basis, in light of the

substantial written discovery that had already taken place. If it were otherwise – if it were applied on a per-party basis – the limitations would not be reasonable or proportional *limitations* at all, but instead become onerous: 200 additional RFAs (50 x 4 Defendants); 80 additional RFPs (20 x 4 Defendants); and 100 interrogatories (25 x 4 Defendants). Defendants do not believe that the Court intended to allow such extensive additional written discovery.

In his position statement on this issue above, Dr. Nakamura mischaracterizes Defendants' position in the April 2, 2025 Joint Motion for an Extension of Discovery Deadlines and/or for a Status Conference, ECF 114. That submission does not reflect an agreement of the parties and was not a "stipulation," because the parties never came to an agreement. Rather, in that submission, Defendants stated that "given the volume of information they have provided, no additional written discovery is likely necessary or proportional," but that in the "interests of compromise" they would have been willing to agree to "no more than six (6) additional interrogatories per-side." ECF 114, at p. 9.

But, the Court ordered no additional interrogatories. ECF 129, at 128. Thus, based on their understanding that the Court imposed per-side limitations on additional written discovery at the May 23 Hearing, and the fact that Dr. Nakamura had already served 57 interrogatories as of that date, Defendants anticipated that no additional interrogatories would be served because Dr. Nakamura had already far exceeded the limits. Indeed, now that Dr. Nakamura has already taken Sunday Group's and SGI Trust's depositions on December 2 and 3, 2025, there is little benefit to be gained as compared to the significant burden and expense of requiring Defendants to answer the 27 separate New Interrogatories, which alone exceed the number of interrogatories Defendants have propounded in the entire case. Dr. Nakamura can – and did –ask questions on the topics of these New Interrogatories as questions in the depositions.

Second, a per-side limitation is also consistent with circumstances of this case because there are two clear sides to this dispute and allowing Dr. Nakamura to propound up to 25 separate interrogatories on each Defendant, given the interrelated nature of the claims and parties, would violate Rule 26's prohibition on overly burdensome discovery.

Rule 33(a) presumptively limits interrogatories to "25 in number," "served upon any other party." Fed. R. Civ. P. 33(a)(1). Dr. Nakamura argues that because he has separately named four defendants, that he gets to propound 25 interrogatories upon each of them. However, "'[c]ommentary and caselaw'" have 'noted that permitting the maximum number of allowable interrogatories on each named defendant does not always accord with the purpose of Rule 33's limitation.'" *Gaby's Bags, LLC v. Mercari, Inc.,* 2021 WL 857695, at *1 (N.D. Cal. Mar. 8, 2021) (citation omitted)). "***Where separate parties are represented by the same counsel and are acting in unison, they may be treated as one 'party' for the purposes of the limit on interrogatories***." *Stiles v. Walmart,* 2020 WL 264420, *4 (E.D. Cal. January 17, 2020) (emphasis added); *accord Gaby Bags,* 2021 WL 857695 at *1 (stating the "'25 interrogatory limit per side rule is often applied when parties to an action are nominally separate,'" such as "'when represented by a single attorney, when there is a unity of action, or when there is a legal relationship between the parties.'" (citation omitted)); *Freedom Foundation v Sacks,* 2020 WL 1914902 at **3-4 (W.D. Wash. April 20, 2020) (determining that a per-side limitation on interrogatories was warranted, whether under "Rule 26's prohibition on overly burdensome discovery or the nominally separate doctrine," where, *inter alia,* the parties receiving the interrogatories are "closely associated," "share a common counsel," and "have acted in unison during this litigation.").

These authorities support Defendants' objections to the New Interrogatories here. All Defendants share the same counsel and have acted in unison throughout this litigation, including in discovery, where they have propounded all written discovery on Dr. Nakamura collectively, as a single unit, and below the 25-interrogatory limit. Moreover, the claims against Defendants are interrelated. For example, Mr. Pack is named as a defendant only because he is an officer of Sunday Group, and Mr. Mitsuishi and/or Sunday Group are also named as defendants to these claims against Mr. Pack, without any distinct allegations. Complaint, at ¶¶ 53-63. Similarly, all of the fraud and misrepresentation claims are brought against Mr. Mitsuishi and Sunday Group or Mr. Mitsuishi and SGI Trust collectively, Complaint, Counts I-IV, VII-IX, XI-XIV, and Dr. Nakamura has already served *26* interrogatories on Mr. Mitsuishi alone.

Dr. Nakamura himself has recognized the nominal separateness of the Defendants by treating them interchangeably in discovery. For instance, nearly all of the New Interrogatories to Mr. Pack seek information about Sunday Group, rather than Pack. *See* Exs. A and B. This further supports the need for a per-side limitation here: Dr. Nakamura is trying to use Mr. Pack as a surrogate to issue additional interrogatories to Sunday Group, upon which he had already served 19 interrogatories prior to the May 23 Hearing. Indeed, this is an improper attempt to circumvent limits even under a per-party approach. Dr. Nakamura has similarly treated Sunday Group, Mitsuishi and SGI Trust interchangeably in his interrogatories.[4]

Dr. Nakamura's argument that the nominally separate doctrine only applies in alter ego cases is unsupported. While an alter ego claim would certainly support application of the doctrine, it is not so limited. *See Stiles,* 2020 WL 264420 at *4 (applying doctrine outside of alter ego); *Freedom Foundation,* 2020 WL 1914902 at **3-4 (same); *see also* 8A Wright, Miller and Marcus, *Federal Practice and Procedure,* Civil 2d § 2168.1 (indicating the doctrine should apply when "parties are the same side are represented by a single attorney and in that sense act in unison," and providing as examples of where the doctrine should apply: "legally related parties," or a case involving "ten people injured in a bus crash [that] sue the bus company in a single suit represented by the same lawyer.").

To the extent the Court has not already done so at the May 23 Hearing, it should treat Defendants as a single party for the purposes of limitations on further written discovery, including interrogatories, and rule that Defendants do not need to answer the New Interrogatories, particularly in light of the substantial amount of written discovery that has already occurred.

## II.    The Applicable Date Range for Discovery Responses and Document Production

---

[4] For example, Interrogatories 1-17 to Mitsuishi and Interrogatories 1-17 to Sunday Group are the same. *See* Defendants' Exhibits 1 and 2. Additionally, Interrogatory No. 6 to SGI Trust asks *SGI Trust* to "Describe in detail the circumstances of Mr. Mitsuishi's leave of absence as SUNDAY GROUP's CEO as alleged in Paragraph 47 of the COUNTERCLAIM," and Interrogatory No. 12 to SGI Trust asks *SGI Trust* to "Describe in detail the nature of the relationship between SUNDAY GROUP and DAG Technologies, Inc., a Nevada corporation." Defendants' Exhibit 3.

## A. Defendants' Position

At the May 23 Hearing, the Court ordered Dr. Nakamura to have his devices and personal email account imaged, and the images delivered to his U.S. counsel to search for, and ultimately produce, relevant and responsive communications.  ECF 129, at 94:1-18.[5] Importantly, the Court imposed no date restrictions at the May 23 Hearing on Dr. Nakamura's communications.  *See id.* at 80-100.

Defendants, through counsel, provided a list of search terms, in English and Japanese, to Dr. Nakamura's counsel on August 8, 2025.  Over the following weeks, Defendants endeavored on several occasions to determine the status of the searches and anticipated production, including whether there were objections to any of the search terms.  Almost two months later, on October 2, 2025, Dr. Nakamura provided a "Keyword Hit List – Defendants' Terms" and a "Keyword Hit List – Revised Terms." Although the email accompanying the Hit Lists explained that some of the terms needed to be revised because they were common terms in Japan that were generating a large volume of false hits, the Revised Key Word Hit List provided a reduced number of hits (and thus documents to be produced) on nearly every term, including obviously relevant terms like "Sunday Group" and "Mobby." Despite asking for an explanation by email on October 7, 2025, Defendants did not receive that explanation until a meet and confer call on October 31, 2025 – the final date of production ordered by the Court – that the reason for the reduced hits on their "Revised Terms" hit report was because Dr. Nakamura had applied an artificial date restriction of January 1, 2015-December 31, 2021. This date corresponds to nothing; it was a self-imposed, made-up date restriction.  Defendants' initial counterclaim was not even filed until May 8, 2023.  ECF 56.[6]

---

[5] At the August 19, 2025 Motions Hearing, the Court ordered Dr. Nakamura to complete that production by October 31, 2025.  ECF 138, at 17:21-18:14.

[6] Dr. Nakamura's assertion, in his position statement below, that Defendants knew of the date restriction as of October 2, 2025 is both misleading and irrelevant. Apparently, this date was obliquely referenced on one of two hit reports that counsel for Dr. Nakamura sent on October 2, 2025. It was not explained to Defendants until the meet and confer conferences that Dr. Nakamura's self-imposed date restriction (December 31, 2021) was the reason for the substantially reduced "hits" on the "Revised" hit report. Defendants never agreed to that date restriction.

**JOINT SUBMISSION OF DISCOVERY DISPUTES**

Further, the date eliminated highly relevant information that Defendants have been requesting for over *six months*, and still do not have. In a meet and confer letter dated April 28, 2025, Defendants specifically identified a number of documents that had been omitted from Dr. Nakamura's production, including but not limited to, the following documents and communications between Dr. Nakamura and Ryu Imachi referenced in their LINE message communications in late January through February of 2022: (a) emails and attachments between January 31, 2022-February 6, 2022, between Dr. Nakamura and Mr. Imachi where Mr. Imachi made edits to a draft demand letter that Dr. Nakamura sent him from his lawyers to review for accuracy, Nakamura_0000810-811; (b) Mr. Imachi's "whole story" narrative he put together regarding his involvement with Mr. Mitsuishi and Sunday Group and sent to Dr. Nakamura by email on approximately February 24-25, 2022, Nakamura_0000816; and (c) an email and attachment sent by Mr. Imachi to Dr. Nakamura on approximately February 12, 2022, that included edits to an SEC complaint regarding Defendants for Dr. Nakamura's review, Nakamura_0000815. There was no justifiable basis for Dr. Nakamura to withhold such documents at the outset – which Defendants only discovered existed due to a passing reference in another communication, indicating these examples are just the tip of the iceberg – let alone for over six months after Defendants specifically identified them (and others). Dr. Nakamura's attempt to self-impose a December 31, 2021 date restriction made the withholding of relevant materials even more egregious, as it would exclude production of not only these and other documents, but any reference to the communications that revealed their existence.

Dr. Nakamura did not produce any of the communications from the imaged phone and email, or his tax returns, until the last possible day, October 31, 2025.[7] On November 7, 2025, Dr. Nakamura agreed to increase the back-end date range on the communications to August 16, 2022

---

[7] As a result, Defendants are still in the process of getting these recently produced documents translated and reviewed. Defendants reserve the right to raise any additional issues they discover through subsequent motion or other joint submission.

1  – the date the Complaint was filed.[8] However, thus far Dr. Nakamura has provided

2  communications only through December 31, 2021, with no indication as to when Defendants can

3  expect to receive an additional production. Given that Dr. Nakamura's deposition was scheduled

4  in advance to occur on December 16 and 17, 2025, and has occurred as of the time of this

5  submission, Defendants have been deprived of the opportunity to use these documents for Dr.

6  Nakamura's deposition.

7       While an August 16, 2022 cut-off date may make sense for Dr. Nakamura's

8  communications with some individuals and/or on certain topics, at least as a starting place pending

9  Defendants' review of the documents, depositions and/or other discovery, it is Defendants'

10 position that there should be no date restriction on communications – text messages and emails –

11 with the following key individuals/entities who are at the heart of this case:

12      • Ryu Imachi, Kon Mahito, and Sundale Ltd. regarding Mobby, Bitclub Network or
13        any of the Defendants.[9] Mr. Imachi, Mr. Mahito and Sundale are connected to
          every issue in this case, including both Dr. Nakamura's claims and Defendants'
14        counterclaims (both Mr. Imachi and Sundale are expressly referenced in the
          Counterclaim). ECF 84, at p. 15-16. For instance, Dr. Nakamura has previously
15        produced some communications with both Mr. Imachi and Mr. Mahito discussing
          Dr. Nakamura's purchase of Mobby tokens and the investment in Bitclub
16        Network, as well discussing the threats and regulatory complaints at issue in the
          counterclaim, including as detailed above for Mr. Imachi.
17

18      • Tsuneyasu Takeda regarding Mobby or any of the Defendants. Mr. Takeda is
          directly connected to the counterclaims, and is expressly identified in the
19        Counterclaim as a co-conspirator with Dr. Nakamura. ECF 84, at 17-21.

20      • Mobby Token purchasers listed on Nakamura's government regulatory
          complaints regarding Mobby or any of the Defendants.[10] Nakamura's attempts to
21        persuade Token purchasers to file such complaints may still be ongoing.

22      • Government regulatory agencies, including the S.E.C. and the Nevada Division of

23 ─────────────────────
   [8] Defendants requested this date as a placeholder in order to expedite receipt of additional relevant
24 documents, but without prejudice to their right to seek an expanded date range.

25 [9] Mr. Imachi and Mr. Mahito are employees and/or principals of Sundale.

26 [10] These Mobby Token purchasers include: Massaaki Ito, Hiroshi Hagiwara, Hiromi Takchara,
   Akiyoshi Sanuki, Hirohisa Uematsu, Tomoko Takahashi, Mie Maeda, Yoko Ogino, Nanako Nogi,
27 Kazunori Matsubara, Toshiki Tanemura, Kumiko Uematsu, Kyoichi Hariu, Yuji Kuramochi,
   Yoshihisa Ishkawa, Takuho Muramatsu, and Mitsuaki Kanai.
28

1    Securities, to which Nakamura submitted complaints regarding Mobby, Bitclub
2    Network or any of the Defendants.

3    To the extent there are any communications between Dr. Nakamura and any of the above-
4    named key individuals or entities, at any time, regarding <u>Mobby, Bitclub Network or any of the</u>
5    <u>Defendants,</u> as indicated, they are certainly relevant and likely highly probative, and should be
6    produced by Dr. Nakamura. For their part, Defendants have already produced a significant number
7    of text messages and emails that post-date August 16, 2022. Moreover, because the Mobby Token
8    purchasers, Mr. Imachi, Mr. Mahito, Mr. Takeda and Sundale are all residents of Japan,
9    Defendants cannot subpoena them and have no means to acquire their communications with Dr.
10   Nakamura except through Dr. Nakamura. Similarly, government agencies will object to any
11   subpoena for documents related to an investigation and, at the very least, it is far more burdensome
12   to attempt undergo that process than receiving communications directly from Dr. Nakamura.

13   Defendants dispute Dr. Nakamura's statements, in his position statement below, that they
14   proposed or agreed to the August 16, 2022 date for all Dr. Nakamura's communications.
15   Defendants consistently informed Dr. Nakamura – including in an email on October 7, 2025,
16   during meet and confer calls on October 31 and November 3, 2025, and in a November 11, 2025
17   email – that they wanted expanded productions for certain key witness. Moreover, Defendants
18   never agreed to a "reciprocal" August 16, 2022 cut-off date for all documents or interrogatory
19   responses, particularly for requests for production or interrogatories to Defendants on topics that
20   the Court already addressed at the May 23, 2025 Hearing, including those that purport to relate to
21   Dr. Nakamura's fraudulent inducement claims on contracts executed four years or more before the
22   Complaint was filed.  Notably, there was no reference to any purported "reciprocal" agreement in
23   the November 7, 2025 email from Dr. Nakamura's counsel stating that Dr. Nakamura would
24   produce *his* communications through August 16, 2022,[11] and Dr. Nakamura has not produced (or
25   agreed to produce) other records, such as investment history or tax returns, through August 16,

26
27   [11] As indicated above, Defendants have already produced a substantial number of communications
     and other documents that post-date August 16, 2022.
28

2022, which further undermines his assertion that there was a reciprocal agreement for all documents through that date.[12]

Producing the communications referenced in the bullet points above should not be overly burdensome to Dr. Nakamura. Dr. Nakamura knows when he is communicating with the relevant individual, and presumably there are a limited number of communications to search for relevant information. Dr. Nakamura has not represented otherwise. Additionally, Dr. Nakamura's phone and email have finally and already been imaged, so any responsive information does not need to be re-collected. Given the short amount of time prior to Dr. Nakamura's deposition, Defendants respectfully request that the Court order Dr. Nakamura to produce the above-described communications, as well as all communications through August 16, 2022, within seven days.[13]

**B. Dr. Nakamura's Position**

This dispute concerns the applicable date range for both parties' discovery. On October 31, 2025, Dr. Nakamura produced over 8,600 pages of communications from January 1, 2015 to December 31, 2021 collected from Dr. Nakamura's email accounts and iPhone. Defendants had known since ***early October*** that this was the date range of review, as it was stated expressly in hit reports provided at that time. After meeting and conferring on November 7, 2025, Dr. Nakamura

---

[12] Dr. Nakamura's argument, in footnote 16 below, that Defendants delayed producing a hit report for Ken Hashimoto is specious. Defendants did not provide a set of English and Japanese search terms for Mr. Hashimoto until October 2, 2025.

[13] Dr. Nakamura's assertion, in footnote 17 below, that Defendants' productions do not comply with standard ESI protocols is incorrect and is not an issue upon which the parties have met and conferred. More than that, this argument is incredibly hypocritical, and appears to be made to mask Dr. Nakamura's own production issues. Prior to October 31, 2025 – and thus through over three years of litigation – Dr. Nakamura's productions included inconsistently preserved metadata. A significant portion of his document production consisted of text communications, which were provided as PDF scans or screenshot images of texts or other documents. Further, he frequently produced communications in a disorganized and chronologically out of order fashion, such that in many instances it was impossible to determine the identity of the persons communicating or the actual sequence of the communications. Although Defendants raised these issues with Dr Nakamura in multiple separate meet and confer communications – including as far back as August of 2024 – little effort was made to address the issues prior to October 31, 2025. Even after Dr. Nakamura's October 31, 2025 production, many embedded attachment links in documents remain unavailable and hundreds of documents are heavily redacted.

agreed to extend this date range to August 16, 2022—*a date proposed by defense counsel* as it was the date the complaint was filed (ECF No. 1)—in exchange for Defendants applying a reciprocal date cut to their productions and interrogatory responses. Four days after this agreement, Defendants then demanded in addition that Dr. Nakamura produce communications from at least 23 individuals and agencies (essentially all relevant parties) starting from January 1, 2015 to present—adding *three full years* to the period of review.[14]

**Dr. Nakamura's Date Range.** On October 2, 2025, counsel for Dr. Nakamura emailed counsel for Defendants and provided a hit report for Dr. Nakamura's iPhone communications which identified the search terms applied, the number of hits per search term, and specifically identified the date range applied to the documents—January 1, 2015 to December 31, 2021. On October 9, Dr. Nakamura provided the hit report for his email accounts which similarly identified the search terms applied and the number of hits per search term, and explicitly stated in the cover email that the date range applied to both phone and email communications is January 1, 2015 to December 31, 2021.[15]

Dr. Nakamura's start date (January 1, 2015) mirrors Defendants' own position, and there is no dispute over it. As for the end date (December 31, 2021), Defendants' First Amended Answer and Counterclaim (ECF No. 59) alleges that Dr. Nakamura and others engaged in a "campaign of harassment" from March 2021 (¶ 29) to December 2021 (¶ 55). No conduct is alleged after this point, and thus December 31, 2021 was a reasonable cut-off. Defendants' assertion in this motion that "Nakamura's attempts to persuade Token purchasers to file such complaints *may* still be ongoing (emphasis added)" is not sufficient to transform the allegations in the complaint to

---

[14] Defendants dispute the existence of an agreement, pointing to the absence of a written agreement in the email correspondence. The November 7, 2025 email correspondence refers to the verbal agreement that was made between the two parties during the meet and confer process – the very purpose of meeting and conferring.

[15] In that same email, counsel for Dr. Nakamura wrote to Defendants "[if] you have certain objections to our revisions (for either the cell phone or email communications), could you please propose a list of alternative search terms to use that you believe will capture responsive documents but do not lead to so many false hits?" Counsel for Dr. Nakamura reiterated this request when the parties met and conferred on October 31, 2025. Defendants never provided such list.

continuing, forward-looking claims. And the extended period that Dr. Nakamura has agreed to review (through the filing of his Complaint in August 2022) stretches a full eight months beyond the period put at issue by the parties' respective complaints and is more than reasonable. Indeed, the Court already rejected the concept of an indefinitely open-ended date range when it earlier ruled on the scope of production of documents from Sunday Group's CFO Ken Hashimoto,[16] limiting such production to end in 2018. *See* May 23 Order at 77:16-17 (stating that "we're not going to go on into perpetuity into 2025. We're just not going to do that.").

Defendants incorrectly assert that the production of additional communications would not be "overly burdensome to Dr. Nakamura" because "Dr. Nakamura knows when he is communicating with the relevant individual, and presumably there are a limited number of communications to search for relevant information." This ignores the reality of an electronic document review and production. Extending the date range would require (1) applying at least 132 search terms to *three additional years* of email and text messages; (2) reviewing thousands of documents involving at least *23 individuals and agencies*; and (3) translating and analyzing majority Japanese-language communications. Aside from the burden, this would be all but impossible to do in seven days, as Defendants demand.

To the extent that Defendants did not have all documents before Dr. Nakamura's deposition, that is the choice Defendants made when they scheduled the deposition. Dr. Nakamura had proposed that depositions be taken after completion of document discovery, but Defendants rejected that proposal. *See* August 19, 2025 CMC Transcript at 7:6-10 ("if defendants are willing to take his deposition without assurance of having every piece of paper that they might get in this case, why is it that Dr. Nakamura would object? Because they're not going to get a second chance to depose him").

**Defendants' date range.** While demanding that Dr. Nakamura produce communications

---

[16] On May 23, 2025, the Court ordered Defendants to produce Mr. Hashimoto's communications. Defendants did not even provide a hit report until November 12, 2025, six months after the hearing. On December 8, 2025, Defendants finally produced documents from Mr. Hashimoto. Dr. Nakamura's review of these documents is ongoing.

with nearly every individual from 2015 to present, Defendants simultaneously attempted to apply a narrower date range to their document productions and interrogatory responses.[17]

*First*, Defendants objected to the following document requests on the basis of date:

- Dr. Nakamura's Second Set of Request for Production to SGI Trust's, Request for Production Nos. 43 (**Exhibit F**); and
- Dr. Nakamura's Second Set of Request for Production to Sunday Group, Requests for Production Nos. 45 to 52 (**Exhibit G**).

For example, SGI Trust objects to Request for Production No. 43 "on relevance grounds to the extent it seeks documents or communications that are outside the relevant period (January 1, 2015-December 31, 2018) established by the Court at the May 23, 2025 hearing", and repeats that objection for the multiple discovery requests outlined above.

*Second*, Defendants object to the following interrogatories on the basis of date:

- Dr. Nakamura's First Set of Interrogatories to Mr. Pack's, Interrogatories 3 and 7 (**Exhibit A**);
- Dr. Nakamura's Second Set of Interrogatories to Mr. Pack's, Interrogatories 10 to 13 and 15 to 22 (**Exhibit B**);
- Dr. Nakamura's Second Set of Interrogatories to Sunday Group, Interrogatories 20 to 22 (**Exhibit C**); and
- Dr. Nakamura's Second Set of Interrogatories to SGI Trust, Interrogatories 13 and 14 (**Exhibit D).**

For example, Mr. Pack objects to Interrogatory No. 10 on the basis that the "request is not relevant to the extent it seeks information after 2018 (*See* Court's May 23, 2025 ruling)", and as with the document requests, repeats that objection for multiple interrogatories.

Critically, when Dr. Nakamura agreed to the extended time period stretching to August 16, 2022, it was made with the ***express condition*** that Defendants would reciprocally drop their date

---

[17] Defendants assert that they have "already produced a substantial number of communications and other documents that post-date August 16, 2022." This assertion is both irrelevant and unsubstantiated. Defendants do not and cannot claim they have applied no end date cut to their document production, as they are asking Dr. Nakamura to do here. Moreover, because Defendants routinely produce documents and communications that do not comply with standard ESI protocols, including documents and communications without metadata fields (such as date), they make no attempt to quantify the supposed "substantial number" of communications that postdate August 16, 2022.

range objections as set forth above, and Defendants agreed. Their belated attempt, however, to add three additional years to the end period of Dr. Nakamura's date range while not agreeing to anything similar for their written and document discovery should be rejected, and the original agreement (i.e., mutual end date of August 16, 2022) should be honored.

Ultimately, this disagreement over the date cut is precisely what Dr. Nakamura sought to avoid by proposing a mutual date range. Dr. Nakamura respectfully requests the Court: (1) deny Defendants' request for discovery with an unlimited date range; and (2) apply a reciprocal cut-off date of August 16, 2022.

**III.    Dr. Nakamura's Supplemental Response to Defendants' Interrogatories 6 and 12**

   **A.  Defendants' Position**

Defendants' Interrogatories 6 and 12 state:

- Interrogatory 6 states: "List all transactions in which YOU have been involved related to a future acquisition of any existing or proposed DIGITAL CURRENCY."

- Interrogatory 12 states:  "State each business, venture, partnership, entity, individual and/or opportunity with which, and/or in which, you have invested DIGITAL CURRENCY since January 1, 2015.

Dr. Nakamura initially objected to and refused to respond to these interrogatories. But in light of the Court's rulings at the May 23 Hearing, on September 22, 2025, Dr. Nakamura supplemented his response to these interrogatories collectively, by providing an extremely cursory chart of his "cryptocurrency venture investments or transactions of similar nature" during the "time period July 1, 2013 to March 1, 2018"[18]:

| Year | Date | Counterparty | Description | Expenditure |
|------|------|--------------|-------------|-------------|
| 2014 | December 18 | UPUB Co., Ltd. | Equity Purchase | 20,000,000 JPY |
| 2015 | July 1 | Sunday Group Incorporated | Series AA Stock Investment | 300,000 USD |

---

[18] A copy of Dr. Nakamura's Supplemental Responses is attached as Defendants' Exhibit 4.

|  |  | July 30 | Sunday Group Incorporated | Series AA Stock Investment | 40,000 USD |
|  |  | October 23 | Sundale Co., Ltd. (investment routed through Sunday Group Incorporated) | Investment in Genesis Mining | 24,290,000 JPY |
|  | 2017 | November 24 | UPUB Co., Ltd. | Share transfer to Sunday Group Incorporated |  |
|  |  | November 28 - December 5 | Sunday Group Incorporated | Mobby Investment | 4228.14 ETH |
|  | 2018 | January 17 - January 19 | SGI Trust | BitClub Network Investment | 545.455 BTC |

Defendants maintain that this chart is inaccurate and omits relevant and responsive transactions, investments and details, for at least the following reasons.

First, previously produced evidence shows that the chart fails to disclose other cryptocurrency transactions and investments during the relevant time period. For example, in his text messages with Mr. Mahito, on March 5, 2018, Nakamura states that he is "currently preparing my tax return. Do you know the name of the 11,800,000 yen I transferred to Sundale on May 17th last year?," to which Mr. Mahito replies: "this is the transfer amount for purchasing altcoins." Nakamura_00001551. No such transaction or investment is referenced on the chart Nakamura provided, and an "altcoin" is not an established cryptocurrency. Although the Court directed the parties to meet and confer regarding such transactions, *see* ECF 129 at 111:18-113:12, Dr. Nakamura has refused to update the chart or otherwise identify such transactions in response to Interrogatories 6 and 12.[19] Although Dr. Nakamura now claims, in his position statement below, that this transaction involves Etherium, it is curious that the term "altcoin" was used rather than Etherium, when Etherium was commonly referenced by its name in such communications, and he has not confirmed that he invested in no other non-established cryptocurrencies during this period.

Second, this chart does not identify any returns that Nakamura received from the identified

---

[19] Defendants are only aware of this transaction because of an off-hand reference in a communication Dr. Nakamura produced. Defendants anticipate that there are other similar transactions during the relevant period identified by the Court.

investments in UPUB, BitClub Network or Genesis Mining. There are also references to Nakamura receiving returns from mining "in return for investing in Sunday" (on March 5, 2018) and from the "BitClub Mining Investment" in 2019 in his communications with Mr. Mahito, Nakamura_00001552, 1554, 1560, 1562, 1564-69, and in his Complaint, Dr. Nakamura alleges that he received returns from the Bitclub Mining investment. Complaint, at ¶¶ 31, 33. Further, with the purported UPUB Co., Ltd "share transfer to Sunday Group" on November 24, 2017 listed on the chart, it is unclear whether Dr. Nakamura claims he did not receive his initial equity investment back, or any other moneys, from investing in UPUB. The receipt of any returns or losses on these cryptocurrency related ventures and transactions is obviously relevant and responsive under the Court's May 23 oral ruling.

Third, the chart does not identify any transactions by which Nakamura acquired the ether ("ETH") or bitcoin ("BTC") for the "Mobby Investment" or the "BitClub Network Investment," including the date he claims to have acquired the ETH or BTC for these transactions or the acquisition price, including whether he exchanged yen for ETH or BTC for the express purpose, and at the time of, the "Mobby Investment" or the "BitClub Network Investment." While Defendants recognize the Court's May 23 oral ruling that Dr. Nakamura does not have to provide information regarding all of his transactions ("trades") in established cryptocurrencies, this is different because it involves the very investments at issue in this case, and is thus plainly relevant, including because Dr. Nakamura seeks rescission to recover this specific ETH and BTC that he claims to have owned and transferred to Sunday Group. *See* Complaint, ¶¶ 34-35, *and prayer,* ¶ 4.

Fourth, the chart does not identify any transactions regarding Nakamura's purchases or exchange of BTC at BTC conversion machines ("ATMs") in Japan, which were owned by Sunday Group, despite Defendants' identifying numerous communications from Nakamura discussing such purchases in meet and confer letters. Such transactions are specifically relevant to Dr. Nakamura's allegation that Sunday Group never "produce[d] a single viable product," Complaint, at ¶ 24; the extent to which Dr. Nakamura used and benefitted from Sunday Group's BTC ATMs is compelling evidence to refute such claims.

All of the above information, as well as any other information, necessary to accurately identify Dr. Nakamura's cryptocurrency related investments, should be readily available to Nakamura from a simple and reasonable search of his financial records, and Nakamura has already had months since the May 23 hearing to locate it. Defendants respectfully request that the Court order Dr. Nakamura to promptly supplement this Response to identify all cryptocurrency related investments, including but not limited with the missing information identified above.

### B. Dr. Nakamura's Position

Defendants' motion to compel information regarding various cryptocurrency related transactions runs directly afoul of the Court's May 23, 2025 Order ("May 23 Order"), which stated that Dr. Nakamura need only provide information regarding investments in cryptocurrency ventures, and not mere purchases or sales of cryptocurrencies, especially well-established currencies such as Bitcoin and Ethereum. *See, e.g.*, May 23 Order at 111. As discussed below, Dr. Nakamura rigorously complied with the Court's Order in answering Interrogatories 6 and 12, which by itself justifies denial of Defendants' motion. Moreover, the bulk of the information sought is already in the possession of Defendants, which further undermines the propriety of their requested relief.

Defendants' lead argument is easily dispensed with. They claim that a reference to "altcoin" in a 2018 text message to Dr. Nakamura means that there must be responsive crypto transactions that have not been disclosed. During the meet and confer process, however, counsel for Dr. Nakamura explained to defense counsel that "altcoin" simply refers to any cryptocurrency other than Bitcoin, which can include other well-established currencies such as Ethereum[20] (Defendants' submission conspicuously omits any reference to this discussion during the meet and confer process). Thus, there is no reason to believe that references to "altcoin" means that Dr.

---

[20] *See e.g.*, Blockchain.com, https://www.blockchain.com/learning-portal/lessons/altcoins ("The term altcoin comes from "alternative coins," meaning any cryptocurrency other than bitcoin."); Cambridge Dictionary, https://dictionary.cambridge.org/us/dictionary/english/altcoin ("any cryptocurrency (= a digital currency that is produced by a public network rather than by a government and uses special codes to keep it secure) that is not bitcoin").

Nakamura's response is deficient. The transaction referenced in the text exchange highlighted by Defendants was for Ethereum (and Defendants offer no evidence to the contrary other than rank speculation), and thus need not have been disclosed pursuant to the Court's May 23 Order. Consequently, there is no reason to believe that Dr. Nakamura's responses are incomplete.

Equally defective is Defendants' claim that various investment "returns" needed to be disclosed in Dr. Nakamura's interrogatory responses, for at least three dispositive reasons. ***First***, "returns" from investments are not even called for by either interrogatory at issue. Interrogatory 6 only calls for transactions "related to a ***future acquisition*** of any existing or proposed DIGITAL CURRENCY" (emphasis added), and thus investment "returns" are not responsive as they are not related to "future acquisition" of a digital currency. And Interrogatory 12 does not call for information regarding "returns" on investments, it merely asks Dr. Nakamura to identify any business or venture in which he invested cryptocurrency, which he did. ***Second***, the "returns" from BitClub Network and Genesis Mining would by definition be in Bitcoin (as they were both Bitcoin mining operations) and thus also expressly excluded by the Court's May 23 Order. *See* May 23 Order at 111. ***Third***, the information sought is already in the possession of Defendants, as the BitClub Network and Genesis Mining investments were made through Defendants SGI Trust and Sunday Group, respectively, and Dr. Nakamura's stake in UPUB was sold to Sunday Group. Thus, Defendants have all of this information ***already***—and they make no argument to the contrary— and therefore this request is entirely make-work and should be rejected.

For much of the same reasons, Defendants' request that Dr. Nakamura identify the transactions by which he acquired the Bitcoin and Ethereum used for the Mobby and Bitclub investments should also be denied. Again, this request runs directly contrary to the Court's May 23 Order that Bitcoin and Ethereum purchases need not be disclosed, which even Defendants' submission is forced to grudgingly concede. Moreover, not only do all of the relevant contractual and investor documents in the case acknowledge that Dr. Nakamura was in fact the investor who paid the relevant investment funds, and indeed, Defendants' own Answer admits this. *See e.g.*, Defendants' First Amended Answer and Counterclaim ¶¶ 21, 26, 30.

Finally, Defendants' request runs even further farther afield with their demand that Dr. Nakamura identify Bitcoin transactions made in Bitcoin ATMs owned by Defendant Sunday Group. As with Defendants' other requests, these are Bitcoin transactions which the Court ruled need not be disclosed. May 23 Order at 111. And moreover, because these purchases were made through Sunday Group's ATMs, it is information that is equally accessible to Sunday Group—a fact that Sunday Group never addresses in its submission. The argument that Sunday Group needs this information to rebut Dr. Nakamura's claim that Sunday Group never produced a viable product misses the point entirely. To start, Defendants conspicuously do not argue that these ATMs still exist and thus were "viable" products (they do not and were not), but regardless, information regarding Dr. Nakamura's purchases is already in Sunday Group possession. And in any event, Dr. Nakamura's allegations are aimed at new products that were to be developed using his investment funds (none of which have come to fruition), not existing products that Sunday Group did not even develop (such as the Bitcoin ATM). *See e.g.*, ECF 1 (Complaint) ¶ 41 ("[I]nvested capital would be used to develop various cryptocurrency projects (none of which have ever come to fruition).").

Dated: December 22, 2025                    Jointly submitted,


**MAGLEBY CATAXINOS**

By:  */s/ James E. Maglebys*
     James E. Magleby

Attorneys for Defendants
SUNDAY GROUP INCORPORATED,
SGI TRUST, TOSHIKI (TODD) MITSUISHI
AND JAMES PACK


**FENWICK & WEST**

By:  */s/ Felix Lee*
     Felix Lee

Attorneys for Plaintiff and Counterdefendant
TETSUYA NAKAMURA

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PLAINTIFF'S EXHIBIT INDEX**

<u>Exhibit</u>                                   <u>Description</u>                                   <u>Pages</u>

| Exhibit | Description | Pages |
|---|---|---|
| A | 2025 09 18 Defendant James Pack's Amended Responses and Objections to Dr. Nakamura's First Set of Interrogatories | 10 |
| B | 2025 09 25 Defendant James Pack's Responses and Objections to Dr. Nakamura's Second Set of Interrogatories | 20 |
| C | 2025 09 25 Defendant Sunday Group Incorporated's Responses and Objections to Dr. Nakamura's Second Set of Interrogatories | 7 |
| D | 2025 09 25 Defendant SGI Trust's Responses and Objections to Dr. Nakamura's Second Set of Interrogatories | 6 |
| E | 2023 12 22 Defendant Todd Mitsuishi's Responses and Objections to Dr. Nakamura's First Set of Interrogatories | 20 |
| F | 2025 10 10 SGI Trust's First Amended Responses and Objections to Dr. Nakamura's Second Set of Requests for Production | 5 |
| G | 2025 10 10 Sunday Group Incorporated's Responses and Objections to Dr. Nakamura's Second Set of Requests for Production | 11 |

Case No: 2:22-cv-01324-MMD-EJY

**JOINT SUBMISSION OF DISCOVERY DISPUTES**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DEFENDANTS' EXHIBIT INDEX**

| Exhibit | Description | Pages |
|---------|-------------|-------|
| 1 | 20203 10 24 Plaintiff and Counterdefendant Tetsuya Nakamura's First Set of Interrogatories to Toshiki (Todd) Mitsuishi | 9 |
| 2 | 2023 10 24 Plaintiff and Counterdefendant Tetsuya Nakamura's First Set of Interrogatories to Sunday Group Incorporated | 8 |
| 3 | 2023 10 24 Plaintiff and Counterdefendant Tetsuya Nakamura's First Set of Interrogatories to SGI Trust | 7 |
| 4 | 2023 10 24 Plaintiff and Counterdefendant Tetsuya Nakamura's Supplemental Responses and Objections to Defendants' Interrogatories Nos. 6 and 12 After Hearing on Motion to Compel | 4 |

**JOINT SUBMISSION OF DISCOVERY DISPUTES**